UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELAN PHARMA INTERNATIONAL
LIMITED,                          )
                                  )
                                  )
            Plaintiff,            )
                                  )
    v.                            )    Civil Action No. 06-438-GMS
                                  )
ABRAXIS BIOSCIENCE, INC.,         )
                                  )
                                  )
            Defendant.            )

**DECLARATION OF ERIC C. PAI IN SUPPORT OF DEFENDANT
ABRAXIS BIOSCIENCE, INC.'S MOTION FOR PROTECTIVE ORDER AGAINST
PLAINTIFF ELAN PHARMA INTERNATIONAL LIMITED'S
NOTICE OF RULE 30(b)(6) DEPOSITION**

I, Eric C. Pai, declare as follows:

1.      I am an attorney admitted to practice in the State of California, and I am admitted *pro hac vice* in the above-captioned action. I am an associate with the law firm of Morrison & Foerster LLP, attorneys for Abraxis BioScience, Inc. ("Abraxis") in the above captioned action. I submit this declaration in support of Abraxis's Motion for Protective Order Against Elan's Notice of Rule 30(b)(6) Deposition. I have personal knowledge of the matters set forth herein, and if called upon to do so, I could and would competently testify thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of the Scheduling Order in this action, entered by the Court on November 15, 2006.

3.      Attached hereto as Exhibit B is a true and correct copy of the transcript of a telephonic hearing before the Court held on July 16, 2007.

4.    Attached hereto as Exhibit C is a true and correct copy of Plaintiff Elan Pharma International Limited's ("Elan") Notice of Rule 30(b)(6) Deposition of Abraxis BioScience, Inc., dated August 1, 2007 ("Notice").

5.    Attached hereto as Exhibit D is a true and correct copy of a chain of emails between Diana Kruze of Morrison & Foerster LLP, counsel for Abraxis, and Jeffrey Sullivan of Baker Botts LLP, counsel for Elan, dated August 7, 2007.

6.    Attached hereto as Exhibit E is a true and correct copy of the Complaint in this action, dated July 19, 2006.

7.    On August 8, 2007, Diana Kruze and I participated in a telephonic meet and confer with Jeffrey Sullivan in an attempt to resolve the parties' disagreements with respect to Elan's Notice. Ms. Kruze and I emphasized that Elan's Notice was untimely, failed to provide Abraxis with reasonable notice, contained 15 complex topics on which Abraxis could not reasonably prepare a witness in time for a deposition before the August 13, 2007 discovery cutoff, and contained several topics that were improper, overly broad, and unduly burdensome. Mr. Sullivan refused to withdraw the Notice and asked if Abraxis would be willing to extend the discovery cutoff or allow the deposition to occur after the discovery cutoff. Ms. Kruze and I explained that Elan's decision to wait until the last minute to notice the deposition was not a justification for disregarding the discovery cutoff ordered by the Court. The parties acknowledged that they were at an impasse and agreed to seek resolution by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of August, 2007 in Palo Alto, California.

Eric C. Pai

## CERTIFICATE OF SERVICE

I, Elena C. Norman, Esquire, hereby certify that on August 13, 2007 I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on August 13, 2007, I caused a true and correct copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
>
> Linda Glover, Esquire
> Stephen Scheve, Esquire
> BAKER BOTTS L.L.P.
> One Shell Plaza
> 910 Louisiana Street
> Houston, TX  77002-4995
> steve.scheve@bakerbotts.com
>
> Paul F. Fehlner, Esquire
> BAKER BOTTS L.L.P.
> 30 Rockefeller Plaza
> New York, NY  10112-4498
> paul.fehlner@bakerbotts.com

William J. Sipio, Esquire
1375 Brentwood Road
Yardley, PA 19067
sipz25@aol.cm

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
Elena C. Norman (No. 4780)
enorman@ycst.com
Karen E. Keller (No. 4489)
kkeller@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899
(302) 571-6600

Attorneys for Defendant
ABRAXIS BIOSCIENCE, INC.

2

# EXHIBIT A

**From:** ded_nefreply@ded.uscourts.gov [mailto:ded_nefreply@ded.uscourts.gov]
**Sent:** Wednesday, November 15, 2006 11:36 AM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** Activity in Case 1:06-cv-00438-GMS Elan Pharma International Limited v. Abraxis Bioscience Inc. SO ORDERED

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered on 11/15/2006 at 2:36 PM EST and filed on 11/15/2006
**Case Name:**         Elan Pharma International Limited v. Abraxis Bioscience Inc.
**Case Number:**    1:06-cv-438
**Filer:**
**Document Number:** No document attached

**Docket Text:**
SO ORDERED, re [20] Proposed Order filed by Elan Pharma International Limited, Abraxis Bioscience Inc., ORDER, Setting Scheduling Order Deadlines: Case referred to the Magistrate Judge for the purpose of exploring ADR. Claims Construction Opening Brief due by 5/11/2007.,Pretrial Conference set for 5/5/2008 10:00 AM in Chambers before Honorable Gregory M. Sleet.,Amended Pleadings due by 1/16/2007.,Discovery due by 7/30/2007.,Joinder of Parties due by 1/16/2007., Telephone Conference Re: Summary Judgment set for 12/20/2007 at 10:00 AM before Honorable Gregory M. Sleet.,Motions in Limine due by 4/7/2008., (1/2 day) Markman Hearing set for 7/24/2007 at 10:00 AM in Courtroom 4A before Honorable Gregory M. Sleet.,Proposed Pretrial Order due by 4/7/2008., 10-day Jury Trial set for 6/2/2008 at 09:00 AM in Courtroom 4A before Honorable Gregory M. Sleet.. Ordered by Judge Gregory M. Sleet on 11/15/06. (asw)

**1:06-cv-438 Notice has been electronically mailed to:**
John G. Day jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com
Steven J. Balick sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, tlydon@ashby-geddes.com
Josy W. Ingersoll jingersoll@ycst.com, cglover@ycst.com, corpcal@ycst.com, corporate@ycst.com
Elena C. Norman enorman@ycst.com, corpcal@ycst.com, corporate@ycst.com
Emily A. Evans Eevans@mofo.com

**1:06-cv-438 Notice has been delivered by other means to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELAN PHARMA                          )
INTERNATIONAL LIMITED,               )
                                     )
            Plaintiff,               )
                                     )
     v.                              )          C.A. No. 06-438-GMS
                                     )
ABRAXIS BIOSCIENCE, INC.,            )
                                     )
            Defendant.               )

## SCHEDULING ORDER

This _____ day of _____, 2006, the Court having conducted a

Rule 16 Scheduling Conference pursuant to Local Rule 16.2(b) on November 6, 2006, and the

parties having determined after discussion that the matter cannot be resolved at this juncture by

settlement, voluntary mediation or binding arbitration;

IT IS ORDERED that:

1.      **Rule 26(a) Initial Disclosures.**  Unless otherwise agreed to by the parties,

they shall make their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a) on or

before **November 16, 2006.**

2.      **Joinder of other Parties and Amendment of Pleadings.**  All motions to

join other parties shall be filed on or before **January 15, 2007.**  All motions to amend the

pleadings shall be filed on or before **March 30, 2007.**

3.      **Reliance Upon Advice of Counsel.**  Defendant shall inform plaintiff

whether it intends to rely upon advice of counsel as a defense to willful infringement no later

than **March 16, 2007.**  If defendant elects to rely on advice of counsel as a defense to willful

infringement, defendant shall produce any such opinions on which defendant intends to rely to plaintiff no later than **March 16, 2007.**

   4. ***Markman* Claim Construction Hearing.** A *Markman* claim construction hearing shall be held on **July 24, 2007 at 10:00 a.m.** The *Markman* hearing is scheduled for one-half day. The parties shall meet and confer regarding narrowing and reducing the number of claim construction issues on or before **March 21, 2007.** On or before **April 20, 2007,** the parties shall submit a Final Joint Claim Chart which shall include citations to intrinsic evidence. The parties shall exchange opening claim construction briefs on **May 11, 2007,** and the answering claim construction briefs on **June 22, 2007.**

   5. **Discovery.** All fact discovery in this case shall be initiated so that it will be completed on or before **July 30, 2007.** Expert Discovery in this case shall be initiated so that it will be completed on or before **November 30, 2007.** The parties shall exchange opening expert reports on **September 14, 2007,** and answering expert reports on **October 15, 2007.**

   a. **Discovery and Scheduling Matters.** Should counsel find they are unable to resolve a discovery or scheduling matter, the party seeking the relief shall contact chambers at (302) 573-6470 to schedule a telephone conference. Not less than forty-eight hours prior to the conference, the parties shall file with the court, via electronic means (CM/ECF), a **joint, non-argumentative** letter agenda not to exceed two (2) pages outlining the issue(s) in dispute. A sample letter can be located on this Court's website at www.ded.uscourts.gov. Should the Court find further briefing necessary upon conclusion of the telephone conference, unless otherwise directed, the party seeking relief shall file with the court a **TWO PAGE LETTER**, exclusive of exhibits, describing the issues in contention. The responding party shall file within five (5) days from the date of service of the opening letter an answering letter of no

more than **TWO PAGES**.  The party seeking relief may then file a reply letter of no more than **TWO PAGES** within three (3) days from the date of service of the answering letter.

   6. **Confidential Information and Papers filed under Seal**.  Should counsel find it will be necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, they should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court on or before **November 30, 2006**.  When filing papers under seal, counsel should deliver to the Clerk an original and two copies of the papers.

   **If after making a diligent effort the parties are unable to agree on the contents of the joint proposed protective order, then they shall follow the dispute resolution process outlined in paragraph 5(a).**

   7. **Settlement Conference**.  Pursuant to 28 U.S.C. §636, this matter is referred to the United States Magistrate for the purpose of exploring the possibility of a settlement.

   8. **Summary Judgment Motions**.  Prior to filing any summary judgment motion, the parties must submit letter briefs seeking permission to file the motion.  The opening letter brief shall be no longer than five (5) pages and shall be filed with the Court no later than **December 4, 2007**.  Answering briefs shall be no longer than five (5) pages and filed with the Court no later than **December 11, 2007**.  Reply letter briefs shall be no longer than three (3) pages and filed with the Court on or before **December 14, 2007**.  The Court shall hold a Status Teleconference to hear oral argument and to determine whether the filing of any motion for summary judgment will be permitted on **December 20, 2007 at 10:00 a.m.**  Unless the Court directs otherwise, no letter requests to file a motion for summary judgment may be filed at a time

before the dates set forth in paragraph 8, except as discussed at the Rule 16 Scheduling Conference on November 6, 2006.

9.     **Case Dispositive Motions**.  All case dispositive motions and an opening brief and affidavits, if any, in support of the motion shall be served and filed within 28 days after the entry of an Order by the Court permitting such motion.  Briefing shall be pursuant to the Court's Local Rules, unless the parties agree to an alternative briefing schedule with the consent of the Court.  Any such agreement shall be in writing and filed with the Court for the Court's approval.  Any requests for extensions of time asset forth in this Scheduling Order **must** be accompanied by an explanation or your request will be denied.

10.     **Applications by Motion**.  Except as provided in this Scheduling Order or for matters relating to scheduling, any application to the Court shall be by written motion filed, via electronic means (CM/ECF).  Unless otherwise requested by the Court, counsel shall **not** deliver copies of papers or correspondence to Chambers.  Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

11.     **Oral Argument**.  If the Court believes that oral argument is necessary, the Court will schedule a hearing Pursuant to Local Rule 7.1.4.

12.     **Pretrial Conference**.  On **May 5, 2008**, beginning at **10:00 a.m.**, the Court will hold a Pretrial Conference in Chambers with counsel.  Unless otherwise ordered by the Court, the parties should assume that filing the Joint Pretrial Order (a sample form of Pretrial Order can be located on this Court's website at www.ded.uscourts.gov) satisfies the pretrial disclosure requirement in Federal Rule of Procedure 26(a)(3).  Thirty (30) days before the joint proposed pretrial order is due plaintiff's counsel shall forward to defendant's counsel a draft of the pretrial order containing the information plaintiff proposes to include in the draft.

4

Defendant's counsel shall, in turn, provide to plaintiff's counsel any comments on the plaintiff's

draft as well as the information defendant proposes to include in the proposed pretrial order.

Motions *in limine*:  No party shall file more than ten (10) motions *in limine*.  Briefs (opening,

answering and reply) on all motions *in limine* shall be served and filed by **April 7, 2008**.  The

parties shall file with the Court the joint proposed pretrial order on or before close of business on

**April 7, 2008**.

        13.    **Trial**.  This matter is scheduled for a ten (10) day jury trial beginning at

**9:00 a.m.** on **June 2, 2008**.

        14.    **Scheduling**.  The parties shall contact chambers, at (302) 573-6470, only

in situations where scheduling relief is sought, and only then when ALL participating counsel are

on the line for purposes of selecting a new date.

---

      UNITED STATES DISTRICT JUDGE

174852.1

5

# EXHIBIT B

1                  IN THE UNITED STATES DISTRICT COURT

2                  IN AND FOR THE DISTRICT OF DELAWARE

3                            -   -   -

4    ELAN PHARMA INTERNATIONAL     :       Civil Action
     LIMITED,                      :
5                                  :
                  Plaintiff,       :
6                                  :
          v.                       :
7                                  :
     ABRAXIS BIOSCIENCE INC.,      :
8                                  :
                  Defendant.       :       No. 06-438-GMS
9                            -   -   -
10                       Wilmington, Delaware
                         Monday, July 16, 2007
11                            4:00 p.m.
                         Telephone Conference
12                           -   -   -

13   BEFORE:   HONORABLE GREGORY M. SLEET, Chief Judge

14   APPEARANCES:

15           JOHN G. DAY, ESQ.
             Ashby & Geddes
16                  -and-
             PAUL FEHLNER, ESQ., and
17           LINDA GLOVER, ESQ. (Houston, Texas)
             Baker Botts LLP
18           (New York, New York)

19                              Counsel for Plaintiff

20           ELENA C. NORMAN, ESQ.
             Young Conaway Stargatt & Taylor, LLP
21                  -and-
             MICHAEL A. JACOBS, ESQ., and
22           EMILY A. EVANS, ESQ.
             Morrison & Foerster
23           (San Francisco, California)

24                              Counsel for Defendant

25

1                    THE COURT:  Good afternoon, counsel.  Counsel,

2     who is on the line for the plaintiff?

3                    MR. DAY:  Good afternoon, Your Honor.  On behalf

4     of plaintiff Elan Pharma you have John Day from Ashby &

5     Geddes locally.  With me on the line from Baker & Botts in

6     Texas, Linda Glover, and from Baker & Botts in New York,

7     Paul Fehlner.

8                    UNIDENTIFIED SPEAKER:  Good afternoon, Your

9     Honor.

10                    UNIDENTIFIED SPEAKER:  Good afternoon, Your

11     Honor.

12                    THE COURT:  For the defendant.

13                    MS. NORMAN:  For defendants, Your Honor, Elena

14     Norman from Young Conaway locally.  With me are Emily Evans

15     and Michael Jacobs from Morrison & Foerster in California.

16                    UNIDENTIFIED SPEAKER:  Good afternoon, Your

17     Honor.

18                    THE COURT:  Good afternoon.

19                    I am taking this call, counsel, because I

20     understand that there are pending depositions scheduled for

21     Thursday and Friday.  Is that correct?

22                    UNIDENTIFIED SPEAKER:  That's correct, Your

23     Honor.

24                    THE COURT:  As promised, I think reflected in an

25     oral order that is on the docket, I had referred the matter

1    elsewhere for discovery disputes.  That was going to be to a

2    discover master.  In the interim, it has developed that our

3    new Magistrate Judge will be sworn in effective August the

4    6th.  Future disputes will be referred to Judge Stark.

5              So let's go ahead and find out what's going on.

6              MR. FEHLNER:  Paul Fehlner for plaintiff Elan,

7    Your Honor.

8              There are two issues facing us in the

9    depositions that are scheduled for this week.  One is a

10   designation by Abraxis of documents relating to their

11   manufacturing process as secret manufacturing process

12   documents.  As part of an interim order following the last

13   conference concerning discovery problems, we agreed to

14   review documents on an online system in order to ascertain

15   or confirm their relevance to our case.  The defendants at

16   this time are trying to push the interim order to be the

17   controlling basis for using these documents.  As a

18   consequence, our lead trial counsel, who plans to take these

19   depositions, would actually be denied access to important

20   documents, including the notebooks of Dr. Neil Desai, the

21   deponent scheduled for Thursday, as well as manufacturing

22   process details.

23             In addition, Your Honor, at significant expense,

24   Elan went to two locations, one in Los Angeles, one in

25   Chicago, to review notebooks and identify relevant

 1   responsive information from the notebooks.  Abraxis did make

 2   those notes available to us.  But when we received the

 3   materials that we had identified from the notebooks, it

 4   wasn't whole notebooks, Your Honor.  It was selected

 5   packages.  We have found that substantial portions of these

 6   notebooks have been redacted.

 7              Your Honor, these are laboratory notebooks.  We

 8   have been told the redactions are related to privilege, and

 9   we simply can't understand it.  We have significant

10   redactions in notebooks of Neil Desai and Sherry Ci.  Ms.

11   Ci, or Dr. Ci, I can't remember which, is scheduled,

12   potentially scheduled to be deposed on Friday.  We were

13   waiting for confirmation of that.

14              This is our problem.

15              THE COURT:  Let's deal with the easy thing

16   first.  Is the other side prepared to confirm Dr. Ci's

17   availability for Friday?

18              MS. EVANS:  Actually, that was a possibility,

19   Your Honor, we had raised.  And we are sending an e-mail

20   today that will make her available on the date the

21   plaintiffs noticed her, which was July 30th.

22              THE COURT:  I don't have a calendar in front of

23   me.  Is that a no?

24              MS. EVANS:  Not this Friday, Your Honor.  The

25   notice date, July 30th.  We originally thought she might be

1    available earlier, but we are not going to be able to
2    provide her then.
3                    THE COURT:  Was that Mr. Fehlner or Ms. Glover
4    speaking?
5                    MR. FEHLNER:  That was Ms. Evans, Dr. Evans.
6                    THE COURT:  Who just outlined Elan Pharma's
7    position?
8                    MR. FEHLNER:  Mr. Fehlner, Your Honor.
9                    THE COURT:  Is that going to be satisfactory?
10                   MR. FEHLNER:  We would have no problem with
11    examining Dr. Ci on Monday, the 30th, Your Honor.  We still
12    have the issue with respect to Dr. Desai on Thursday.
13                   THE COURT:  I understand that.  Counsel, are we
14    now confirmed for Dr. Ci for Monday, the 30th, counsel for
15    Abraxis?
16                   MS. EVANS:  Yes, sir.
17                   THE COURT:  All right.  Let's get your response,
18    whoever is going to handle it, to Mr. Fehlner's concerns
19    regarding Dr. Desai.
20                   MR. JACOBS:  Your Honor, I will take it on.
21    Emily Evans will pick up on some of the other aspects of it.
22                   Let's break it down.  The question of Mr.
23    Scheve's access to secret information, this is one of the
24    evolutions of the issue of our manufacturing documents that
25    were so sensitive and you ordered us to produce based on

1    representations from Elan that they could live with more

2    limited access to these documents.  So they proposed three

3    attorneys having access to these documents on the call with

4    you.  They did that twice, it's in the transcript twice.

5         Then when it came time to negotiate the interim

6    protective order, they had asked for more, and we agreed on

7    five attorneys having access to these materials.  But they

8    never made Mr. Scheve one of those five.

9         So we just reached our limit on this, Your

10   Honor.  We could not agree to make it six when we were

11   already so flexible.

12        That is the issue of Mr. Scheve's access.

13        We had a work-around for the deposition that we

14   thought would work.  It was a work-around in which Mr.

15   Scheve would do the deposition on all but the portion that

16   related to secret information, and then somebody on the list

17   of five would handle that portion.  A departure from the

18   usual rule on one attorney taking a deposition, but we

19   thought that was what would work.  And we had other

20   work-arounds to deal with the restriction on access to that

21   material.  That was our counterproposal.  We think it is

22   reasonable on that question.

23        THE COURT:  Okay.  Mr. Fehlner.

24        MR. FEHLNER:  Thank you, Your Honor.

25        With respect to three attorneys-five attorneys,

1   we had offered to have three attorneys review the material

2   back in March.  By the time we got access to these

3   materials, it was the middle of June and we were approaching

4   the end of the discovery period, and consequently, having

5   three attorneys with access simply wouldn't have done.  Even

6   at that time we wanted to have attorneys to have access who

7   would be in a position to undertake review of the documents,

8   but I would add that the documents are not conveniently

9   located.

10          They were not produced to us for review nor were

11  we allowed to inspect them.  Instead, they have been posted

12  on a secure website, which is incredibly inconvenient.  But

13  nevertheless, we understood their concern and agreed to this

14  interim provision.

15          Your Honor, we are not aware of any basis for

16  restricting counsel from a firm where there is no sort of

17  conflict of interest or other basis for walling somebody

18  off, and that's not the case here.  In particular, we are

19  surprised that defendants believe that we would not want our

20  lead trial counsel to be able to review and have access to

21  the documents his more junior attorneys have identified as

22  relevant.

23          THE COURT:  The only basis that I could imagine,

24  one of the bases, apparently, was agreement, in responding

25  to your observation, Mr. Fehlner, that you know of no basis

1    for walling off.  And you may be right about that.  But it

2    sounds like there was agreement as to number.  Having said

3    that, I want to get Mr. Jacobs to respond to your point

4    regarding Mr. Scheve -- who is lead, as I understand it.  Is

5    that correct, Mr. Fehlner?

6              MR. FEHLNER:  That is correct, Your Honor.

7              THE COURT:  -- perhaps substituting him in lieu

8    of one of the more junior counsel.  Maybe that is a possible

9    suggestion.  I cannot imagine that we are on this call

10    simply because there is a concern about the number.

11              Mr. Jacobs.

12              MR. JACOBS:  It is a number to some degree, Your

13    Honor, in the sense that this is another lawyer in another

14    location in another firm.  Our concern from the beginning

15    has been the proliferation of access --

16              THE COURT:  Understood.

17              MR. JACOBS:  -- to these materials.  To review

18    the bidding on this, we told you --

19              THE COURT:  Please, don't review the bidding.

20              MR. JACOBS:  So I think that we do have a

21    concern about number and we have a concern about this

22    constant sort of rationing out.

23              THE COURT:  What about Mr. Scheve's status as

24    lead trial counsel?

25              MR. JACOBS:  I don't think that changes

1    anything, Your Honor.  Their proposal was three, then five,

2    and they didn't say five plus lead trial counsel.

3              THE COURT:  Mr. Fehlner, are you prepared to

4    substitute someone, to move one off your list and put Mr.

5    Scheve on?

6              MR. FEHLNER:  Your Honor, indeed, we made that

7    proposal, and the defendants rejected it.

8              THE COURT:  Why would you reject that, Mr.

9    Jacobs, if the concern is proliferation?

10             MR. JACOBS:  Because the people have already

11   been involved.  They already have access.  They already have

12   the materials, Your Honor.

13             THE COURT:  Counsel, I am not going to play this

14   game.  Mr. Scheve is to have access to the materials in

15   order that he can be permitted to conduct a meaningful

16   deposition.  So that is an order of this Court.  Is that

17   clear?

18             MR. JACOBS:  Yes, Your Honor, it is an order.

19             MS. GLOVER:  Your Honor --

20             THE COURT:  I just want to make sure so we don't

21   have to visit this again.  That is the end of the discussion

22   on that.  Who was that that was just attempting to speak?

23             MS. GLOVER:  Your Honor, Linda Glover for Elan

24   as well.

25             One of the other issues that we face is that

1    Abraxis has refused to provide us with any hard-copy

2    document of the material that is posted on the website.  As

3    Your Honor may know, it's pretty difficult to prepare for a

4    deposition without hard-copy documents.  We have asked for

5    one hard-copy document to be provided to us in advance of

6    the depositions.  And they have countered with one hard-copy

7    document to be provided at the deposition site.  We would

8    like prior access.

9            THE COURT:  Is that request unreasonable in your

10   view, Mr. Jacobs?

11           MR. JACOBS:  Your Honor, yes, it is.  Our

12   counterproposal is reasonable, Your Honor.  They can have

13   access electronically until they actually show up.  There is

14   no reason they can't have electronic access.

15           THE COURT:  What is the difficulty, Ms. Glover?

16   I do in a sense commiserate, but this is in the abstract,

17   with your observation about reading on a computer screen.  I

18   don't know the nature of the documents, the extent in terms

19   of volume and quality of presentation, those kinds of

20   things.

21           Maybe it would be helpful for me to understand

22   that.

23           MS. GLOVER:  Right.  For one thing, Your Honor,

24   some of the documents on the website are not fully visible.

25   So we were having difficulty with that.  We believe we have

1    corresponded with Abraxis about that.  That is one of the

2    issues.

3              Also, as you might understand, you know, it's

4    helpful to, in preparing for deposition, to have the

5    document in front of you so you can highlight those portions

6    about which you want to ask questions so you are not

7    delaying the deposition or badgering the witness while you

8    look for it.

9              THE COURT:  Right.  What is your proposal,

10   counsel?  Have you discussed -- this is addressed to you,

11   Ms. Glover and Mr. Jacobs, have you discussed -- let me ask

12   you, Ms. Glover:  Have you discussed or offered a solution

13   to address the concern that I suspect is inherent in the

14   objection to providing hard copy at least not until you

15   arrive?  Have you proposed something?

16             MS. GLOVER:  We had proposed they send us one

17   hard-copy document that would be in the possession of one

18   attorney and that we would make copies just for that

19   deposition, and that immediately after the deposition any

20   documents that were not offered as exhibits would be

21   destroyed.

22             THE COURT:  Mr. Jacobs, the representations of

23   your fellow attorneys who are officers of this Court are

24   insufficient in this regard?

25             MR. JACOBS:  We have been trying to do

1    everything we can to, on the one hand, protect our client's

2    most sensitive information, and, on the other hand, make it

3    possible for them to proceed.

4              On the access to the documents, for example,

5    that Ms. Glover complained about, we have confirmed that

6    access is available, and it must be a technical issue on

7    their side.

8              THE COURT:  Ms. Glover's point resonates with me

9    just in terms of how human beings work and lawyers work in

10   preparing for depositions in order to effectively engage the

11   deponent.  I am sure you will agree that it is much easier

12   and more efficient for a lawyer to have available a paper

13   document so that they can work, if need be, from that

14   document.

15             MR. JACOBS:  What we have tried to do, Your

16   Honor, is ask the question, if we were on the other side

17   could we live with this.  Not would we be happy, not would

18   it be convenient.

19             THE COURT:  Let me interrupt again, because

20   quite frankly, Mr. Jacobs, I think it is your client's, what

21   I am going to -- I am trying to think of the words --

22   characterize as I think being overly concerned.  I

23   understand a reasonable level of concern about one's

24   proprietary information.  But in this instance, this tail is

25   not going to wag this dog, if you will pardon the

1    colloquialism.  There has been an effort to have exactly

2    that happen ever since you first raised this issue with the

3    Court in numerous previous discussions.  I have just had it

4    with it.

5            So provide a copy, one copy, so that they can

6    use it to prepare for this deposition.

7            MR. JACOBS:  We understand your order, Your

8    Honor.

9            THE COURT:  Anything else?

10           MR. FEHLNER:  Yes, Your Honor.  Paul Fehlner

11   again for Elan.

12           Your Honor, I mentioned earlier when I was

13   talking that the notebooks that we reviewed after requesting

14   that review from Abraxis on location and identified the

15   portions of notebooks that we would like copied and produced

16   have either been produced in redacted form or in some cases

17   into that website where they are accessible only to the

18   limited number of individual attorneys.

19           I would add that a number of pages that have

20   been produced into that restricted website clearly have

21   nothing to do with secret manufacturing processes.

22   Consequently, we are hamstrung again in our ability because

23   of the location of these documents.

24           More importantly, Your Honor, we have reviewed

25   these documents and identified pages as being relevant, and

1    the defendants have nevertheless produced them to us with

2    redactions.  Now, with one exception, that is the notebooks

3    of Dr. Neil Desai, where there may have been a small amount

4    of privileged information, we did not see anything that

5    struck us as privileged.  We understand the rules.  We

6    aren't trying to assert a waiver or anything like that, Your

7    Honor, because we appreciated the opportunity to look at the

8    notebooks.  But we are really amazed that after seeing the

9    notebooks they are still redacted.

10           We would ask for unredacted documents in order

11   to prepare for these depositions.

12           THE COURT:  Mr. Jacobs.

13           MR. JACOBS:  I will turn this over to Ms. Evans.

14           THE COURT:  Ms. Evans.

15           MS. EVANS:  Yes, Your Honor.  I have people at

16   the office right now re-reviewing all the redactions to

17   confirm that they are in fact due to attorney-client

18   privilege, Your Honor.  We will promptly produce anything

19   that was over-redacted.  We are also checking right now for

20   things that -- and will produce in restricted confidential

21   version anything that doesn't have the secret manufacturing

22   information.

23           I should say that one reason Mr. Fehlner is

24   seeing a lot of pages that don't have it is we produced

25   entire documents that have been previously redacted so they

1      would see the secret information in context, for example, in

2      the FDA documents.  So they are produced in redacted,

3      confidential form, then the full version in secret form

4      online.  We thought that would be helpful to them.

5                      THE COURT:  Counsel?

6                      MR. FEHLNER:  Your Honor, I understand Ms.

7      Evans' point on the comparison of the manufacturing process

8      redactions.  The issue that I am really speaking to here,

9      sir, is the notebooks.  First of all, this is a matter -- of

10     course, laboratory notebooks are not usually regarded as

11     significant repositories of privileged information.

12                     THE COURT:  Point taken.

13                     MR. FEHLNER:  And then we looked at these

14     notebooks, Your Honor.  We suspected that perhaps they were

15     redacting from the perspective of relevance.  But we had the

16     opportunity to look at them.  We identified the material

17     that on our review was relevant and responsive.  Yet it has

18     not been provided to us.  I would just add, we did this at

19     our expense, and it was no small dedication of time and our

20     client's money to get this done.

21                     THE COURT:  How would you characterize the

22     extent of the redactions?

23                     MR. FEHLNER:  Your Honor, from one review in Los

24     Angeles, we identified 39 separate either notebooks or

25     segments of notebooks.  Some designations would be multiple

1    pages or sections of pages from the same notebook.  We asked

2    for 39 let's call them sub-documents.  Your Honor, of those

3    39, only eight of them were produced to us in the form in

4    which we expected to receive them.  That is all the pages

5    that we marked without any redactions.  The other 31 were

6    redacted partially and in many cases completely.  We have,

7    Your Honor, notebooks that have the cover page, so we know

8    they have been provided to us, but we don't have the

9    information from the notebooks.

10            In addition, some stuff they gave us was

11   unidentifiable.

12            So we have, in some cases, requested material

13   from notebooks and have nothing to show for it.  It's quite

14   possible that some of the redactions that were essentially

15   blank pages when they got to us were from those notebooks,

16   but we would have no way to correlate that.

17            In any event, Your Honor, it just seemed absurd,

18   to say the least.

19            THE COURT:  Ms. Evans and Mr. Jacobs, I am going

20   to --

21            MS. EVANS:  Your Honor, please may I address

22   this?

23            THE COURT:  Go ahead.

24            MS. EVANS:  Thank you.

25            We just got the letter from Mr. Fehlner listing

1    all the documents that he thinks he didn't have.  I have had

2    people working on it this morning checking it.  He is just

3    wrong, Your Honor.  He needs to check the production we gave

4    him.  Of the notebooks in his letter, he has every single

5    one.

6              I don't know what the problem is.  We produced

7    the cover pages.  I had my people check.  They confirmed

8    they have all the pages.  There is only one notebook that we

9    are still looking into all the pages that were produced.

10   Every single other one that he has mentioned they have.

11   It's just people haven't looked carefully enough.

12              THE COURT:  That is a different point.

13              Mr. Fehlner.

14              MR. FEHLNER:  Your Honor, we looked very

15   carefully.  I haven't heard this particular issue.  Your

16   Honor, I notified Dr. Evans Friday afternoon that they may

17   see substantial redactions from the notice that were

18   provided to us.  And she replied there were redactions for

19   privilege.  This is the first we heard we actually got

20   everything we requested.  We did go through the effort of

21   categorically looking at -- we prepared a log when we were

22   onsite.  We did not take notes, per our agreement with the

23   defendants, about the documents we were reviewing, but we

24   had a log of all the pages that we requested.

25              I will sit down with the attorney who reviewed

1    this production and compared it to our log and make sure he

2    shows me all these redactions.

3              But, Your Honor, this is a very capable and

4    qualified attorney.  I have no doubt that he knows what he

5    is talking about.

6              Ms. Evans' point is taken.  We will confirm that

7    in fact they did redact substantial portions of the

8    notebooks that they produced.

9              MS. EVANS:  We will provide a letter with the

10   Bates numbers of all the pages (inaudible) today.  We are

11   putting final touches on that.  We have been working on

12   that.

13             THE COURT:  Okay.  So then that leaves one

14   notebook that you are reviewing.

15             MS. EVANS:  I understand there is one notebook

16   that we are still looking for the Bates numbers of all the

17   pages of.  If we haven't produced that, we will get that out

18   right away.

19             THE COURT:  All right.  I will leave the rest of

20   this, the notebook issue to counsel then.  It sounds like

21   there is not disagreement.  There may be, at least I will

22   say this, it seems that Abraxis agrees that, it says it has

23   already produced the pages in question, Mr. Fehlner, and if

24   it hasn't, I accept counsel at her word that she is going to

25   go back and take another look.

1              MR. JACOBS:  Your Honor, we are in principled

2       agreement.  That is, our only intent was to redact for

3       privilege.  If there were over-redactions, we will fix it.

4              THE COURT:  Okay.

5              MR. JACOBS:  Do it right away.

6              THE COURT:  That may be in the eye of the

7       beholder, the fix, that is, I understand that.  But I want

8       to keep everyone mindful of the Court's concern here, so

9       that there not be over-redaction.  I have tried to make

10      myself clear on that point, the underlying point.

11             MR. JACOBS:  We hear Your Honor.

12             THE COURT:  All right.  Anything else from

13      either party?

14             MS. GLOVER:  Your Honor, just one point I would

15      like to make.  That is that the discovery deadline is July

16      30th, which is right around the corner.  Elan has submitted

17      a motion to the Court seeking an extension of the deadline,

18      for reasons that should be obvious.

19             THE COURT:  That's probably exactly the way that

20      I don't want to have that kind of issue raised with me,

21      because it's a motion.  It's not going to be attended as

22      quickly as I have tried to share my preference.  My

23      requirement is that issues of this nature be raised in the

24      same manner as you raise discovery dispute matters, so we

25      can attend them quickly.  A motion is not going to be

 1    addressed quickly, as quickly as a TC.  Go ahead.

 2                  MR. DAY:  Your Honor, the reason that we did it

 3    in the form of a motion is that I wasn't sure how Your Honor

 4    would prefer.  And I called and asked a member of your

 5    staff, and she told me to do it in the form of a motion.

 6                  THE COURT:  That is understandable.  But that's

 7    why I try -- I guess maybe I have to make everything patent

 8    in the scheduling order, because I know that I said words

 9    more or less to the effect that matters that involve this

10    type of thing need to be raised orally through TC, through

11    TC request, with the Court.  Otherwise, we are going to get

12    bogged down.

13                  A motion requires -- or at least there is an

14    entitlement to a response.  I am not going to act on a

15    motion, unless there is a stipulation that involves

16    agreement and an explanation for the agreement, as quickly

17    as I can react to a request for a TC.  So I understand why

18    my staff would have told you exactly what they told you.

19                  Are counsel in concurrence that you need

20    additional time?

21                  MS. GLOVER:  No, Your Honor.  Abraxis did file a

22    response, and they are opposed to our motion.

23                  THE COURT:  How much additional time is being

24    requested?

25                  MS. GLOVER:  I believe we asked until September

1    30th, Your Honor.

2              THE COURT:  What is the reason for that?

3              MS. GLOVER:  Well, there are three reasons, Your

4    Honor.  The first being the very late production of these

5    laboratory notebooks, which in a pharmaceutical patent case

6    go to the very heart of the issues between the parties.

7              The second was that Abraxis only recently

8    produced 260,000 pages of responsive documents.  Most of

9    these were responsive to the requests that we issued or

10   propounded in November of 2006.  And, Your Honor, most of

11   these documents were produced in response to your order of

12   May 3rd.

13             Finally, while I am recalling there was a third

14   reason, now I can't remember exactly what it was.  But those

15   were certainly two of the reasons that we set forth in our

16   motion.

17             THE COURT:  Perhaps you will get the third

18   reason when counsel responds.

19             MS. GLOVER:  I hope so, Your Honor.

20             THE COURT:  Counsel for Abraxis, who is going to

21   do this?

22             MR. JACOBS:  I will do this a bit, Your Honor,

23   on some of the scheduling issues, and I will turn it over to

24   Ms. Evans.

25             Our response, Your Honor, is to revisit how we

1    got to where we did, which is the following.

2         We had a scheduling conference with Your Honor

3    in which you set out the case schedule.  We actually asked

4    for a longer period.  Elan objected and asked for a shorter

5    period.  In that discussion, I was representing Abraxis,

6    Your Honor, and I pointed out that the only way this case

7    prolongs is if somehow we were, to mix the merits a little

8    bit, Your Honor, given the fact that Abraxane is an

9    amorphous drug, in order for them to allege a crystalline

10   claim they were going to be chasing a lot of rabbits and

11   therefore the discovery period would take longer.

12        Elan said, no, we want a short period.

13        You entered an order with a short period.  And

14   there is this little exchange in the transcript in which I

15   observed that Your Honor likes to keep to the deadlines you

16   set and that we would do everything we could to meet

17   whatever deadline you set, which is what we have done.

18        The history on timing is hard to capture in this

19   oral context, Your Honor.  We have largely been in step with

20   Elan.  So where Elan's electronic production has been

21   forthcoming, our electronic production has been forthcoming.

22   Where their notebooks have been produced, our notebooks have

23   been produced.  More recently, we have been ahead of Elan.

24   We have said, look, the deadline is coming, here are the

25   depositions, here are dates that people are available, even

1    before you have given us dates on your end, so that we could

2    meet the discovery cutoff.  And that's what we have been

3    trying very, very hard to do.

4              We have a large team of people on the case.  We

5    have hired additional people to do the document production.

6    It's costing our client about a million dollars a month.

7    And we would like to cut it off with the end of the

8    discovery cutoff.

9              Might there be some trailing issues we have to

10   clean up a little bit thereafter?  There usually are after a

11   discovery cutoff.  But we would like Your Honor to enforce

12   the deadline that Elan asked for and that you entered.

13             THE COURT:  Mr. Jacobs, could you address the

14   contention that at least in part, if not completely, the

15   reason, the impetus for the request is really Abraxis's

16   recent productions or late productions.

17             MR. JACOBS:  I think I will turn over, on the

18   exact mechanics of what was done, I better turn it over to

19   Ms. Evans.

20             MS. EVANS:  As to the notebooks, Your Honor, we

21   produced all our notebooks for inspection to settle all the

22   disputes with them about what we have produced and what we

23   considered responsive.  And after the inspection, Elan

24   selected a total of less than three boxes worth of

25   notebooks.  Many of them are overlapping with what we had

 1    already produced.  Some of them are duplicative.  It is not

 2    very voluminous.  It shouldn't delay anything.

 3                    That is the notebooks, Your Honor.

 4                    As to the 260,000 pages, Your Honor, those were

 5    entirely e-documents, those were produced six weeks before

 6    the discovery cutoff.  And we have gotten now 55,000

 7    documents from Elan last week, 70,000 documents from Elan

 8    the week before, much after that.  We are having trouble

 9    digesting that, too.  But we are very serious about this

10    discovery cutoff, and we are going to suck it in and deal

11    with it and take our depositions and finish by the discovery

12    cutoff.

13                    In terms of the 260,000, Your Honor, the

14    e-documents, we had talked to Elan previously about having

15    earlier cutoffs for production of e-documents.  Elan didn't

16    want to do it.  As it turned out, we produced ours weeks

17    before they produced theirs.

18                    I don't think this is anything that is unusual

19    in a big patent case.  I don't think it is anything that

20    should delay living with the schedule that Your Honor set.

21                    THE COURT:  Counsel for Elan.

22                    MS. GLOVER:  Your Honor, first, if I may speak

23    to something that counsel for Abraxis said, which is that

24    Elan only recently produced its notebooks.  In fact, Elan

25    produced all of its laboratory notebooks by March 15.  Those

1    notebooks again, Your Honor, go to the heart of the issues

2    in this case.  Abraxis, however, produced its laboratory

3    notebooks less than 30 days before the cutoff of discovery.

4    Abraxis produced its manufacturing information to us less

5    than 30 days before the cutoff of discovery.

6              This is information that we need time to digest,

7    in addition to the 260,000 pages of documents, that we need

8    time to digest and analyze before we can even say, all

9    right, these are the people that we need to depose.

10             THE COURT:  Were the e-mails, I guess that is

11   the subject of the 260,000 pages, were they produced six

12   weeks before?

13             MS. GLOVER:  The e-mails were produced, the

14   260,000 pages were produced on June 14th, 2007.  That is

15   less than 30 business days before the currently scheduled

16   fact discovery deadline.  And, Your Honor, if I can make a

17   point --

18             THE COURT:  I am sorry.  Hold on just a second.

19   They were produced when?

20             MS. GLOVER:  On June 14.

21             THE COURT:  The cutoff is the 30th.

22             MS. GLOVER:  Yes, sir.

23             THE COURT:  That is more than a month.

24             MS. GLOVER:  Yes.  Your Honor, that constitutes

25   50 percent, over 50 percent of Abraxis's production.

1    Whereas our production of late is minimal in comparison.

2              THE COURT:  What is the subject matter of these

3    e-mails?  What is this electronic production?

4              MS. EVANS:  Your Honor, were you addressing me?

5              THE COURT:  Either one of you.

6              MS. EVANS:  I will take it, I guess.

7         Mostly it's drafts of clinical trials, drafts of

8    articles, lots of journal articles, advertising, you know,

9    materials, communications, safety communications with

10   doctors.  Just your general electronic document production.

11   The parties had agreed on electronic custodians.  And we

12   searched their files and produced -- it is very repetitive,

13   Your Honor.  A lot of it is extremely repetitive, having

14   reviewed some of it myself.  A lot of it is not -- we used

15   the search terms that we had agreed on with the other side.

16   But much of it is not particularly significant.

17             Also, Your Honor, I do want to point out that we

18   did produce what we consider to be the relevant lab

19   notebooks back in March and the manufacturing information

20   except as to the precise details back in March.  I wanted to

21   clarify that as well.

22             THE COURT:  Ms. Glover, do you disagree with Mr.

23   Jacobs's earlier observation that the Court acceded to a

24   schedule that was advanced by Elan?

25             MS. GLOVER:  Absolutely not, Your Honor.  We did

1    advocate for that schedule.  But, quite frankly, we thought

2    that both parties would produce in accordance with the

3    Federal Rules of Civil Procedure.  Instead, we have faced

4    many battles, as you know, in order to receive responsive

5    documents.  And that has been problematic for us.  To

6    receive everything at the tail-end of discovery has created

7    substantial difficulties for us.

8                    THE COURT:  The main thing that I have heard

9    today that might be somewhat concerning is the production,

10   and I am not going to characterize it as late production or

11   production that was made outside of the Federal Rules.  I

12   don't know.  Mr. Jacobs, I think, correctly points out that

13   it's just too difficult to reconstruct orally the timing of

14   things here.  My main concern is that the plaintiff have an

15   adequate opportunity -- I will tell you right now I am not

16   going to give you until the end of September to review the

17   electronic production.  So you need to give me a better

18   sense of what it's going to take to complete that

19   enterprise.

20                    MR. JACOBS:  Your Honor, if I might just refocus

21   slightly.  I think if I were in their shoes -- the

22   electronic production, we both have been basically on the

23   same schedule.  So I think Elan as the plaintiff really had

24   a responsibility to press the whole document production

25   issue forward on a more aggressive pace themselves and we

1    would have kept pace with them.  We were largely tracking

2    them.

3              On the notebook issue, I think there is a more

4    substantive point there.  There was one aspect of it that we

5    have litigated very aggressively, as Your Honor has noted,

6    because it's been such a big concern of our clients.  But

7    the total volume is still pretty small.  That's why we have

8    not felt we were, if you will, jamming, quote-unquote, by

9    insisting that the discovery schedule be maintained.  It is

10   just not that much material.

11             Is it dense scientifically?  Probably.  Does it

12   require analysis?  Almost certainly.  But we are doing the

13   same thing on our end as we keep track with them in

14   anticipation of the depositions that are coming up, we are

15   doing our preparation.

16             Elan is the plaintiff here.  They brought this

17   lawsuit.  We have told you along the way why we don't think

18   it has any merit.  We will get to that.  At the very least,

19   they should have moved the case along at a pace consistent

20   with their own discovery schedule.  It is just costing us a

21   fortune.

22             THE COURT:  Elan.

23             MS. GLOVER:  Your Honor, in response to that I

24   would remind the Court, and I am sure it's fully aware, that

25   we have sought -- this is our fourth discovery

1    teleconference before Your Honor.  And we had sought another

2    one in between the May 3 one and today.  We have attempted

3    to push the issues as much as we possibly can.  We know --

4              THE COURT:  I understand that.  But those issues

5    have had to do with the whole issue of proprietary

6    information -- not completely.  I would like to have you

7    react to Mr. Jacobs's statement or statements that both of

8    you have been tracking one another in the production of

9    certain of the documents, I think specifically he is talking

10    about the e-production.

11              MS. GLOVER:  I would agree that we have probably

12    tracked each other to an extent on the e-production.

13    However, I would not agree with him, and I would strongly

14    disagree with him, on the laboratory notebooks or the more

15    technical information.

16              THE COURT:  But both of your opponents make the

17    observation that in terms of the laboratory notebooks we are

18    not talking about that much information.

19              MS. GLOVER:  It is scientifically dense, Your

20    Honor.  It takes quite a bit of time to analyze it.  In

21    addition to which I would disagree with Dr. Evans's

22    characterization of the electronic data as being, you know,

23    as she described it, sort of peripheral information.  That

24    is not the case that we are finding.  We are finding

25    presentations.  We are finding technical data that has been

1    transferred by e-mail.  And it takes quite a bit of time to

2    decipher that information, to put it in perspective, analyze

3    it and prepare for depositions, go forward with depositions

4    on it.

5              MR. FEHLNER:  Your Honor, if I might add one

6    thing.  We believe the notebooks have been redacted.  We

7    will go back and check that.  Abraxis does not believe they

8    have redacted notebooks.  However, it leaves us in a very

9    tenuous position to push forward with discovery, scheduling

10   depositions and deposing witnesses with the gnawing

11   suspicion in the back of our minds that something is missing

12   and it might be important.  That has been a factor.

13             Dr. Evans pointed out, and Mr. Jacobs, also,

14   that they have set up the proposed schedules for certain

15   deponents and asked us to identify witnesses and times to

16   depose them.  And until we have been confident that we have

17   the documents that are important -- and this is primarily

18   laboratory notebooks -- we have been reluctant to use up our

19   depositions.  So that has clearly been a factor here and

20   continues to be from our perspective.

21             THE COURT:  That shouldn't continue to be a

22   factor going forward.  I think I have been heard on that

23   point by Abraxis.  I cannot imagine that would continue to

24   be an issue.

25             MR. FEHLNER:  We agree, Your Honor.  It is just

1    that it is July 16th.  So some enlargement of time would be

2    appropriate in view of the fact that we have simply not had

3    confidence that the full production of the requested

4    documents has been made by the defendants.

5                    THE COURT:  So making the request and putting a

6    more realistic proposal before the Court, Mr. Fehlner, Ms.

7    Glover, what would you like to ask for?  Because I am not

8    giving you till the end of September.

9                    MS. GLOVER:  Well, Your Honor, would 45 days be

10   acceptable to the Court?

11                   THE COURT:  Mr. Jacobs, from your perspective,

12   what would be a reasonable amount of time?  I know your

13   immediate answer would be none.

14                   MR. JACOBS:  Right.

15                   THE COURT:  In the spirit of compromise here --

16   and I do understand that this is costing dollars, real

17   dollars -- what would you counter-propose?

18                   MR. JACOBS:  Let me tell you my answer and give

19   you two sentences why.  I think if they had two weeks, we

20   could get this all done.  The reason I say two weeks is we

21   actually have a schedule lined up --

22                   THE COURT:  You have read my mind.  That's what

23   I am going to order at this stage of this discussion.

24                   I will give you an additional two weeks, Elan.

25                   MS. GLOVER:  Thank you, Your Honor.

1          MR. DAY:  Your Honor, one last thing.  In the

2     interest of completeness here, the third point that was

3     raised in our motion was a limitation placed by Abraxis on

4     our experts' access to the documents that are posted on the

5     secure website.

6          THE COURT:  That is a new substantive issue.  I

7     didn't understand that to be --

8          MR. DAY:  That was the third issue Ms. Glover

9     couldn't remember, Your Honor.

10          THE COURT:  That had to do with the request for

11     additional time.  That is not going to impact my decision,

12     Mr. Day.

13          MR. DAY:  I wanted to get it on the table.

14          THE COURT:  You have got it.

15          MR. JACOBS:  Your Honor, Mr. Day's comments

16     indicate properly that there are probably a half-dozen, six

17     to nine other outstanding issues between the companies on

18     various discovery issues.  We are in various stages of

19     trying to work those out or having reached impasse.  I

20     understood your first comment about reference to the

21     Magistrate Judge to be that we should await that

22     appointment.  I don't think any of us want to be cross-wise

23     with Your Honor's procedure about raising issues.

24          THE COURT:  You are not going to have access to

25     anyone until the Magistrate Judge is installed, and the

1    installation date, that is the date that he will be sworn

2    in, is August the 6th.  And I shouldn't think that you would

3    need to have access, given the fact that we have met today,

4    to him before that time.

5              UNIDENTIFIED SPEAKER:  Your Honor, if I could

6    interpose.  Mr. Day's issue, though, about the expert access

7    to the secret Abraxis manufacturing process does pose an

8    issue for us in preparing depositions in that -- first of

9    all, we are having trouble with Abraxis in designating our

10   expert to review these --

11             THE COURT:  Isn't there a confidentiality

12   agreement in place in this case?

13             UNIDENTIFIED SPEAKER:  Your Honor, they are not

14   satisfied with the level of protection that the

15   confidentiality agreement -- sorry, the protective order

16   provides.  We have been going back and forth on an amended

17   protective order that includes a third designation, the

18   secret manufacturing process information.  But their

19   intention is to limit our experts to reviewing that

20   information at Morrison & Foerster offices in the United

21   States, not having hard copies of it, and if we care to

22   discuss it with them, it would have to be in Morrison &

23   Foerster's offices.

24             I appreciate that they will promise that we will

25   have a secure room and nobody will be listening.  But it's

 1    certainly an interesting, very convenient proposal on --

 2              THE COURT:  Mr. Jacobs and Ms. Evans, the spirit

 3    of my comments has to begin to take hold a little bit with

 4    your client.  I perceive this to be a client issue, not an

 5    attorney issue.  I am going to leave it there.  But in terms

 6    of these upcoming discussions, I want to offer that bit of

 7    guidance.

 8              Is that too obtuse or vague?

 9              MR. JACOBS:  No, Your Honor.  We appreciate

10    that.

11              THE COURT:  I guess, just to put a finer point

12    on it, I should hope that Judge Stark wouldn't have to

13    address this particular issue that has been previewed by

14    Elan.  Okay?

15              MR. JACOBS:  Understood, Your Honor.

16              THE COURT:  Anything else?

17              UNIDENTIFIED SPEAKER:  No.  Thank you, Your

18    Honor.

19              MR. JACOBS:  Your Honor, one tail end.  I am

20    getting kind of frantic e-mails about one aspect of the

21    ruling on the manufacturing documents in the deposition

22    preparation and how those will be handled, which is that we

23    would like to get those documents back after the deposition

24    or get a certification that they have been destroyed.  We

25    didn't want multiple copies floating around.

```
 1              THE COURT:  Seems reasonable.  Is there any
 2     difficulty with that, Elan?
 3              MS. GLOVER:  Your Honor, are we allowed to
 4     maintain one copy, but any copies we make for deposition
 5     would be destroyed and at the end of the litigation we would
 6     return our one copy?
 7              THE COURT:  Counsel, I will leave that for you
 8     all to resolve.  Take care.
 9              MR. JACOBS:  Your Honor, we will see you on
10     Tuesday for the claim construction hearing.
11              THE COURT:  Next Tuesday, you mean?
12              MR. JACOBS:  Yes.
13              THE COURT:  I was confusing that with a tutorial
14     I am about to have that I don't know why I agreed to in the
15     first place.
16              MR. JACOBS:  We will be concise, Your Honor.
17              THE COURT:  Thank you.  Take care, counsel.
18              (Telephone conference concluded at 4:47 p.m.)
19                         -  -  -
20     Reporter:  Kevin Maurer
21
22
23
24
25
```

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELAN PHARMA<br>INTERNATIONAL LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>ABRAXIS BIOSCIENCE, INC.,<br><br>Defendant. | )<br>)<br>)  C.A. No. 06-438-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF ELAN PHARMA INTERNATIONAL LIMITED'S NOTICE OF RULE 30(b)(6) DEPOSITION OF ABRAXIS BIOSCIENCE, INC.

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(6), Elan Pharma International Limited ("Elan") will take the continuing deposition by oral testimony of Defendant Abraxis Bioscience, Inc. ("Abraxis"), through one or more of its officers, directors, managing agents, or other persons consenting to testify on the matters listed on Attachment A.

The deposition shall take place at the offices of Esquire Deposition Services, 6222 Wilshire Blvd, 2nd FL, Los Angeles, California 90048 on August 9, 2007 at 9:00 a.m. PST, or at such other place, date and time mutually agreed upon or ordered by the Court, before a notary public or other officer authorized to administer oaths. The testimony shall be recorded by stenographic and/or video graphic means and shall continue from day to day until completed.

At least seven days before the deposition, Abraxis is requested to produce to undersigned counsel a list of proposed witnesses for each topic identified in Attachment A.

ASHBY & GEDDES

*/s/ Steven J. Balick*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Elan Pharma International Limited*

*Of Counsel:*

Stephen Scheve
Linda M. Glover
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77042-4995
Telephone: (713) 229-1659

Paul F. Fehlner
Lisa Chiarini
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112-4498
Telephone: (212) 408-2527

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
Telephone: (215) 801-3625

Dated: August 1, 2007
182824.1

# ATTACHMENT A

## DEFINITIONS

1. As used herein, "Abraxis," "Abraxis Bioscience," "Abraxis," "you," or "your" shall refer to Defendant Abraxis Bioscience, Inc., and any present or former parent, subsidiary, department, division, subdivision, branch, affiliate, predecessor, successors-in-interest, or other related company, any consultant, or representative of Abraxis Bioscience, Inc., and any other person acting on or purporting to act on its behalf.

2. As used herein, the terms "all," "any" or "each" shall be construed as any, all, and each inclusively.

3. "And" and "or" shall be construed as broadly as possible so as to bring within the scope of the definitions and document requests all matters which by any other construction would fall outside their scope.

4. "Including" shall be construed to mean "without any limitation."

5. The singular shall include the plural and the plural shall include the singular so as to bring within the scope of the definitions and interrogatories all matters which by any other construction would fall outside their scope.

6. The past tense shall include the present tense and the present tense shall include the past so as to make the request inclusive rather than exclusive.

7. "Elan's Patents" shall mean the patents identified in Elan's Original Complaint and any subsequent amendments thereto.

8. As used herein, the term "Abraxane®" shall mean the human serum albumin-bound paclitaxel product that is sold by Abraxis.

9. The term "your corporate organization" shall mean Abraxis Bioscience, Inc., and its affiliates and parent companies or organizations.

10. The term "nanoparticulate technology" shall refer to any method of creating particles of 1000 nanometers or less.

11. The term "nanoparticulate pharmaceutical composition" shall mean any pharmaceutical composition of 1000 nanometers or less.

# TOPICS

1. The method and/or procedure for gathering the data used to calculate and/or compute gross revenue, net revenue, cost of revenue, gross margin, selling, general, administrative and other expenses, income before income taxes, and net income on a monthly, quarterly, and annual basis or any other timeframe Abraxis regularly keeps records for its sales.

2. Abraxis's policies and practices for the negotiation of royalty or license agreements for the use of patented technology, including without limitation, the licensing of third-party technology for Abraxis's use and the licensing of Abraxis's technology to third parties.

3. Abraxis's license agreements and technology transfers including the terms and conditions of such license agreements or technology transfers, related to Abraxane®, entered into by Abraxis.

4. All facts concerning any royalty or license fees received or paid by Abraxis from July 2000 to the present pursuant to any patent license of nanoparticulate technology and/or nanoparticulate pharmaceutical compounds.

5. The total sales of Abraxane® by year from January 2005 to the present, including, but not limited to, how many units, vials, and/or packages of Abraxane® were sold each quarter since it was approved by the FDA

6. The price points for the sale of Abraxane® and the quantities of Abraxane® sold at such price points from January 20, 2005 to the present.

7. The cost of goods (Abraxane®) sold, including but not limited to Abraxis's research and development costs, production costs, distribution costs, and/or purchasing costs for Abraxane®.

8. Any analysis of Abraxis's domestic and/or foreign market share for Abraxane® from July 2000 to the present including future projections of same, further including but not limited to, the size of the markets and expected growth in the markets, prices in the markets, supply and demand in the markets, competition and expected future competition in the markets, and factors that might influence the markets.

9. Abraxis's pricing and pricing policies and strategy for the sale of Abraxane®.

10. Abraxis's strategies, expectations, and results for the marketing of Abraxane®.

11. The date upon and circumstances under which you first learned of the existence of Elan's Patents.

12. All facts concerning whether or not any infringement of Elan's Patents by Abraxis was willful.

13. All facts concerning Abraxis's decisions to offer and/or to continue to offer Abraxane® to customers after receiving notice of Elan's Patents, including the identification of the individuals involved in making the decision and the nature of their involvement.

14. All facts concerning any investigation performed by Abraxis prior to the first commercialization of Abraxane® for the purpose of determining whether any entity other than Abraxis held patents or other intellectual property rights that would preclude Abraxis from freely making, selling, or offering to sell Abraxane®.

15. Information and documents relied on or reviewed by the corporate representative(s) for purposes of becoming knowledgeable about the topics set forth in Attachment A.

# EXHIBIT D

**From:** Kruze, Diana B.
**Sent:** Tuesday, August 07, 2007 5:56 PM
**To:** 'Jeffrey.Sullivan@bakerbotts.com'
**Cc:** linda.glover@bakerbotts.com; PAUL.FEHLNER@bakerbotts.com; Steve.Scheve@bakerbotts.com
**Subject:** RE: Elan vs Abraxis/Elan's Rule 30(b)(6) Notice

Dear Jeffrey:

Thanks for your email. Abraxis disagrees with your interpretation of the Delaware local rules regarding depositions as well as the Federal Rules of Civil Procedure regarding the computation of time. Elan's claim that it may exclude weekends from the computation of the 7-day minimum notice period is flatly contradicted by Federal Rule of Civil Procedure 6(a), which explicitly applies to computing periods of time time prescribed not only by the Federal Rules themselves but also "by the local rules of any district court." Fed. R. Civ. P. 6(a). As the district court in Delaware is as bound by this rule as any other federal district court, Abraxis does not believe that the 7-day minimum notice requirement can be treated any differently.

Moreover, 7 days is the *minimum* amount of time that can be considered "reasonable notice" under Delaware Local Rule 30.2. Given that Elan's 30(b)(6) notice contains 21 separate topics on a variety of highly complex issues, Elan's disregard for even the bare minimum requirement is particularly inappropriate.

I also note that Elan has not addressed Abraxis's objections that the topics in Elan's notice are improper for a 30(b)(6) deposition, overly broad, and unduly burdensome.

Therefore, Abraxis stands by its position that it will not produce a witness in response to this 30(b)(6) notice and requests that Elan withdraw its notice.

You have not mentioned whether you are available tomorrow to meet and confer about these issues. Again, could you please let me know as soon as possible about your availability to meet and confer?

Best regards,

Diana Kruze

---

**From:** Jeffrey.Sullivan@bakerbotts.com [mailto:Jeffrey.Sullivan@bakerbotts.com]
**Sent:** Tuesday, August 07, 2007 4:41 PM
**To:** Kruze, Diana B.
**Cc:** linda.glover@bakerbotts.com; PAUL.FEHLNER@bakerbotts.com; Steve.Scheve@bakerbotts.com
**Subject:** Re: Elan vs Abraxis/Elan's Rule 30(b)(6) Notice

Dear Diana:

Consultation with local counsel confirms that under local rules and practice, the seven day notice period is consecutive and does not exclude weekends. This is an issue on which Abraxis would not prevail before a Delaware Judge -- our Notice was timely, and it was not appropriate for Abraxis to withhold its objections until we inquired today regarding your presentation of a witness.

Nonetheless, and in the interests of professional courtesy, we are willing to extend the date for this deposition to August 13 (at the same location). This both obviates your timing concern and addresses your other objections.

Fact discovery deadlines are set for a reason, and the fact that our timely deposition notice requires Abraxis to prepare and provide a witness on a plurality of appropriate topics likely to lead to admissible evidence is not, standing alone, permissible grounds for refusing to produce any witness at all before the fact discovery deadline.

If you so require, we willl re-notice the deposition for August 13, based on your refusal to produce a witness Thursday, but otherwise we ask you to take this as our formal notice that the deposition will proceed on the 13th.

If Abraxis refuses to provide any witness, and has not filed a well-founded application for protective order to date, we reserve all rights as to costs and fees, and will take this matter up with Magistrate Judge Stark.

Thank you and best regards.

JDS

----- Original Message -----
From: Kruze, Diana B. <DKruze@mofo.com>
To: Sullivan, Jeffrey D.
Cc: Glover, Linda; Fehlner, Paul F.; Scheve, Steve
Sent: Tue Aug 07 17:40:20 2007
Subject: Elan vs Abraxis/Elan's Rule 30(b)(6) Notice

Dear Jeffrey:

I write regarding Elan's Notice of Rule 30(b)(6) Deposition of Abraxis BioScience, Inc., served on August 1, 2007. Abraxis objects to this notice on several grounds and will not be providing a witness to testify on the topics in this notice.

First, Elan's deposition notice is untimely. Under the Delaware Local Rules, "reasonable notice" for the taking of a Rule 30(b)(6) deposition shall not be less than 7 days. D. Del. LR 30.2. Because the period of time prescribed in this rule is less than 11 days, the computation must exclude Saturdays and Sundays pursuant to the Federal Rules of Civil Procedure. Fed. R. Civ. P. 6(a). Accordingly, on August 1, Elan was not permitted to serve a notice of deposition for any date earlier than August 13.

Second, Elan's 30(b)(6) notice contains a large number of topics, several of which are extremely complex and would have required substantial time to prepare a witness to testify on behalf of Abraxis. Therefore, even if Elan had given the bare minimum notice required under the Local Rules, it would not have provided Abraxis with a reasonable amount of time in which to designate and prepare a corporate representative.

Third, most of the topics in Elan's notice are overly broad, unduly burdensome, or improper topics for a 30(b)(6) deposition. For example, Topic No. 12 is directed at "All facts concerning whether or not any infringement of Elan's Patents by Abraxis was willful." This topic seeks Abraxis's contentions regarding willful infringement and would require a witness to make legal conclusions as to willfulness. It is Abraxis's position that the use of a 30(b)(6) deposition to obtain a party's contentions is improper.

Many of Elan's other topics are overly broad and unduly burdensome. For example, Topic Nos. 1, 2, 7, 9, 10, and 14 would require Abraxis to prepare a witness to testify regarding complicated business, financial, strategic, sales, and accounting information without any reasonable date or time limitation.

For these reasons, among others, Abraxis asks that Elan withdraw this 30(b)(6) notice. If Elan is unwilling to do so, Abraxis will have no choice but to seek a protective order. Please let me know your availability tomorrow (in the morning if possible) to meet and confer on these issues.

Sincerely,

Diana Kruze

---

From: Jeffrey.Sullivan@bakerbotts.com [mailto:Jeffrey.Sullivan@bakerbotts.com]
Sent: Tuesday, August 07, 2007 2:19 PM
To: Kruze, Diana B.

Subject: Elan's Rule 30(b)(6) Notice

Diana:

Could you confirm that Abraxis will be producing one or more 30(b)(6) witnesses on damages issues this Thursday pursuant to our Notice? Can you supply names for Esquire to clear them?

Thank you and best regards.

JDS

Jeffrey D. Sullivan
Baker & Botts, L.L.P.
30 Rockefeller Plaza
44th Floor
New York, New York 10112
Tel.: (212) 408-2589
Fax: (212) 408-2501
jsullivan@bakerbotts.com

Be advised: This transmittal is confidential. It may be a protected attorney-client communication or may otherwise be legally privileged. If you are not the intended recipient or an agent of the same, you are hereby notified that you have received this transmittal in error. It is not for you. In this case, any review, dissemination, distribution, or copying of this transmittal is strictly prohibited. If you have received this communication in error, please notify us immediately by reply E-mail or by telephone (call collect at (212) 408-2660) and immediately delete this message and all its attachments.

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ÉLAN PHARMACEUTICAL )
INTERNATIONAL LIMITED )
                   )
             Plaintiff )     C. A. No. _____
                   )
     v. )
                   )    **JURY TRIAL DEMANDED**
ABRAXIS BIOSCIENCE, INC. )
                   )
            Defendant. )

## COMPLAINT

       Plaintiff Élan Pharmaceutical International Limited complains as follows

against Defendant Abraxis BioScience, Inc.

## THE PARTIES

    1.     Plaintiff Élan Pharmaceutical International Limited ("Élan") is a company

organized and existing under the laws of Ireland, having a business address at

Monksland, Athlone, Co. Westmeath, Ireland.

    2.     On information and belief, defendant Abraxis BioScience, Inc.

("Abraxis") is a corporation organized and existing under the laws of the State of

Delaware, with its principal place of business at 11777 San Vincente Boulevard, Suite

550, Los Angeles, CA 90049.

### JURISDICTION AND VENUE

3.      This is an action for patent infringement under the patent laws of the

United States, Title 35 of the United States Code. This Court has subject matter

jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

4.      On information and belief, defendant Abraxis resides in this Judicial

District, conducts business in this Judicial District, and has committed acts of patent

infringement in this Judicial District including, *inter alia*, making, using, offering for

sale, or selling an infringing product in this Judicial District.

5.      On information and belief, defendant Abraxis has knowingly and actively

contributed to infringement and/or has induced others to commit such acts of

infringement in this Judicial District.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and

1400(b).

### FACTUAL BACKGROUND

7.      Plaintiff Élan is the owner by assignment of all right, title, and interest in

and to United States Patent No. 5,399,363 ("the '363 patent") entitled "Surface Modified

Anticancer Particles", which duly and legally issued in the names of Gary G. Liversidge,

Elaine Liversidge, and Pramod P. Sarpotdar on March 21, 1995. A copy of the '363

patent is attached hereto as Exhibit A.

8.      Plaintiff Élan is the owner by assignment of all right, title, and interest in

and to United States Patent No. 5,834,025 ("the '025 patent") entitled "Reduction of

Intravenously Administered Nanoparticulate-Formulation-Induced Adverse Physiological

Reactions", which duly and legally issued in the names of Lawrence de Garavilla, Elaine

2

M. Liversidge, and Gary G. Liversidge on November 10, 1998. A copy of the '025 patent is attached hereto has Exhibit B.

9.    On information and belief, on March 29, 2005 the United States Food and Drug Administration ("FDA") approved the sale of Abraxane® in the United States for treatment of metastatic breast cancer.

10.    On information and belief, Abraxane® is a nanoparticle formulation of paclitaxel that is intravenously administered to patients for the treatment of breast cancer.

11.    On information and belief, Abraxane® is a product owned, manufactured, offered for sale, or sold by the defendant Abraxis within this Judicial District.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 5,399,363

12.    Élan realleges and incorporates by reference the allegations set forth in paragraphs 1-11 above.

13.    On information and belief, defendant Abraxis has been, and currently is, directly and/or indirectly infringing the '363 patent by making, using, selling, and/or offering for sale Abraxane®; contributing to the use of Abraxane® by others; and/or inducing others to use Abraxane®.

14.    On information and belief, defendant Abraxis's infringement of the '363 patent has been and continues to be willful and deliberate.

15.    On information and belief, defendant Abraxis's infringement of the '363 patent will continue unless enjoined by this Court. As a result of the infringing conduct of Abraxis, Élan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Élan is entitled to temporary, preliminary and/or permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

16.    As a direct and proximate consequence of defendant Abraxis's infringement of the '363 patent, Élan has been damaged, and will be further damaged, and is entitled to be compensated for such damages pursuant to 35 U.S.C. § 284 in an amount not yet determinable, but which will be determined at trial.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 5,834,025

17.    Élan realleges and incorporates by reference the allegations set forth in paragraphs 1-16 above.

18.    On information and belief, defendant Abraxis has been, and currently is, directly and/or indirectly infringing the '025 patent by making, using, selling, and/or offering for sale Abraxane®; contributing to the use of Abraxane® by others; and/or inducing others to use Abraxane® in a manner that infringes the '025 patent.

19.    On information and belief, defendant Abraxis's infringement of the '025 patent has been and continues to be willful and deliberate.

20.    On information and belief, defendant Abraxis's infringement of the '025 patent will continue unless enjoined by this Court. As a result of the infringing conduct of Abraxis, Élan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Élan is entitled to temporary, preliminary and/or permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

21.    As a direct and proximate consequence of defendant Abraxis's infringement of the '025 patent, Élan has been damaged, and will be further damaged, and is entitled to be compensated for such damages pursuant to 35 U.S.C. § 284 in an amount not yet determinable, but which will be determined at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Élan prays for entry of judgment against defendant Abraxis as follows:

That Abraxis has infringed the '363 and '025 patents under 35 U.S.C. §§ 271 *et seq.*;

That injunctions, preliminary and permanent, be issued by this Court restraining Abraxis, its respective officers, agents, servants, directors, and employees, and all persons in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of the '363 and '025 patents;

That Abraxis be required to provide to Élan an accounting of all gains, profits, and advantages derived by Abraxis's infringement of the '363 and '025 patents, and that Élan be awarded damages adequate to compensate Élan for the wrongful infringing acts by Abraxis, in accordance with 35 U.S.C. § 284;

That the damages awarded to Élan be increased up to three times, in view of Abraxis's willful infringement, in accordance with 35 U.S.C. § 284;

That this case be declared to be exceptional in favor of Élan under 35 U.S.C. § 285, and that Élan be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action;

That Élan be awarded its interest and costs of suit incurred in this action; and

That Élan be awarded such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38.1, Élan

hereby demands a jury trial for all issues in this case that are properly subject to a jury

trial.

OF COUNSEL:                                    POTTER ANDERSON & CORROON LLP

Stephen Scheve
BAKER BOTTS L.L.P.                             By: _____
One Shell Plaza                                     Richard L. Horwitz (#2246)
910 Louisiana Street                                Kenneth L. Dorsney (#3726)
Houston, TX 77002-4995                              Hercules Plaza 6th Floor
(713) 229-1659 Telephone                            1313 N. Market Street
(713) 229-2859 Facsimile                            P.O. Box 951
steve.scheve@bakerbotts.com                         Wilmington, DE 19899
                                                    (302) 984-6000
Paul F. Fehlner                                     rhorwitz@potteranderson.com
BAKER BOTTS L.L.P.                                  kdorsney@potteranderson.com
30 Rockefeller Plaza
New York, NY 10112-4498                        *Attorneys for Plaintiff*
(212) 408-2527 Telephone                       *Élan Pharmaceutical International Limited*
(212) 408-2501 Facsimile
paul.fehlner@bakerbotts.com

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
(215) 801-3625 Telephone
sipz25@aol.com

Dated: July 19, 2006

741572