# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 06-438-GMS |
| ABRAXIS BIOSCIENCE, INC., | ) ) ) | **REDACTED -**<br>**PUBLIC VERSION** |
| Defendant. | ) ) | |

## DECLARATION OF ERIC C. PAI IN SUPPORT OF
## DEFENDANT ABRAXIS BIOSCIENCE, INC.'S MOTION
## FOR PROTECTIVE ORDER AGAINST THE DEPOSITIONS OF
## DRS. PATRICK SOON-SHIONG AND NEIL DESAI

I, Eric C. Pai, declare as follows:

1.      I am an attorney admitted to practice in the State of California, and I am admitted *pro hac vice* in the above-captioned action.  I am an associate with the law firm of Morrison & Foerster LLP, attorneys for Abraxis BioScience, Inc. ("Abraxis") in the above captioned action. I submit this declaration in support of Abraxis's Motion for Protective Order Against Elan's Notices of Deposition of Drs. Desai and Soon-Shiong.  I have personal knowledge of the matters set forth herein, and if called upon to do so, I could and would competently testify thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of Elan Pharma International Limited's ("Elan") Notice of Deposition of Neil Desai, dated June 29, 2007.

3.      Attached hereto as Exhibit B is a true and correct copy of Elan's Notice of Deposition of Patrick Soon-Shiong, dated June 29, 2007.

4.      Attached hereto as Exhibit C is a true and correct copy of Elan's Amended Notice of Deposition of Neil Desai, dated July 18, 2007.

5.     Attached hereto as Exhibit D is a true and correct copy of Elan's Amended Notice of Patrick-Soon-Shiong, dated August 1, 2007.

6.     Attached as Exhibit E is a true and correct copy of a letter from Emily Evans, counsel for Abraxis, to Linda Glover, counsel for Elan, dated June 10, 2007.

7.     Attached as Exhibit F is a true and correct copy of a chain of emails between Paul Fehlner, counsel for Elan, and Emily Evans, dated June 14, 2007.

8.     Attached hereto as Exhibit G is a true and correct copy of an email from Emily Evans to Linda Glover, dated June 25, 2007.

9.     Attached hereto as Exhibit H is a true and correct copy of an email from Emily Evans to Linda Glover and Paul Fehlner, dated June 27, 2007.

10.     Attached hereto as Exhibit I is a true and correct copy of an email from Paul Fehlner to Emily Evans, Diana Kruze, Michael Jacobs, and Eric Walters, counsel for Abraxis, dated June 28, 2007.

11.     Attached hereto as Exhibit J is a true and correct copy of an email from Diana Kruze to Linda Glover and Fred Barrera, counsel for Elan, dated July 9, 2007.

12.     Attached hereto as Exhibit K is a true and correct copy of an email from Emily Evans to Stephen Scheve, counsel for Elan, dated July 10, 2007.

13.     Attached hereto as Exhibit L is a true and correct copy of an email from Emily Evans to Stephen Scheve, dated July 11, 2007.

14.     Attached hereto as Exhibit M is a true and correct copy of a chain of emails between Paul Fehlner and Emily Evans, dated July 11, 2007.

15.     Attached hereto as Exhibit N is a true and correct copy of a letter from Stephen Scheve to Emily Evans, dated July 13, 2007.

DB02:6175527.1

pa-1186334

16.     Attached hereto as Exhibit O is a true and correct copy of an email from Emily Evans to Stephen Scheve, dated July 13, 2007.

17.     Attached hereto as Exhibit P is a true and correct copy of a chain of emails between Emily Evans, Paul Fehlner, and Stephen Scheve, dated July 13 and 14, 2007.

18.     Attached hereto as Exhibit Q is a true and correct copy of an email from Paul Fehlner to Emily Evans, dated July 14, 2007.

19.     Attached hereto as Exhibit R is a true and correct copy of a letter from Emily Evans to Paul Fehlner, dated July 16, 2007.

20.     Attached hereto as Exhibit S is a true and correct copy of a chain of emails between Diana Kruze and Paul Fehlner, dated July 16, 2007.

21.     Attached hereto as Exhibit T is a true and correct copy of the transcript of proceedings, dated July 16, 2007.

22.     Attached hereto as Exhibit U is a true and correct copy of an email from Paul Fehlner to Emily Evans, Michael Jacobs, and Diana Kruze, dated July 17, 2007.

23.     Attached hereto as Exhibit V is a true and correct copy of a chain of emails from Linda Glover and Emily Evans, dated July 18, 2007.

24.     Attached hereto as Exhibit W is a true and correct copy of an email from Diana Kruze to Linda Glover and Paul Fehlner, dated July 23, 2007.

25.     Attached hereto as Exhibit X is a true and correct copy of a chain of emails between Diana Kruze and Linda Glover, dated August 6, 2007.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DB02:6175527.1

pa-1186334

Executed this 9th day of August, 2007 in Palo Alto, California.


_____
Eric C. Pai

06-438-GMS
pa-1186334

## CERTIFICATE OF SERVICE

I, Elena C. Norman, Esquire, hereby certify that on August 20, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

I further certify that on August 20, 2007, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

Linda Glover, Esquire
Stephen Scheve, Esquire
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
steve.scheve@bakerbotts.com

Paul F. Fehlner, Esquire
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
paul.fehlner@bakerbotts.com

William J. Sipio, Esquire
1375 Brentwood Road
Yardley, PA  19067
sipz25@aol.cm

YOUNG CONAWAY STARGATT
  &  TAYLOR, LLP

/s/ *Elena C. Norman*
Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
Elena C. Norman (No. 4780)
enorman@ycst.com
Karen E. Keller (No. 4489)
kkeller@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899
(302) 571-6600

Attorneys for Defendant
ABRAXIS BIOSCIENCE, INC.

2

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>ABRAXIS BIOSCIENCE, INC.,<br><br>Defendant. | § § § § § § § § § § § | C.A. No. 06-438-GMS |

## <u>NOTICE OF DEPOSITION OF NEIL DESAI</u>

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff Elan Pharma International Limited will take the continuing deposition by oral testimony of Neil Desai, commencing on July 19, 2007 at 9:00 a.m. PST.

The deposition shall take place at the offices of Esquire Deposition Services, 6222 Wilshire Blvd, 2nd FL, Los Angeles, California, or at such other place, date and time as is mutually agreed upon or ordered by the Court, before a notary public or other officer authorized to administer oaths. The testimony shall be recorded by stenographic and/or videographic means and shall continue from day to day until completed.

ASHBY & GEDDES

/s/ Steven J. Balick

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #2950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Elan Pharma International Limited*

*Of Counsel:*

Stephen Scheve
Linda M. Glover
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77042-4995
Telephone: (713) 229-1659

Paul F. Fehlner
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112-4498
Telephone: (212) 408-2527

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
Telephone: (215) 801-3625

Dated: June 29, 2007
181939.1

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA<br>INTERNATIONAL LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>ABRAXIS BIOSCIENCE, INC.,<br><br>Defendant. | § § § § § § § § § § | C.A. No. 06-438-GMS |

## NOTICE OF DEPOSITION OF PATRICK SOON-SHIONG

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff Elan Pharma International Limited will take the continuing deposition by oral testimony of Patrick Soon-Shiong, commencing on July 13, 2007 at 9:00 a.m. PST.

The deposition shall take place at the offices of Esquire Deposition Services, 6222 Wilshire Blvd, 2nd FL, Los Angeles, California, or at such other place, date and time as is mutually agreed upon or ordered by the Court, before a notary public or other officer authorized to administer oaths. The testimony shall be recorded by stenographic and/or videographic means and shall continue from day to day until completed.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #2950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Of Counsel:*

Stephen Scheve
Linda M. Glover
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77042-4995
Telephone: (713) 229-1659

Paul F. Fehlner
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112-4498
Telephone: (212) 408-2527

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
Telephone: (215) 801-3625

Dated: June 29, 2007
181938.1

*Attorneys for Plaintiff*
*Elan Pharma International Limited*

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-438-GMS |
| | ) | |
| ABRAXIS BIOSCIENCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED NOTICE OF DEPOSITION OF NEIL DESAI

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff Elan Pharma International Limited will take the continuing deposition by oral testimony of Neil Desai, commencing on August 8, 2007 at 9:00 a.m. PDT.

The deposition shall take place at the offices of Morrison Foerster's offices, 555 West Fifth Street, Suite 3500, Los Angeles, California, or at such other place, date and time mutually agreed upon or ordered by the Court, before a notary public or other officer authorized to administer oaths. The testimony shall be recorded by stenographic and/or videographic means and shall continue from day to day until completed.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Elan Pharma International Limited*

*Of Counsel:*

Stephen Scheve, Esquire
Linda M. Glover, Esquire
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77042-4995
(713) 229-1659 Telephone
(713) 229-2859 Facsimile
Steve.Scheve@bakerbotts.com
Linda.Glover@bakerbotts.com

Paul F. Fehlner, Esquire
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112-4498
(212) 408-2527 Telephone
(212) 408-2501 Facsimile
Paul.Fehlner@bakerbotts.com

William J. Sipio, Esquire
1375 Brentwood Road
Yardley, PA 19067
(215) 801-3625 Telephone
Sipz25@aol.com

Dated:  July 18, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of July, 2007, the attached **AMENDED NOTICE**

**OF DEPOSITION OF NEIL DESAI** was served upon the below-named counsel of record at

the addresses and in the manner indicated:

| | |
|---|---|
| Josy W. Ingersoll, Esquire<br>Young, Conaway, Stargatt & Taylor<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19801 | HAND DELIVERY |
| Michael A. Jacobs, Esquire<br>Morrison & Foerster, LLP<br>425 Market Street<br>San Francisco, CA 94105-2482 | VIA ELECTRONIC MAIL |
| Emily A. Evans, Esquire<br>Morrison & Foerster, LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304-1018 | VIA ELECTRONIC MAIL |
| Anders T. Aannestad, Esquire<br>Morrison & Foerster, LLP<br>12531 High Bluff Drive, Suite 100<br>San Diego, CA 92130 | VIA ELECTRONIC MAIL |

Lauren E. Maguire

173077.1

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA<br>INTERNATIONAL LIMITED, | ) | |
| | ) | |
| | ) | C.A. No. 06-438-GMS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABRAXIS BIOSCIENCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### AMENDED NOTICE OF DEPOSITION OF PATRICK SOON-SHIONG

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff Elan Pharma International Limited will take the continuing deposition by oral testimony of Patrick Soon-Shiong, commencing on August 13, 2007 at 9:00 a.m. PST.

The deposition shall take place at the offices of Esquire Deposition Services, 6222 Wilshire Blvd, 2nd FL, Los Angeles, California, or at such other place, date and time mutually agreed upon or ordered by the Court, before a notary public or other officer authorized to administer oaths. The testimony shall be recorded by stenographic and/or videographic means and shall continue from day to day until completed.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Elan Pharma International Limited*

*Of Counsel:*

Stephen Scheve
Linda M. Glover
BAKER BOTTS LLP
One Shell Plaza
910 Lousiana Street
Houston, TX 77042-4995
Telephone:  (713) 229-1659

Paul F. Fehlner
Lisa Chiarini
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112-4498
Telephone:  (212) 408-2527

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
Telephone:  (215) 801-3625

Dated:  August 1, 2007
182821.1

# EXHIBIT E

June 10, 2007

Writer's Direct Contact
650.813.5625
EEvans@mofo.com

*By Electronic Mail and United States Mail*

Linda M. Glover
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston TX  77002-4995

Re:     *Elan Pharma International Limited v. Abraxis BioScience, Inc.*

Dear Linda:

I write regarding our telephone conferences today and on Tuesday and the proposals and requests Elan made during those conferences.  As discussed below, we believe the parties should keep trying to meet the current case schedule before asking the Court to change the calendar.

**Elan's Rule 30(b)(6) Deposition Notices**

During the conferences, we offered the following dates for witnesses who will be testifying in response to Elan's three outstanding Rule 30(b)(6) witnesses:

| June 20 [9am-5pm] | Raj Selveraj | Topics 1-11 of Elan's First Amended Rule 30(b)(6) Notice dated May 17, 2007 [Document 110], subject to the objections in my letter to Linda Glover dated May 31, 2007 |
|---|---|---|
| | | Topics 2.a. and 2.b. of Elan's Rule 30(b)(6) Notice dated May 17, 2007 [Document 111], subject to the objections in my letter to Linda Glover dated May 31, 2007 |
| June 22 [9am-12pm] | Randy Kreibich | Topic 8 of Elan's Rule 30(b)(6) Notice dated May 17, 2007 [Document 111], subject to the objections in my letter to Linda Glover dated May 31, 2007 |

Linda M. Glover
June 10, 2007
Page Two

| June 22 [1pm-5pm] | Steve Brenner | Topics 3-7 of Elan's Rule 30(b)(6) Notice dated May 17, 2007 [Document 111], subject to the objections in my letter to Linda Glover dated May 31, 2007 |
|---|---|---|
| June 29 [2pm-5pm] | Bruce Wendell | Topic 1 of Elan's Rule 30(b)(6) Notice dated May 17, 2007 [Document 111], subject to the objections in my letter to Linda Glover dated May 31, 2007 |
| June 29 [11am-1pm] | Joe Hogan | Topics 2.c.-2.e. of Elan's Rule 30(b)(6) Notice dated May 17, 2007 [Document 111], subject to the objections in my letter to Linda Glover dated May 31, 2007 |
| June 29 [9am-11am] | Julie Lisano | Topics 2.f. and 2.g. of Elan's Rule 30(b)(6) Notice dated May 17, 2007 [Document 111], subject to the objections in my letter to Linda Glover dated May 31, 2007<br><br>Topic 6 of Elan's Rule 30(b)(6) Notice dated May 16, 2007 [Document 109], subject to the objections in my letter to Linda Glover dated May 31, 2007 |

I asked you how long Elan would need with each of these witnesses and you did not have an estimate. Unless I hear from you to the contrary, I will plan to have the witnesses available for deposition at the times specified in brackets in the table above. Please confirm that there will be a breakout room available at the location noticed for the depositions in which we can confer privately.

Elan did not state whether it would take the depositions on the proffered dates.

We discussed Abraxis's objections to certain aspects of Elan's Rule 30(b)(6) Notices, contained in my three letters to you on May 31, 2007. The following agreements are subject, of course, to other specific objections we may have at the deposition, such as to disclosure of information subject to attorney-client privilege and work product doctrines.

We agreed that you may ask the witness produced on testing of Abraxane whether he is aware of other types of testing of Abraxane not specifically identified by Elan and generally what he knows about such testing. We agreed that the term "predecessors" means ABI-007 and Capxol, but that you will provide us with a third name you would like included in the

Linda M. Glover
June 10, 2007
Page Three

meaning of "predecessor," which we will consider.  We will allow questions regarding "intermediates" to the extent the witness can understand what that term means.

You agreed to provide us with Elan's production numbers for documents supporting its notice topics regarding the alleged "joint sales meeting."

We will determine whether Abraxis has additional responsive organizational charts with the understanding those would obviate the need for a deposition on "The current and historical corporate organizational structure of Abraxis."

We will produce a witness to testify on the likely locations of types of documents (e.g., marketing documents, laboratory notebooks, etc.) within Abraxis to the extent the questions do not call for privileged information or legal conclusions by that witness, that is, no interpretation of the scope of Elan's document requests.

We also discussed the notice topics regarding electronic documents.  We explained that the electronic discovery agreement reached by the parties in March/April of this year covered all electronic documents, not just e-mail.  Please confirm that Elan has the same understanding and has searched and produced all of its electronic documents in accordance with the parties' agreement.  To the extent Elan seeks documents beyond that agreement Elan is in breach of the agreement.  We will, however, permit Elan to ask our witness regarding Topics 3-7 what general electronic document repositories exist at Abraxis and whether those were searched in connection with producing documents to Elan.

**Elan's Proposal to Extend the Discovery Deadlines**

Elan proposed that the parties:

- Complete production of all documents, both paper and electronic, by July 15.

- Do not take any depositions (except Rule 30(b)(6) depositions on document collection) until July 30.

- Complete fact discovery September 30.

- Extend expert discovery deadlines.

Abraxis does not believe it is appropriate to extend the Court's deadlines at this time.  Elan pushed the Court, over Abraxis's objection, for an aggressive schedule, and Abraxis has worked to comply with that schedule.

Linda M. Glover
June 10, 2007
Page Four

- First, Abraxis expects to complete its electronic document production by next week and expects to finish its entire production, including the documents addressed at the recent discovery conference, by the end of June.

- Second, we see no reason why depositions cannot proceed within the time allotted by the Court. Elan noticed its three Rule 30(b)(6) depositions to be taken by June 1 and therefore must have been ready to take those depositions on the noticed dates. As to the remaining depositions, Elan will have more than sufficient time. Other than any documents identified as a result of Abraxis's re-review of its laboratory notebooks, Abraxis expects to substantially complete its document production next week. Any previously overlooked laboratory notebooks will be in Elan's hands by the end of the month. This leaves ample time for the parties to take the 10 depositions that were agreed upon by the end of July.

- The proposed September 30 fact discovery cut-off is several weeks after opening expert reports are due, which is not workable. When I pointed that out during our conference, you proposed pushing off the expert dates as well, which you did in a subsequent e-mail. Again, we believe it is inappropriate to make such drastic changes to the schedule set by the Court. These are the dates Elan wanted. The parties knew from the beginning of the case that we would have to live with these dates.

In the spirit of compromise, however, we are willing to offer the following:

- We will agree to a stay of damages discovery until January 1, 2008, with a corresponding extension of the due date for damages expert reports and depositions.

- We will also agree to offer Dr. Selveraj for deposition on July 5, which will give Elan three more weeks to prepare for that deposition.

- Although we do not believe delaying the discovery deadlines is appropriate at this time, as the discovery deadline approaches, we would be willing to discuss, on a case-by-case basis, whether it is appropriate to extend the deadline if it turns out that additional time is necessary to complete discrete discovery tasks.

We urge Elan to take its Rule 30(b)(6) depositions on the dates proffered by Abraxis. We also urge Elan to tell us the other witnesses whom it wants to depose so that we can schedule those witnesses.

Linda M. Glover
June 10, 2007
Page Five

**Elan's Request for Additional Abraxis Laboratory Notebooks**

During the call, Elan requested that Abraxis make its Abraxane laboratory notebooks available for inspection.  As we discussed on Friday, Abraxis will agree to make those notebooks available in Los Angeles and Chicago (depending on where the notebooks are located) on June 13 through June 18, under the following conditions:

- Elan's inspection will be in the presence of a Morrison & Foerster employee (with a private break-out room available).

- Elan will not remove, copy or take notes about the contents of any of the notebooks.

- Elan will use tape flags to indicate the portions of the notebooks for which it wants hard copies.

- Elan will not broadly designate entire notebooks, but rather will designate only those portions of the laboratory notebooks of demonstrable relevance to this lawsuit.

- Elan's review will be conducted only by Approved Outside Counsel as specified in the enclosed proposed Interim Order, and these counsel will sign undertakings to be bound by that Interim Order before review will be permitted.  This provision is necessitated by the fact that some of the laboratory notebooks disclose secret details of Abraxis's manufacturing process for Abraxane.

- Elan's review will also be subject to the other applicable provisions of the current Protective Order regarding non-waiver of attorney-client privilege.

- Elan's review will be permitted only *after* the Court enters the enclosed Interim Order, which should be filed on Monday.

Upon receiving Elan's notebook designations, Abraxis will work expeditiously to review those documents for privilege, segregate the manufacturing detail information for separate production (see below), with the goal of producing hard copies of all the designated portions to Elan by the end of June.  Further, if Elan wants us to prioritize production of certain of those notebooks over others we will do so to the extent practicable.

We cannot offer inspection of the notebooks at a later time, because that would be inconsistent with the current discovery deadlines set by the Court.  Please let us know as soon as possible on Monday, June 11, whether Elan will take Abraxis up on the offer above.  If Elan declines, Abraxis will undertake the review and production I explained in my letter of June 1, 2007, again planning to complete this production by the end of June, with the caveat

Linda M. Glover
June 10, 2007
Page Six

the documents containing manufacturing details will be disclosed only after entry of a suitable protective order by the Court.

**Abraxis's Deposition Notices**

Abraxis served 6 deposition notices on May 29 and June 1, 2007.  Elan was unable to say during our conferences whether the witnesses would be available on the noticed dates, other than that Mr. Davis, who you said is not available on June 25, is generally available the following weeks.  We will propose a date for Mr. Davis on Monday, June 11.  Please let us know on Monday, June 11, whether the remaining witnesses will appear on the noticed dates and, if not, the earliest dates they will be available for deposition.

**Amended Protective Order**

We discussed Abraxis's proposed Amended Protective Order briefly.  The parties' discussion was as follows:

- Elan said making the manufacturing information available for inspection by outside counsel electronically using the third party vendor IntraLinks was acceptable.

- Elan said it wants access in Bill Sipio's office, and in Baker Botts' New York and Dallas offices.

    - We said that access would be to specified individuals, not offices, but that if the specified attorneys were in those three locations that would be fine.

- Instead of three outside counsel having access, Elan wanted "unlimited" outside counsel to have access.

    - We stated that "unlimited" access was unacceptable, especially when Mr. Scheve told the Court only a couple of weeks ago that only three Elan outside counsel needed access.  We did, however, say that we might be amenable to an intermediate position.

- Instead of two technical experts having access, Elan wants three, and Elan does not want to go through the approval process with Abraxis for those experts before submitting the Amended Protective Order to the Court.

    - We said we did not understand why three experts were required when Mr. Scheve told the Court two would suffice.  We also do not understand why Elan is delaying identifying its proposed experts, and resisting pre-vetting them, which would expedite this process.

Linda M. Glover
June 10, 2007
Page Seven

- Elan wants its experts to have electronic IntraLinks access to Abraxis's manufacturing information in the experts' laboratories.

  - As we said, this is unacceptable. These people are not officers of the Court and this would result in an unacceptable and unnecessary risk of dissemination of Abraxis's trade secrets. We have offered to make the material available on a computer in any U.S. Morrison & Foerster office. That should suffice.

- Elan wants one hard copy of the document, to use for depositions and court filings.

  - We asked Elan to make a specific proposal regarding this.

Bottom line, we signaled our willingness to consider certain modifications to the Amended Protective Order we proposed to Elan. We asked you to come back with a specific counter-proposal, that is, a red-lined version of the Amended Protective Order we sent to you, showing the changes Elan wants. We still have not received that. The ball is in your court.

To expedite review by Elan's outside counsel of the manufacturing information while the parties work out the details of a comprehensive Amended Protective Order, we propose stipulating to the enclosed Interim Order. The Interim Order, if entered by the Court, provides for five named Elan outside counsel to review the manufacturing details, which, as noted above, we could make available next week. No copies or disclosure to anyone other than those five named outside counsel would be permitted. No access to experts would be permitted (of course, even under the existing Protective Order, no experts have been approved to review *any* material designated by Abraxis under the Protective Order). Once the Amended Protective Order is entered, that would supersede this Interim Order. If we cannot reach agreement and have it approved by the Court in advance of the review, we will wait until the Amended Protective Order is entered for production of manufacturing details. Please let us know as early as possible on Monday, June 11, 2007 whether Elan accepts this proposal.

We welcome discussion about any of the issues addressed in this letter.

Sincerely,

/s/ Emily A. Evans

Emily A. Evans

# EXHIBIT F

**From:** PAUL.FEHLNER@bakerbotts.com [mailto:PAUL.FEHLNER@bakerbotts.com]
**Sent:** Thursday, June 14, 2007 2:51 PM
**To:** Evans, Emily A.
**Cc:** sipz25@aol.com; Steve.Scheve@BakerBotts.com; linda.glover@BakerBotts.com;
Lisa.Chiarini@BakerBotts.com
**Subject:** RE: Abraxis: depositions

Emily:

Thank you for your email.

Please advise how the specified outside counsel will access the IntraLinks site for the Abraxane manufacturing process. We understood that access would begin upon entry of the Interim Protective Order.

Per my voice mail message, we confirm Pramod Sarpotdar's deposition for June 29, 2007 in San Diego. We will get back to you on the other depositions as soon as possible.

Please provide organizational charts by Monday, June 18, 2007 so that we can determine and confirm that the deposition of Bruce Wendell can be withdrawn.

Best regards,

Paul

Paul Fehlner
Tel. 212.408.2527
Cell 917.826.9452
Fax 212.259.2527

mailto:paul.fehlner@bakerbotts.com

-----Original Message-----
**From:** Evans, Emily A. [mailto:EEvans@mofo.com]
**Sent:** Wednesday, June 13, 2007 8:39 PM
**To:** Fehlner, Paul F.; Glover, Linda
**Cc:** sipz25@aol.com; Scheve, Steve
**Subject:** Abraxis: depositions

Paul and Linda,

As a follow up to my letter of June 10, 2007, we are still waiting to hear whether, other than Mr. Davis, Elan will make witnesses available on the dates noticed in the six deposition notices Abraxis served on May 29 and June 1, 2007. As noted in my letter, we understand Mr. Davis is unavailable on June 25, 2007; we will propose an alternate date shortly.

In light of Elan's withdrawal of two of its 30(b)(6) deposition notices, and the consequent fact that Raj Selveraj will testify only as to topics 2.a. and 2.b. of Elan's remaining Notice [Docket No. 111], we plan to consolidate his deposition with the others to occur on Friday, June 22. We thus will present witnesses to testify on the topics of the outstanding Notice on the following schedule:

June 22: Randy Kreibich (9am-12pm), Steve Brenner (1pm-4pm), and Raj Selveraj (4pm-5:30pm)
June 29: Julie Lisano (9am-11am), Joe Hogan (11am-1pm), and Bruce Wendell (2pm-5pm)

We understand Elan's position that it will not require the testimony of Bruce Wendell if Abraxis produces additional, older organizational charts.

We again urge you to tell us which Abraxis personnel Elan would like to depose before the discovery cut-off on July 30 so that we can begin working with the witnesses to schedule their depositions.

Best regards,

Emily


Emily A. Evans
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304
Tel.: (650) 813-5625
Fax: (650) 494-0792
eevans@mofo.com


======================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

======================================================================

This message contains information which may be confidential and privileged. Unless you are the
addressee (or authorized to receive for the addressee), you may not use, copy or disclose to
anyone the message or any information contained in the message. If you have received the
message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
=======================================================================

# EXHIBIT G

| From: | Evans, Emily A. |
|---|---|
| Sent: | Monday, June 25, 2007 9:03 PM |
| To: | linda.glover@BakerBotts.com |
| Cc: | Steve.Scheve@BakerBotts.com; 'PAUL.FEHLNER@bakerbotts.com'; sipz25@aol.com; Lisa.Chiarini@BakerBotts.com |
| Subject: | Abraxis:  deposition schedule |

Linda,

We have asked Elan many times to tell us the Abraxis personnel whom it would like to depose before the July 30 cut-off.  Elan has never responded.  It is now 5 weeks from the discovery cut-off.  The longer you wait, the more difficult it will be to schedule these witnesses before the cut-off.  To facilitate compliance with the discovery cut-off, I indicate below the availability for deposition before the cut-off of Abraxis personnel listed in our Initial Disclosures:

    Carlo Montagner:  July 3
    Michael Hawkins: July 6
    Bruce Wendel: July 11
    Patrick Soon-Shiong:  July 13
    Mitchell Clark:  July 17
    Neil Desai:  July 19

Please let us know as soon as possible whether Elan is declining the opportunity to depose any of these witnesses, so that they can free up these dates for other obligations.  Please also let us know as soon as possible if Elan is interested in deposing any other witness.

I confirm that we will be making Bruce Wendel available this Friday, June 29, at 2:00 p.m., to testify regarding topic 1 of Elan's Rule 30(b)(6) Notice, subject to the objections in my earlier correpondence regarding that Notice.  I also confirm that we will be making Julie Lisano available this Friday, at 9:00 a.m., to testify regarding topics 2.f., 2.g., 11, and 12 of Elan's Rule 30(b)(6) Notice, subject to the objections in my earlier correspondence regarding this Notice.  In addition, due to scheduling difficulties, Julie Lisano also will be testifying this Friday, June 29, regarding topics 2.c., 2.d., and 2.e. of the Notice, subject to the same objections, instead of Joe Hogan.

With respect to the depositions noticed by Abraxis, we again object to Elan scheduling three of the most important witnesses in the last 3 days of the discovery period.  Assuming those are the only dates Drs. Liversidge, Liversidge, and de Garavilla are available in July, Abraxis accepts those dates under protest.  Thus, the confirmed deposition dates for Elan witnesses are as follows:

    Current Rule 30(b)(6):  June 29
    Pramod Sarpotdar:  June 29
    William Davis:  July 16
    Lawrence de Garavilla:  July 26

Elaine Liversidge:  July 30
Gary Liversidge:  July 30

As you know, Abraxis also has noticed the following depositions:

Nancy Peltier:  July 6
Eugene Cooper:  July 12

Please confirm tomorrow that the witnesses will appear on those dates.

As always, feel free to contact me to discuss these scheduling issues.

Emily

Emily A. Evans
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304
Tel.:  (650) 813-5625
Fax:  (650) 494-0792
eevans@mofo.com

# EXHIBIT H

| From: | Evans, Emily A. |
|---|---|
| Sent: | Wednesday, June 27, 2007 6:20 AM |
| To: | linda.glover@bakerbotts.com; PAUL.FEHLNER@bakerbotts.com |
| Cc: | Steve.Scheve@bakerbotts.com; Lisa.Chiarini@bakerbotts.com; William J. Sipio (sipz25@aol.com) |
| Subject: | Abraxis: discovery cut-off and depositions |

Paul and Linda,

I write regarding our telephone conference yesterday.

With respect to your request that Abraxis join Elan in requesting a two-month extension of the discovery cut-off, Abraxis declines. We do not believe that Elan has done and is doing all it can to comply with the Judge Sleet's Scheduling Order -- an Order, by the way, that adopted an aggressive fact discovery cut-off at Elan's insistence. Parties are always strained during the last month of fact discovery and this case is no different. Both parties are represented by large firms that can marshal the resources necessary to comply with Judge Sleet's Order. Under these circumstances it is not appropriate for the parties to ask Judge Sleet to revisit his Scheduling Order.

A case in point is Elan's position yesterday regarding taking depositions of Abraxis personnel. Despite numerous requests by us that Elan let us know whom Elan would like to depose before the discovery cut-off, Elan has yet to identify a single witness. In an attempt to move this case along and comply with Judge Sleet's Scheduling Order, I sent you an e-mail on Monday listing dates when Abraxis personnel listed on our Initial Disclosures would be available for deposition before the discovery cut-off. These dates are:

      Carlo Montagner:  July 3
      Michael Hawkins: July 6
      Bruce Wendel: July 11
      Patrick Soon-Shiong:  July 13
      Mitchell Clark:  July 17
      Neil Desai:  July 19

You indicated that Elan was not able at this time to tell us whether it will want to depose these, or any other, Abraxis personnel. I indicated that these high-level personnel have very limited availability before the discovery cut-off due to long-scheduled pre-existing commitments. While we will of course make every effort to make requested witnesses available for deposition before the cut-off, the longer Elan waits the harder that will be for us to do. If Elan chooses to pass on the dates proferred above, we may not be able to make these witnesses available in July. For example, some of the witnesses will be out of the country in the latter part of the month. Elan may forfeit its chance to depose these -- and other -- witnesses if it chooses to follow the strategy you posited of waiting until late in July to notice all of its witnesses. Certainly this calculated bid to force an extension of the discovery cut-off is not good cause to modify the Scheduling Order.

With respect to Mr. Montagner and Dr. Hawkins, who are being preferred for deposition next week, please let us know by close of business this Thursday, June 28, whether Elan will notice and take their depositions on those dates. If we do not hear from you by then, we can no longer make the witnesses available on those dates. While the witnesses currently have reserved those days for their deposition, we require this notice to prepare for these depositions appropriately. Elan's steadfast refusal to identify witnesses whom it plans to depose -- you said you were unable to identify a single person -- is prejudicing our ability to defend against Elan's meritless lawsuit. We should not have to expend the resources necessary simultaneously to prepare all our employees for a possible deposition this coming month. This is Elan's lawsuit. Put your cards on the table and get on with your case.

With respect to the witnesses whom Abraxis would like to depose, you indicated that you would let us know today whether Ms. Peltier and Dr. Cooper will be made available for deposition on the dates specified in our deposition notices and, if not, when they will be available before the discovery cut-off.

With respect to document production, we indicated that we expected to produce the remainder of our documents by the end of this week, as we have previously predicted. You indicated that you did not know when Elan would be completing its document production but that Elan would produce tens of thousands of documents this Friday, with more to come "later." Abraxis objects to Elan's dilatory document production. This appears to be another cynical ploy to extend the discovery cut-off and increase the cost to Abraxis of defending against this frivolous lawsuit.

We also discussed the Rule 30(b)(6) depositions last Friday. I indicated that we would double-check to confirm that the collection of documents by Abraxis had been sufficient and proper, and indicated that we would remedy any deficiency if identified. I also reminded you that Abraxis already has searched for and produced many, many documents beyond what we were required, or agreed, to produce. I cannot say the same for Elan.

As always, I am available to discuss these important issues with you.

Emily

Emily A. Evans
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304
Tel.: (650) 813-5625
Fax: (650) 494-0792
eevans@mofo.com

# EXHIBIT I

-----Original Message-----
From: PAUL.FEHLNER@bakerbotts.com <PAUL.FEHLNER@bakerbotts.com>
To: Evans, Emily A.; Kruze, Diana B.; Jacobs, Michael A.; Walters, Eric S.
CC: Steve.Scheve@bakerbotts.com <Steve.Scheve@bakerbotts.com>;
Lisa.Chiarini@bakerbotts.com <Lisa.Chiarini@bakerbotts.com>; sipz25@aol.com <sipz25
@aol.com>; linda.glover@bakerbotts.com <linda.glover@bakerbotts.com>;
Jeffrey.Sullivan@bakerbotts.com <Jeffrey.Sullivan@bakerbotts.com>;
Jennifer.Cozeolino@bakerbotts.com <Jennifer.Cozeolino@bakerbotts.com>
Sent: Thu Jun 28 16:54:43 2007
Subject: Elan v. Abraxis: discovery cut-off and depositions; objection to Abraxis's expert

Counsel:

1. Deposition of Abraxis witnesses

We accept the offer in Dr. Evans' email of 26 June 2007 to examine Dr. Hawkins on
July 6; Dr. Soon-Shiong on July 13; and Dr. Desai on July 19. Formal notices will follow.
We reserve the right to notice depositions of the other Abraxis witnesses, including
Messrs. Montagner, Wendell, and Clark as facts and circumstances warrant, in accordance
with the Federal Rules of Civil Procedure.

2. Deposition of Elan witnesses Cooper, Peltier, and Shaw

Ms. Nancy Peltier will be available for examination at the office of Baker Botts in
New York City on July 13, 2007.

Dr. Eugene Cooper will be available for examination at a location in Philadelphia,
Pennsylvania on July 18, 2007.

We will provide a time and location for the deposition of Dr. J. Michael Shaw as
soon as possible.

3. Abraxis's proposed expert

Pursuant to Section 6.3 of the Stipulated Protective Order, Elan objects to the
disclosure of Elan's Designated Material to Dr. Mansoor M. Amiji. We understand that Dr.
Amiji is engaged in consulting on nanoparticulate compositions on behalf of commercial
entities as to which Elan's information would be competitively and commercially relevant.
Dr. Amiji's consulting work presents an unacceptable risk to Elan's Designated Material,
and disclosure to him of Elan's Designated Material is not authorized. Elan reserves the
right to state additional bases for objection as they become known.

We have scheduled a meet and confer from Monday afternoon to discuss Abraxis's
objection to Elan's proposed expert. I suggest that we use the opportunity to discuss our
objection to Abraxis's proposed expert as well.

Sincerely,

Paul F. Fehlner, Ph.D.

Baker Botts L.L.P.
30 Rockefeller Plaza
New York, NY 10112

Tel. 212.408.2527
Cell 917.826.9452
Fax 212.259.2527
mailto:paul.fehlner@bakerbotts.com

CONFIDENTIALITY NOTICE. This email message and any attachments may be confidential and may be subject to the attorney-client privilege or other privilege. If you are not the intended recipient, please do not read, copy or re-send this email message or its attachments; immediately notify the sender by reply email or by collect call to 212.408.2500; and delete this email message and any attachments. Thank you for your assistance.

# EXHIBIT J

Dear Linda and Fred:

Please allow this email to memorialize our conversation of today's date. The parties agreed that the following depositions will take place in the following locations:

1.  Thursday, July 12, 2007 at 9 am/Deposition of Peltier/Baker Botts New York Office (located at 30 Rockefeller Plaza in New York, New York)
2.  Friday, July 13, 2007 at 9 am/Deposition of Soon-Shiong/Morrison & Foerster's Los Angeles Office (located at 555 West Fifth Street, Suite 3500
Los Angeles, California)
3.  Thursday, July 19, 2007 at 9 am/Deposition of Desai/Morrison & Foerster's Los Angeles Office (located at 555 West Fifth Street, Suite 3500
Los Angeles, California)

For security purposes, the parties will forward the names of individuals attending each deposition at least 24 hours in advance. Thanks so much.

Best regards,

Diana
Diana Kruze
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: 650.813.5649
Facsimile: 650.494.0792
dkruze@mofo.com

1

# EXHIBIT K
## REDACTED IN ITS ENTIRETY

# EXHIBIT L

**From:** Evans, Emily A.
**Sent:** Wednesday, July 11, 2007 3:04 PM
**To:** Steve.Scheve@BakerBotts.com
**Cc:** PAUL.FEHLNER@BakerBotts.com; sipz25@aol.com; linda.glover@BakerBotts.com; Lisa.Chiarini@BakerBotts.com
**Subject:** Abraxis: deposition of Dr. Soon-Shiong

Dear Steve,

I responded to your email yesterday regarding putting off Dr. Soon-Shiong's deposition, letting you know that this Friday is Dr. Soon-Shiong's only availability during the discovery period and that we would not block your examination of Dr. Soon-Shiong into the issues that caused the suspension of Dr. Hawkins' deposition. I gave you until noon today to get back to me regarding whether, in light of these circumstances, Elan still was declining to take Dr. Soon-Shiong's deposition this Friday. I still have not heard from you. In addition, within the past hour I have tried to contact you, Linda Glover, Paul Fehlner, and Bill Sipio to find out what Elan was doing about Dr. Soon-Shiong's deposition. None answered the phone and I left voicemails for all of you. In view of Elan's failure to communicate to the contrary, I assume that your earlier email yesterday cancelling Dr. Soon-Shiong's deposition remains operative.

Emily

Emily A. Evans
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304
Tel.: (650) 813-5625
Fax: (650) 494-0792
eevans@mofo.com

# EXHIBIT M

**From:** PAUL.FEHLNER@bakerbotts.com [mailto:PAUL.FEHLNER@bakerbotts.com]
**Sent:** Wednesday, July 11, 2007 5:02 PM
**To:** Evans, Emily A.
**Cc:** Steve.Scheve@BakerBotts.com; sipz25@aol.com; linda.glover@BakerBotts.com;
Lisa.Chiarini@BakerBotts.com
**Subject:** RE: Abraxis: deposition of Dr. Soon-Shiong

Emily:

Per our telephone conference of earlier today, we confirm that Elan stands by the email from Steve Scheve to you of yesterday's date, stating that Elan would postpone the deposition of Dr. Soon-Shiong in light of Abraxis's actions at Dr. Hawkins' deposition this past Friday, July 6th.

Elan in no way waives its right under the Federal Rules to depose Dr. Soon-Shiong in the future. Elan cannot reasonably be expected to proceed with Dr. Soon-Shiong's deposition under the cloud created by the improper suspension of Dr. Hawkins' deposition until a Discovery Master takes control of this matter. Abraxis has demonstrated a willingness to disregard the Rules, so your assurances that your conduct will be in accordance with the Rules, which frankly we believed could be presumed, are not availing now.

Best regards,

Paul


Paul Fehlner
Tel. 212.408.2527
Cell 917.826.9452
Fax 212.259.2527

mailto:paul.fehlner@bakerbotts.com

> -----Original Message-----
> **From:** Evans, Emily A. [mailto:EEvans@mofo.com]
> **Sent:** Wednesday, July 11, 2007 6:04 PM
> **To:** Scheve, Steve
> **Cc:** Fehlner, Paul F.; sipz25@aol.com; Glover, Linda; Chiarini, Lisa
> **Subject:** Abraxis: deposition of Dr. Soon-Shiong

Dear Steve,

I responded to your email yesterday regarding putting off Dr. Soon-Shiong's deposition, letting you know that this Friday is Dr. Soon-Shiong's only availability during the discovery period and that we would not block your examination of Dr. Soon-Shiong into the issues that caused the suspension of Dr. Hawkins' deposition.  I gave you until noon today to get back to me regarding whether, in light of these circumstances, Elan still was declining to take Dr. Soon-Shiong's deposition this Friday.  I still have not heard from you.  In addition, within the past hour I have tried to contact you, Linda Glover, Paul Fehlner, and Bill Sipio to find out what Elan was doing about Dr. Soon-Shiong's deposition.  None answered the phone and I left voicemails for all of you.  In view of Elan's failure to communicate to the contrary, I assume that your earlier email yesterday cancelling Dr. Soon-Shiong's deposition remains operative.

Emily

Emily A. Evans
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304
Tel.:  (650) 813-5625
Fax:  (650) 494-0792
eevans@mofo.com

===================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

===================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
===================================================================

# EXHIBIT N

# BAKER BOTTS LLP

ONE SHELL PLAZA
910 LOUISIANA
HOUSTON, TEXAS
77002-4995

TEL +1 713.229.1234
FAX +1 713.229.1522
www.bakerbotts.com

AUSTIN
BEIJING
DALLAS
DUBAI
HONG KONG
**HOUSTON**
LONDON
MOSCOW
NEW YORK
RIYADH
WASHINGTON

July 13, 2007

076406.0108

Stephen E. Scheve
TEL +1 713-229-1659
FAX +1 713-229-2859
steve.scheve@bakerbotts.com

BY FEDEX AND ELECTRONIC MAIL

Dr. Emily Evans
Morrison Foerster
755 Page Mill Road
Palo Alto, California 94304

   Re:  Cause No.: 06-438-GMS; *Elan Pharma International Limited v. Abraxis BioScience, Inc.*; In the United States District Court; District of Delaware

Dear Emily:

   As you are aware, Elan's deposition of Dr. Desai is scheduled for July 19. As Elan's lead counsel, I intend to depose Dr. Desai. Pursuant to the Interim Protective Order Regarding Secret Abraxane Manufacturing Information, please advise no later than 5 p.m. PDT July 16, 2007 whether Abraxis grants me permission to access Dr. Desai's laboratory notebooks posted on Intralinks. Please also advise whether Abraxis will provide me with a hard copy of Dr. Desai's laboratory notebooks that are posted on Intralinks by July 17 for use in deposition.

   I hope you are having a very nice day.

        Very truly yours,

        Stephen E. Scheve

SES:94367
cc: Paul Fehlner
   William J. Sipio
   Jeffrey Sullivan
   Linda Glover
   Lisa Chiarini

# EXHIBIT O

-----Original Message-----
From: Evans, Emily A.
Sent: Friday, July 13, 2007 8:03 PM
To: Steve.Scheve@bakerbotts.com
Cc: PAUL.FEHLNER@bakerbotts.com; Jeffrey.Sullivan@bakerbotts.com;
linda.glover@bakerbotts.com; Lisa.Chiarini@bakerbotts.com; sipz25@aol.com
Subject: Abraxis: Desai deposition

Dear Steve,

As you are aware, you told the Court that Elan only needed three outside counsel to have access to Abraxane Secret Manufacturing Information. Nevertheless Elan chose not to list you among the five attorneys whom Abraxis agreed could have access to Abraxane Secret Manufacturing Information. That was Elan's decision. As you also know, Elan waited three weeks to respond to Abraxis' initial proposal regarding a final revised Protective Order to replace the Interim Order. That also was Elan's decision. Yet again it appears that Elan is prepared to use its own dilatory prosecution of this litigation to stall discovery. Abraxis objects to this tactic.

Nevertheless, to help Elan out in this situation -- even though Elan created it -- we propose the following:

1. We will undertake a second review this weekend of Neil Desai's laboratory notebooks posted on IntraLinks and reduce designations to Restricted Confidential where appropriate. Hard copies of any such notebooks with reduced designations would be provided to you on Monday, July 16.

2. We will permit Elan to split its 7 hours' time with Dr. Desai between two attorneys:

        (a) you may examine Dr. Desai on July 19 with respect to Restricted Confidential information and documents. This part of the transcript would be separately bound

        (b) one of the five designated outside counsel in the Interim Order may examine Dr. Desai regarding Secret Abraxane Manufacturing Information on July 19 after or before your examination. This transcript will be treated as specified below.

3. With respect to 2(b): We will make two hard copies of Dr. Desai's notebooks on Intralinks available at Dr. Desai's deposition to one of the five counsel specified in the Interim Order who is taking Dr. Desai's deposition on that subject matter. The notebooks may not leave the deposition room and a Morrison & Foerster employee will be present at all times while the notebooks are in Elan's custody. One of the notebook copies may be marked as exhibits. The other copy set will be returned to us after the deposition. Elan will agree that we will keep custody of these deposition exhibits, which we will promptly post on IntraLinks. Elan will also agree that this portion of the deposition transcript will not be provided to it or its counsel by the court reporter. Rather, the court reporter will provide this transcript to us and we will promptly post it on IntraLinks.

4. Of course, this is an interim solution. When the Court enters an Amended Protective Order governing treatment of the Abraxane Secret Manufacturing Information, the terms of that Order shall govern treatment of that portion of Dr. Desai's transcript and exhibits.

Please let me know tomorrow whether Elan will proceed with Dr. Desai's deposition on July

19.

Emily


-----Original Message-----
From: lori.druckenbrodt@bakerbotts.com [mailto:lori.druckenbrodt@bakerbotts.com]
Sent: Friday, July 13, 2007 1:49 PM
To: Evans, Emily A.
Cc: Steve.Scheve@bakerbotts.com; PAUL.FEHLNER@bakerbotts.com;
Jeffrey.Sullivan@bakerbotts.com; linda.glover@bakerbotts.com;
Lisa.Chiarini@bakerbotts.com; sipz25@aol.com
Subject: Elan Pharma International Limited vs Abraxis BioScience Inc.

On behalf of Stephen E. Scheve, attached please find the above referenced letter.

Thank you.

Lori Druckenbrodt
Legal Secretary to:
Stephen E. Scheve, Partner
Linda M. Glover, Associate
Cheri Thomas, Associate
Jacqueline Lowe, Paralegal

Baker Botts LLP
910 Louisiana, One Shell Plaza
Houston, Texas 77002
phone: (713) 229-2059
fax: (713) 229-1522
email:  lori.druckenbrodt@bakerbotts.com


  <<July 13 2007 ltr to Dr. Emily Evans.PDF>>

# EXHIBIT P

**From:** Evans, Emily A.
**Sent:** Saturday, July 14, 2007 4:30 PM
**To:** 'PAUL.FEHLNER@bakerbotts.com'; Steve.Scheve@bakerbotts.com
**Cc:** Jeffrey.Sullivan@bakerbotts.com; linda.glover@bakerbotts.com; Lisa.Chiarini@bakerbotts.com; sipz25@aol.com; Jennifer.Cozeolino@bakerbotts.com
**Subject:** RE: Abraxis: Desai deposition

Thank you.  I will confirm with you on Monday whether Ci will be available on Friday.

---

**From:** PAUL.FEHLNER@bakerbotts.com [mailto:PAUL.FEHLNER@bakerbotts.com]
**Sent:** Saturday, July 14, 2007 3:55 PM
**To:** Evans, Emily A.; Steve.Scheve@bakerbotts.com
**Cc:** Jeffrey.Sullivan@bakerbotts.com; linda.glover@bakerbotts.com; Lisa.Chiarini@bakerbotts.com; sipz25@aol.com; Jennifer.Cozeolino@bakerbotts.com
**Subject:** Re: Abraxis: Desai deposition

Yes, and Ci on Friday.

Regards,

Paul

----- Original Message -----
From: Evans, Emily A. <EEvans@mofo.com>
To: Fehlner, Paul F.; Scheve, Steve
Cc: Sullivan, Jeffrey D.; Glover, Linda; Chiarini, Lisa; sipz25@aol.com <sipz25@aol.com>
Sent: Sat Jul 14 16:33:22 2007
Subject: RE: Abraxis: Desai deposition

Paul,

Please clarify whether Elan will be taking Dr. Desai's deposition on July 19.

Thank you,

Emily

_____

From: PAUL.FEHLNER@bakerbotts.com [mailto:PAUL.FEHLNER@bakerbotts.com]
Sent: Saturday, July 14, 2007 1:43 PM
To: Evans, Emily A.; Steve.Scheve@bakerbotts.com

Cc: Jeffrey.Sullivan@bakerbotts.com; linda.glover@bakerbotts.com; Lisa.Chiarini@bakerbotts.com; sipz25@aol.com
Subject: Re: Abraxis: Desai deposition


Emily:

We stand by Steve Scheve's letter of the 13th.

The Interim Protective Order was just that, an interim order designed to facilitate document review. Abraxis could not reasonably expect that this order would control use of documents in the litigation, and any contention otherwise is specious, bordering on disingenuous. Restricting some Baker Botts attorneys from access to information that is relevant (by Elan's determination) is unprofessional, illogical, and inappropriate.  Either all Baker Botts attorneys are capable of adherence to our ethical obligations or none of us are.  By conceding that some of us are, Abraxis concedes that we all are.

At this point Abraxis must do its part and make available the exhibits Elan will use in its examination of Dr. Desai.  Abraxis should consider carefully before it improperly interferes with yet another deposition.

Best regards,

Paul


Paul Fehlner
Tel. 212.408.2527
Cell 917.826.9452
Fax 212.259.2527

mailto:paul.fehlner@bakerbotts.com


----- Original Message -----
From: Evans, Emily A. <EEvans@mofo.com>
To: Scheve, Steve
Cc: Fehlner, Paul F.; Sullivan, Jeffrey D.; Glover, Linda; Chiarini, Lisa; sipz25@aol.com <sipz25@aol.com>
Sent: Fri Jul 13 22:02:57 2007
Subject: Abraxis: Desai deposition

 Dear Steve,

As you are aware, you told the Court that Elan only needed three outside counsel to have access to Abraxane Secret Manufacturing Information. Nevertheless Elan chose not to list you among the five attorneys whom Abraxis agreed could have access to Abraxane Secret Manufacturing Information.  That was Elan's decision.  As you also know, Elan waited three weeks to respond to Abraxis' initial proposal regarding a final revised Protective Order to replace the Interim Order.  That also was Elan's decision.  Yet again it appears that Elan is prepared to use its own dilatory prosecution of this litigation to stall discovery.  Abraxis objects to this tactic.

Nevertheless, to help Elan out in this situation -- even though Elan created it -- we propose the following:

1.  We will undertake a second review this weekend of Neil Desai's laboratory notebooks posted on IntraLinks and reduce designations to Restricted Confidential where appropriate.  Hard copies of any such notebooks with reduced designations would be provided to you on Monday, July 16.

2. We will permit Elan to split its 7 hours' time with Dr. Desai
between two attorneys:

    (a) you may examine Dr. Desai on July 19 with respect to
Restricted Confidential information and documents. This part of the
transcript would be separately bound

    (b) one of the five designated outside counsel in the Interim
Order may examine Dr. Desai regarding Secret Abraxane Manufacturing
Information on July 19 after or before your examination. This
transcript will be treated as specified below.

3. With respect to 2(b): We will make two hard copies of Dr. Desai's
notebooks on Intralinks available at Dr. Desai's deposition to one of
the five counsel specified in the Interim Order who is taking Dr.
Desai's deposition on that subject matter. The notebooks may not leave
the deposition room and a Morrison & Foerster employee will be present
at all times while the notebooks are in Elan's custody. One of the
notebook copies may be marked as exhibits. The other copy set will be
returned to us after the deposition. Elan will agree that we will keep
custody of these deposition exhibits, which we will promptly post on
IntraLinks. Elan will also agree that this portion of the deposition
transcript will not be provided to it or its counsel by the court
reporter. Rather, the court reporter will provide this transcript to us
and we will promptly post it on IntraLinks.

4. Of course, this is an interim solution. When the Court enters an
Amended Protective Order governing treatment of the Abraxane Secret
Manufacturing Information, the terms of that Order shall govern
treatment of that portion of Dr. Desai's transcript and exhibits.

Please let me know tomorrow whether Elan will proceed with Dr. Desai's
deposition on July 19.

Emily


-----Original Message-----
From: lori.druckenbrodt@bakerbotts.com
[mailto:lori.druckenbrodt@bakerbotts.com]
Sent: Friday, July 13, 2007 1:49 PM
To: Evans, Emily A.
Cc: Steve.Scheve@bakerbotts.com; PAUL.FEHLNER@bakerbotts.com;
Jeffrey.Sullivan@bakerbotts.com; linda.glover@bakerbotts.com;
Lisa.Chiarini@bakerbotts.com; sipz25@aol.com
Subject: Elan Pharma International Limited vs Abraxis BioScience Inc.

On behalf of Stephen E. Scheve, attached please find the above
referenced letter.

Thank you.

Lori Druckenbrodt
Legal Secretary to:
Stephen E. Scheve, Partner
Linda M. Glover, Associate
Cheri Thomas, Associate
Jacqueline Lowe, Paralegal

Baker Botts LLP

910 Louisiana, One Shell Plaza
Houston, Texas 77002
phone: (713) 229-2059
fax: (713) 229-1522
email:  lori.druckenbrodt@bakerbotts.com


 <<July 13 2007 ltr to Dr. Emily Evans.PDF>>

======================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice
concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice
is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

======================================================================

This message contains information which may be confidential and privileged.  Unless you are the addressee (or authorized to
receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the
message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the
message.
======================================================================



======================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice
concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice
is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

======================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to
receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the
message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the
message.
======================================================================

# EXHIBIT Q

**From:** PAUL.FEHLNER@bakerbotts.com [mailto:PAUL.FEHLNER@bakerbotts.com]
**Sent:** Saturday, July 14, 2007 1:43 PM
**To:** Evans, Emily A.; Steve.Scheve@bakerbotts.com
**Cc:** Jeffrey.Sullivan@bakerbotts.com; linda.glover@bakerbotts.com; Lisa.Chiarini@bakerbotts.com; sipz25@aol.com
**Subject:** Re: Abraxis: Desai deposition

Emily:

We stand by Steve Scheve's letter of the 13th.

The Interim Protective Order was just that, an interim order designed to facilitate document review. Abraxis could not reasonably expect that this order would control use of documents in the litigation, and any contention otherwise is specious, bordering on disingenuous. Restricting some Baker Botts attorneys from access to information that is relevant (by Elan's determination) is unprofessional, illogical, and inappropriate. Either all Baker Botts attorneys are capable of adherence to our ethical obligations or none of us are. By conceding that some of us are, Abraxis concedes that we all are.

At this point Abraxis must do its part and make available the exhibits Elan will use in its examination of Dr. Desai. Abraxis should consider carefully before it improperly interferes with yet another deposition.

Best regards,

Paul


Paul Fehlner
Tel. 212.408.2527
Cell 917.826.9452
Fax 212.259.2527

mailto:paul.fehlner@bakerbotts.com



----- Original Message -----
From: Evans, Emily A. <EEvans@mofo.com>
To: Scheve, Steve
Cc: Fehlner, Paul F.; Sullivan, Jeffrey D.; Glover, Linda; Chiarini, Lisa; sipz25@aol.com <sipz25@aol.com>
Sent: Fri Jul 13 22:02:57 2007
Subject: Abraxis: Desai deposition

 Dear Steve,

As you are aware, you told the Court that Elan only needed three outside

counsel to have access to Abraxane Secret Manufacturing Information. Nevertheless Elan chose not to list you among the five attorneys whom Abraxis agreed could have access to Abraxane Secret Manufacturing Information. That was Elan's decision. As you also know, Elan waited three weeks to respond to Abraxis' initial proposal regarding a final revised Protective Order to replace the Interim Order. That also was Elan's decision. Yet again it appears that Elan is prepared to use its own dilatory prosecution of this litigation to stall discovery. Abraxis objects to this tactic.

Nevertheless, to help Elan out in this situation -- even though Elan created it -- we propose the following:

1. We will undertake a second review this weekend of Neil Desai's laboratory notebooks posted on IntraLinks and reduce designations to Restricted Confidential where appropriate. Hard copies of any such notebooks with reduced designations would be provided to you on Monday, July 16.

2. We will permit Elan to split its 7 hours' time with Dr. Desai between two attorneys:

    (a) you may examine Dr. Desai on July 19 with respect to Restricted Confidential information and documents. This part of the transcript would be separately bound

    (b) one of the five designated outside counsel in the Interim Order may examine Dr. Desai regarding Secret Abraxane Manufacturing Information on July 19 after or before your examination. This transcript will be treated as specified below.

3. With respect to 2(b): We will make two hard copies of Dr. Desai's notebooks on Intralinks available at Dr. Desai's deposition to one of the five counsel specified in the Interim Order who is taking Dr. Desai's deposition on that subject matter. The notebooks may not leave the deposition room and a Morrison & Foerster employee will be present at all times while the notebooks are in Elan's custody. One of the notebook copies may be marked as exhibits. The other copy set will be returned to us after the deposition. Elan will agree that we will keep custody of these deposition exhibits, which we will promptly post on IntraLinks. Elan will also agree that this portion of the deposition transcript will not be provided to it or its counsel by the court reporter. Rather, the court reporter will provide this transcript to us and we will promptly post it on IntraLinks.

4. Of course, this is an interim solution. When the Court enters an Amended Protective Order governing treatment of the Abraxane Secret Manufacturing Information, the terms of that Order shall govern treatment of that portion of Dr. Desai's transcript and exhibits.

Please let me know tomorrow whether Elan will proceed with Dr. Desai's deposition on July 19.

Emily


-----Original Message-----
From: lori.druckenbrodt@bakerbotts.com
[mailto:lori.druckenbrodt@bakerbotts.com]
Sent: Friday, July 13, 2007 1:49 PM
To: Evans, Emily A.

Cc: Steve.Scheve@bakerbotts.com; PAUL.FEHLNER@bakerbotts.com;
Jeffrey.Sullivan@bakerbotts.com; linda.glover@bakerbotts.com;
Lisa.Chiarini@bakerbotts.com; sipz25@aol.com
Subject: Elan Pharma International Limited vs Abraxis BioScience Inc.

On behalf of Stephen E. Scheve, attached please find the above
referenced letter.

Thank you.

Lori Druckenbrodt
Legal Secretary to:
Stephen E. Scheve, Partner
Linda M. Glover, Associate
Cheri Thomas, Associate
Jacqueline Lowe, Paralegal

Baker Botts LLP
910 Louisiana, One Shell Plaza
Houston, Texas 77002
phone: (713) 229-2059
fax: (713) 229-1522
email: lori.druckenbrodt@bakerbotts.com


<<July 13 2007 ltr to Dr. Emily Evans.PDF>>

===============================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice
concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice
is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

===============================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to
receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the
message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the
message.
===============================================================================

# EXHIBIT R

# REDACTED IN ITS ENTIRETY

# EXHIBIT S

**From:** PAUL.FEHLNER@bakerbotts.com [mailto:PAUL.FEHLNER@bakerbotts.com]
**Sent:** Monday, July 16, 2007 5:38 PM
**To:** Kruze, Diana B.
**Cc:** Lisa.Chiarini@bakerbotts.com; linda.glover@bakerbotts.com; Steve.Scheve@bakerbotts.com; sipz25@aol.com; Evans, Emily A.; Jacobs, Michael A.; Walters, Eric S.; Jennifer.Cozeolino@bakerbotts.com
**Subject:** Re: Elan vs. Abraxis/Depositions

Diana:

Thanks for your email. As you note, we have already discussed Desai. We are on board at this point for the depositions of Louie, Tao, and Ci as outlined below, pending confirmation the Abraxis has produced the notebooks without redaction.

Also, per Emily's call of late this afternoon, we will examine Dr. Selvaraj on the 27th, presumably also at Morrison & Foerster's offices in LA.

Best regards,

Paul


----- Original Message -----
From: Kruze, Diana B. <DKruze@mofo.com>
To: Fehlner, Paul F.
Cc: Chiarini, Lisa; Glover, Linda; Scheve, Steve; sipz25@aol.com <sipz25@aol.com>; Evans, Emily A. <EEvans@mofo.com>; Jacobs, Michael A. <MJacobs@mofo.com>; Walters, Eric S. <EWalters@mofo.com>
Sent: Mon Jul 16 15:07:00 2007
Subject: Elan vs. Abraxis/Depositions

Hi Paul,

I am writing to confirm dates and locations for the remaining Abraxis witnesses noticed by Elan. You confirmed this weekend that Elan will be taking Dr. Desai's deposition this Thursday. We will make Leslie Louie, Chunlin Tao, and Sherry Ci available for deposition on the dates noticed by Elan. The dates are as follows:

| | |
|---|---|
| Neil Desai | July 19 |
| Leslie Louie | July 26 |
| Chunlin Tao | July 27 |
| Sherry Ci | July 30 |

All these depositions will take place at Morrison & Foerster's Los Angeles office.

Please let me know immediately if Elan will not proceed with any of these depositions. Thanks so much.

Re: Elan vs. Abraxis/Depositions                                                    Page 2 of 2

Case 1:06-cv-00438-GMS        Document 277-2        Filed 08/20/2007        Page 60 of 100

Best regards,

Diana

Diana Kruze
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: 650.813.5649
Facsimile: 650.494.0792
dkruze@mofo.com <http://www.mofo.com>

========================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
========================================================================

# EXHIBIT T

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                          -   -   -

 4   ELAN PHARMA INTERNATIONAL    :      Civil Action
     LIMITED,                     :
 5                                :
                  Plaintiff,      :
 6                                :
         v.                       :
 7                                :
     ABRAXIS BIOSCIENCE INC.,     :
 8                                :
                  Defendant.      :      No. 06-438-GMS
 9                          -   -   -

10                     Wilmington, Delaware
                       Monday, July 16, 2007
11                          4:00 p.m.
                       Telephone Conference
12                          -   -   -

13   BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge

14   APPEARANCES:

15          JOHN G. DAY, ESQ.
            Ashby & Geddes
16                  -and-
            PAUL FEHLNER, ESQ., and
17          LINDA GLOVER, ESQ. (Houston, Texas)
            Baker Botts LLP
18          (New York, New York)

19                          Counsel for Plaintiff

20          ELENA C. NORMAN, ESQ.
            Young Conaway Stargatt & Taylor, LLP
21                  -and-
            MICHAEL A. JACOBS, ESQ., and
22          EMILY A. EVANS, ESQ.
            Morrison & Foerster
23          (San Francisco, California)

24                          Counsel for Defendant

25
```

1              THE COURT:  Good afternoon, counsel.  Counsel,

2       who is on the line for the plaintiff?

3              MR. DAY:  Good afternoon, Your Honor.  On behalf

4       of plaintiff Elan Pharma you have John Day from Ashby &

5       Geddes locally.  With me on the line from Baker & Botts in

6       Texas, Linda Glover, and from Baker & Botts in New York,

7       Paul Fehlner.

8              UNIDENTIFIED SPEAKER:  Good afternoon, Your

9       Honor.

10             UNIDENTIFIED SPEAKER:  Good afternoon, Your

11      Honor.

12             THE COURT:  For the defendant.

13             MS. NORMAN:  For defendants, Your Honor, Elena

14      Norman from Young Conaway locally.  With me are Emily Evans

15      and Michael Jacobs from Morrison & Foerster in California.

16             UNIDENTIFIED SPEAKER:  Good afternoon, Your

17      Honor.

18             THE COURT:  Good afternoon.

19             I am taking this call, counsel, because I

20      understand that there are pending depositions scheduled for

21      Thursday and Friday.  Is that correct?

22             UNIDENTIFIED SPEAKER:  That's correct, Your

23      Honor.

24             THE COURT:  As promised, I think reflected in an

25      oral order that is on the docket, I had referred the matter

1  elsewhere for discovery disputes.  That was going to be to a

2  discover master.  In the interim, it has developed that our

3  new Magistrate Judge will be sworn in effective August the

4  6th.  Future disputes will be referred to Judge Stark.

5           So let's go ahead and find out what's going on.

6           MR. FEHLNER:  Paul Fehlner for plaintiff Elan,

7  Your Honor.

8           There are two issues facing us in the

9  depositions that are scheduled for this week.  One is a

10  designation by Abraxis of documents relating to their

11  manufacturing process as secret manufacturing process

12  documents.  As part of an interim order following the last

13  conference concerning discovery problems, we agreed to

14  review documents on an online system in order to ascertain

15  or confirm their relevance to our case.  The defendants at

16  this time are trying to push the interim order to be the

17  controlling basis for using these documents.  As a

18  consequence, our lead trial counsel, who plans to take these

19  depositions, would actually be denied access to important

20  documents, including the notebooks of Dr. Neil Desai, the

21  deponent scheduled for Thursday, as well as manufacturing

22  process details.

23           In addition, Your Honor, at significant expense,

24  Elan went to two locations, one in Los Angeles, one in

25  Chicago, to review notebooks and identify relevant

 1    responsive information from the notebooks.  Abraxis did make

 2    those notes available to us.  But when we received the

 3    materials that we had identified from the notebooks, it

 4    wasn't whole notebooks, Your Honor.  It was selected

 5    packages.  We have found that substantial portions of these

 6    notebooks have been redacted.

 7              Your Honor, these are laboratory notebooks.  We

 8    have been told the redactions are related to privilege, and

 9    we simply can't understand it.  We have significant

10    redactions in notebooks of Neil Desai and Sherry Ci.  Ms.

11    Ci, or Dr. Ci, I can't remember which, is scheduled,

12    potentially scheduled to be deposed on Friday.  We were

13    waiting for confirmation of that.

14              This is our problem.

15              THE COURT:  Let's deal with the easy thing

16    first.  Is the other side prepared to confirm Dr. Ci's

17    availability for Friday?

18              MS. EVANS:  Actually, that was a possibility,

19    Your Honor, we had raised.  And we are sending an e-mail

20    today that will make her available on the date the

21    plaintiffs noticed her, which was July 30th.

22              THE COURT:  I don't have a calendar in front of

23    me.  Is that a no?

24              MS. EVANS:  Not this Friday, Your Honor.  The

25    notice date, July 30th.  We originally thought she might be

1    available earlier, but we are not going to be able to

2    provide her then.

3                    THE COURT:  Was that Mr. Fehlner or Ms. Glover

4    speaking?

5                    MR. FEHLNER:  That was Ms. Evans, Dr. Evans.

6                    THE COURT:  Who just outlined Elan Pharma's

7    position?

8                    MR. FEHLNER:  Mr. Fehlner, Your Honor.

9                    THE COURT:  Is that going to be satisfactory?

10                    MR. FEHLNER:  We would have no problem with

11    examining Dr. Ci on Monday, the 30th, Your Honor.  We still

12    have the issue with respect to Dr. Desai on Thursday.

13                    THE COURT:  I understand that.  Counsel, are we

14    now confirmed for Dr. Ci for Monday, the 30th, counsel for

15    Abraxis?

16                    MS. EVANS:  Yes, sir.

17                    THE COURT:  All right.  Let's get your response,

18    whoever is going to handle it, to Mr. Fehlner's concerns

19    regarding Dr. Desai.

20                    MR. JACOBS:  Your Honor, I will take it on.

21    Emily Evans will pick up on some of the other aspects of it.

22                    Let's break it down.  The question of Mr.

23    Scheve's access to secret information, this is one of the

24    evolutions of the issue of our manufacturing documents that

25    were so sensitive and you ordered us to produce based on

1    representations from Elan that they could live with more

2    limited access to these documents.  So they proposed three

3    attorneys having access to these documents on the call with

4    you.  They did that twice, it's in the transcript twice.

5            Then when it came time to negotiate the interim

6    protective order, they had asked for more, and we agreed on

7    five attorneys having access to these materials.  But they

8    never made Mr. Scheve one of those five.

9            So we just reached our limit on this, Your

10   Honor.  We could not agree to make it six when we were

11   already so flexible.

12           That is the issue of Mr. Scheve's access.

13           We had a work-around for the deposition that we

14   thought would work.  It was a work-around in which Mr.

15   Scheve would do the deposition on all but the portion that

16   related to secret information, and then somebody on the list

17   of five would handle that portion.  A departure from the

18   usual rule on one attorney taking a deposition, but we

19   thought that was what would work.  And we had other

20   work-arounds to deal with the restriction on access to that

21   material.  That was our counterproposal.  We think it is

22   reasonable on that question.

23           THE COURT:  Okay.  Mr. Fehlner.

24           MR. FEHLNER:  Thank you, Your Honor.

25           With respect to three attorneys-five attorneys,

1    we had offered to have three attorneys review the material

2    back in March.  By the time we got access to these

3    materials, it was the middle of June and we were approaching

4    the end of the discovery period, and consequently, having

5    three attorneys with access simply wouldn't have done.  Even

6    at that time we wanted to have attorneys to have access who

7    would be in a position to undertake review of the documents,

8    but I would add that the documents are not conveniently

9    located.

10           They were not produced to us for review nor were

11   we allowed to inspect them.  Instead, they have been posted

12   on a secure website, which is incredibly inconvenient.  But

13   nevertheless, we understood their concern and agreed to this

14   interim provision.

15           Your Honor, we are not aware of any basis for

16   restricting counsel from a firm where there is no sort of

17   conflict of interest or other basis for walling somebody

18   off, and that's not the case here.  In particular, we are

19   surprised that defendants believe that we would not want our

20   lead trial counsel to be able to review and have access to

21   the documents his more junior attorneys have identified as

22   relevant.

23           THE COURT:  The only basis that I could imagine,

24   one of the bases, apparently, was agreement, in responding

25   to your observation, Mr. Fehlner, that you know of no basis

1    for walling off.  And you may be right about that.  But it

2    sounds like there was agreement as to number.  Having said

3    that, I want to get Mr. Jacobs to respond to your point

4    regarding Mr. Scheve -- who is lead, as I understand it.  Is

5    that correct, Mr. Fehlner?

6                    MR. FEHLNER:  That is correct, Your Honor.

7                    THE COURT:  -- perhaps substituting him in lieu

8    of one of the more junior counsel.  Maybe that is a possible

9    suggestion.  I cannot imagine that we are on this call

10   simply because there is a concern about the number.

11                   Mr. Jacobs.

12                   MR. JACOBS:  It is a number to some degree, Your

13   Honor, in the sense that this is another lawyer in another

14   location in another firm.  Our concern from the beginning

15   has been the proliferation of access --

16                   THE COURT:  Understood.

17                   MR. JACOBS:  -- to these materials.  To review

18   the bidding on this, we told you --

19                   THE COURT:  Please, don't review the bidding.

20                   MR. JACOBS:  So I think that we do have a

21   concern about number and we have a concern about this

22   constant sort of rationing out.

23                   THE COURT:  What about Mr. Scheve's status as

24   lead trial counsel?

25                   MR. JACOBS:  I don't think that changes

1    anything, Your Honor.  Their proposal was three, then five,

2    and they didn't say five plus lead trial counsel.

3                    THE COURT:  Mr. Fehlner, are you prepared to

4    substitute someone, to move one off your list and put Mr.

5    Scheve on?

6                    MR. FEHLNER:  Your Honor, indeed, we made that

7    proposal, and the defendants rejected it.

8                    THE COURT:  Why would you reject that, Mr.

9    Jacobs, if the concern is proliferation?

10                   MR. JACOBS:  Because the people have already

11   been involved.  They already have access.  They already have

12   the materials, Your Honor.

13                   THE COURT:  Counsel, I am not going to play this

14   game.  Mr. Scheve is to have access to the materials in

15   order that he can be permitted to conduct a meaningful

16   deposition.  So that is an order of this Court.  Is that

17   clear?

18                   MR. JACOBS:  Yes, Your Honor, it is an order.

19                   MS. GLOVER:  Your Honor --

20                   THE COURT:  I just want to make sure so we don't

21   have to visit this again.  That is the end of the discussion

22   on that.  Who was that that was just attempting to speak?

23                   MS. GLOVER:  Your Honor, Linda Glover for Elan

24   as well.

25                   One of the other issues that we face is that

1    Abraxis has refused to provide us with any hard-copy

2    document of the material that is posted on the website.  As

3    Your Honor may know, it's pretty difficult to prepare for a

4    deposition without hard-copy documents.  We have asked for

5    one hard-copy document to be provided to us in advance of

6    the depositions.  And they have countered with one hard-copy

7    document to be provided at the deposition site.  We would

8    like prior access.

9              THE COURT:  Is that request unreasonable in your

10   view, Mr. Jacobs?

11             MR. JACOBS:  Your Honor, yes, it is.  Our

12   counterproposal is reasonable, Your Honor.  They can have

13   access electronically until they actually show up.  There is

14   no reason they can't have electronic access.

15             THE COURT:  What is the difficulty, Ms. Glover?

16   I do in a sense commiserate, but this is in the abstract,

17   with your observation about reading on a computer screen.  I

18   don't know the nature of the documents, the extent in terms

19   of volume and quality of presentation, those kinds of

20   things.

21             Maybe it would be helpful for me to understand

22   that.

23             MS. GLOVER:  Right.  For one thing, Your Honor,

24   some of the documents on the website are not fully visible.

25   So we were having difficulty with that.  We believe we have

1    corresponded with Abraxis about that.  That is one of the
2    issues.
3                    Also, as you might understand, you know, it's
4    helpful to, in preparing for deposition, to have the
5    document in front of you so you can highlight those portions
6    about which you want to ask questions so you are not
7    delaying the deposition or badgering the witness while you
8    look for it.
9                    THE COURT:  Right.  What is your proposal,
10   counsel?  Have you discussed -- this is addressed to you,
11   Ms. Glover and Mr. Jacobs, have you discussed -- let me ask
12   you, Ms. Glover:  Have you discussed or offered a solution
13   to address the concern that I suspect is inherent in the
14   objection to providing hard copy at least not until you
15   arrive?  Have you proposed something?
16                   MS. GLOVER:  We had proposed they send us one
17   hard-copy document that would be in the possession of one
18   attorney and that we would make copies just for that
19   deposition, and that immediately after the deposition any
20   documents that were not offered as exhibits would be
21   destroyed.
22                   THE COURT:  Mr. Jacobs, the representations of
23   your fellow attorneys who are officers of this Court are
24   insufficient in this regard?
25                   MR. JACOBS:  We have been trying to do

1    everything we can to, on the one hand, protect our client's

2    most sensitive information, and, on the other hand, make it

3    possible for them to proceed.

4            On the access to the documents, for example,

5    that Ms. Glover complained about, we have confirmed that

6    access is available, and it must be a technical issue on

7    their side.

8            THE COURT:  Ms. Glover's point resonates with me

9    just in terms of how human beings work and lawyers work in

10   preparing for depositions in order to effectively engage the

11   deponent.  I am sure you will agree that it is much easier

12   and more efficient for a lawyer to have available a paper

13   document so that they can work, if need be, from that

14   document.

15           MR. JACOBS:  What we have tried to do, Your

16   Honor, is ask the question, if we were on the other side

17   could we live with this.  Not would we be happy, not would

18   it be convenient.

19           THE COURT:  Let me interrupt again, because

20   quite frankly, Mr. Jacobs, I think it is your client's, what

21   I am going to -- I am trying to think of the words --

22   characterize as I think being overly concerned.  I

23   understand a reasonable level of concern about one's

24   proprietary information.  But in this instance, this tail is

25   not going to wag this dog, if you will pardon the

1    colloquialism.  There has been an effort to have exactly

2    that happen ever since you first raised this issue with the

3    Court in numerous previous discussions.  I have just had it

4    with it.

5         So provide a copy, one copy, so that they can

6    use it to prepare for this deposition.

7         MR. JACOBS:  We understand your order, Your

8    Honor.

9         THE COURT:  Anything else?

10         MR. FEHLNER:  Yes, Your Honor.  Paul Fehlner

11    again for Elan.

12         Your Honor, I mentioned earlier when I was

13    talking that the notebooks that we reviewed after requesting

14    that review from Abraxis on location and identified the

15    portions of notebooks that we would like copied and produced

16    have either been produced in redacted form or in some cases

17    into that website where they are accessible only to the

18    limited number of individual attorneys.

19         I would add that a number of pages that have

20    been produced into that restricted website clearly have

21    nothing to do with secret manufacturing processes.

22    Consequently, we are hamstrung again in our ability because

23    of the location of these documents.

24         More importantly, Your Honor, we have reviewed

25    these documents and identified pages as being relevant, and

1    the defendants have nevertheless produced them to us with

2    redactions.  Now, with one exception, that is the notebooks

3    of Dr. Neil Desai, where there may have been a small amount

4    of privileged information, we did not see anything that

5    struck us as privileged.  We understand the rules.  We

6    aren't trying to assert a waiver or anything like that, Your

7    Honor, because we appreciated the opportunity to look at the

8    notebooks.  But we are really amazed that after seeing the

9    notebooks they are still redacted.

10           We would ask for unredacted documents in order

11    to prepare for these depositions.

12                THE COURT:  Mr. Jacobs.

13                MR. JACOBS:  I will turn this over to Ms. Evans.

14                THE COURT:  Ms. Evans.

15                MS. EVANS:  Yes, Your Honor.  I have people at

16    the office right now re-reviewing all the redactions to

17    confirm that they are in fact due to attorney-client

18    privilege, Your Honor.  We will promptly produce anything

19    that was over-redacted.  We are also checking right now for

20    things that -- and will produce in restricted confidential

21    version anything that doesn't have the secret manufacturing

22    information.

23                I should say that one reason Mr. Fehlner is

24    seeing a lot of pages that don't have it is we produced

25    entire documents that have been previously redacted so they

1    would see the secret information in context, for example, in

2    the FDA documents.  So they are produced in redacted,

3    confidential form, then the full version in secret form

4    online.  We thought that would be helpful to them.

5              THE COURT:  Counsel?

6              MR. FEHLNER:  Your Honor, I understand Ms.

7    Evans' point on the comparison of the manufacturing process

8    redactions.  The issue that I am really speaking to here,

9    sir, is the notebooks.  First of all, this is a matter -- of

10   course, laboratory notebooks are not usually regarded as

11   significant repositories of privileged information.

12             THE COURT:  Point taken.

13             MR. FEHLNER:  And then we looked at these

14   notebooks, Your Honor.  We suspected that perhaps they were

15   redacting from the perspective of relevance.  But we had the

16   opportunity to look at them.  We identified the material

17   that on our review was relevant and responsive.  Yet it has

18   not been provided to us.  I would just add, we did this at

19   our expense, and it was no small dedication of time and our

20   client's money to get this done.

21             THE COURT:  How would you characterize the

22   extent of the redactions?

23             MR. FEHLNER:  Your Honor, from one review in Los

24   Angeles, we identified 39 separate either notebooks or

25   segments of notebooks.  Some designations would be multiple

1    pages or sections of pages from the same notebook.  We asked

2    for 39 let's call them sub-documents.  Your Honor, of those

3    39, only eight of them were produced to us in the form in

4    which we expected to receive them.  That is all the pages

5    that we marked without any redactions.  The other 31 were

6    redacted partially and in many cases completely.  We have,

7    Your Honor, notebooks that have the cover page, so we know

8    they have been provided to us, but we don't have the

9    information from the notebooks.

10            In addition, some stuff they gave us was

11   unidentifiable.

12            So we have, in some cases, requested material

13   from notebooks and have nothing to show for it.  It's quite

14   possible that some of the redactions that were essentially

15   blank pages when they got to us were from those notebooks,

16   but we would have no way to correlate that.

17            In any event, Your Honor, it just seemed absurd,

18   to say the least.

19            THE COURT:  Ms. Evans and Mr. Jacobs, I am going

20   to --

21            MS. EVANS:  Your Honor, please may I address

22   this?

23            THE COURT:  Go ahead.

24            MS. EVANS:  Thank you.

25            We just got the letter from Mr. Fehlner listing

1    all the documents that he thinks he didn't have.  I have had

2    people working on it this morning checking it.  He is just

3    wrong, Your Honor.  He needs to check the production we gave

4    him.  Of the notebooks in his letter, he has every single

5    one.

6            I don't know what the problem is.  We produced

7    the cover pages.  I had my people check.  They confirmed

8    they have all the pages.  There is only one notebook that we

9    are still looking into all the pages that were produced.

10   Every single other one that he has mentioned they have.

11   It's just people haven't looked carefully enough.

12           THE COURT:  That is a different point.

13           Mr. Fehlner.

14           MR. FEHLNER:  Your Honor, we looked very

15   carefully.  I haven't heard this particular issue.  Your

16   Honor, I notified Dr. Evans Friday afternoon that they may

17   see substantial redactions from the notice that were

18   provided to us.  And she replied there were redactions for

19   privilege.  This is the first we heard we actually got

20   everything we requested.  We did go through the effort of

21   categorically looking at -- we prepared a log when we were

22   onsite.  We did not take notes, per our agreement with the

23   defendants, about the documents we were reviewing, but we

24   had a log of all the pages that we requested.

25           I will sit down with the attorney who reviewed

1   this production and compared it to our log and make sure he

2   shows me all these redactions.

3               But, Your Honor, this is a very capable and

4   qualified attorney.  I have no doubt that he knows what he

5   is talking about.

6               Ms. Evans' point is taken.  We will confirm that

7   in fact they did redact substantial portions of the

8   notebooks that they produced.

9               MS. EVANS:  We will provide a letter with the

10  Bates numbers of all the pages (inaudible) today.  We are

11  putting final touches on that.  We have been working on

12  that.

13              THE COURT:  Okay.  So then that leaves one

14  notebook that you are reviewing.

15              MS. EVANS:  I understand there is one notebook

16  that we are still looking for the Bates numbers of all the

17  pages of.  If we haven't produced that, we will get that out

18  right away.

19              THE COURT:  All right.  I will leave the rest of

20  this, the notebook issue to counsel then.  It sounds like

21  there is not disagreement.  There may be, at least I will

22  say this, it seems that Abraxis agrees that, it says it has

23  already produced the pages in question, Mr. Fehlner, and if

24  it hasn't, I accept counsel at her word that she is going to

25  go back and take another look.

1          MR. JACOBS:  Your Honor, we are in principled

2    agreement.  That is, our only intent was to redact for

3    privilege.  If there were over-redactions, we will fix it.

4          THE COURT:  Okay.

5          MR. JACOBS:  Do it right away.

6          THE COURT:  That may be in the eye of the

7    beholder, the fix, that is, I understand that.  But I want

8    to keep everyone mindful of the Court's concern here, so

9    that there not be over-redaction.  I have tried to make

10   myself clear on that point, the underlying point.

11         MR. JACOBS:  We hear Your Honor.

12         THE COURT:  All right.  Anything else from

13   either party?

14         MS. GLOVER:  Your Honor, just one point I would

15   like to make.  That is that the discovery deadline is July

16   30th, which is right around the corner.  Elan has submitted

17   a motion to the Court seeking an extension of the deadline,

18   for reasons that should be obvious.

19         THE COURT:  That's probably exactly the way that

20   I don't want to have that kind of issue raised with me,

21   because it's a motion.  It's not going to be attended as

22   quickly as I have tried to share my preference.  My

23   requirement is that issues of this nature be raised in the

24   same manner as you raise discovery dispute matters, so we

25   can attend them quickly.  A motion is not going to be

1    addressed quickly, as quickly as a TC.  Go ahead.

2                    MR. DAY:  Your Honor, the reason that we did it

3    in the form of a motion is that I wasn't sure how Your Honor

4    would prefer.  And I called and asked a member of your

5    staff, and she told me to do it in the form of a motion.

6                    THE COURT:  That is understandable.  But that's

7    why I try -- I guess maybe I have to make everything patent

8    in the scheduling order, because I know that I said words

9    more or less to the effect that matters that involve this

10   type of thing need to be raised orally through TC, through

11   TC request, with the Court.  Otherwise, we are going to get

12   bogged down.

13                   A motion requires -- or at least there is an

14   entitlement to a response.  I am not going to act on a

15   motion, unless there is a stipulation that involves

16   agreement and an explanation for the agreement, as quickly

17   as I can react to a request for a TC.  So I understand why

18   my staff would have told you exactly what they told you.

19                   Are counsel in concurrence that you need

20   additional time?

21                   MS. GLOVER:  No, Your Honor.  Abraxis did file a

22   response, and they are opposed to our motion.

23                   THE COURT:  How much additional time is being

24   requested?

25                   MS. GLOVER:  I believe we asked until September

1    30th, Your Honor.

2              THE COURT:  What is the reason for that?

3              MS. GLOVER:  Well, there are three reasons, Your

4    Honor.  The first being the very late production of these

5    laboratory notebooks, which in a pharmaceutical patent case

6    go to the very heart of the issues between the parties.

7              The second was that Abraxis only recently

8    produced 260,000 pages of responsive documents.  Most of

9    these were responsive to the requests that we issued or

10   propounded in November of 2006.  And, Your Honor, most of

11   these documents were produced in response to your order of

12   May 3rd.

13             Finally, while I am recalling there was a third

14   reason, now I can't remember exactly what it was.  But those

15   were certainly two of the reasons that we set forth in our

16   motion.

17             THE COURT:  Perhaps you will get the third

18   reason when counsel responds.

19             MS. GLOVER:  I hope so, Your Honor.

20             THE COURT:  Counsel for Abraxis, who is going to

21   do this?

22             MR. JACOBS:  I will do this a bit, Your Honor,

23   on some of the scheduling issues, and I will turn it over to

24   Ms. Evans.

25             Our response, Your Honor, is to revisit how we

1    got to where we did, which is the following.

2              We had a scheduling conference with Your Honor

3    in which you set out the case schedule.  We actually asked

4    for a longer period.  Elan objected and asked for a shorter

5    period.  In that discussion, I was representing Abraxis,

6    Your Honor, and I pointed out that the only way this case

7    prolongs is if somehow we were, to mix the merits a little

8    bit, Your Honor, given the fact that Abraxane is an

9    amorphous drug, in order for them to allege a crystalline

10   claim they were going to be chasing a lot of rabbits and

11   therefore the discovery period would take longer.

12             Elan said, no, we want a short period.

13             You entered an order with a short period.  And

14   there is this little exchange in the transcript in which I

15   observed that Your Honor likes to keep to the deadlines you

16   set and that we would do everything we could to meet

17   whatever deadline you set, which is what we have done.

18             The history on timing is hard to capture in this

19   oral context, Your Honor.  We have largely been in step with

20   Elan.  So where Elan's electronic production has been

21   forthcoming, our electronic production has been forthcoming.

22   Where their notebooks have been produced, our notebooks have

23   been produced.  More recently, we have been ahead of Elan.

24   We have said, look, the deadline is coming, here are the

25   depositions, here are dates that people are available, even

1    before you have given us dates on your end, so that we could

2    meet the discovery cutoff.  And that's what we have been

3    trying very, very hard to do.

4              We have a large team of people on the case.  We

5    have hired additional people to do the document production.

6    It's costing our client about a million dollars a month.

7    And we would like to cut it off with the end of the

8    discovery cutoff.

9              Might there be some trailing issues we have to

10   clean up a little bit thereafter?  There usually are after a

11   discovery cutoff.  But we would like Your Honor to enforce

12   the deadline that Elan asked for and that you entered.

13             THE COURT:  Mr. Jacobs, could you address the

14   contention that at least in part, if not completely, the

15   reason, the impetus for the request is really Abraxis's

16   recent productions or late productions.

17             MR. JACOBS:  I think I will turn over, on the

18   exact mechanics of what was done, I better turn it over to

19   Ms. Evans.

20             MS. EVANS:  As to the notebooks, Your Honor, we

21   produced all our notebooks for inspection to settle all the

22   disputes with them about what we have produced and what we

23   considered responsive.  And after the inspection, Elan

24   selected a total of less than three boxes worth of

25   notebooks.  Many of them are overlapping with what we had

1    already produced.  Some of them are duplicative.  It is not

2    very voluminous.  It shouldn't delay anything.

3                    That is the notebooks, Your Honor.

4                    As to the 260,000 pages, Your Honor, those were

5    entirely e-documents, those were produced six weeks before

6    the discovery cutoff.  And we have gotten now 55,000

7    documents from Elan last week, 70,000 documents from Elan

8    the week before, much after that.  We are having trouble

9    digesting that, too.  But we are very serious about this

10   discovery cutoff, and we are going to suck it in and deal

11   with it and take our depositions and finish by the discovery

12   cutoff.

13                   In terms of the 260,000, Your Honor, the

14   e-documents, we had talked to Elan previously about having

15   earlier cutoffs for production of e-documents.  Elan didn't

16   want to do it.  As it turned out, we produced ours weeks

17   before they produced theirs.

18                   I don't think this is anything that is unusual

19   in a big patent case.  I don't think it is anything that

20   should delay living with the schedule that Your Honor set.

21                   THE COURT:  Counsel for Elan.

22                   MS. GLOVER:  Your Honor, first, if I may speak

23   to something that counsel for Abraxis said, which is that

24   Elan only recently produced its notebooks.  In fact, Elan

25   produced all of its laboratory notebooks by March 15.  Those

1    notebooks again, Your Honor, go to the heart of the issues

2    in this case.  Abraxis, however, produced its laboratory

3    notebooks less than 30 days before the cutoff of discovery.

4    Abraxis produced its manufacturing information to us less

5    than 30 days before the cutoff of discovery.

6           This is information that we need time to digest,

7    in addition to the 260,000 pages of documents, that we need

8    time to digest and analyze before we can even say, all

9    right, these are the people that we need to depose.

10           THE COURT:  Were the e-mails, I guess that is

11    the subject of the 260,000 pages, were they produced six

12    weeks before?

13           MS. GLOVER:  The e-mails were produced, the

14    260,000 pages were produced on June 14th, 2007.  That is

15    less than 30 business days before the currently scheduled

16    fact discovery deadline.  And, Your Honor, if I can make a

17    point --

18           THE COURT:  I am sorry.  Hold on just a second.

19    They were produced when?

20           MS. GLOVER:  On June 14.

21           THE COURT:  The cutoff is the 30th.

22           MS. GLOVER:  Yes, sir.

23           THE COURT:  That is more than a month.

24           MS. GLOVER:  Yes.  Your Honor, that constitutes

25    50 percent, over 50 percent of Abraxis's production.

1    Whereas our production of late is minimal in comparison.

2              THE COURT:  What is the subject matter of these

3    e-mails?  What is this electronic production?

4              MS. EVANS:  Your Honor, were you addressing me?

5              THE COURT:  Either one of you.

6              MS. EVANS:  I will take it, I guess.

7         Mostly it's drafts of clinical trials, drafts of

8    articles, lots of journal articles, advertising, you know,

9    materials, communications, safety communications with

10   doctors.  Just your general electronic document production.

11   The parties had agreed on electronic custodians.  And we

12   searched their files and produced -- it is very repetitive,

13   Your Honor.  A lot of it is extremely repetitive, having

14   reviewed some of it myself.  A lot of it is not -- we used

15   the search terms that we had agreed on with the other side.

16   But much of it is not particularly significant.

17        Also, Your Honor, I do want to point out that we

18   did produce what we consider to be the relevant lab

19   notebooks back in March and the manufacturing information

20   except as to the precise details back in March.  I wanted to

21   clarify that as well.

22             THE COURT:  Ms. Glover, do you disagree with Mr.

23   Jacobs's earlier observation that the Court acceded to a

24   schedule that was advanced by Elan?

25             MS. GLOVER:  Absolutely not, Your Honor.  We did

1    advocate for that schedule.  But, quite frankly, we thought

2    that both parties would produce in accordance with the

3    Federal Rules of Civil Procedure.  Instead, we have faced

4    many battles, as you know, in order to receive responsive

5    documents.  And that has been problematic for us.  To

6    receive everything at the tail-end of discovery has created

7    substantial difficulties for us.

8            THE COURT:  The main thing that I have heard

9    today that might be somewhat concerning is the production,

10   and I am not going to characterize it as late production or

11   production that was made outside of the Federal Rules.  I

12   don't know.  Mr. Jacobs, I think, correctly points out that

13   it's just too difficult to reconstruct orally the timing of

14   things here.  My main concern is that the plaintiff have an

15   adequate opportunity -- I will tell you right now I am not

16   going to give you until the end of September to review the

17   electronic production.  So you need to give me a better

18   sense of what it's going to take to complete that

19   enterprise.

20           MR. JACOBS:  Your Honor, if I might just refocus

21   slightly.  I think if I were in their shoes -- the

22   electronic production, we both have been basically on the

23   same schedule.  So I think Elan as the plaintiff really had

24   a responsibility to press the whole document production

25   issue forward on a more aggressive pace themselves and we

1    would have kept pace with them.  We were largely tracking

2    them.

3            On the notebook issue, I think there is a more

4    substantive point there.  There was one aspect of it that we

5    have litigated very aggressively, as Your Honor has noted,

6    because it's been such a big concern of our clients.  But

7    the total volume is still pretty small.  That's why we have

8    not felt we were, if you will, jamming, quote-unquote, by

9    insisting that the discovery schedule be maintained.  It is

10   just not that much material.

11           Is it dense scientifically?  Probably.  Does it

12   require analysis?  Almost certainly.  But we are doing the

13   same thing on our end as we keep track with them in

14   anticipation of the depositions that are coming up, we are

15   doing our preparation.

16           Elan is the plaintiff here.  They brought this

17   lawsuit.  We have told you along the way why we don't think

18   it has any merit.  We will get to that.  At the very least,

19   they should have moved the case along at a pace consistent

20   with their own discovery schedule.  It is just costing us a

21   fortune.

22           THE COURT:  Elan.

23           MS. GLOVER:  Your Honor, in response to that I

24   would remind the Court, and I am sure it's fully aware, that

25   we have sought -- this is our fourth discovery

1    teleconference before Your Honor.  And we had sought another

2    one in between the May 3 one and today.  We have attempted

3    to push the issues as much as we possibly can.  We know --

4                THE COURT:  I understand that.  But those issues

5    have had to do with the whole issue of proprietary

6    information -- not completely.  I would like to have you

7    react to Mr. Jacobs's statement or statements that both of

8    you have been tracking one another in the production of

9    certain of the documents, I think specifically he is talking

10    about the e-production.

11                MS. GLOVER:  I would agree that we have probably

12    tracked each other to an extent on the e-production.

13    However, I would not agree with him, and I would strongly

14    disagree with him, on the laboratory notebooks or the more

15    technical information.

16                THE COURT:  But both of your opponents make the

17    observation that in terms of the laboratory notebooks we are

18    not talking about that much information.

19                MS. GLOVER:  It is scientifically dense, Your

20    Honor.  It takes quite a bit of time to analyze it.  In

21    addition to which I would disagree with Dr. Evans's

22    characterization of the electronic data as being, you know,

23    as she described it, sort of peripheral information.  That

24    is not the case that we are finding.  We are finding

25    presentations.  We are finding technical data that has been

1    transferred by e-mail.  And it takes quite a bit of time to

2    decipher that information, to put it in perspective, analyze

3    it and prepare for depositions, go forward with depositions

4    on it.

5              MR. FEHLNER:  Your Honor, if I might add one

6    thing.  We believe the notebooks have been redacted.  We

7    will go back and check that.  Abraxis does not believe they

8    have redacted notebooks.  However, it leaves us in a very

9    tenuous position to push forward with discovery, scheduling

10   depositions and deposing witnesses with the gnawing

11   suspicion in the back of our minds that something is missing

12   and it might be important.  That has been a factor.

13             Dr. Evans pointed out, and Mr. Jacobs, also,

14   that they have set up the proposed schedules for certain

15   deponents and asked us to identify witnesses and times to

16   depose them.  And until we have been confident that we have

17   the documents that are important -- and this is primarily

18   laboratory notebooks -- we have been reluctant to use up our

19   depositions.  So that has clearly been a factor here and

20   continues to be from our perspective.

21             THE COURT:  That shouldn't continue to be a

22   factor going forward.  I think I have been heard on that

23   point by Abraxis.  I cannot imagine that would continue to

24   be an issue.

25             MR. FEHLNER:  We agree, Your Honor.  It is just

 1    that it is July 16th.  So some enlargement of time would be

 2    appropriate in view of the fact that we have simply not had

 3    confidence that the full production of the requested

 4    documents has been made by the defendants.

 5                THE COURT:  So making the request and putting a

 6    more realistic proposal before the Court, Mr. Fehlner, Ms.

 7    Glover, what would you like to ask for?  Because I am not

 8    giving you till the end of September.

 9                MS. GLOVER:  Well, Your Honor, would 45 days be

10    acceptable to the Court?

11                THE COURT:  Mr. Jacobs, from your perspective,

12    what would be a reasonable amount of time?  I know your

13    immediate answer would be none.

14                MR. JACOBS:  Right.

15                THE COURT:  In the spirit of compromise here --

16    and I do understand that this is costing dollars, real

17    dollars -- what would you counter-propose?

18                MR. JACOBS:  Let me tell you my answer and give

19    you two sentences why.  I think if they had two weeks, we

20    could get this all done.  The reason I say two weeks is we

21    actually have a schedule lined up --

22                THE COURT:  You have read my mind.  That's what

23    I am going to order at this stage of this discussion.

24                I will give you an additional two weeks, Elan.

25                MS. GLOVER:  Thank you, Your Honor.

```
 1                    MR. DAY:  Your Honor, one last thing.  In the
 2      interest of completeness here, the third point that was
 3      raised in our motion was a limitation placed by Abraxis on
 4      our experts' access to the documents that are posted on the
 5      secure website.
 6                    THE COURT:  That is a new substantive issue.  I
 7      didn't understand that to be --
 8                    MR. DAY:  That was the third issue Ms. Glover
 9      couldn't remember, Your Honor.
10                    THE COURT:  That had to do with the request for
11      additional time.  That is not going to impact my decision,
12      Mr. Day.
13                    MR. DAY:  I wanted to get it on the table.
14                    THE COURT:  You have got it.
15                    MR. JACOBS:  Your Honor, Mr. Day's comments
16      indicate properly that there are probably a half-dozen, six
17      to nine other outstanding issues between the companies on
18      various discovery issues.  We are in various stages of
19      trying to work those out or having reached impasse.  I
20      understood your first comment about reference to the
21      Magistrate Judge to be that we should await that
22      appointment.  I don't think any of us want to be cross-wise
23      with Your Honor's procedure about raising issues.
24                    THE COURT:  You are not going to have access to
25      anyone until the Magistrate Judge is installed, and the
```

1    installation date, that is the date that he will be sworn

2    in, is August the 6th.  And I shouldn't think that you would

3    need to have access, given the fact that we have met today,

4    to him before that time.

5              UNIDENTIFIED SPEAKER:  Your Honor, if I could

6    interpose.  Mr. Day's issue, though, about the expert access

7    to the secret Abraxis manufacturing process does pose an

8    issue for us in preparing depositions in that -- first of

9    all, we are having trouble with Abraxis in designating our

10   expert to review these --

11             THE COURT:  Isn't there a confidentiality

12   agreement in place in this case?

13             UNIDENTIFIED SPEAKER:  Your Honor, they are not

14   satisfied with the level of protection that the

15   confidentiality agreement -- sorry, the protective order

16   provides.  We have been going back and forth on an amended

17   protective order that includes a third designation, the

18   secret manufacturing process information.  But their

19   intention is to limit our experts to reviewing that

20   information at Morrison & Foerster offices in the United

21   States, not having hard copies of it, and if we care to

22   discuss it with them, it would have to be in Morrison &

23   Foerster's offices.

24             I appreciate that they will promise that we will

25   have a secure room and nobody will be listening.  But it's

 1    certainly an interesting, very convenient proposal on --

 2              THE COURT:  Mr. Jacobs and Ms. Evans, the spirit

 3    of my comments has to begin to take hold a little bit with

 4    your client.  I perceive this to be a client issue, not an

 5    attorney issue.  I am going to leave it there.  But in terms

 6    of these upcoming discussions, I want to offer that bit of

 7    guidance.

 8              Is that too obtuse or vague?

 9              MR. JACOBS:  No, Your Honor.  We appreciate

10    that.

11              THE COURT:  I guess, just to put a finer point

12    on it, I should hope that Judge Stark wouldn't have to

13    address this particular issue that has been previewed by

14    Elan.  Okay?

15              MR. JACOBS:  Understood, Your Honor.

16              THE COURT:  Anything else?

17              UNIDENTIFIED SPEAKER:  No.  Thank you, Your

18    Honor.

19              MR. JACOBS:  Your Honor, one tail end.  I am

20    getting kind of frantic e-mails about one aspect of the

21    ruling on the manufacturing documents in the deposition

22    preparation and how those will be handled, which is that we

23    would like to get those documents back after the deposition

24    or get a certification that they have been destroyed.  We

25    didn't want multiple copies floating around.

```
 1              THE COURT:  Seems reasonable.  Is there any
 2    difficulty with that, Elan?
 3              MS. GLOVER:  Your Honor, are we allowed to
 4    maintain one copy, but any copies we make for deposition
 5    would be destroyed and at the end of the litigation we would
 6    return our one copy?
 7              THE COURT:  Counsel, I will leave that for you
 8    all to resolve.  Take care.
 9              MR. JACOBS:  Your Honor, we will see you on
10    Tuesday for the claim construction hearing.
11              THE COURT:  Next Tuesday, you mean?
12              MR. JACOBS:  Yes.
13              THE COURT:  I was confusing that with a tutorial
14    I am about to have that I don't know why I agreed to in the
15    first place.
16              MR. JACOBS:  We will be concise, Your Honor.
17              THE COURT:  Thank you.  Take care, counsel.
18              (Telephone conference concluded at 4:47 p.m.)
19                          -   -   -
20    Reporter:  Kevin Maurer
21
22
23
24
25
```

# EXHIBIT U

**From:** PAUL.FEHLNER@bakerbotts.com [mailto:PAUL.FEHLNER@bakerbotts.com]
**Sent:** Tuesday, July 17, 2007 4:56 PM
**To:** Evans, Emily A.; Jacobs, Michael A.; Kruze, Diana B.
**Cc:** Steve.Scheve@bakerbotts.com; sipz25@aol.com; Jeffrey.Sullivan@bakerbotts.com;
linda.glover@bakerbotts.com; Lisa.Chiarini@bakerbotts.com; Jennifer.Cozeolino@bakerbotts.com;
Robert.Riddle@bakerbotts.com; SBalick@ashby-geddes.com; jday@ashby-geddes.com
**Subject:** Elan v. Abraxis: Desai Deposition
**Importance:** High

Counsel:

As I sit here at 7:50 pm EDT on July 17, Elan is not in possession of the complete set of documents necessary to prepare for the deposition of Dr. Neil Desai, currently scheduled for July 19.

- Despite assurances made by Abraxis' counsel before Judge Sleet, Abraxis has not produced all of the notebook pages Elan's counsel inspected in Los Angeles. Many of the documents were uploaded to Intralinks, despite Abraxis's assurances that the LA notebook inspection would not include "Secrete Abraxane Manufacturing Information." Moreover, on receipt of Dr. Evan's letter dated July 16, 2007 identifying the Bates ranges of the missing documents, we found that those numbers were not uploaded to Intralinks. We have had no chance to review these documents, much less prepare excerpts for examination of Dr. Desai. The specific deficiencies are identified in a separate letter.
- At the hearing on Monday, July 16, 2007, Judge Sleet ordered that Steve Scheve be granted access to all of the designated Secret Abraxane Manufacturing Information material on Intralinks. Despite Judge Sleet's order, that access has not yet been granted. Consequently, Mr. Scheve has not been able to review the documents identified by other attorneys as relevant, much less have the paper copies that are necessary to prepare for a deposition, as Judge Sleet himself recognized.
- Abraxis has not provided a copy of the following Desai notebooks: unnumbered notebook (see Inspection Log of Robert Riddle entry no. 110); 0006 (see Id. at entry no. 100); Temp-5719 (see Id. at entry no. 97).
- In a telephone conference in which I participated, Abraxis agreed to send as many Secrete Abraxane Manufacturing Information documents as possible for delivery this morning to make it possible to proceed with Dr. Desai's deposition. However, only redacted Desai notebooks were received by Elan's counsel this

morning. Elan has not been provided with unredacted CMC pages from the NDA for Abraxane or unredacted or Abraxane Manufacturing pages.

- Abraxis has assured Elan that it will provide all of the Secret Abraxane Manufacturing Information material by 9 am Central time tomorrow to our Houston office.  Even if Abraxis is able to keep its promise, and if Elan were to ignore the deficiencies and insufficiencies of the production today, and the insufficient posting of documents on Intralinks, Abraxis's promise presents an impossible dilemma:  Elan would be required to simultaneously select and review documents for use at the deposition and travel to Los Angeles for the deposition.  This is not reasonable or even possible.

For these and similar reasons, Elan plans to reschedule Dr. Desai's deposition from July 19, 2007 to an alternative date before the close of fact discovery on August 13, 2007.  Please provide alternative dates for Dr. Desai's deposition and please get us the unredacted documents that Abraxis promised to provide.  We know that Abraxis has redacted information that is not privileged and if Abraxis persists, we will ask for in camera review of the redacted pages and appropriate relief from the court.


Best regards,


Paul


**Paul F. Fehlner, Ph.D.**
Baker Botts L.L.P.
30 Rockefeller Plaza
New York, NY 10112


Tel. 212.408.2527
Cell 917.826.9452
Fax 212.259.2527
mailto:paul.fehlner@bakerbotts.com


CONFIDENTIALITY NOTICE. This email message and any attachments may be confidential and may be subject to the attorney-client privilege or other privilege. If you are not the intended recipient, please do not read, copy or re-send this email message or its attachments; immediately notify the sender by reply email or by collect call to 212.408.2500; and delete this email message and any attachments. Thank you for your assistance.

# EXHIBITS V-X

## REDACTED IN THEIR ENTIRETY