## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

ELAN PHARMA                )       **REDACTED**
INTERNATIONAL LIMITED,     )       **PUBLIC VERSION**
                           )
        Plaintiff,         )
                           )       C.A. No. 06-438-GMS
    v.                     )
                           )
ABRAXIS BIOSCIENCE, INC.,  )
                           )
        Defendant.         )
                           )

### PLAINTIFF ELAN PHARMA INTERNATIONAL LIMITED'S
### ANSWERING BRIEF TO DEFENDANT ABRAXIS BIOSCIENCE, INC.'S MOTION
### TO COMPEL RESPONSES TO ABRAXIS'S FOURTH SET OF INTERROGATORIES

*Of Counsel:*

Stephen E. Scheve
Linda M. Glover
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas  77042-4995
(713) 229-1659 Telephone

Paul F. Fehlner
Jeffrey D. Sullivan
Lisa A. Chiarini
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York  10112-4498
(212) 408-2527 Telephone

William J. Sipio
1375 Brentwood Road
Yardley, Pennsylvania  19067
(215) 801-3625 Telephone

Dated: August 30, 2007
183733.1

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware  19899-1150
(302) 654-1888 Telephone
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff,*
*Elan Pharma International Limited*

# TABLE OF CONTENTS

Page

I. Introduction ................................................................................................................... 1

II. Nature And Stage Of Proceedings .............................................................................. 1

III. Summary Of Argument............................................................................................... 2

IV. Statement Of Facts..................................................................................................... 2

    A. The Patents-In Suit............................................................................................... 2

    B. Abraxis's Interrogatories And Elan's Responses ................................................ 3

V. Argument ..................................................................................................................... 5

    A. Abraxis Is Not Entitled To Information Protected From Discovery By Attorney-Client
    Privilege Or Work Product Immunity Or Information That Does Not Exist .................... 5

    B. Elan's Reliance On Federal Rule 33(d) In Response To Abraxis's Interrogatories
    Is Proper And Sufficient (Interrogatory Nos. 22 And 31) ...................................... 8

    C. Elan's Responses To Interrogatories No. 17-20 and 33 Are Adequate And Proper......... 10

        1. Elan properly and adequately responded to interrogatory nos. 17-18 pursuant
        to Fed. R. Civ. P. 33(d) by identifying a discrete set of relevant documents ............ 10

        2. Elan properly stood on its objections in responding to interrogatory nos. 19-20
        based on the ambiguity, irrelevancy, and harassing nature of the subject matter of
        the interrogatories ................................................................................................ 11

        3. Elan's response to interrogatory no. 23 was proper and commensurate in scope
        with Abraxis's request ........................................................................................ 13

    D. Abraxis Is Not Entitled To Information Having No Relevance To  The Claims And
    Defenses In This Litigation Nor To That Which  Is Protected By Work Product Doctrine.
    Therefore, Elan's Objections And Responses to Interrogatory Nos. 25-26 Are Proper
    And Adequate .......................................................................................................... 15

    E. Elan Is Not Required By The Federal Rules To Surmise What Abraxis Means When
    It Propounds Interrogatories With Vague, Ambiguous, And Undefined Terms ............. 17

    F. Abraxis Has Exceeded The 50-Interrogatory Limit And Now Attempts To Renege
    On Its Agreement By Compelling Elan To Answer More Interrogatories Than Required
    By The Binding Agreement Made Between The Parties.................................................. 19

VI. Conclusion ................................................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Dey, L.P.,*
    287 F.3d 1097 (Fed. Cir. 2002)................................................................12

*Am. Chiropractic Assoc. v. Trigon Healthcare, Inc.,*
    No. 1-CV-00113, 2002 WL 534459 (W.D. Va. March 18, 2002)...................19

*Collens v. City of New York,*
    222 F.R.D. 249 (S.D.N.Y. 2004) .........................................................16

*Georgia-Pacific Corp. v. United States Plywood Corp.,*
    318 F. Supp. 1116 (S.D.N.Y. 1970),
    *modified and aff'd,* 446 F.2d 295 (2d. Cir. 1971) ............................16

*Highland Tank & Mfg. Co. v, PS Int'l, Inc.,*
    No. 3:04-100, 2007 WL 1576401 (W.D. Pa. May 31, 2007) .............................5

*Holmes v. Pension Plan of Bethlehem Steel Corp.,*
    213 F.3d 124 (3d Cir. 2000)................................................................5

*In re Cendant Corp. Secs. Litig.,*
    343 F.3d 658 (3d Cir. 2003)..........................................................6, 8

*Kendall v. GES Exposition Servs.,*
    174 F.R.D. 684 (D. Nev. 1997) ..........................................................20

*McKesson Corp. v. Islamic Republic of Iran,*
    138 F.R.D. 1 (D.D.C. 1991).................................................................18

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)........................................................11

*Plymovent Corp. v. Air Tech. Solutions, Inc.,*
    No. 05-351, 2007 WL 2199284 (D. N.J. Aug. 2, 2007))................................6

*Rowlin v. Ala. Dep't of Pub. Safety,*
    200 F.R.D. 459 (M.D. Ala. 2001) ......................................................16

*Startzell v. City of Philadelphia,*
    No. 05-05287, 2006 WL 2945226 (E.D. Pa. October 13, 2006) ..................16

*Valdez v. Ford Motor Co.,*
    134 F.R.D. 296 (D. Nev. 1991) .........................................................19

*Williams v. The Art Inst. of Atlanta,*
    No. 06-0285, 2006 WL 3694649 (N.D. Ga. Sept. 1, 2006)................................................16

## RULES

D. Del. L.R. 26.1.........................................................................................................1, 4

Fed. R. Civ. P. 11........................................................................................................7

Fed. R. Civ. P. 26...................................................................................................5, 6, 16

Fed. R. Civ. P. 33..................................................................................................*passim*

## TREATISE

*McGraw-Hill Dictionary of Scientific and Technical Terms* (1989)................................................3

## I. Introduction

Plaintiff Elan Pharma International Limited ("Elan") hereby presents its reasons for opposing, and its Answering Brief in response to, Defendant Abraxis BioScience, Inc.'s ("Abraxis's") Brief in Support Of Its Motion To Compel Responses To Its Fourth Set Of Interrogatories, served on August 13, 2007. *See* D.I. 260.

## II. Nature And Stage Of Proceedings

On July 19, 2006, Elan filed suit alleging that Abraxis infringes U.S. Patent Nos. 5,399,363 (the "'363 Patent") and 5,834,025 (the "'025 Patent") (collectively, the "Patents-In-Suit"). *See* D.I. 1. The '363 Patent is directed to a nanoparticulate anticancer drug composition. The '025 Patent is directed to an intravenous method of administering a nanoparticulate drug composition so as to avoid eliciting adverse hemodynamic effects. The accused product, Abraxane®, is a nanoparticulate anticancer drug composition, which is intravenously administered.

During the course of discovery, which ended on August 13, 2007, Abraxis propounded four sets of interrogatories containing in excess of the agreed-upon 50 interrogatory limit. *See* D.I. 11, Joint Status Report at 7 ("Absent later agreement between the Parties or Order of this Court, each Party should be limited to . . . 50 interrogatories, including subparts as provided by Delaware Local Rule 26.1 .. . .."). Now Abraxis seeks to renege on its agreement by moving this Court to compel Elan to respond to dozens of surplus interrogatories Abraxis had previously agreed not to propound, on topics that are either cumulative or far removed from relevant discovery. *See* Elan Exh. 1, Chart of Abraxis's Interrogatories.[1]

---

[1]  Citations to "Elan Exh. __" refer to the Exhibits attached to the Declaration Of Lisa A. Chiarini submitted contemporaneously herewith.

Only days before Abraxis's filing of its Motion to Compel Responses To Its Fourth Set of Interrogatories, *see* D.I. 259 (the " Second Motion"), Abraxis filed a first Motion To Compel Responses to Interrogatories And Production of Documents Referring To Abraxis Or Abraxane. *See* D.I. 234 (the "First Motion"). The First Motion and Second Motion both rehash the same baseless arguments. Abraxis's motivation in filing two motions just five days apart to insist upon the same argument can be for no reason other than to harass Elan, with no regard for judicial economy. *Compare* D.I. 235, Abraxis's Opening Brief In Support of First Motion at 6-7; 31-36 *with* D.I. 260, Abraxis's Opening Brief In Support of Second Motion at 3-4.

### III. <u>Summary Of Argument</u>

Elan does not dispute that Abraxis is entitled to discovery of relevant information pertaining to the Patents-In-Suit asserted against Abraxis in this litigation. Rather, Elan contends that:

(1)    Abraxis has propounded significantly more interrogatories than it was entitled to;

(2)    Abraxis is not entitled to discovery on information protected by either attorney client privilege and/or attorney work product; and

(3)    Elan's answers to date to Abraxis's interrogatories pursuant to Federal Rule 33(d) are proper and more than suffice to provide Abraxis with information relevant to the claims and defenses herein.

### IV. <u>Statement Of Facts</u>

A.    **The Patents-In Suit**

Both of the Patents-In-Suit relate to stable nanoparticles of active pharmaceutical compounds or drugs. "Stable" particles, in the context of the Patents-In-Suit, include particles

that have an effective average particle size[2] less than 1000 nanometers[3] (nm) *and* that are capable of maintaining such size range over time without clumping together into larger particles (or "aggregating"). One of the Patents-In-Suit, the '363 Patent, is directed to the actual "particles," which consist essentially of a crystalline anticancer drug and a non-crosslinked[4] surface modifier retained on the surface of the anticancer drug. The surface modifier prevents clumping of the particles by acting as a barrier between the particles[5] such that close contact is minimized and clumping (which would otherwise be caused by chemical attractions between the particles) is less likely to occur. Thus, the submicron size of the particles is maintained.

The other Patent-In-Suit, the '025 Patent, is directed to methods of administering a formulation of stabilized nanoparticles in a safe manner — a manner by which dangerous cardiovascular dysfunction ("hemodynamic effects") may be reduced or even eliminated. The inventors discovered that controlling the rate of administration of a formulation of stable nanoparticles, such that the nanoparticles are administered at an optimum infusion rate not exceeding 10 milligrams per minute by particle mass, could reduce or avoid adverse hemodynamic effects.

**B.    Abraxis's Interrogatories And Elan's Responses**

At the outset of the discovery period, the parties conferred on many occasions to negotiate the discovery process soon to be embarked on by both Abraxis and Elan. During those

---

[2]    An "effective average particle size" means that at least 90% of the particles have a number average particle size of less than 1000 nm. *See*, D.I. 271 Order Construing The Terms Of U.S. Patent Nos. 5,399,363 and 5,834,025, July 17, 2007

[3]    For perspective, the size of a pinhead is about 1,000,000 nm.

[4]    *See* Elan Exh. 2, A cross-link[age] is "the setting up of chemical links between the molecular chains of polymers." *McGraw-Hill Dictionary of Scientific and Technical Terms* (1989) at 456.

[5]    *See* Elan Exh. 3, U.S. Patent No. 5,145,684 at col. 8, ll. 22-29 (which is incorporated by reference into the '363 Patent at 1:7-11).

discussions, Abraxis and Elan agreed to a limit of no more than fifty (50) interrogatories per side, including subparts, as provided by the Delaware Local Rules. *See* D.I. 11, Joint Status Report at 7; D. Del. LR 26.1(a) (2007) ("Each subpart of an interrogatory or request shall be counted as a separate interrogatory or request."). Elan complied with this agreement. Abraxis did not.

Abraxis can point to no reason why it should not be held to the agreement that it made — to propound no more than fifty interrogatories, including subparts. Nor can Abraxis deny that its many compound interrogatories must be counted as constituting multiple discrete interrogatories under the Federal Rules of Civil Procedure and Delaware Local Rules. *See* Fed. R. Civ. P. 33(a); D. Del. LR 26.1(a).

Abraxis's profligate use of compound interrogatories in excess of the agreed numerical limit is undertaken without justification and for the purposes of seeking more discovery than that to which it is entitled. Accordingly, and as warranted by the Rules and policy considerations which strongly disfavor overly burdensome discovery demands, Elan properly lodged pertinent objections under the Federal Rules of Civil Procedure. *See* Abraxis Exh. 4,[6] Elan's Objections And Answers To Abraxis's Fourth Set Of Interrogatories. Rather than re-negotiate with Elan the binding Joint Status Report (D.I. 11), whose provisions Abraxis apparently now finds inconvenient, Abraxis instead attempts to breach the agreement by invoking the assistance and sanction of this Court for its overly-burdensome demands on Elan.

Abraxis burdens the Court and Elan by attempting, in its Second Motion, to reargue and recast arguments and assertions already stated in its still-undecided First Motion. What legitimate point can there be in such cumulative motion submissions? How is the Court's,

---

[6]    Citations to "Abraxis Exh. __ " refer to the Exhibits attached to the Declaration of Diana B. Kruze in Support of Defendant Abraxis BioScience, Inc.'s Motion to Compel Responses to Abraxis's Fourth Set of Interrogatories. D.I. 261.

or Elan's, time well-spent in chewing over again arguments that had no meat on them the first go-round?

## V. <u>Argument</u>

### A.    Abraxis Is Not Entitled To Information Protected From Discovery By Attorney-Client Privilege Or Work Product Immunity Or Information That Does Not Exist

It is well-settled that information protected by the attorney-client privilege or the attorney work product doctrine is generally not discoverable absent a special showing of substantial need and undue hardship, as enunciated in Fed. R. Civ. P. 26(b)(3). *Highland Tank & Mfg. Co. v, PS Int'l, Inc.*, Civ. No. 3:04-100, 2007 WL 1576401, at *5-6 (W.D. Pa. May 31, 2007) (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000)).  In accordance with that clear legal precedent, Abraxis is not entitled to information relating to Abraxis or Abraxane®, or any evaluation undertaken on Elan's behalf regarding Abraxane®, to the extent that such information or documentation was generated at the instruction of Elan's counsel for the purposes of developing Elan's claims and defenses herein.

Abraxis's First and Second Motions, particularly to the extent they demand further response to Abraxis's interrogatory no. 29, represent a transparent attempt to gain unwarranted access to Elan's privileged information and documents.  Indeed, Abraxis even admits that it seeks to compel production not just of information developed on a non-privileged basis inside Elan, but also of such clearly-undiscoverable information. *See* D.I. 260, Abraxis's Opening Brief In Support of Second Motion at 1 ("Further to its previous attempts to determine Elan's basis for this action, Abraxis served its Fourth Set of Interrogatories on June 29, 2007."). Pre- or post-filing investigation undertaken by or on direction of outside counsel, for the purpose of "determining [the] basis" of Elan's claims and defenses, and of further developing the same, is *prima facie* privileged information.

Abraxis has made no showing that would entitle it to pierce such privilege under any of the narrow doctrines allowing for production of privileged materials. Instead, Abraxis relies on the simply-false legal notion that an eventual testifying expert witness can be precluded from testifying on matters based on work-product analysis earlier performed by non-testifying experts or by counsel, unless the work product privilege is waived *ab initio*.[7] This is simply a misstatement of what the law and the Federal Rules actually provide. *Plymovent Corp. v. Air Tech. Solutions, Inc.*, No. 05-351, 2007 WL 2199284, at *3 (D. N.J. Aug. 2, 2007) ("Rule 26(b)(4)(B) thus creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances."); *In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 665 (3d Cir. 2003) ("Litigation consultants retained to aid in witness preparation may qualify as non-attorneys who are protected by the work product doctrine.").

Nor is Abraxis entitled to information that simply does not exist. Abraxis rehashes in the Second Motion its already-presented, and wholly speculative, lawyer argument that Elan simply must have conducted tests on Abraxane® internally and that such hypothetical tests are not protected from discovery. To this insistently-repeated but unsubstantiated lawyer testimony, Elan can only say what it said in response to the exact same contention when it was made in the First Motion:

> Whether Elan internally tested Abraxane® is another issue having no relevance to Abraxis's infringement or any other live issue. Yet Abraxis, based on unalloyed speculation, insists on inferring and implying (Motion at 6-7) that testing must have been done on Abraxane® within Elan (as opposed to in the potential context of privileged work

---

[7]    During a recent meet-and-confer teleconference, Abraxis's counsel articulated the position that unless the attorney work product testing on Abraxane was not produced prior to the end of fact discovery, then none of Elan's experts could testify to such testing during trial.

product pre-filing investigation by counsel) based on two e-
mails that do not establish that such testing took place.
Abraxis does so despite consistent and countervailing
testimony by Elan employees that no testing of Abraxane®
was ever carried out within Elan.

*See* D.I. 283, Elan's Answering Brief In Opposition To Abraxis's Motion To

Compel Response To Interrogatories And Production Of Documents Referring To Abraxis Or

Abraxane®, at 15.

Counsel for Elan has informed the Court (and Abraxis),
through its opposition to Abraxis's unfounded Motion
pursuant to Fed. R. Civ. P. 11, that Elan had identified a
more than sufficient basis for filing the complaint for patent
infringement against Abraxis and that testing of
Abraxane® had been performed. Abraxis now attempts to
take counsel's statements out of context to suggest that
such testing took place *at Elan* and that thus (yet again)
there simply *must* (based presumably again upon the
scientific "one would expect to see" standard) exist a
hidden mass of documentation for such non-existent
testing. *See* Motion. Again, Abraxis makes this inference
despite the sworn testimony of three Elan witnesses that no
testing took place within Elan. If the testing took place,
Abraxis's cross-examination of these witnesses should have
revealed it, unless Abraxis intends to take the next
egregious step and allege a conspiracy to falsify testimony
by Elan.

Abraxis's demands in the Motion for "Abraxane® testing"
information, while couched largely in terms of phantom
testing by Elan, is, at the end of the day a covert attempt to
secure a broad order compelling revelation of *all* tests or
analyses of Abraxane®. If such an Order were
improvidently granted, Abraxis clearly plans to compel
Elan to disclose and produce any underlying testing or
analyses of crystallinity and other properties of Abraxane®
conducted, for instance, by technologists working upon
direction of Elan's counsel in developing Elan's pre-filing
identification and further confirmation of the infringing
nature of Abraxane®.

But the law establishes clearly that such attorney-directed
information development and analysis is protected under
the attorney work product doctrine, at least until the time

-7-

> that an expert involved in such analysis is designated as a
> testifying expert.  *See generally In re Cendant Corp.
> Securities Litigation,* 343 F.3d 658.  Nevertheless, Abraxis
> prays that this Court should compel Elan to produce all its
> protected testing or alternatively preclude Elan from using
> the tests as evidence at trial.  Abraxis's argument is not
> only Draconian, it is not at all the law.

*Id.* at 39-40.

Abraxis's re-assertion, while the First Motion is still pending, of a speculative

demand for documents (or information) regarding Abraxane® testing within Elan that extensive

testimony reveals never took place is inexplicable, and no more worthy of relief than when first

stated.  Elan has no more responsive and non-privileged information or documentation on

"Abraxane® testing," or on references to Abraxane® or Abraxis, to offer in response to

Abraxis's unfounded hunches and speculations.   And because any privileged work-product

evaluation of Abraxane® conducted on direction of Elan's counsel is privileged and has not been

shown to be subject to a waiver of such privilege, it is impossible to see what relief the Court

could properly give to Abraxis on this issue.

**B.     Elan's Reliance On Federal Rule 33(d) In Response To Abraxis's Interrogatories
         Is Proper And Sufficient (Interrogatory Nos. 22 And 31)**

Abraxis's allegation that Elan's reliance on Federal Rule 33(d) is improper is

baseless. It is irrefutable that a party has a right to specify business records in lieu of a verbal

answer to an interrogatory when, as here:  (a) the answer to an interrogatory may be derived or

ascertained from the business records; (b) the burden of deriving or ascertaining the answer is

substantially the same for the party serving the interrogatory as for the party served; and (c) the

specification of documents is in sufficient detail to permit the interrogating party to locate and to

identify, as readily as can the party served, the records from which the answer may be

ascertained. *See* Fed. R. Civ. P. 33(d).

Elan's reliance on Rule 33(d) in responding to Abraxis's interrogatory no. 22 was nothing but proper.[8] Elan identified with specificity the *most* informative documents that exist from which the information sought by Abraxis can be ascertained. Indeed, nothing could be a more responsive, descriptive, and accurate reflection of testing conducted to measure hemodynamic effects than the testing reports themselves. Elan accordingly directed Abraxis to the specific study reports that describe the experimental protocols and results of the experiments on the tested species — dogs and rabbits — for hemodynamic effects as to which Abraxis inquired. Indeed, any attempt by Elan to make a shorthand characterization or paraphrase of these specific and detailed test results would have resulted in less, not more, clarity and informative value.

Elan is simply in no better position than is Abraxis to review the reports and ascertain the sought-after information. Scientific test reports are written to be read and readily understood by those of general scientific literacy in a particular technical field. Thus, Elan's characterization of these reports would add nothing to the information that they would convey to an informed reader. Accordingly, the burden of deriving an answer from the test result documents, which scientifically speak for themselves, and which reflect experiments that took place many years ago that are likely beyond the present recall of any of the participants, is substantially the same for both Elan and Abraxis.[9]

---

[8]     *See* Abraxis Exh. 3, Abraxis's Fourth Set Of Interrogatories at 5 ("Interrogatory No. 22: Please describe in detail testing by Elan or a Previous Owner that measured hemodynamic effects upon intravenous administration of Particulate Compositions to any mammalian species (including, but not limited to, humans, mice, rates, hamsters and rabbits), including by describing (1) the date and form of the experiments performed, (2) individuals who performed or evaluated the experiments, and (3) results of the experiments, and by identifying (including by Bates number) documents or other evidence constituting or referring to such research, development or testing.").

[9]

**REDACTED**

continued ...

Moreover, Abraxis deposed each inventor named on the '025 Patent, which relates to certain technology at issue in this interrogatory no. 22. Thus, Abraxis has had ample opportunity by discovery in this action to obtain the information it seeks. Elan properly relied upon Rule 33(d) in responding to Abraxis's interrogatory no. 22. Not only can the information sought by Abraxis be ascertained from the documents, but the burden of ascertaining the answer would be substantially the same for Abraxis as it would be for Elan, and the specifically-responsive documents were identified by a narrow Bates range of twenty-seven documents.

Abraxis's interrogatory no. 31 seeks Elan's contentions regarding physiological or other effects constituting "adverse hemodynamic effects" as that term is used in the '025 Patent. Elan initially objected to interrogatory no. 31 because at the time it had sought an impermissible legal conclusion when the Court had not yet ruled on claim construction. Elan also pledged that it would supplement its answers to Abraxis's Interrogatories. Elan is in the process of supplementing its answer to interrogatory no. 22 and will serve its answer upon Abraxis shortly.

## C.     Elan's Responses To Interrogatories No. 17-20 and 33 Are Adequate And Proper

1.     Elan properly and adequately responded to interrogatory nos. 17-18 pursuant to Fed. R. Civ. P. 33(d) by identifying a discrete set of relevant documents

As noted *supra* § IV.B, a party may point to specific business records in lieu of a verbal answer to an interrogatory when, as here: (a) the answer may be derived or ascertained from the records; (b) the burden of deriving or ascertaining the answer is substantially the same for the asking and answering parties; and (c) the documents are specified in sufficient detail to

---

**REDACTED**
, the production of the test results, and the opportunity to question witnesses who may have been involved in or aware of the tests many years ago, establishes clearly that Abraxis had a full and fair opportunity to learn everything within the possession, custody, and control of Elan or indeed of anyone regarding the circumstances and nature of these tests.

permit the asking party to locate and to identify, as readily as can the party served, the appropriate records. Fed. R. Civ. P. 33(d).

In its response to Abraxis's interrogatory nos. 17-18, Elan complied with this Rule. Specifically, for its response to Abraxis's interrogatory no. 17, regarding Elan's testing of Particulate Compositions containing bovine serum albumin, Elan identified ten (10) documents by Elan production number pursuant to Fed. R. Civ. P 33(d). *See* Abraxis Exh. 4, Elan's Objections And Answers To Abraxis's Fourth Set Of Interrogatories, at 12-14. Similarly, in responding to Abraxis's interrogatory no. 18, regarding Elan's testing of Particulate Compositions containing human albumin, Elan identified thirty-five (35) documents by Elan production number. *See id.* at 14-15. Many of these documents are only one to five pages in length. This level of identification certainly complies with Fed. R. Civ. P. 33(d).

2.    Elan properly stood on its objections in responding to interrogatory nos. 19-20 based on the ambiguity, irrelevancy, and harassing nature of the subject matter of the interrogatories

The only Patents-in-Suit here are the '363 Patent and the '025 Patent. Abraxis's interrogatory no. 19 seeks information about a phrase used in a pending Elan patent application that has no familial relationship to the Patents-in-Suit. *See* Abraxis Exh. 3, Abraxis's Fourth Set Of Interrogatories at 5 (requesting a description of "the facts on which Elan relied in making the statement in U. S. Patent Application Pub. No. 2003/0185869 that 'ineffective protein stabilizers include fibrinogen, globulin, albumin, and casein' . . . .").

Abraxis pulls a phrase in isolation out of a pending patent application unrelated to the Patents-In-Suit and seeks contentions regarding its context in the unrelated patent application in its interrogatory no. 19. Certainly, a term or phrase used in a patent or patent application must be read in the context of that particular patent document, from the viewpoint of one of skill in the relevant art at the time of that invention. *See, e.g., Phillips v. AWH Corp.,* 415 F.3d 1303, 1312

(Fed. Cir. 2005) (*en banc*).   Yet Abraxis attempts to request this information as if such information would lead to the discovery of admissible evidence.  It would not.

Interrogatory no. 19 is directed to completely irrelevant subject matter.   The patent application that is the subject of the interrogatory was filed in 2003 — eleven (11) years after the filing of the application that matured into the '363 Patent (*see* Abraxis Exh. 1, '363 Patent), and seven (7) years after the filing of the application that matured into the '025Patent. *See* Abraxis Exh. 2, '025Patent.  Most importantly, that application has no familial relationship to either of the Patents-in-Suit.   It is also well-settled law that within each application or application family, a patent applicant is entitled to serve as his own lexicographer, and that the meaning of words in each particular application or family can only be determined by reference to the entire specification and file history of that application or family (and not of an unrelated patent or other extraneous document). *Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097,1105 (Fed. Cir. 2002) (finding that statements made about the characteristics of a surfactant in one patent were not germane or binding as to the definition of a surfactant claimed in a second unrelated patent owned by the same party).

Abraxis's interrogatory no. 20 (below) also over-reaches by seeking a vast amount of information that Elan is simply not required to research and provide under the Federal Rules.

> [A]ny research, development or testing by Elan or a Previous Owner of Particulate Compositions containing proteins other than bovine serum albumin and human albumin, including by describing the date and form of the experiments performed, (2) individuals who performed or evaluated the experiments, and (3) results of the experiments and by identifying (including by Bates number) documents or other evidence constituting or referring to such research, development or testing.

*See* Abraxis Exh. 3, Abraxis's Fourth Set Of Interrogatories, at 4. Abraxis's definition of "Particulate Compositions" is overbroad and poses an improper and undue burden to Elan. *See, e.g.,* Abraxis Exh. 4, Elan's Objections And Answers To Abraxis's Fourth Set Of Interrogatories at 3, 17. Abraxis's refusal to limit its interrogatories to compositions covered by the Patents-in-Suit, or at least to compositions related to the Patents-In-Suit, or to include any temporal limitation to this interrogatory, is simply inappropriate. Indeed, Elan has already identified relevant documents relating to the Patents-In-Suit in response to Abraxis's interrogatories (for instance, interrogatory nos. 17-18 and 23), thus rendering interrogatory no. 20 duplicative and cumulative. Further, Abraxis has deposed every named inventor on the Patents-In-Suit and has had ample opportunity to discover information sought by the interrogatory.

3.    Elan's response to interrogatory no. 23 was proper
       <u>and commensurate in scope with Abraxis's request</u>

Abraxis's interrogatory no. 23 requests that Elan:

> Please describe testing or analysis by Elan, a Previous Owner or their licensees, of surface modifiers for use in the Particulate Compositions claimed in the '363 Patent prior to January 1, 1998, including by identifying all surface modifiers tested, and which were identified as suitable or not suitable for any particular agent, and if so, why or why not, by describing (1) the date and form of the experiments performed, (2) individuals who performed or evaluated the experiments, and (3) results of the experiments, and by identifying (including by Bates number) documents or other evidence referring to such testing or analysis.

*See* Abraxis Exh. 3, Abraxis's Fourth Set Of Interrogatories, at 5. Elan diligently identified *all* documents in its possession, custody, or control responsive to this overly broad interrogatory. Abraxis cannot now complain that a three page listing of documents was specifically identified in response — Elan was forced to identify several documents due to the

sheer breadth of Abraxis's request.  *See* D.I. 260, Abraxis's Opening Brief In Support Of Second Motion, at 7.  Receiving a broad response to an interrogatory it chose to draft broadly should not surprise or inconvenience Abraxis.  Abraxis would certainly have been free to focus its requests more specifically before the close of fact discovery, and indeed had and took the opportunity extensively to question deposition witnesses regarding experiments involving surface modifiers.

**REDACTED**

---

<sup>10</sup>

**REDACTED**

**REDACTED**

Abraxis thus clearly had the opportunity for full discovery on the subject matter in question.

**D.      Abraxis Is Not Entitled To Information Having No Relevance To
The Claims And Defenses In This Litigation Nor To That Which
Is Protected By Work Product Doctrine.  Therefore, Elan's Objections And
Responses to Interrogatory Nos. 25-26[11] Are Proper And Adequate**

Abraxis's requests for all licenses and agreements referring to and detailed descriptions of Elan's financial and business plans and forecasts of or for:  (a) the Patent-In-Suit; (b) the '684 Patent; (c) Related Applications and Patents; and (d) any other patents concerning

---

[11]      Elan only addresses in the instant discussion Abraxis's interrogatory nos. 25 and 26.  Abraxis's similar interrogatory nos.  35 and 36 are addressed in Section F *infra* because such interrogatories are (in addition to the reasons set forth in this Section as to interrogatory nos. 25-26), further improper because they are in excess of the fifty interrogatory limit.

Particulate Compositions, not only seek clearly irrelevant information, but are also on their face unduly burdensome and oppressive.

Abraxis's interrogatories are without time or specific technical subject matter qualification and would purport to reach any and all patents owned by Elan. Consequently, Abraxis's over-reaching interrogatory nos. 25 and 26, read literally, request information pertaining to any and all of Elan's license agreements and any and all of Elan's financial and business plans. These interrogatories clearly contravene the Federal Rules because they are overly burdensome and oppressive.

> [C]ourts have the duty to pare down overbroad discovery requests under Rule 26(b)(2), which provides that information may sometimes be withheld, even if relevant.

*Williams v. The Art Inst. of Atlanta,* No. 06-0285, 2006 WL 3694649, at *4 (N.D. Ga. Sept. 1, 2006) (quoting *Rowlin v. Ala. Dep't of Pub. Safety,* 200 F.R.D. 459, 461 (M.D. Ala. 2001)); *see also Startzell v. City of Philadelphia,* No. 05-05287, 2006 WL 2945226, at *5 (E.D. Pa. October 13, 2006) (quoting *Collens v. City of New York,* 222 F.R.D. 249, 253 (S.D.N.Y. 2004)) ("While Rule 26 still defines scope of discovery broadly, 'courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions . . . . not related to the alleged claims or defenses.'").

Further, Abraxis's interrogatories are not drawn to discoverable information insofar as they seek information not relevant to any claim or defense in this case. *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1138 (S.D.N.Y. 1970), *modified and aff'd,* 446 F.2d 295 (2d. Cir. 1971) (finding license not relevant to damages when it was not comparable to licenses for patented technology).

Elan's business is to provide stable formulations of small particles. Simply put, Elan's research and development covers nanoparticles having use across a wide range of

diagnostic and therapeutic subject matter areas, most of which are not related to the Patents-In-Suit. For instance, Elan's business includes research into particles potentially useful in treatment of neurodegenerative diseases such as Alzheimer's and Parkinson's Diseases, autoimmune disease such as multiple sclerosis and Crohn's disease, and severe chronic pain syndrome. *See* Exh. 8, Elan Webpage. Abraxis's overly-broad interrogatories would purport to require production of any license and/or agreement that pertain to any patent referring to nanoparticulate compositions for the aforementioned diseases, when the Patents-In-Suit only cover nanoparticulate anticancer formulations (the '363 Patent) or a method for intravenously administering nanoparticulate compositions (the '025 Patent). Clearly, Abraxis's attempt to obtain access to licenses negotiated in medical subject matter fields and drug markets very remote from those for nanoparticulate cancer drugs is excessively broad, would threaten third-party confidentiality interests, and is of no substantial relevance and any live issue in this case.

**E.    Elan Is Not Required By The Federal Rules To Surmise What Abraxis Means When It Propounds Interrogatories With Vague, Ambiguous, And Undefined Terms**

Elan can not be burdened with guessing what Abraxis intended to request with its confusingly-drafted interrogatory nos. 27 and 28. Abraxis iterates that these interrogatories "seek information regarding how following the patents would result in acceptable contamination levels (No. 27) and what testing Elan did to establish that prior to the filing date of the '363 Patent (No. 28.)." *See* D.I. 260, Abraxis's Opening Brief In Support Of Second Motion at 9. Elan properly objected to interrogatory nos. 27 and 28 because Abraxis failed to provide meaningful definition to the potentially-broad term "contamination."

Nowhere in its Fourth Set Of Interrogatories does Abraxis define (a) "pharmaceutically acceptable levels of contamination;" or even (b) "contamination." Elan is only left with guesses and speculation as to the information sought by Abraxis. Indeed, the term

"contamination" without any context on its face can have many meanings.  For example and as expressed to Abraxis, it can refer to contamination by microbes, or by solvents, or by particular manufacturing processes.  *See* Abraxis Exh. 5, Elan's Objections And Answers To Abraxis's Fourth Set Of Interrogatories, at 30.  Now Abraxis belatedly argues that "contamination." as Abraxis intended to use the term, is discussed in both Patents-In-Suit.  *See* D.I. 260, Abraxis's Opening Brief In Support Of Second Motion at 9.

Yet Abraxis only cites to four lines of the '363 Patent that discuss grinding media used in exemplary embodiments of the '363 Patent — which hardly provides a clear and comprehensive definition of what Abraxis means by "contamination."  The exemplary grinding media set forth in those examples from the '363 Patent are disclosed as only one of the ways to make the particles claimed in the '363 Patent.

Does Abraxis maintain that "contamination" as it inquires about for the '363 Patent is only such chemical (or microbial?  Or other?) adulteration as might be found in that exemplary preparation method?  Or is "contamination" something broader?  To the extent the interrogatory is drawn to the '025Patent, the problem is even starker: that Patent is directed to a method and not to particles, nor to a pharmaceutical composition, and there is no mention of the term "contamination" in the '025Patent.  Elan should not be burdened with trying to decipher the potentially multifarious and vague intended meanings of Abraxis's unclear interrogatory or to divine Abraxis's intended use of broad, vague term "contamination" with a clarity and scope sufficient to formulate a clear answer without undue effort and speculation.  *McKesson Corp. v. Islamic Republic of Iran*, 138 F.R.D. 1, at *5 (D.D.C. 1991) (holding that response to interrogatory was not required when usage of an undefined term led to ambiguity).

-18-

**F.    Abraxis Has Exceeded The 50-Interrogatory Limit And Now Attempts To Renege On Its Agreement By Compelling Elan To Answer More Interrogatories Than Required By The Binding Agreement Made Between The Parties**

Prior to commencement of discovery and to the submission of any discovery request, Abraxis and Elan entered into a binding agreement. That agreement was that each party would propound no more than fifty (50) interrogatories (including subparts). Now Abraxis seeks to breach that agreement and to disguise such breach by its Second Motion, which effectively asks this Court to renegotiate the limitations already agreed to by the parties.

As a default matter, the Federal Rules permit only twenty-five interrogatories. Because there are two patents asserted against Abraxis in this litigation, however, it seemed only proper to extend the number of interrogatories to fifty — double the number generally permitted by the Federal Rules. *See* Fed. R. Civ. P. 33(a) ("[w]ithout leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts..."). Accordingly, Elan and Abraxis stipulated to a limit of not more than fifty interrogatories, including subparts, and Abraxis should be held to that agreement.

The federal courts are well versed in determining when an interrogatory includes discrete subparts that should be counted as a separate and additional request, and with the gamesmanship that leads some parties to shoehorn multiple discrete queries into a single numbered interrogatory in order to subvert the counting rules. *Am. Chiropractic Assoc. v. Trigon Healthcare, Inc.*, No. 1-CV-00113, 2002 WL 534459, at *2 (W.D. Va. March 18, 2002).

Specifically, two somewhat-divergent "interrogatory counting" positions have arisen from the courts' consideration of this issue. Abraxis's interrogatories are in excess of the fifty interrogatory limit based on either of these positions. *See id.* (citing *Valdez v. Ford Motor Co.*, 134 F.R.D. 296, 298 (D. Nev. 1991)). The first case-law position is simply that all sub-clauses of an interrogatory should automatically count as separate questions toward the

interrogatory limit.  The second view is that courts should determine whether "a subpart is logically or factually subsumed within and necessarily related to the primary question."  *Id.* (quoting *Kendall v. GES Exposition Servs.*, 174 F.R.D. 684, 685 (D. Nev. 1997)).  Abraxis's repeated pattern of propounding multiple, compound interrogatories over the course of discovery compels a conclusion that it has propounded well over fifty interrogatories regardless of the counting approach this Court may apply.

Abraxis propounded upon Elan four sets of sets of Interrogatories during the fact discovery period.  *See* D.I. 16, D.I. 24, D.I. 117, and D.I. 161; *see* Abraxis Exhs. 4, 10-12 for Elan's Objections and Responses to each set of Interrogatories.  Abraxis's conjunctive usage of multiple discrete interrogatory subparts that are not logically or factually subsumed within its primary request caused it to reach the fifty interrogatory limit with its first (nominally-numbered) thirty-five propounded interrogatories.

*Kendall* is particularly instructive on determining how to determine when a subpart is not logically or factually subsumed with the primary request and should be counted as a separate, additional interrogatory.

> [t]he best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question?

174 F.R.D. at 685.  Abraxis's Interrogatories are replete with subparts, explicit and implied, that fundamentally constitute discrete stand-alone questions, independent from the first.  For example, Abraxis's interrogatory no. 3 requests:

> For each claim of the Patents-In-Suit, describe the dates and circumstances of its *conception, design, development, actual reduction to practice, first written description, first*

> *disclosure to another, first offer for sale,* and *first public use.*

Abraxis Exh. 11, Elan's Fourth Amended Answers And Objections To Abraxis's Second Set Of Interrogatories, at 6 (emphasis supplied).   Interrogatory no. 3 thus requests at least eight (8) factually distinct and unrelated descriptions of information relating to each of two separate and distinct patents.   Even Abraxis concedes that its interrogatories are directed to separate patents. *See* D.I. 260, Abraxis's Opening Brief In Support of Second Motion at 12 ("Elan chose to assert two patents in this action.   Each of Abraxis's interrogatories [are] directed to the same issue with those asserted patents, such as infringement, validity, damages, are one interrogatory." ).

Indeed, the fact that there are two asserted patents in this litigation does not automatically render the queries regarding one asserted patent logically or factually subsumed with questions relating to the other asserted patent.   The asserted patents are not even part of the same family of patents.   The particular questions and the answers thereto are independent from each other and must stand alone.   Certainly, as a practical matter, the investigation by Elan necessary to answer the respective questions as to the '363 Patent will not suffice to answer the corresponding questions as to the '025Patent, which has different named inventors, a different application date, and covers a different subject matter.

Similarly, none of the eight "issues" regarding the two asserted patents are logically or factually subsumed with each other.   Establishing a date of conception for an invention in no way answers the separate question of when that invention first was placed on sale.   Thus, interrogatory no. 3 constitutes as many as sixteen (16) discrete and independent inquiries, but at a minimum, must count as two or more discrete interrogatories.

Likewise, Abraxis's interrogatory no. 7 provides another example of an interrogatory including multiple discrete subparts that should be counted as more than one interrogatory. Interrogatory no. 7 recites:

> Please identify each instance in which Elan has communicated with another party regarding *either of the Patents-In-Suit or the '684 Patent*, including an identification of each instance in which Elan has *offered a license* under, or *threatened or instituted legal action* based upon, any claim of the Patents-In-Suit or the '684 Patent. For each communication, please describe (1) *the date and form of the communication*, (2) the *participants in the communication*, and (3) the *content of the communication*, including any allegations of invalidity, unenforceability, and/or non-infringement, and Elan's response, if any. *Please identify any documents or other evidence constituting or referring to such communications.*

Abraxis Exh. 11, Elan's Fourth Amended Answers And Objections To Abraxis's Second Set Of Interrogatories, at 23 (emphasis supplied). This interrogatory not only seeks multiple discrete categories of information, *e.g.*, (a) offers to license and (b) threats or actual initiation of legal action, it requests such discrete categories of information as to three independent patents. An offer to license one patent would not be logically or factually subsumed within an offer to license a different patent. Thus, each question relating to each Patent easily constitutes six interrogatories. Even taking the most lenient view, at a minimum Abraxis's Interrogatory No. 7 constitutes three separate and independent interrogatories.

In yet another example of Abraxis's egregious attempt to impose the burden of investigating and answering dozens of extra interrogatories by propounding a facially "single" interrogatory with multiple, discrete subparts, Abraxis's interrogatory no. 10 requests:

> Please explain in detail why Elan contends that the *Patents-In-Suit* are enforceable and not invalid. In answering this interrogatory, please *address specifically all* the unenforceability and invalidity *contentions, arguments,* and *prior art* set forth in Abraxis's responses to Elan

> Interrogatory No. 4, and *include references to the documents and other evidence on which Elan relies.*

Abraxis Exh. 12, Elan's Answers And Objections To Abraxis's Third Set Of Interrogatories, at 3 (emphasis supplied). The "prior art" referenced in this interrogatory constitutes fifty-three (53) separate references that Abraxis has cited against the '363 Patent and twelve (12) separate references it cited against the '025Patent. Indeed, the issue of whether the Patents-In-Suit are valid over a given prior art reference cited by Abraxis is a question quite legally and factually independent (and certainly not subsumed within) the question of whether each of the Patents-In-Suit is valid over a completely different prior art reference, let alone dozens of other respective discrete references.

Abraxis bears at every stage the burden of proof to establish the alleged invalidity of the Patents-In-Suit. Its attempt to shift the burden on validity to Elan by purporting to require Elan to prepare claim charts for each reference in a barrage of sixty-five (65) discrete prior art references is abusive, in the first instance, because there is no rational basis for forcing Elan to assume such a massive and ultimately pointless undertaking on an issue as to which it does not even bear the burden of persuasion.

For purposes of determining this Second Motion, though, perhaps the more cogent point is that Abraxis's attempt to impose this massive burden to answer an unfounded, complex, and hugely-compound set of legal and technical questions, is cynically cloaked under the guise of a single interrogatory, and disingenuously presented as fact discovery even though it goes to an ultimate legal issue, validity. If the Court wishes to assess the seriousness and good faith of Abraxis's approach to discovery, or the equities invoked by the instant Second Motion, it need not look much further than Abraxis's abusive interrogatory no. 10 to determine whether it is

Abraxis, or Elan, that merits this Court's protection and assistance with respect to the issues raised in that Motion.

## VI. **Conclusion**

For the foregoing reasons, the Court should deny Abraxis's Second Motion To Compel.

<div style="margin-left: 50%;">

ASHBY & GEDDES

*/s/ Lauren E. Maguire*
_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware  19899-1150
(302) 654-1888 Telephone
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff,*
*Elan Pharma International Limited*

</div>

*Of Counsel:*

Stephen E. Scheve
Linda M. Glover
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas  77042-4995
(713) 229-1659 Telephone

Paul F. Fehlner
Jeffrey D. Sullivan
Lisa A. Chiarini
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York  10112-4498
(212) 408-2527 Telephone

William J. Sipio
1375 Brentwood Road
Yardley, Pennsylvania  19067
(215) 801-3625 Telephone

Dated: August 30, 2007
183733.1