IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) | **REDACTED PUBLIC VERSION** |
| Plaintiff, | ) ) | No. 06-438-GMS |
| | ) ) ) ) | |
| ABRAXIS BIOSCIENCE, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF ELAN PHARMA INTERNATIONAL LIMITED'S ANSWERING BRIEF TO DEFENDANT ABRAXIS BIOSCIENCE, INC.'S OPENING BRIEF IN SUPPORT OF ITS FURTHER MOTION TO COMPEL PRODUCTION OF DAMAGES DISCOVERY**

*Of Counsel:*

Stephen E. Scheve
Linda M. Glover
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77042-4995
(713) 229-1659 Telephone

Paul F. Fehlner
Jeffrey D. Sullivan
Lisa A. Chiarini
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2527 Telephone

William J. Sipio
1375 Brentwood Road
Yardley, Pennsylvania 19067
(215) 801-3625 Telephone

Dated: August 30, 2007
183734.1

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899-1150
(302) 654-1888 Telephone
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff,
Elan Pharma International Limited*

## TABLE OF CONTENTS

Introduction ............................................................................................................................. 1

I.   Nature And Stage Of Proceedings ................................................................................. 1

II.  Summary Of The Argument And Relief Requested ...................................................... 2

III. Statement Of Facts ......................................................................................................... 5

   A.  Elan Is The Assignee Of Over 1,000 Patents And Patent Applications
       "Concerning Particulate Compositions." ............................................................ 5

   B.  Abraxis Already Possesses Unredacted Licenses To The Patents-In-Suit. ........ 7

IV.  Argument And Authorities ............................................................................................ 7

   A.  Federal Rule Of Civil Procedure 26 Protects Litigants From Harassing
       Discovery. ........................................................................................................... 7

   B.  Elan's Licenses Of The Patents-In-Suit Executed In Close Proximity To
       The Time That Infringement Began Provide The Commercial Terms That
       Will Be The Principal Basis For Determining Elan's Damages. ........................ 9

   C.  Abraxis Has Already Had Ample Opportunity To Discover Financial
       Information Relevant To A Determination Of A Reasonable Royalty ............ 11

   D.  Elan's Objections to Abraxis's Requests Seeking Information About
       "Patents Concerning Particulate Compositions" Should Be Sustained. .......... 12

   E.  Abraxis's Request No. 143 Is Nothing More Than A Fishing Expedition
       Into A Competitor's Financial Affairs. ............................................................. 14

V.   Conclusion ................................................................................................................... 16

Case 1:06-cv-00438-GMS   Document 319   Filed 09/07/2007   Page 3 of 20

## TABLE OF AUTHORITIES

### CASES

*Birdsall v. Coolidge,*
  93 U.S. 64 (1876) .......................................................................................................... 14

*Cipollone v. Liggett Group, Inc.,*
  785 F.2d 1108 (3d Cir. 1986) ....................................................................................... 12

*Forest Prods. Nw., Inc. v. United States,*
  453 F.3d 1355 (Fed. Cir. 2006) .................................................................................... 12

*Fromson v. W. Litho Plate and Supply Co.,*
  853 F.2d 1568 (Fed. Cir. 1988) .................................................................................... 19

*Georgia-Pacific Corp. v. United States Plywood Corp.,*
  318 F. Supp. 1116 (S.D.N.Y. 1970) ...................................................................... *passim*

*Hanson v. Alpine Valley Ski Area, Inc.,*
  718 F.2d 1075 (Fed. Cir. 1983) .................................................................................... 13

*Mobil Oil Corp. v. Amoco Chems. Corp.,*
  915 F. Supp. 1333 (D. Del. 1994) ............................................................... 14, 16, 17, 18

*Philp v. Nock,*
  84 U.S. 460 (1873) ........................................................................................................ 14

*R.R. Dynamics, Inc. v. A. Stucki Co.,*
  727 F.2d 1506 (Fed. Cir. 1984) .................................................................................... 17

*Tektronix, Inc. v. United States,*
  552 F.2d 343 (Ct. Cl. 1977) .......................................................................................... 14

*Unisplay, S.A. v. Am. Elec. Sign Co., Inc.,*
  69 F.3d 512 (Fed. Cir. 1995) ........................................................................................ 13

*Utah Med Prods., Inc. v. Graphic Controls Corp.,*
  350 F.3d 1376 (Fed. Cir. 2003) .................................................................................... 18

-i-

## STATUTES

Fed. R. Civ. P. 26 .................................................................................................................. 11, 12

Fed. R. Civ. P. 34 .......................................................................................................... 11, 12, 18

35 U.S.C. § 284 (1988) ................................................................................................................ 12

**Introduction**

Plaintiff Elan Pharma International Limited ("Elan") hereby presents its reasons for opposing, and its Answering Brief in response to Defendant Abraxis BioScience, Inc.'s ("Abraxis") Further Motion To Compel Production Of Damages Discovery, served on August 13, 2007.

## I.  Nature And Stage Of Proceedings

On July 19, 2006, Plaintiff Elan Pharma International Limited ("Elan") filed suit alleging that Abraxis BioScience, Inc. ("Abraxis") infringes U.S. Patent Nos. 5,399,363 (the "'363 Patent") and 5,834,025 (the "'025 Patent") (collectively, the "Patents-In-Suit"). Elan's '363 Patent is directed to a nanoparticulate anticancer drug composition; and Elan's '025 Patent is directed to an intravenous method of administering a nanoparticulate drug composition so as to avoid eliciting adverse hemodynamic effects. The accused product, Abraxane®, is a nanoparticulate anticancer drug composition, which is intravenously administered.

During fact discovery, which concluded on August 13, 2007, Abraxis propounded in excess of the permitted 50 interrogatories, 144 requests for production, and 36 requests for admission. *See* D.I. 16. 18. 24. 75. 117. 161. The overwhelming majority of Abraxis's discovery requests were broadly and vaguely drafted and sought far more information than was relevant or likely to lead to relevant information in this matter. Accordingly, and as warranted by the Rules and policy considerations strongly disfavoring overly-burdensome discovery demands, Elan properly lodged pertinent objections under the Federal Rules of Civil Procedure.[1] Rather than take responsibility for its own failure to prepare discovery requests reasonable in scope and clearly focused upon relevant issues, Abraxis has now filed a compendium of

---

[1] Attached as Exh. 4 to the accompanying Declaration Of Linda Glover (the "Glover Decl.") are Elan's objections to Abraxis's Fourth Set Of Requests For The Production Of Documents. References herein to "Exh." are likewise references to respective Exhibits to the Glover Decl.

meritless motions to compel discovery from Elan, with the instant Motion being one among many.

On August 8, 2007, Abraxis filed its first Motion To Compel Production Of Damages Discovery (the "First Motion"), to which Elan responded on August 22, 2007. *See* D.I. 240, 285. On August 13, 2007, Abraxis filed a Further Motion to Compel Production of Damages Discovery (the "Second Motion"). D.I. 256. Abraxis's Second Motion is nothing more than a rehash of its First.

## II. Summary Of The Argument And Relief Requested

Like its discovery requests, Abraxis's Second Motion seeking to compel additional damages discovery from Elan is fundamentally flawed. As stated in Elan's answering brief to Abraxis's First Motion, Elan does not dispute that Abraxis is entitled to *relevant* damages discovery. Elan, however, should not be compelled to respond to discovery that has been propounded purely for the sake of harassment or of unduly burdening Elan.

As damages for Abraxis's infringement of the Patents-In-Suit, Elan seeks a reasonable royalty and a reasonable percentage of the upfront payments that Abraxis has received for licensing Abraxane®. Controlling authority is abundantly clear that a reasonable royalty determination must be based upon circumstances existing in the marketplace at the time when infringement began. Case law — including that cited by Abraxis — also emphasizes that if an established royalty is shown to exist ( for example, from existing licenses of the patents-in-suit), such a royalty is the best evidence of the relevant commercial terms that will be a principal basis for calculating damages.[2]

---

2    Elan has produced or is in the process of producing, under appropriate terms of confidentiality pursuant to the Stipulated Protective Order, substantial licensing documents relating to the Patents-In-Suit and specifically, to their commercialization and licensing during the periods contemporaneous with Abraxis's infringement of them.

Despite this authority, Abraxis cites to *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d. Cir.), to support its purported entitlement to temporally-unlimited discovery on each and every one of fifteen factors that the *Georgia-Pacific* court noted were *potentially* relevant to a reasonable royalty determination. Even a cursory review of *Georgia-Pacific*, however, reveals that its reference to a broad spectrum of evidentiary factors need come into play *only* when there is no established royalty for the patents-in-suit. Here, the Patents-In-Suit have been routinely licensed, and those licenses executed around the time that Abraxis's infringement began provide commercial terms that will be a principal basis for calculating Elan's damages.

Even if *all* of the fifteen *Georgia-Pacific* factors were in play, Abraxis's Requests for Production Nos. 139-144 (the "Requests"), which are the subject of its Second Motion, remain highly objectionable. Abraxis's Requests Nos. 139-142 and 144 seek production of financial information regarding Elan's patents that concern a broadly-defined category of "Particulate Compositions." Elan has in excess of 1,000 patents that meet this sweeping definition, the majority of which encompass technology different from and irrelevant to the Patents-In-Suit. Moreover, many of these patents are licensed in wholly separate markets from that germane to the Patents-In-Suit. Because the broad universe of "patents concerning Particulate Compositions" is not comparable to the much more specific subject matter of the Patents-In-Suit, such "Particulate Composition" patents bear no relevance to determining a reasonable royalty under any standard, including the standard articulated by the *Georgia-Pacific* court. Thus, Elan's objections to Abraxis's Requests were well-founded and should be sustained.

---

These materials should more than suffice to inform Abraxis of the relevant commercial terms that case law establishes will be a principal basis for calculating Elan's damages.

3

Abraxis's Request No. 143, which seeks financial information about *all* of Elan's patents over a twelve (12) year period, without qualification as to technology, pharmaceutical compositions, or methods claimed by the Patents-In-Suit, strays even further from *Georgia-Pacific's* teachings. Indeed, Request No. 143 more closely resembles an unabashed attempt to gain proprietary information for competitive purposes than it does a valid discovery request seeking information relevant to determining a reasonable royalty.

Not only do Abraxis's Requests miss the mark by not identifying potentially relevant documents with specificity and by unduly burdening Elan, they also purport to require Elan to breach its confidentiality obligations to third parties for no apparent reason. Abraxis seeks to discover documents regarding Elan's financial agreements with third parties, audits that Elan may have conducted of its licensees, and any development plans that Elan has for "Particulate Compositions." Abraxis's Requests 139, 140, 143-44, which seek this highly confidential and proprietary information, have no reasonable basis.

By virtue of subpoenas issued to Elan's licensees, Abraxis already possesses the best evidence of the commercial terms that will serve as the principal basis for determining Elan's damages — the many existing licenses to the Patents-In-Suit. Indeed, it is remarkable that Abraxis's Second Motion fails to inform the Court that Abraxis already has in hand *unredacted* versions of multiple licenses covering the Patents-In-Suit. *See* accompanying Declaration Of Jacqueline Lowe (the "Lowe Decl.") at ¶2, Exh. 1  In light of that fact, it is hard to fathom any justifiable purpose for Abraxis to be permitted to discover Elan's other financial agreements with third parties, audits of its licensees, and product development plans. Abraxis has little legitimate litigation end to gain (as distinguished from the illegitimate aim of securing for competitive use Elan's proprietary financial and business strategy information), and Elan

much to lose (including, the trust of third parties), by any response to these Requests. Accordingly, Elan's objections to Abraxis's Requests should be sustained and Abraxis's Second Motion be denied.

### III. Statement Of Facts

**A.  Elan Is The Assignee Of Over 1,000 Patents And Patent Applications "Concerning Particulate Compositions."**

As mentioned above, Abraxis's Requests Nos. 139-142 and 144 seek production of financial information regarding all of Elan's patents and patent applications that concern "Particulate Compositions." Abraxis defines "Particulate Compositions" as "pharmaceutical or diagnostic compositions containing a pharmaceutical or diagnostic agent and having an average, mean, median or effective particle size of up to 1000 nm as determined by any conventional method for calculating particle size referred to in the Patents-In-Suit." *See* Abraxis's Fourth Set of Requests For Production (Nos. 137-144), Exh. 2.

Heretofore, Elan has estimated the total number of its patents and patent applications that would meet Abraxis's definition of patents "concerning Particulate Compositions" at approximately five hundred (500). *See* D.I. 285 at 16-17. In responding to Abraxis's Second Motion, however, Elan engaged a vendor to more accurately determine the number of its patents and patent applications for which Abraxis seeks financial information by its Requests Nos. 139-142 and 144. *See* accompanying Declaration of Christian M. Bauer ("Bauer Decl.") at ¶¶ 4-5, Exh. 3. The results of Elan's investigation reveal that it has till now significantly *underestimated* the burden that Abraxis seeks to impose upon Elan. The actual total of patents for which Abraxis seeks detailed financial information from Elan exceeds 1,000. *See id.* at ¶¶ 5, 6.

Not only are Abraxis's Requests seeking financial information about patents "concerning Particulate Compositions" overly broad and unduly burdensome, they also seek irrelevant information. Even assuming that all of the *Georgia-Pacific* factors apply, the only patents relevant to a reasonable royalty determination are those that are comparable to the Patents-In-Suit. *See Georgia-Pacific*, 318 F. Supp. at 1120 (noting that "the rates paid by the licensee for the use of other patents comparable to the patent-in-suit" are potentially relevant to a reasonable royalty determination). As mentioned above, the Patents-In-Suit are directed to: (1) a nanoparticulate anticancer drug composition, and (2) an intravenous method of administering a nanoparticulate drug composition so as to avoid eliciting adverse hemodynamic effects. Nevertheless, Abraxis seeks financial information about patents "concerning Particulate Compositions," which ostensibly would require Elan to provide financial information about patents such as the following:

U.S. Patent No. 5,518,738 — Nanoparticulate NSAID [painkiller] Compositions;

U.S. Patent No. 5,552,160 — Surface Modified NSAID Nanoparticles; and

U.S. Patent No. 6,264,922 — Aerosols Containing Nanoparticulate Dispersions.

The only thing comparable between the patents listed above and the Patents-In-Suit is their common ownership by Elan and their broad inclusion in the pharmaceutical industry.

Abraxis is well aware that its Requests for financial information about patents "concerning Particulate Compositions" would capture information that is predominantly irrelevant. The parties met and conferred repeatedly about the overbreadth of Abraxis's definition of the term "Particulate Compositions," with Abraxis refusing to compromise on the reach of its discovery Requests.

Elan's patents are publicly available. Abraxis could have easily reviewed Elan's patents to determine those substantively comparable to the Patents-In-Suit and propounded requests for production that met both the specificity required by Federal Rule of Civil Procedure 34, and the relevance limitation imposed by Rule 26. *See* Fed. R. Civ. P. 26, 34. Abraxis failed to do so; and instead, takes Elan to task for its resistance to responding to harassing requests for production. Abraxis should not be permitted to use the Federal Rules of Civil Procedure as a sword for practicing abusive litigation tactics.

**B.   Abraxis Already Possesses Unredacted Licenses To The Patents-In-Suit.**

On June 29, July 2-3, 5-6, 11, and 13, 2007, Abraxis issued subpoenas to Elan's licensees under the Patents-In-Suit, seeking production of the licensees' financial agreements with Elan. *See* D.I. 152, 155, 165, 168-70, 180, 188. In almost every instance, the third party produced to Abraxis its *unredacted* licenses with Elan for the Patents-In-Suit. *See* Exh. 1 at ¶ 2. Accordingly, Abraxis has already discovered the best evidence of the royalties received by Elan for the licensing of the Patents-In-Suit. To the limited extent that responsive licenses have not been voluntarily produced to Abraxis by third-parties pursuant to these subpoenas, and these third-parties have declined to permit production by Elan as provided for in the Stipulated Protected Order entered herein, Elan will continue to consider and seek reasonable and lawful means of making such information, or redacted forms of it, available to Abraxis.

### IV.   Argument And Authorities

**A.   Federal Rule Of Civil Procedure 26 Protects Litigants From Harassing Discovery.**

Elan does not dispute that Federal Rules of Civil Procedure 34 grants parties substantial latitude to discover non-privileged documents during the course of discovery. *See* Fed. R. Civ. P. 34. Discovery permitted under Rule 34, however, is tempered by limitations that are articulated in Federal Rule of Civil Procedure 26. The first limitation, inherent in Rule 26, is

7

that a party is limited to seeking *relevant* discovery. *See* Fed. R. Civ. P. 26 (b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.") The second limitation, expressly set forth by Rule 26, precludes discovery that is unreasonably duplicative, burdensome, expensive, or the benefit of which is outweighed by other considerations:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). To avoid discovery for any of the reasons articulated under Rule 26, a party must demonstrate "that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." *Forest Prods. Nw., Inc. v. United States*, 453 F.3d 1355, 1361 (Fed. Cir. 2006); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). Here, Abraxis's Requests for the production of documents related to damages are oppressive because they seek more than Elan's licenses of the Patents-In-Suit or comparable licenses executed in close proximity to the time that Abraxis's infringement began and/or continues. Abraxis's Requests would also impose an undue burden on Elan by requiring it to breach third-party confidential agreements for reasons seemingly unrelated to the determination of a reasonable royalty rate.

**B.     Elan's Licenses Of The Patents-In-Suit Executed In Close Proximity To The Time That Infringement Began Provide The Commercial Terms That Will Be The Principal Basis For Determining Elan's Damages.**

When infringement has been established, a patentee is entitled to "damages adequate to compensate for infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284 (1988). Thus, when a patentee does not seek to prove entitlement to lost profits, i.e., a loss in market share, the patentee is entitled to "reasonable royalty" damages based upon a hypothetical negotiation between the patentee and the infringer when the infringement began. *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) (describing the hypothetical negotiation as one "resulting from arm's length negotiations between a willing licensor and a willing licensee").

The hypothetical negotiation is deemed to take place on the date that the defendant's infringement began. Indeed, even case law cited by Abraxis establishes that "a reasonable royalty determination for purposes of making a damages evaluation must relate to the time infringement occurred . . . ." *Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 518 (Fed. Cir. 1995).

In *Unisplay*, the court determined that testimony regarding a royalty rate existing at the time of trial did not support the jury's damages verdict because "it was not directed to the time of infringement." *See id.* In reaching its decision, the court noted that: "[t]he key element in setting a reasonable royalty . . . is the necessity for return to the date when the infringement began." *Id.* (citations omitted). Accordingly, the relevant time period for determining Elan's reasonable royalty damages centers around or before January 2006, when the infringing product, Abraxis's Abraxane®, was first approved by the Food and Drug Administration ("FDA") for sale in the United States.

In determining a reasonable royalty, a court may look to one or more factors affecting the hypothetical negotiation. In *Georgia-Pacific*, a district court for the Southern District of New York listed fifteen of the factors that courts may consider: "A comprehensive list of evidentiary facts relevant, in general, to the determination of the amount of a reasonable royalty for a patent license may be drawn from a conspectus of the leading cases." *See Georgia-Pacific*, 318 F. Supp. at 1120. Notably, however, the *Georgia-Pacific* court listed a wide range of factors potentially relevant to determining a reasonable royalty *in principal part* because the patents-in-suit in the case had not been licensed:

> The parties agree that there was no "established" royalty for USP's Weldtex or GP striated. Consequently, it is necessary to resort to a broad spectrum of other evidentiary facts probative of a "reasonable" royalty.

*Id.* at 1121. Indeed, courts — including the Supreme Court — have long recognized that when there is an established royalty rate, there is little or no need to consider other factors. *See Birdsall v. Coolidge*, 93 U.S. 64, 70 (1876) ("Evidence of an established royalty will undoubtedly furnish the true measure of damages in an action at law, where the unlawful acts consist in making and selling the patented improvement . . . ."); *Philp v. Nock*, 84 U.S. 460, 462 (1873) ("Where the plaintiff has sought his profit in the form of a royalty paid by his licensees, and there are no peculiar circumstances in the case, the amount to be recovered will be regulated by that standard."); *Tektronix, Inc. v. United States*, 552 F.2d 343, 347 (Ct. Cl. 1977) ("Where an established royalty rate for the patented inventions is shown to exist, that rate will usually be adopted as the best measure of reasonable and entire compensation."), *modified on other grounds by* 213 Ct. CL. 307 (Ct. Cl. 1977). Thus, contrary to Abraxis's claim, not all of the fifteen *Georgia-Pacific* factors are relevant in every patent infringement case, and even if more than one factor is considered, the respective factors are not always of equal importance:

> In performing a hypothetical negotiation analysis, it is important to recognize that some of the *Georgia-Pacific* factors may be of minimal or no relevance to a particular case . . . .

*Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994).

The Patents-In-Suit herein have been repeatedly licensed, and licenses executed around the time that infringement began establish the commercial terms that will serve as the principal basis for determining Elan's damages. The other *Georgia-Pacific* factors that could be of some relevance here include Elan's and Abraxis's licenses executed around the time that infringement began or continues for *comparable* patents, Abraxis's profits from the infringing product, and Abraxis's licensing of any rights associated with the infringing product. Abraxis's efforts to discover financial information far afield of that revealed by licenses for the Patents-In-Suit or licenses to comparable patents are fueled by nothing more than a desire to gain the proprietary information of its competitors.

### C.  Abraxis Has Already Had Ample Opportunity To Discover Financial Information Relevant To A Determination Of A Reasonable Royalty.

As noted above, Abraxis directly subpoenaed many of the non-parties to whom Elan licensed the Patents-In-Suit. *See* D.I. 152, 155, 165, 168-170, 178, 180, 188. In response to its subpoenas, Abraxis obtained from the third-parties production of Elan's licenses with

**REDACTED**

regarding the Patents-In-Suit. *See* Exh. 1. at ¶¶ 2-3. In addition, Elan itself has produced, under appropriate terms of confidentiality pursuant to the Stipulated Protective Order, substantial unredacted licensing

---

**REDACTED**

documents relating to the Patents-In-Suit and specifically, to their commercialization and licensing during periods contemporaneous with Abraxis's infringement of them. These materials more than suffice to inform Abraxis of the commercial terms that case law establishes should be a principal basis for calculating Elan's damages.

### D. Elan's Objections to Abraxis's Requests Seeking Information About Patents "Concerning Particulate Compositions" Should Be Sustained.

Abraxis's Request Nos. 139-142 and 144 seek the production of various Elan and third-party financial documents regarding patents "concerning Particulate Compositions." *See* Second Motion at 4. Abraxis's Request No. 143 seeks the production of financial information over a twelve year period related to the licensing of *any* of Elan's patents. *See id.* Even if all of the *Georgia-Pacific* factors were applicable in this case, they would not support the discovery Abraxis seeks.

*Georgia-Pacific* provides that, when there is no established royalty for the patents-in-suit, a court may look to comparable patents to assist in determining a reasonable royalty. *Georgia-Pacific*, 318 F. Supp. at 1120 (noting that "the rates paid by the licensee for the use of other patents comparable to the patent-in-suit" are potentially relevant to a reasonable royalty determination). The key to the *Georgia-Pacific* instruction is the word "comparable."

Abraxis erroneously claims that *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1354 (D. Del. 1994) supports the proposition that courts should interpret 'comparable licenses and technology' broadly. The *Mobil Oil* court considered damages for the infringement of two process patents and a single composition of matter patent. *See id.* at 1337. Notably, the court determined that "Mobil had an established rate with respect to the process patents at issue" and that, therefore, "the Court felt unjustified in performing a *Georgia-Pacific* hypothetical negotiation analysis with respect to these rights." *See id.* at 1341.

12

For the matter of composition patent, the court compared a lost profits analysis with a hypothetical negotiation analysis, and determined that the results were the same. *See id.* at 1350-52. In the latter instance, the court looked to comparable patents to assist in its hypothetical negotiations analysis. *See id.* at 1354-55. The comparable patents that the *Mobil* court considered were limited to those that produced the same composition of matter claimed by the patents-in-suit, but that did not necessarily use the same process that Mobil claimed was infringed under its asserted process patents. *See id.* In other words, the *Mobil* court interpreted "comparable patents" so to take into consideration only those related royalty rates for other technology available to produce the *identical* composition of matter.

Here, Abraxis's Request Nos. 139-142 and 144 seek the production of financial information related to patents "concerning Particulate Compositions." *See* Second Motion at 8. Under the definitions provided by Abraxis, such patents would include *any* patents claiming *any* "pharmaceutical or diagnostic compositions containing a pharmaceutical or diagnostic agent and having an average, mean, median or effective particle size of up to 1000 nm as determined by any conventional method for calculating particle size referred to in the Patents-In-Suit.[6]" *See* Exh. 2.

Thus, Abraxis's Requests indisputably do not seek information about a comparable product to that claimed by the '363 Patent, which is limited to anticancer drug compositions, or about a comparable method to that claimed by the '025 Patent, which is directed solely to intravenous administration. Rather, Abraxis's Requests Nos. 139-142, and 144 seek financial information about as many as 1,043 patents, the majority of which are not even

---

[6] Abraxis's Request Nos. 139-142, and 144 are not even limited as to Elan. Thus, these requests purport to seek discovery concerning financial information in Elan's possession, custody and control regarding its licenses of third-party technology. Indeed, the actual breadth of Abraxis's Requests extend to financial information pertaining to an excess of 32,500 patents. *See* Exh. 3 at ¶ 8.

13

remotely comparable to the Patents-In-Suit under any *Georgia Pacific* or *Mobil* analysis. *See* Bauer Decl. at ¶ 6, III A *supra*. Such information is therefore irrelevant to any damages calculation herein. *See R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1518 (Fed. Cir. 1984) (holding that licenses could not establish reasonable royalty because they were for other patented technologies distinct from the patented product); *Utah Med Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1385-86 (Fed. Cir. 2003) (upholding exclusion of a patent infringement defendant's expert testimony on reasonable royalty damages because license agreements used in expert's analysis were for patents and technology not comparable to the patents-in-suit).

Elan's patents are a matter of public record. Abraxis could have identified those truly closely relating to the Patents-In-Suit on a technical basis so as to formulate discovery requests that meet the specificity required by Federal Rule of Civil Procedure 34 and do not violate Rule 26. *See* Fed. R. Civ. P. 26, 34. Indeed, Elan undertook such an analysis and has produced, or will be producing, licenses of patents it deems comparable to the Patents-In-Suit pursuant to the terms of the Stipulated Protective Order and as permitted by third parties to whom Elan owes a duty of confidentiality. Accordingly, Elan's objections to Abraxis's overly broad Requests were well-founded and should be sustained.[7]

E.  **Abraxis's Request No. 143 Is Nothing More Than A Fishing Expedition Into A Competitor's Financial Affairs.**

Abraxis's Request No. 143 seeks:

Documents describing Elan's financial history from 1995 to the present, including Elan's capitalization and stock price, Elan's balance sheets and income statements, Elan's revenues, costs,

---

[7] Interestingly, Abraxis's licensing of Abraxane®, which infringes the claimed nanoparticles set forth in the '363 Patent and the claimed method of administration of the '025 Patent, would be highly relevant under a *Georgia-Pacific* and *Mobil* analysis, yet Abraxis has, despite its urgent demands for Elan's licenses on a broad range of products which unlike Abraxane® do not implicate the '363 or '025 Patent claims, refused to produce such licenses.

> profits, and losses, and the portion of Elan's income attributable to licensing its patents.

*See* Second Motion at 8. The overbreadth of this Request is staggering.

As a threshold matter, it is difficult, if not impossible, to determine how global details stretching across twelve (12) years of Elan's financial history could have any specific relevance to determining a reasonable royalty rate, which is based upon a hypothetical negotiation occurring at the time infringement began. Abraxis nonetheless claims that the 15th *Georgia-Pacific* factor entitles it to unfettered access to Elan's financial affairs and documents. At the risk of repetition, the last *Georgia-Pacific* factor comes into play *only* when there is no evidence of commercial terms surrounding licensing of the patents-in-suit. Even then, in most cases, it is appropriate for a District Court to consider the *infringer's* actual profits in determining a reasonable royalty, rather than the patentee's financial history. *See, e.g., Fromson v. W. Litho Plate and Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988).

Even in the unlikely event that Abraxis could somehow establish the relevance of this Request, it would remain overly broad and unduly burdensome. To collect every document pertaining to Elan's financial history over a twelve year period would be a Herculean task. It would take a multitude of employees, each diverted from their assigned job responsibilities, weeks, if not months, to gather every financially-related document created by Elan, its predecessors, agents, and representatives over a twelve (12) year period. *See* Declaration of Svai Sanford at ¶¶2-4, Exh. 5.

Elan's 10K, 10Q, and other SEC filings are publicly available. These documents provide an overview of Elan's financial history during the twelve years covered by Abraxis's Request. Abraxis has not offered — nor can it offer — any reasonable explanation as to why it would require more minute detail. Thus, the burden to Elan in responding to this Request is not

outweighed by any benefit to be derived by Abraxis. Accordingly, Elan's objections to this Request should be sustained.

## V. Conclusion

From the inception of this litigation, Abraxis has used discovery as a tool for harassment. This tactical use of discovery is contrary to both the letter and the spirit of the Federal Rules of Civil Procedure, and should not be countenanced. For the reasons articulated above, Elan's objections to Abraxis's Request Nos. 139-144 should be sustained, and Abraxis's Second Motion denied.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

|  |  |
|---|---|
| *Of Counsel:* | Steven J. Balick (I.D. #2114)<br>John G. Day (I.D. #2403)<br>Lauren E. Maguire (I.D. #4261) |
| Stephen Scheve<br>Linda M. Glover<br>BAKER BOTTS LLP<br>One Shell Plaza<br>910 Louisiana Street<br>Houston, TX 77042-4995<br>Telephone: (713) 229-1659 | 500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>sbalick@ashby-geddes.com<br>jday@ashby-geddes.com<br>lmaguire@ashby-geddes.com |
| Paul F. Fehlner<br>Jeffrey D. Sullivan<br>Lisa Chiarini<br>BAKER BOTTS LLP<br>30 Rockefeller Plaza<br>New York, NY 10112-4498<br>Telephone: (212) 408-2527 | *Attorneys for Plaintiff*<br>*Elan Pharma International Limited* |

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
Telephone: (215) 801-3625

Dated: August 30, 2007
183734.v1