UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 06-438-GMS |
| ABRAXIS BIOSCIENCE, INC., | ) ) **REDACTED -** |
| | ) **PUBLIC VERSION** |
| Defendant. | ) |

**DECLARATION OF EMILY EVANS IN SUPPORT OF
ABRAXIS'S MOTION IN LIMINE NOS. 1 AND 2**

I, Emily A. Evans, declare as follows:

1.      I am an attorney admitted to practice law in the State of California, and I am

admitted *pro hac vice* in the above-captioned action.  I am a Partner in the law firm of Morrison

& Foerster LLP, attorneys for Abraxis BioScience, Inc. ("Abraxis") in the above-captioned

action.  I submit this Declaration in Support of: (1) Abraxis's Motion in Limine No. 1 to Strike

Portions of Elan Expert Harry Brittain's Expert Report Regarding Testing of Abraxane And To

Bar Related Testimony And Argument; and (2) Abraxis's Motion in Limine No. 2 to Exclude

Evidence of Elan's SSNMR Testing of Abraxane.  I have personal knowledge of the matters set

forth herein, and if called upon to do so, I could and would competently testify thereto.

**October 2, 2007 Hearing**

2.      At the October 2, 2007 hearing before the Court, Abraxis moved to compel

production of certain documents and interrogatory responses related to Elan's testing of

1

Abraxane. Abraxis's counsel argued, among other things, that the Federal Rules required Elan to produce all testing conducted by Elan's testifying experts:

> We have their expert report now, with some testing data. But they only want to show the jury the testing data that they like. We don't really think much of their testing data. But we think the jury ought to have the whole story.

(Exhibit 1 at 85:20-24.)

3.    In response, Elan's counsel represented to the Court that Elan had "preserved all the walls between consultants and testifiers." (Exhibit 1 at 90:8-14.) Attached as Exhibit 1 is a copy of relevant portions of the transcript.

4.    At the hearing, Abraxis also requested that Elan log all testing documents it contended were protected by privilege or work-product immunity. In response, Elan's counsel represented to the Court that these testing documents had already been identified on Elan's privilege log, an amended version of which had been served on August 31, 2007. (Exhibit 1 at 90:15-21; *see also id.* at 89:22-90:3.)

5.    Below is a summary of events that occurred during the course of expert discovery relating to Elan's testing, organized for the Court's convenience by the expert at issue.

### Dr. Harry Brittain

6.    On September 28, 2007, Elan submitted an Opening Expert Report from Dr. Brittain. In this Report, Dr. Brittain opines, among other things, that Abraxane meets the "crystalline" limitation of the '363 patent. A copy of his Opening Expert Report (without exhibits) is attached as Exhibit 2. Elan has placed Dr. Brittain on its list of witnesses it "may call" during trial. (Exhibit 3.)

7.     On October 19, 2007, Abraxis subpoenaed Dr. Brittain, requesting "Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information, regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane." (Exhibit 4 at 5, No. 12.) Elan lodged objections under the privilege and the work-product doctrines. (Exhibit 5 at 10.)

8.     On November 15, 2007, Elan produced a privilege log to Abraxis with documents withheld from Dr. Brittain's files. This log was produced less than 24 hours in advance of Dr. Brittain's deposition. The log contained 466 entries, all but 10 of which were described as "test data" or "laboratory notebook[s] reflecting tests." All of the entries are dated before July 31, 2007. Elan's privilege log served on August 31 does not have any entries in which Dr. Brittain is identified.[1] A copy of the Brittain log is attached as Exhibit 6. Elan's representation at the October 2 hearing that Elan had already furnished Abraxis with a complete privilege log was thus incorrect.

9.     In mid- to late-November 2007, Abraxis's counsel requested the withheld documents, stating that the "Federal Rules and case law make clear that Elan has waived any privilege or work product over Brittain's documents, as Brittain is a testifying expert." Relevant correspondence is attached as Exhibit 7 (11/15/07 email from Kruze to Elan; 11/28/07 email from Kruze to Glover; 11/29/07 email from Glover to Kruze).

---

[1] Elan's privilege log contains approximately 30 entries with a "Consulting expert" listed in the "to" or "from" field. It is impossible to ascertain whether any of these entries overlap with Dr. Brittain's log, as many of Dr. Brittain's entries do not have a date, the descriptions are vague, and none of the "consulting experts" are identified by name in Elan's log.

10.     To date, Elan's counsel has refused to produce its withheld testing documents. In a meet and confer, Elan stated that its basis for withholding these documents was that Brittain was retained as a consulting expert prior to the litigation by Elan counsel William Sipio. Elan maintains that the work done by Brittain for Sipio was separate and distinct from this lawsuit. (*See id.*)

11.     A copy of excerpts from the transcript of Dr. Brittain's deposition, which took place on November 16, 2007, is attached as Exhibit 8. At his deposition, Elan's counsel instructed Dr. Brittain not to answer questions regarding his testing of Abraxane, again claiming privilege. (*See, e.g.*, Exhibit 8 at 6:13-7:13.)

**Dr. Jeffrey Winkler**

12.     On September 28, 2007, Elan served an Opening Expert Report from Dr. Munson, which is attached as Exhibit 9. The Winkler Declaration was part of Dr. Munson's Report. Dr. Winkler's Declaration discusses the paclitaxel samples used as controls in Elan's SSNMR testing of Abraxane. (Exhibit 9 at Appendix M.) Dr. Munson relied on the Winkler Declaration in forming the opinions expressed in his expert report. (Exhibit 9 ¶¶ 8 & 14.) Elan has placed Dr. Winkler on the list of witnesses it "may call" during trial. (Exhibit 3 at 4.)

13.     On October 19, 2007, Abraxis subpoenaed Dr. Winkler, requesting "Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information, regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane." (Exhibit 10 at 5, No. 12.) Elan lodged objections under the privilege and work-product doctrines. (Exhibit 11 at 11.)

4

14.     After an exchange of correspondence, on November 28, 2007 attorneys for Abraxis and Elan held a telephone conference regarding Elan's withholding of testing documents in the files of Elan's experts. During that call, Elan's counsel stated that Elan was withholding testing documents only from Dr. Brittain's files. (Exhibit 12.)

15.     On February 12, 2008, Elan produced a privilege log listing documents withheld from Dr. Winkler's files. This log was produced less than 24 hours before Dr. Winkler's deposition. There were eleven entries described as "report discussing infringing product." (Exhibit 13.) Elan's counsel represented on the record at the deposition that these entries "relate to privileged information documents involving Dr. Winkler." (Exhibit 14 at 305:14-25.) Dr. Winkler confirmed that the entries "relate[d] to testing of Abraxane." (*Id.*)

16.     To date, Elan's counsel has refused to produce these withheld testing documents.

17.     Elan also resisted Abraxis's requests to depose Dr. Winkler for several months. Abraxis's subpoena, dated October 19, 2007, instructed Dr. Winkler to appear for a deposition on November 30, 2007. (Exhibit 10.) Elan refused to produce Dr. Winkler until it "reconsidered its objections" on January 4, 2008. Relevant correspondence is attached as Exhibit 15 (10/25/07 email from Walters to Glover and 1/4/08 email from Glover to Walters).

18.     Dr. Winkler signed his Declaration under penalty of perjury. (Exhibit 16 at 3.) In his declaration, Dr. Winkler stated that "*I prepared* amorphous [and crystalline dihydrate] paclitaxel. (*Id.* at 2-3 (emphasis added).) At his deposition, finally held on February 13, 2008, Dr. Winkler admitted that he did not personally prepare the samples; rather, Riichiro Tsuji and Ronald Bihovsky prepared the samples. (Exhibit 14 at 47:4-48:8.) Attached hereto as Exhibit 14 is a copy of excerpted pages from Winkler's deposition transcript.

19.    Elan and Elan's experts did not disclose that Riichiro Tsuji and Ronald Bihovsky prepared the paclitaxel standards used in Elan's testing until Dr. Winkler revealed this at his deposition.

20.    At his deposition, Elan's counsel instructed Dr. Winkler not to answer questions regarding his testing of Abraxane, again claiming privilege. Elan's counsel did allow Dr. Winkler to confirm that he conducted at least 3 additional tests on Abraxane. (*See, e.g.,* Exhibit 14 at 333:3-4, 9-20.) Elan's counsel would not, however, allow questioning into what specific types of tests Dr. Winkler conducted.

### Drs. Cory Berkland and Lianjun Shi

21.    On September 28, 2007, Elan submitted Dr. Berkland's Opening Expert Report. In this Report, Dr. Berkland opines, among other things, about infringement of the '363 patent by Abraxis. Dr. Berkland's Opening Report states that "the nanoparticle components of samples of Abraxane were isolated in our lab." (Exhibit 17 ¶ 14.) A copy of his expert report (without exhibits) is attached as Exhibit 17. Dr. Berkland's Report does not mention Dr. Lianjun Shi. (*Id.*)

22.    During his deposition, Dr. Berkland testified that he did not prepare the nanoparticle fractions of Abraxane; rather, Dr. Shi did. (Exhibit 18 at 200:12-201:10.) A copy of relevant portions of Dr. Berkland's deposition transcript is attached as Exhibit 18.

23.    Abraxis subpoenaed Dr. Shi. A copy is attached as Exhibit 19.

24.    Elan initially resisted producing Dr. Shi for deposition and filed a motion to quash on December 18, 2007 in the Federal District Court for the Southern District of New York. Elan's motion is attached as Exhibit 20. Elan finally agreed to present Dr. Shi for deposition on

January 7, 2008. Attached hereto as Exhibit 21 is a copy of excerpted pages from the deposition of Dr. Lianjun Shi. At deposition, Dr. Shi testified that he prepared the Abraxane test samples, but that he had not maintained records of the preparation conditions or kept the test samples themselves. (Exhibit 21 at 42:1-43:16; 143:18-144:25.)

25.    At his deposition, Dr. Shi confirmed that he personally prepared the manipulated Abraxane samples that Elan conducted testing on. (Exhibit 21 at 42:1-43:2.)

26.    Dr. Shi did not produce a single document in connection with his work on Elan's testing of Abraxane.

27.    Elan has placed both Drs. Shi and Berkland on its list of witnesses it "may call" during trial. (Exhibit 3.)

### Dr. Dewey Barich

28.    Dr. Munson's report stated that "solid-state NMR spectroscopy . . . was used to investigate the samples provided to me." (Exhibit 9 ¶12.) Dr. Munson's report does not mention Dr. Barich. (*See generally* Exhibit 9.)

29.    At Dr. Munson's deposition, Dr. Munson revealed for the first time that Dr. Barich conducted the actual NMR experiments Munson reported and relied on. (Exhibit 22 at 33:3-4.) Attached hereto as Exhibit 22 is a copy of excerpted pages from the deposition of Dr. Eric Munson taken on November 29, 2007.

30.    On November 30, 2007, Abraxis subpoenaed Dr. Barich for deposition on December 13, 2007. Attached as Exhibit 23 is a copy of Dr. Barich's original subpoena, along with Elan's objections.

31.    Dr. Barich did not appear at his deposition as noticed on December 13, 2007. A transcript of his non-appearance is attached as Exhibit 24.

32.    The next day, on December 14, 2007, Elan filed a motion to quash Dr. Barich's subpoena in the Federal District Court for District of Kansas. The motion, without exhibits, is attached as Exhibit 25.

33.    After resisting production of Dr. Barich, Elan's counsel finally made him available on January 25, 2008. Attached hereto as Exhibit 26 is a copy of excerpted pages from the deposition of Dr. Dewey Barich. Dr. Barich confirmed at his deposition that he personally conducted the NMR runs on the paclitaxel samples, Abraxane, and manipulated Abraxane samples. (Exhibit 26 at 23:11-15.)

34.    Elan has placed Dr. Barich on its list of witnesses it "may call" during trial. (Exhibit 3.)

### Dr. Munson

35.    Elan also engaged in obstructive practices to hide much of the SSNMR data that Dr. Munson evaluated in rendering his opinions.

36.    In his Opening Report, Dr. Munson relied on certain SSNMR data to reach his conclusion that the paclitaxel in Abraxane contains a small portion of crystallinity. Dr. Munson attached six SSNMR spectra to his Opening Report. Dr. Munson's report did not reveal many underlying facts related to his testing, including the software he used, and the fact that Dr. Barich conducted 34 SSNMR runs total in connection with this case. (*See generally*, Exhibit 9 (Munson

8

Report).) These 34 tests were conducted between January 2007 and May 2007. (*See, e.g.*, Exhibit 26 at 65:8-13 (Barich Dep.).)

     37.    Abraxis served Dr. Munson with a subpoena, requesting "Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information, regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane." Attached hereto as Exhibit 27 is a copy of Abraxis's subpoena to Dr. Eric Munson dated October 19, 2007, and Elan's objections.

     38.    Dr. Munson "produced" several sets of both hardcopy and electronic raw data in connection with his SSNMR testing of Abraxane. The following is a summary of Munson's hard copy and electronic productions.

### Hardcopy "Production"

     39.    The following is a chart listing the dates of production for all hard-copy documents produced:

| Date Produced to Abraxis's Counsel | Document Production Number |
|---|---|
| November 7, 2007 | MUNSON 1-1865 |
| November 8, 2007 | MUNSON 1866-2202 |
| November 20, 2007 | MUNSON 2204-2463 |
| November 29, 2007 | MUNSON 2264-2325 |
| December 13, 2007 | MUNSON 2464-7282 |
| December 14, 2007 | MUNSON 7283-9882 |
| January 22, 2008 | MUNSON 9883-10128 |

| January 24, 2008 | MUNSON 10129-10663 |
|------------------|--------------------|

40.    Attached as Exhibit 28 is a chart sent to Abraxis by Elan summarizing the exact dates Elan produced hardcopy documents regarding the 34 NMR experiments conducted. ("Munson Data Summary")

41.    Elan had produced data from only 3 runs (out of 34) by November 8, 2007. (Exhibit 28.) These 3 runs, according to Elan's chart, did not represent any of the data used in Munson's final report. (Exhibit 28.) As of Dr. Munson's deposition, which occurred on November 29, Elan had produced only 1/11th of Munson's testing data.

42.    Elan produced hardcopy data associated with 16 out of the 34 runs on December 14, 2007, the day expert discovery closed, and two weeks after Dr. Munson's deposition. On December 18, Elan produced hardcopy data associated with 8 more runs. Finally, on January 22 and 24, one year after the SSNMR tests began, Elan produced the hardcopy data relating to the remaining 7 experiments.

43.    As the accompanying declaration of Dr. Atwood explains, much of this hard copy data was unintelligible. (*See, e.g.*, Atwood Decl. at ¶¶ 34-39.)

44.    Dr. Barich testified at his deposition that Dr. Munson requested that Dr. Barich create a special software program to convert the testing data from their native format into text files. (Exhibit 26 at 231:25-234:1 (Barich Dep.).) Dr. Barich further testified that he found Munson's request to convert the data both "unusual" and "a little surprising." (*Id.* at 234:22-

235:18.) Dr. Barich also testified that the hard copy documents of the data files were not produced to Abraxis as they were kept in the ordinary course of business. (*Id.* at 232:5-23.)

### Electronic "Production"

45.     On November 19, 2007, Elan produced a disc containing electronic data and bates labeled MUNSON 2203.

46.     The files containing the actual time domain data from the SSNMR runs would not open on a Morrison & Foerster computer.

47.     On November 21, 2007, a paralegal at Morrison & Foerster uploaded a copy of the electronic files to Dr. Atwood, Abraxis's expert. (Exhibit 29.)

48.     Dr. Munson's report did not reveal the type of software or computer he used to generate his data files. (*See generally*, Exhibit 9 (Munson report).)

49.     During his deposition on November 29, 2007, Dr. Munson revealed that he used a software called "SpinSight." (Exhibit 22 at 184:22-185:2.)

50.     My colleague, Frank Wu of Morrison & Foerster, contacted Kevin Geohring at Varian about obtaining the SpinSight software on December 3, 2007. I understand from Mr. Wu that Mr. Geohring told him that the software was available from Debra Mulder at Varian, but would require the Sun operating system to run and payment of a licensing fee.

51.     On December 7, 2007, Morrison & Foerster hired an outside consultant (Mr. S. Whitehead) to prepare a computer with a Sun Solaris 9 operating system. On December 10,

2007, Mr. Whitehead began working on the project, and returned a Morrison & Foerster HP laptop loaded with the Solaris 9 software on December 17, 2007.

52.     Also on December 17, 2007, Morrison & Foerster LLP signed a license with Varian for the SpinSight software for $1100. The software was sold to us "as is," with no technical support, as Varian informed me that this was a legacy product. A copy of the license is attached as Exhibit 30.

53.     We received a copy of the SpinSight software on January 8, 2008. Also on January 8, 2008, the SpinSight software was loaded onto the laptop with the Sun operating system and forwarded to Dr. Atwood.

54.     In mid-January, Dr. Atwood informed me that the SpinSight software was not functioning correctly. Dr. Atwood also informed me that he had hired an IT specialist to assist him with the software/hardware problems. I understand from Dr. Atwood that this IT specialist informed Dr. Atwood on January 23, 2008 that the software would not operate unless it was loaded onto an actual Sun Microsystems workstation, as opposed to the Intel-based laptop we had originally provided. Shortly thereafter, Dr. Atwood told me he had acquired a Sun workstation.

55.     Morrison & Foerster communicated with Elan's counsel several times regarding Elan's failure to produce the SSNMR documents in usable format. The relevant correspondence is attached as Exhibit 31 (12/4/07 email from Evans to Sullivan; 1/23/08 email from Kruze to Sullivan; 1/24/08 email from Sullivan to Kruze; 2/8/08 e-mail from Kruze to Sullivan; 2/22/08 e-mail from Sullivan to Kruze.)

56.     As explained by Dr. Atwood in his declaration, Drs. Munson and Barich did not reveal several critical parameters regarding their SSNMR work. Without these parameters, Abraxis still cannot accurately replicate the SSNMR spectra that Dr. Munson considered when forming his opinions. For a further description, please see the Declaration of Dr. Jerry Atwood.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of March, 2008 at Palo Alto, California.

_Emily A. Evans_
Emily A. Evans

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on April 11, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on April 11, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
>
> Linda Glover, Esquire
> Stephen Scheve, Esquire
> BAKER BOTTS L.L.P.
> One Shell Plaza
> 910 Louisiana Street
> Houston, TX  77002-4995
> steve.scheve@bakerbotts.com
>
> Paul F. Fehlner, Esquire
> BAKER BOTTS L.L.P.
> 30 Rockefeller Plaza
> New York, NY  10112-4498
> paul.fehlner@bakerbotts.com

William J. Sipio, Esquire
1375 Brentwood Road
Yardley, PA 19067
sipz25@aol.cm

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

/s/ *Karen E. Keller*
Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
Elena C. Norman (No. 4780)
enorman@ycst.com
Karen E. Keller (No. 4489)
kkeller@ycst.com
Michele Sherretta Budicak (No. 4651)
mbudicak@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899
(302) 571-6600

Attorneys for Defendant
ABRAXIS BIOSCIENCE, INC.

2

# EXHIBIT 1

```
                                                    1
12:16:30  1        IN THE UNITED STATES DISTRICT COURT
          2        IN AND FOR THE DISTRICT OF DELAWARE
          3                - - -
          4  ELAN PHARMA INTERNATIONAL  :   Civil Action
             LIMITED,
          5             Plaintiff,      :
          6        v.                   :
          7  ABRAXIS BIOSCIENCE INC.,   :
          8             Defendant.      :   No. 06-438-GMS
          9                - - -
         10        Wilmington, Delaware
                   Tuesday, October 2, 2007
         11             9:30 a.m.
         12
         13
         14  BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge
         15  APPEARANCES:
         16     STEVEN J. BALICK, ESQ.
                   Ashby & Geddes
         17            -and-
                STEPHEN SCHEVE, ESQ.,
         18     LINDA M. GLOVER, ESQ., and
                JEFFREY D. SULLIVAN, ESQ. (New York, N.Y.)
         19     Baker Botts LLP
                (Houston, Texas)
         20            -and-
                GREGORY BOKAR, ESQ.
         21     Counsel - Elan Drug Delivery
         22             Counsel for Plaintiff
         23
         24
         25
```

```
                                                    2
   1  APPEARANCES CONTINUED:

   2     ELENA C. NORMAN, ESQ., and
         JEFFREY CASTELLANO, ESQ.

   3     Young Conaway Stargatt & Taylor, LLP
              -and-

   4     EMILY A. EVANS, ESQ.,
         ERIC S. WALTERS, ESQ., and

   5     DIANA B. KRUZE, ESQ.
         Morrison & Foerster

   6     (Palo Alto, California)

   7             Counsel for Defendant
                 - - -
12:16:30  8
12:16:30  9        THE COURT:  Please take your seats.  Counsel,
12:16:30 10  this is an office conference.  Let's begin with a round of
12:16:30 11  introductions.
12:16:30 12        MR. BALICK:  Good morning, Your Honor.  Steven
12:16:30 13  Balick here for the plaintiff.  With me from the Baker Botts
12:16:30 14  firm, starting at the end of the table, to Your Honor's
12:16:30 15  right is Stephen Scheve.  Jeffrey Daniels Sullivan next to
12:16:30 16  him.  Linda Glover next to me.  Behind us from Elan is
12:16:30 17  Gregory Bokar.
12:16:30 18        THE COURT:  All right.
12:16:30 19        MS. NORMAN:  Good morning, Your Honor.  Elena
12:16:30 20  Norman from Young Conaway for Abraxis.  With me at counsel
12:16:30 21  table are Emily Evans of Morrison & Foerster from
12:16:30 22  California, Eric Walters, Diana Kruze, and my colleague from
12:16:30 23  Young Conaway, Jeffrey Castellano.
12:16:30 24        THE COURT:  Good morning, all.
12:16:30 25        Was Mr. Jacobs involved in this?
```

```
                                                    3
12:16:31  1        MS. EVANS:  Yes, sir.  He is not here today.
12:16:31  2        THE COURT:  Where is Mr. Jacobs?
12:16:31  3        MS. EVANS:  Mr. Jacobs is in California.  We
12:16:31  4  have the attorneys that have the personal knowledge about
12:16:31  5  the issues.
12:16:31  6        THE COURT:  Is Mr. Jacobs lead on this case?
12:16:31  7        MS. EVANS:  Yes, sir.
12:16:31  8        THE COURT:  Mr. Jacobs should have been here.
12:16:31  9        MS. EVANS:  I am sorry, sir.
12:16:31 10        THE COURT:  I understand we expressly ordered
12:16:31 11  his appearance today.
12:16:31 12        MR. SCHEVE:  Actually, I was the one who had the
12:16:31 13  speech at the ABA conference and you ordered that I be here.
12:16:31 14        THE COURT:  Mr. Jacobs should have been here.
12:16:31 15  This is unacceptable.
12:16:31 16        MS. EVANS:  Sorry, Your Honor.
12:16:31 17        THE COURT:  "Sorry" doesn't get it done.  We
12:16:31 18  have now had lawyers travel across the country.  Quite
12:16:31 19  frankly, whatever happens here, Ms. Evans, you will be
12:16:31 20  responsible for.
12:16:31 21        MS. EVANS:  Yes, sir.  I understand that, sir.
12:16:31 22        THE COURT:  With regard to these proceedings
12:16:31 23  here today, which, as you can tell from the tone of my
12:16:31 24  order, I am not in the best of moods with regard to the way
12:16:31 25  these lawyers and the parties -- and I am going to include
```

```
                                                    4
12:16:31  1  the parties in this, because we never know, but routinely
12:16:31  2  suspect that much of your behavior is dictated by clients
12:16:31  3  who may be behaving badly.  That is okay.  It is your job to
12:16:31  4  protect them.  But I am not going to permit them through you
12:16:31  5  to inflict yourselves on me, my chambers, and my colleagues,
12:16:32  6  particularly, and most especially, our new Magistrate Judge.
12:16:32  7        For better or worse, you are stuck with me for
12:16:32  8  the duration.  That is bad for me and could be, at the end
12:16:32  9  of the day, not very good for you, insofar as if the kind of
12:16:32 10  behavior I have seen, evinced by these 11 motions,
12:16:32 11  continues, I am going to take action in the form of
12:16:32 12  sanctions.
12:16:32 13        It's not a threat.  It's a promise.  Or either
12:16:32 14  way.
12:16:32 15        So I want to, in the strongest terms possible,
12:16:32 16  convey to you that this is going to stop, simply got to
12:16:32 17  stop.  I am going to discuss with you today your disputes,
12:16:32 18  such as they are, and attempt to resolve them today if
12:16:32 19  possible.  And we are going to revisit the fact discovery
12:16:32 20  deadline, because obviously we have to.  We are beyond the
12:16:32 21  July 30th deadline for fact discovery.
12:16:32 22        I assume most of these situations or disputes
12:16:32 23  involve merits discovery.  Is that correct?
12:16:32 24        MR. SCHEVE:  Yes, Your Honor.
12:16:32 25        THE COURT:  We will begin the way I have copied
```

81

| | |
|---|---|
| 12:18:08 | 1 |

THE COURT:  No, it's not a question of
over-designation.  If you heard further Mr. Walters'
position, even if nothing was redacted, I think what he is
saying, it would be helpful, and required by the rules, that
you explain your position.

MR. SCHEVE:  The only thing I would add to the
mix, Your Honor, is they have deposed every one of our
inventors and employees.  And they have had their
opportunity --

THE COURT:  You have got to go on record, that
is what he is saying.

MR. SCHEVE:  Now he is saying, I don't like
their answers, I want you to come back and do this.

We have answered by referring to the documents.

THE COURT:  With respect, Mr. Scheve, I don't
hear him saying that.

MR. WALTERS:  Their inventors, you know, had
amnesia at their depositions.  I never heard so many "I
don't knows," "I don't understand what that means."  "I
don't remember."  Flat-out refusing to answer the question.

It is not a question of not liking the answer.
It's just, they have got the documents.  They claim, they
must have reason to claim that date as conception.  They
came up with the date.  Why is it that date?

THE COURT:  All that is being said here, I

82

think, is they are entitled to know that --

MR. SCHEVE:  If they want to know why did we
select that date, we will respond.

MR. WALTERS:  What constitutes conception.

THE COURT:  And the support for that assertion,
or those assertions.  That's fair game.

MR. SCHEVE:  Okay.

THE COURT:  Counsel, here you go (handing
documents to Mr. Walters).

MR. WALTERS:  I had one additional interrogatory
that also relates to several of the document requests.  This
is Interrogatory No. 29, and Document Requests 74, 75 and
76.  It has to do with documents that refer to Abraxis or
Abraxane and testing of Abraxane by Elan.  This is an issue
that came up in an earlier discovery conference.  They
asserted work product over all of the testing.

Since that discovery hearing, we have learned a
couple of very interesting things.  Very late in the
litigation, Elan produced -- I believe these documents are
marked restricted confidential.  Is it acceptable to go
ahead with this?

MR. SULLIVAN:  We don't object.

MR. WALTERS:  -- produced a number of documents
showing that they had a program to try to copy Abraxane, and
it failed.  These came out at the very end, toward the very

83

end of document discovery.  Part of that, they had people
inside Elan characterizing Abraxane and attempting to use
their grinding methodology that they have in their patents,
maybe variations of what was in their patents, to produce
it.  And they couldn't do it.

And as part of this, we are very concerned that
they have not produced all of the documents that they have
that relate to Abraxis or Abraxane, including testing of
Abraxane.  I think they tried to characterize in the briefs,
they just won't believe us when we say we did it.  It is
much more specific than that.

We have asked them -- part of what both parties
did during document discovery is agreed to run searches of
electronic databases using specific terms.  Two of the terms
were Abraxis and Abraxane.  We have said, well, this doesn't
look like enough documents based on what we think you have
done.

THE COURT:  We have had this issue come up
before.

MR. WALTERS:  It is new because we have learned
all sorts of new facts, including that this program took
place.  We have asked them to -- they said they produced
everything.  Then just tell us, when you run your search,
you know, the guys, the tech guys who run the search will
have a number next to the search.  Abraxis comes up in a

84

thousand documents, 2000 documents.  Tell us how many.

They won't do it.  When we look at the documents
that they actually produced, which is just a handful of
documents -- I will get back to that in a minute -- they
refer to things that took place.  There is a Gainesville
meeting that is referenced where part of the program was
developed to copy Abraxane.  There is no documents about
this Gainesville meeting.  There is documents that refer to
a development plan.  There is no development plan that was
produced.

And then the other piece of this that causes us
some concern is that they only produced -- this program
appears to have started sometime in 2005.

THE COURT:  This program meaning the program to
try to replicate --

MR. WALTERS:  To try to replicate Abraxane.  And
it went on, it is a little hard to tell with the paper
trail, but it went on for at least about a year.  They
originally budgeted over a million dollars and spent 87,000
after just a few months.  We don't have the end point of it,
which is basically one person -- the equivalent of one
person working almost full time.

We have basically a couple dozen documents, most
of which are little one- and two-line short e-mails of that
project.  It just doesn't add up.

85

**1** Then there is also internal documents that we

**2** have cited in the briefing -- I could show you if you would

**3** like -- that refer to vials of Abraxane that they had on

**4** hand that they were using in the lab. And we don't have

**5** what they were using it for.

**6** But then finally, there is one other piece, which is

**7** in the interrogatory response. We said, tell us about your

**8** testing of Abraxane. And they said, you know, if they

**9** hadn't conducted any testing of Abraxane or even any testing

**10** that they didn't claim was work product, it would be have

**11** been very easy: No testing of Abraxane. They didn't say

**12** that. They said Elan conducted no formal or extensive

**13** testing of Abraxane that is not work product.

**14** If I may return to that interrogatory response,

**15** and there has been no testing, no formal or extensive

**16** testing.

**17** One additional point and I will sit down, which

**18** is, their argument earlier was that, it's premature, it's

**19** work product. We are going to have our experts come forward

**20** with their reports. We have their expert report now, with

**21** some testing data. But they only want to show the jury the

**22** testing data that they like. We don't really think much of

**23** their testing data. But we think the jury ought to have the

**24** whole story. And they shouldn't be able to just pick and

**25** choose what data they show to the jury.

86

**1** They have relied on this argument that it's

**2** premature. This is all part of expert discovery. Here we

**3** are, it's expert discovery, and they should be producing

**4** their testing data that has been done by them and their

**5** experts and consultants.

**6** THE COURT: Okay. Mr. Scheve.

**7** MR. SCHEVE: Your memory is very good, Your

**8** Honor. This issue was raised in the past. My client --

**9** THE COURT: My memory is actually lousy, but I

**10** remember this.

**11** MR. SCHEVE: My client -- actually, Abraxis has

**12** a generic business. That is their primary business with

**13** regard to this drug. Within their company, I will bet my

**14** house that they have gone out and acquired products from

**15** others that are being viewed for a generic. There is no

**16** question, and they had the deposition of the three primary

**17** scientists of our company, and they went into it ad nauseam

**18** about what was this program. And it was fully discussed

**19** that they were considering, do we go generic or do we go

**20** 505, in other words, file a New Drug Application, in

**21** evaluating the various strategic routes to move forward.

**22** And as the testimony was, the decision was made,

**23** quote, The market has moved past us and our product is

**24** already on the market, namely, Abraxane, we are not going to

**25** go out and make another one.

87

**1** There was one lab notebook, we gave it to them.

**2** We have given them every single page, every

**3** single page, Your Honor. There is no more documentation.

**4** It was ended for business reasons.

**5** Of the 80-some thousand, here are the five vials

**6** that remain unopen that we bought (indicating). They are

**7** about four thousand a vial. There is 20,000 of the expense

**8** of the 87. So we have spent, my client spent a total of

**9** $67,000 to evaluate the various approaches. They have never

**10** accused us of infringing their patents. I don't know what

**11** this is all about. But I will tell you, we have gone to our

**12** vendors, they have plugged into every data search every

**13** single document, every strand. We have given them 240 pages

**14** where the word Abraxane or Abraxis has been mentioned.

**15** Now, what is really happening here is a veiled

**16** effort to get at my work product. Your Honor entered an

**17** order denying the Rule 11 motion. We did testing before we

**18** filed this lawsuit. We met our obligations under Rule 11.

**19** At the direction of counsel, we had consulting

**20** experts, not testifiers, consult with us and do testing

**21** before we filed this lawsuit. And this is nothing but a

**22** veiled effort now of trying to pierce these privileges.

**23** In terms of my client, Dr. Liversidge, who is

**24** one of the inventors, Dr. Gary Liversidge, who is one of the

**25** inventors, and the manager of my client's plant in King of

88

**1** Prussia, the head science guy, they have all stated under

**2** oath, no testing was done by my client on Abraxis. It

**3** didn't happen. They got every single piece of paper.

**4** To the extent that there is privileged

**5** information from consulting experts, Your Honor, we stand on

**6** those privileges.

**7** This lawsuit is about whether Abraxane infringes

**8** our patents. The fact that we bought some Abraxane and did,

**9** as every other company out there who is in the generic

**10** business, trying to think, this thing is going to come off

**11** patent in 2011 or whatever, is there a strategy we can

**12** employ, to suggest that is somehow nefarious ignores how

**13** this industry works.

**14** They have got everything we have got, Judge,

**15** that is not privileged. Every single page.

**16** MR. WALTERS: I did not hear Mr. Scheve respond

**17** to a number of the points that have caused us concern. How

**18** many documents showed up when they did a term search?

**19** Pretty easy thing to answer: Abraxis, Abraxane. If it is

**20** more than 240, then we have a problem. Why didn't the

**21** interrogatory response, instead of saying, on information

**22** and belief, which I forgot to mention, but it is important,

**23** on information and belief no formal or extensive testing,

**24** why not say, we have investigated it and there is no

**25** testing.

89

```
12:18:19  1        We had ten depositions.  We are not complaining
12:18:19  2   about it.  We took the depositions of the people that we
12:18:19  3   thought -- the inventors and people like that.  There are a
12:18:19  4   lot of other names on these documents that show up involved
12:18:19  5   in this program with Abraxane.  It's not just, you know, the
12:18:19  6   handful of people that we talked to.  Elan is a big company.
12:18:19  7        In addition, you know, Mr. Scheve talked about
12:18:19  8   testing that they did prior to the lawsuit, or at any time
12:18:19  9   in the lawsuit.  It is not on the privilege log.  If they
12:18:20 10   have some privileged testing, they haven't asserted the
12:18:20 11   privilege, Your Honor.  It is not on the log.
12:18:20 12        We raised this in the written motion.  They talk
12:18:20 13   about this privileged work product testing.  At the same
12:18:20 14   time they are developing a competing product and they say
12:18:20 15   that there is a privilege.  I would like to see that on a
12:18:20 16   privilege log that supports it.
12:18:20 17        But more to the point, again, we are at the
12:18:20 18   phase of expert discovery.  They have come forward with
12:18:20 19   their testing evidence, and we think the jury is entitled to
12:18:20 20   see all of their testing evidence, not just what they
12:18:20 21   handpick.
12:18:20 22        THE COURT:  Could you respond first, Mr. Scheve,
12:18:20 23   to that last one.
12:18:20 24        MR. SCHEVE:  You know, it's called Presentation.
12:18:20 25   It's on the privilege log.  All I can tell you, Judge, is
```

90

```
12:18:20  1   it's there.  Constantly, every day, "You didn't do this, the
12:18:20  2   you didn't do that."
12:18:20  3        It's there.
12:18:20  4        Clearly, if one of our witnesses comes in and
12:18:20  5   talks about some testing that he has done, he is going to
12:18:20  6   testify to it.  He is going to get all the testing he did on
12:18:20  7   that topic.  There is no ands, ifs or buts about that.
12:18:20  8        We have looked at this law very clearly and
12:18:20  9   preserved all the walls between consultants and testifiers.
12:18:20 10   And what you heard Mr. Walters saying is we think the jury
12:18:20 11   should have all the testing.  That's a clear effort to
12:18:20 12   pierce privileged material.
12:18:20 13        So we are going to put up our witnesses, and
12:18:21 14   they are going to testify about testing that they did.
12:18:21 15        THE COURT:  You are saying that this testing
12:18:21 16   that you contend to be privileged has been identified as
12:18:21 17   such on a log.
12:18:21 18        MR. SCHEVE:  Yes.
12:18:21 19        MR. WALTERS:  What's that?
12:18:21 20        MR. SCHEVE:  It's called Presentation.  After
12:18:21 21   today I will direct you to the page and line.
12:18:21 22        THE COURT:  Counsel can discuss that.  Go ahead.
12:18:21 23        MR. WALTERS:  Some of these issues, I think, if
12:18:21 24   they said they have identified all of the documents, then
12:18:21 25   they shouldn't be averse to an order that they produce any
```

91

```
12:18:21  1   remaining documents on Abraxane and Abraxis and that they
12:18:21  2   answered the interrogatories as written, any testing, not
12:18:21  3   formal or informal testing.  That's not a proper response.
12:18:21  4   That's not responding to the interrogatory.  If there is a
12:18:21  5   Court order that says produce documents in response to
12:18:21  6   Request 74, 75 and 76 --
12:18:21  7        THE COURT:  Do you have a problem with this?
12:18:21  8        MR. SCHEVE:  You are going to have to craft it,
12:18:21  9   Your Honor, to protect our privilege issues.  I am assuming
12:18:21 10   testing -- and I don't mean to be lawyerly here -- but does
12:18:21 11   testing mean an experiment?  What would be the broad term?
12:18:21 12   My scientists have testified that they have gone to seminars
12:18:21 13   where Dr. Soon-Shiong has stood up and given a speech about
12:18:21 14   this.  And he has made concessions, for example, that they
12:18:21 15   discovered their drug was non-crosslinked.  Are those mental
12:18:22 16   impressions of whether or not that makes sense?  Is that
12:18:22 17   testing?
12:18:22 18        THE COURT:  I hope that's not what he means.
12:18:22 19        MR. SCHEVE:  There has not been an experiment, a
12:18:22 20   lab experiment, a mouse, a Petri dish --
12:18:22 21        THE COURT:  I accept your representation as an
12:18:22 22   officer of the Court.  What counsel is saying, and I think
12:18:22 23   it not inappropriate, and I don't think it in any way
12:18:22 24   impugns your integrity, why not sign on to a response that
12:18:22 25   reflects that.
```

92

```
12:18:22  1        MR. SCHEVE:  We will say it to them again.
12:18:22  2        Now, with regard to the documents, Your Honor,
12:18:22  3   we did an electronic search, you get a string of e-mails.
12:18:22  4   There is a subject line that says Abraxis, that may be six
12:18:22  5   hits, string, string, string, string, string, string.  They
12:18:23  6   got the document.  There is no such thing as going through
12:18:23  7   our vendor's database and correlating the number of hits
12:18:23  8   with the number of documents.  They gave us the number of
12:18:23  9   hits.  We went and found the documents.  There are 240 of
12:18:23 10   them.
12:18:23 11        I will say it again:  They have every single
12:18:23 12   piece of paper in my company's possession that has the words
12:18:23 13   Abraxis or Abraxane.
12:18:23 14        MR. WALTERS:  Sounds like I didn't hear him
12:18:23 15   object to the order producing those documents.
12:18:23 16        MR. SCHEVE:  We can go back and forth on
12:18:23 17   whether --
12:18:23 18        THE COURT:  He understands from this discussion
12:18:23 19   and our previous discussions, I hope you do as well, that it
12:18:25 20   is the Court's order.  That is inherent, before we ever
12:18:25 21   convened on this once.  Once that interrogatory was
12:18:25 22   propounded or that request for production was propounded,
12:18:25 23   there is an obligation by rule.
12:18:25 24        So I don't think -- I think that's superfluous.
12:18:25 25        MR. WALTERS:  Again, it sounds like Your Honor
```

93

```
12:18:25  1   has made up his mind and maybe we have accomplished --
12:18:25  2         THE COURT:  I think you have.
12:18:25  3         MR. WALTERS:  Fine.  Thank you.
    75    4         THE COURT:  Then I think I see one issue left.
   .25    5   Abraxis has asked that Elan be ordered to produce
12:18:25  6   third-party documents created by Sterling Winthrop,
12:18:25  7   Particulate Prospects Corporation, and Eastman Kodak
12:18:25  8   currently in Elan's possession.
12:18:25  9         MS. EVANS:  Yes, sir.  I will address that.
12:18:26 10         This issue is a pure legal issue.  Based at
12:18:26 11   least on briefing, there was no dispute about the relevant
12:18:26 12   facts, Your Honor.  The patents in suit were owned by a
12:18:26 13   number of different entities, start out with Kodak, Sterling
12:18:26 14   Winthrop, Particulate Prospects, and eventually they came to
12:18:26 15   Elan.  And there was basically no transfer of control over
12:18:26 16   the corporation.  This was a mere asset purchase.  And I
12:18:26 17   have it right here.  There is an asset purchase agreement.
12:18:26 18   And the assets were the IP.  So the assets were transferred.
12:18:26 19         At the same time, all the old Kodak and Sterling
12:18:26 20   Winthrop and Particulate Prospects documents came into
12:18:26 21   Elan's possession, but not control over Kodak, not control
12:18:26 22   over Sterling Winthrop.  There is no dispute that Elan
12:18:26 23   doesn't control Kodak and doesn't control Sterling Winthrop,
12:18:26 24   and never did, and doesn't control Particulate Prospects.
* :18:2 25         When they got those documents together with the
```

94

```
12:18:26  1   patents that they purchased, the privilege is waived.  The
12:18:26  2   privilege passes with control.  They don't dispute that.
12:18:26  3         All the district courts who have looked at this
12:18:26  4   issue have held that a transfer of assets doesn't transfer
12:18:26  5   the privilege, the right to assert the privilege.  When they
12:18:26  6   got those documents, the privilege was waived.
12:18:26  7         There is no dispute about these facts.
12:18:26  8         The one case that Elan was able to cite that
12:18:27  9   they believe holds to the contrary is a Texas bankruptcy
12:18:27 10   case, Your Honor.  And that case ruled, yes, its goes with
12:18:27 11   control.  But that case put a finer point on what control
12:18:27 12   was.  But it was specifically because of public policy
12:18:27 13   reasons having to do with bankruptcy and the power of the
12:18:27 14   Bankruptcy Court to -- as the case says here, the Court is
12:18:27 15   reluctant to adopt a principle that unnecessarily inhibits
12:18:27 16   the effective administration of bankruptcy estates.
12:18:27 17         So this is a very specific ruling relating to
12:18:27 18   bankruptcy decisions.  Every District Court that has looked
12:18:27 19   at this, we cite several decisions in our motion, has said
12:18:27 20   that there is a waiver when documents pass with assets and
  :18:2 21   there is no transfer of control.
12:18:28 22         I think this is a very simple legal issue, Your
12:18:28 23   Honor.
12:18:28 24         THE COURT:  Mr. Scheve.
12:18:28 25         MR. SCHEVE:  Your Honor, I think she is right,
```

95

```
12:18:28  1   it is a legal issue.  But it's one that has to be determined
12:18:28  2   based on a factual inquiry by Your Honor.
12:18:28  3         What really happened -- you will see that there
12:18:28  4   is an affidavit that's been filed with the Court.  There is
12:18:28  5   a factual record.  And if Your Honor decides that this is
12:18:28  6   something that needs to go beyond this, it involves the
12:18:28  7   issue of attorney-client privilege, and there must be a
12:18:28  8   record to resolve this, because what happened is this, Your
12:18:28  9   Honor.
12:18:28 10         This nanoparticulate technology first had its
12:18:28 11   roots back in, of all places, the photographic industry.
12:18:28 12   And if you go and buy a camera today or a big-screen TV and
12:18:28 13   they talk about the number of pixels, those little-bitty
12:18:28 14   dots of color and information, that's how all of this got
12:18:28 15   started.
12:18:28 16         Kodak, while you would associate it with
12:18:28 17   photographic stuff, eventually recognized that this stuff
12:18:28 18   might have application to pharmaceuticals.  And it had a
12:18:28 19   pharmaceutical arm that it acquired called Sterling Drug
12:18:28 20   Company.
12:18:28 21         Eventually, all of this nanoparticulate
12:18:28 22   technology applicable to the pharmaceutical industry was
12:18:28 23   placed into an entity, with all due respect to Ms. Evans,
12:18:28 24   the entity was called NanoSystems LLC, not NanoSystems
12:18:28 25   Corporation, as she has told you and they would hope that
```

96

```
12:18:29  1   you would perceive it.
12:18:29  2         NanoSystems LLC, a limited liability company,
12:18:29  3   treated under the law as, for tax purposes and other
12:18:29  4   purposes, as a partnership with certain limitations of
12:18:29  5   liability, held all this information.  Eventually, Kodak
12:18:29  6   spun off certain companies and kept all that nanoparticulate
12:18:29  7   research applicable to pharmaceutical companies in
12:18:29  8   NanoSystems LLC.
12:18:29  9         Now, you can't merge an LLC into a corporation.
12:18:29 10   You don't announce the mergers of corporations and
12:18:29 11   partnerships.  The Lanham Act required NanoSystems LLC.
12:18:29 12         What counsel over and over again fails to bring
12:18:29 13   to your attention, and it is in the record, this was a
12:18:29 14   purchase of all assets and all liabilities.  They bought the
12:18:29 15   property.  They took on all the employees.  They
12:18:29 16   incorporated the name as a division within Elan.  They
12:18:29 17   continued the benefits of the employees, and continued that
12:18:29 18   business.
12:18:29 19         So if you think about it, Your Honor, how can
12:18:29 20   you acquire all the liabilities but then say but you don't
12:18:29 21   have any defenses to liabilities?  That's what they want to
12:18:29 22   argue.  My client acquired liabilities but then couldn't
12:18:29 23   rely on privileges to defend it against a liability claim or
12:18:29 24   to shield information?
12:18:30 25         So was there a purchase of assets?  Absolutely.
```

# EXHIBIT 2

# REDACTED IN ITS ENTIRETY

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 06-438-GMS |
| ABRAXIS BIOSCIENCE, INC., | § § § | |
| Defendant. | § § | |

## EXHIBIT 11: PLAINTIFF ELAN'S WITNESS LIST

Plaintiff Elan identifies the following witnesses that will be called to testify at trial. The order of the presentation of evidence of witnesses is not indicative of the order in which the witnesses will be called at trial.

1.  Gary G. Liversidge
    Elan Drug Delivery, Inc.
    3500 Horizon Drive
    King of Prussia, PA 19406
    (live)

2.  John C. Jarosz
    Analysis Group
    1899 Pennsylvania Ave., N.W.
    Suite 200
    Washington, D.C. 20006
    (live)

    Mr. Jarosz will testify about the methodology to determine damages for patent infringement. Mr. Jarosz will testify as to reasonable royalty damages arising from Abraxis's past infringement of the '363 Patent and the appropriate reasonable royalty to

license the '363 Patent to Abraxis. Mr. Jarosz will testify as to the methods,

assumptions, and conclusions of Mr. Musika.

Mr. Jarosz will testify as to the topics addressed in his report.

3.    Eric J. Munson Ph.D.
      1324 Lawrence Ave.
      Lawrence, KS 66049
      (live)

Dr. Munson will testify about analytical testing of pharmaceutical formulations

using Solid-State Nuclear Magnetic Resonance Spectroscopy (SSNMR). He will also

testify about how SSNMR compares with other analytical testing of pharmaceutical

formulations. Dr. Munson will testify that particles of crystalline paclitaxel exist in

Abraxane® and reconstituted Abraxane®. Dr. Munson will testify as to the particles

within Abraxane® and reconstituted Abraxane® meeting the crystalline medicament

useful for treating cancer limitation of the asserted claims.

Dr. Munson will testify as to the topics addressed in his report.


Plaintiff Elan identifies the following witnesses that may be called to testify at trial. The

order of the presentation of evidence of witnesses is not indicative of the order in which the

witnesses may be called at trial.

1.    All witnesses listed by defendant Abraxis (Ex 12) (live and/or by deposition).

2.    Elaine Liversidge
      Elan Drug Delivery, Inc.
      3500 Horizon Drive
      King of Prussia, PA 19406
      (live and/or by deposition)

3.    Nancy Peltier
      Elan Drug Delivery, Inc.
      3500 Horizon Drive
      King of Prussia, PA 19406
      (live and/or by deposition)

4.    David Czekai
      NanoSystems Div., Elan Pharmaceuticals
      3500 Horizon Drive
      King of Prussia, PA 19406
      (live and/or by deposition)

5.    Seamus O'Loan
      Elan Drug Technology
      3500 Horizon Drive
      King of Prussia, PA 19406
      (live)

6.    Pramod P. Sarpotdar
      3981 Gaffney Court
      San Diego, California 92130
      (live and/or by deposition)

7.    Lawrence de Garavilla
      909 Noble Drive
      Downingtown, PA 19335
      (live and/or by deposition)

8.    Eugene Cooper
      2621 Crum Creek Dr.
      Berwyn, PA 19312
      (live and/or by deposition)

9.    Lianjun Shi, Ph.D.
      150318   Doolittle Drive
      Bridgewater, NJ
      (live and/or by deposition)

10.   Dewey Barich, Ph.D.
      University of Kansas
      Lawrence, KS 66045
      (live and/or by deposition)

11.   Jeffrey D. Winkler, Ph.D.
      University of Pennsylvania
      Philadelphia, PA 19104
      (live and/or by deposition)

12.   Mark C. Manning, Ph.D.
      1826 Monarch Circle
      Loveland, CO 80538
      (live and/or by deposition)

       Dr. Manning will testify about human albumin in pharmaceutical formulations and about crosslinking. Dr. Manning will testify that human albumin on the particles within Abraxane® and reconstituted Abraxane® is essentially free of intermolecular crosslinkages. He will further testify that the particles within Abraxane® and reconstituted Abraxane® meet the non-crosslinked limitation in the asserted claims. Dr. Manning will testify as to the deficiencies of Abraxis's analytical testing.

       Dr. Manning will testify as to the validity and enforceability of the '363 Patent. Dr. Manning will testify as to the understanding of the '363 Patent by one of ordinary skill in the art, including that the specification enables one of ordinary skill in the art to practice the invention of the asserted claims without undue experimentation; that the specification adequately describes the limitations of the asserted claims; and that one of ordinary skill in the art would understand the scope of the asserted claims when read in light of the specification. Dr. Manning will testify that no material information was withheld from the Patent Office during examination of the patent application that issued as the '363 Patent.

       Dr. Manning will testify as to the topics addressed in his expert reports.

13. Harry G. Brittain, Ph.D.
    10 Charles Street
    Milford, NJ 08848
    (live and/or by deposition)

    Dr. Brittain will testify about limitations of using X-Ray Powder Diffraction

(XRPD) to characterize Abraxane®. Dr. Brittain will testify as to the deficiencies in the

XRPD testing commissioned by Abraxis. Dr. Brittain will testify that particles within

Abraxane® and reconstituted Abraxane® meet the non-crosslinked surface modifier

limitation of the asserted claims. Dr. Brittain will testify that Abraxane® and

reconstituted Abraxane® infringe the asserted claims under the doctrine of equivalents.

    Dr. Brittain will testify as to the methods, assumptions, and conclusions of Dr.

Atwood.

    Dr. Brittain will testify as to the topics addressed in his reports.

14. Samuel J. Danishefsky, Ph.D.
    Memorial Sloan-Kettering Cancer Institute
    1275 York Avenue
    New York, NY 10065
    (live and/or by deposition)

    Dr. Danishevsky will testify about the nature of paclitaxel, the synthesis of

paclitaxel, and the role of formulation in effective delivery of paclitaxel. Dr.

Danishevsky will testify as to the inventive achievements described in the '363 Patent.

Dr. Danishevsky will testify as to the chemical nature of paclitaxel in particles within

Abraxane® and reconstituted Abraxane® with respect to literal infringement and

infringement under the doctrine of equivalents.

    Dr. Danishevsky will testify as to the non-obviousness of the '363 Patent in

view of the Haynes Patent.

Dr. Danishevsky will testify as to the topics addressed in his reports.

15.    Cory Berkland, Ph.D.
       18329 Northwind Drive
       Lawrence, KS 66044
       (live and/or by deposition)

Dr. Berkland will testify as to the isolation of particles within reconstituted

Abraxane®.  Dr. Berkland will testify that particles within Abraxane® and reconstituted

Abraxane® meet the non-crosslinked surface modifier limitation of the asserted claims.

Dr. Berkland will testify as to deficiencies of Abraxis's analytical testing.  Dr. Berkland

will testify about TEM and cryo-TEM testing to determine crystallinity.  Dr. Berkland

will testify as to the TEM and cryo-TEM images commissioned by Abraxis.

Dr. Berkland intends to testify as to the topics addressed in his report.

16.    Manoj Maniar, Ph.D.
       375 Pheasant Run
       Newtown, PA  18940
       (live and/or by deposition)

Dr. Maniar will testify about drug development, including compliance with

guidelines promulgated by the United States Food and Drug Administration.  Dr. Maniar

will testify as to the validity and enforceability of the '025 Patent, if necessary.  Dr.

Maniar will testify that no material information was withheld from the Patent Office

during examination of the patent application that issued as the '025 Patent, if necessary.

Dr. Maniar will testify as to the topics addressed in his expert report.

17.    David Robert Taft, Ph.D.
       Division of Pharmaceutical Sciences
       Long Island University
       Brooklyn, NY 11201
       (live)

Dr. Taft will testify as to preclinical studies of Elan's nanoparticulate

paclitaxel formulations and preclinical studies of Abraxane®, both involving comparisons to paclitaxel dissolved in Cremophor™. Dr. Taft will testify that the preclinical studies demonstrate that the efficacy of paclitaxel is increased by administering it as surface modified nanoparticles. Dr. Taft will testify that the reduction of particle size and use of a surface modifier increased efficacy and reduced toxicity in both Elan's formulations and Abraxane®. Dr. Taft will testify that the preclinical studies demonstrate that particles within reconstituted Abraxane® perform substantially the same function in substantially the same way with substantially the same result as the particles of the asserted claims.

Dr. Taft will testify as to the topics addressed in his report.

18.  David J. Haidak, M.D.
     Oncology-Hematology Associates, P.A.
     8926 Woodyard Road, Suite 201
     Clinton, MD 20735
     (live)

Dr. Haidak will testify about use of Abraxane® in treating cancer patients. He will testify as to the use and administration of Abraxane® to treat cancer patients.

Dr. Haidak will testify as to the topics addressed in his report.

19.  Stephen R. Byrn, Ph.D.
     Purdue University
     West Lafayette, IN 47906
     (live)

Dr. Byrn will testify about formulation of pharmaceutical solids. Dr. Byrn will testify about nanoparticles, crystallinity, amorphousness, and analytical techniques for characterizing pharmaceutical solids. Dr. Byrn will testify about XRPD. Dr. Byrn will testify as to the deficiencies of Abraxis's XRPD testing. Dr. Byrn will testify that

Abraxane® and reconstituted Abraxane® literally infringe the asserted claims.

Dr. Byrn will testify about the state of the prior art with respect to the '363 Patent and, if necessary, the '025 Patent. Dr. Byrn will testify as to what a person of skill in the art would understand from the prior art. Dr. Byrn will testify that the '363 Patent claims are non-obviousness. Dr. Byrn will testify that the Domb Patent is immaterial to the '363 Patent claims.

Dr. Byrn will testify as to the topics addressed in his reports.

20.   Patrick Soon-Shiong
      c/o counsel for Abraxis
      (live and/or by deposition)

21.   Neil Desai
      c/o counsel for Abraxis
      (live and/or by deposition)

22.   Michael Hawkins
      c/o counsel for Abraxis
      (live and/or by deposition)

23.   Richard E. Maroun
      c/o counsel for Abraxis
      (live)

24.   Mitchall Clark
      c/o counsel for Abraxis
      (live)

25.   Bruce Wendell
      c/o counsel for Abraxis
      (live and/or by deposition)

26.   Carlo Montagner
      c/o counsel for Abraxis
      (live)

27.   Chunlin Tao
      c/o counsel for Abraxis
      (live and/or by deposition)

28.   Leslie Louie
      c/o counsel for Abraxis
      (live and/or by deposition)

29.   Ulagaraj Selvaraj
      c/o counsel for Abraxis
      (live and/or by deposition)

30.   Julie Lisano
      c/o counsel for Abraxis
      (live and/or by deposition)

31.   Henry Lee
      MedComm Solutions
      1900 Powell Street, Suite 880
      Emeryville, CA 94608
      (live and/or by deposition)

32.   Johnson Tai Wong, M.D.
      c/o counsel for Abraxis
      (live and/or by deposition)

33.   Edmund A.C. Crouch, Ph.D.
      c/o counsel for Abraxis
      (live and/or by deposition)

34.   Mansoor M. Amiji, Ph.D.
      c/o counsel for Abraxis
      (live and/or by deposition)

35.   Michael R. Hamrell, Ph.D.
      c/o counsel for Abraxis
      (live and/or by deposition)

36.   Jerry L. Atwood, Ph.D.
      c/o counsel for Abraxis
      (live and/or by deposition)

37.   Terry L. Musika
      c/o counsel for Abraxis
      (live and/or by deposition)

# EXHIBIT 4

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

ELAN PHARMA INTERNATIONAL LIMITED

V.

ABRAXIS BIOSCIENCE, INC.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 06-438-GMS (D. Del.)

TO: Harry J. Brittain, c/o Steven J. Balick, Ashby & Geddes, 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, DE 19899

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION<br>Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 | DATE AND TIME<br>November 12, 2007<br>9:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Exhibit A

| PLACE<br>Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 | DATE AND TIME<br>November 5, 2007<br>9:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Counsel for Defendant | DATE<br>October 19, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER     Jeffrey T. Castellano
Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(D) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to this Exhibit:

The term "Abraxis" means Abraxis BioScience, Inc., its predecessors, successors and assigns, its officers, employees, agents, attorneys, consultants, and representatives, or other persons acting or purporting to act on its behalf, and any other legal entities (foreign or domestic) that are or have been owned or controlled by Abraxis.

The term "Abraxane" refers to Abraxane for Injectable Suspension (paclitaxel protein-bound particles for injectable suspension), an albumin-bound form of paclitaxel supplied as a lyophilized powder for reconstitution prior to intravenous infusion. The term "Abraxane" also includes Abraxane as reconstituted according to the instructions on the product label. Abraxane was developed and is marketed by Abraxis.

The terms "Document" or "Documents" shall have the broadest meaning permitted under Rules 26 and 34 of the Federal Rules of Civil Procedure, Rule 1001 of the Federal Rules of Evidence, and relevant case law.

The term "Elan" means Elan Pharma International Limited, its predecessors, successors and assigns, its officers, employees, agents, attorneys, consultants, and representatives, or other persons acting or purporting to act on its behalf, and any other legal entities (foreign or domestic) that are or have been owned or controlled by Elan.

The term "Elan Experts and Consultants" means any expert or third party consultant retained by Elan in connection with this litigation, or in connection with any analysis, experiment (formal or informal) or testing of Abraxane, including but not limited to Cory J. Berkland, Harry J. Brittain, Samuel J. Danishefsky, David J. Haidak, John C. Jarosz, Mark Cornell Manning, James M. McBride, Eric J. Munson, David R. Taft, Robert O. Williams III, and Jeffrey D. Winkler.

The term "Counsel for Elan" means any attorney retained by or acting on behalf of Elan, as well as any employees, agents, representatives or other persons acting on such an attorney's behalf.

To the extent you believe you cannot produce an otherwise-responsive Document because of privilege, Abraxis requests that you provide a privilege log. For each Document withheld on the basis of privilege, describe the claimed privilege and identify the date, author or originator, person to whom addressed, sent or shown (including copies), type of Document, present custodian and general subject matter of the Document.

## REQUESTED DOCUMENTS

1.      Documents and tangible things, including tangible reports, physical models, compilations of data, photographs, audio tapes, video tapes, computer data and printouts, and other material prepared by the witness or for the witness and/or his agents, servants and/or employees in preparation of the witness's expert report in this matter or in anticipation of the witness's trial and deposition testimony.

2.      Documents and tangible things, including but not limited to all materials, notices, memoranda, statements, depositions, and correspondence reviewed by the witness and/or his agents, servants and/or employees, including treatises, articles and authoritative materials, in preparation of the witness's expert report in this litigation or in anticipation of the witness's trial and deposition testimony.

3.      Documents and tangible things, including but not limited to correspondence, notes, factual observations, calculations, supporting data, and material sent to the witness and/or his agents, servants and/or employees by Elan or Counsel for Elan in connection with this litigation or related to Abraxane.

4.      The witness's entire file on this matter, including all work product and work papers, such as notes, correspondence, research, memoranda, and any other tangible or electronic material.

5.      Electronic data reflecting work by the witness and/or his agents, servants and/or employees in connection with this litigation or related to Abraxane.

6.      Materials reviewed, read, considered or used by the witness and/or his agents, servants and /or employees in connection with his work in this litigation.

7.      All of the witness's and/or his agents, servants and/or employees' notes concerning the assignments and/or work he has done on his own and/or at the request of Elan or Counsel for Elan in regard to this litigation, including reports and case summaries prepared by the witness or prepared for the witness by any individual working with him.

8.      Records of time, expenses and charges for time the witness and/or his agents, servants and/or employees have spent on any matter related to this litigation.

9.      Reports and transcripts of depositions and/or trial testimony offered by the witness as an expert in any litigation other than in this case.

10.     Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Counsel for Elan related to this case, including but not limited to receipts, checks, and billing records reflecting that compensation.

11.     Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Elan, including but not limited to receipts, checks, and billing records reflecting that compensation.

12.     Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information, regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane.

13.     Documents used by the witness as course material, including syllabi, in any course taught by the witness that includes material related to crystallinity, amorphousness, cross-

linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

14.    Publications, articles, abstracts, lecture materials or slides, posters, handouts, or presentations drafted in full or in part by the witness related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state NMR, or transmission electron microscopy as those subjects are defined in the witness's field of specialty.

15.    Documents reflecting or referring to communications between the witness and Elan.

16.    Documents reflecting or referring to communications between the witness and Counsel for Elan related to this litigation.

17.    Documents that reflect or contain direct or indirect communications with any Elan Expert or Consultant related to this litigation or Abraxane.

18.    Documents prepared by, or supplied directly or indirectly by any Elan Expert or Consultant related to this case or Abraxane.

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C. A. No. 06-438-GMS |
| ABRAXIS BIOSCIENCE, INC., | ) ) | |
| Defendant. | ) | |

## ELAN PHARMA INTERNATIONAL LIMITED'S
## OBJECTIONS TO ABRAXIS BIOSCIENCE, INC.'S NOTICE OF
## DEPOSITION AND SUBPOENA DUCES TECUM TO DR. HARRY BRITTAIN

Pursuant to Federal Rules of Civil Procedure 26, 30 and 34, Elan Pharma International Limited ("Elan") and Dr. Harry Brittain ("Dr. Brittain") hereby object to Abraxis BioScience Inc.'s ("Abraxis") Notice of Deposition and Subpoena Duces Tecum ("Subpoena") to Dr. Brittain.

## OBJECTION TO NOTICE OF DEPOSITION

Elan and Dr. Brittain object to the time and place of the deposition as noticed. Elan will produce Dr. Brittain for deposition at a mutually agreeable time and place.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

A.      Elan and Dr. Brittain object to the definition of "Abraxis" because it is overly broad, unduly burdensome, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. This definition purports to require Elan and Dr. Brittain to conduct an independent investigation into which entities, if any, might be predecessors of Abraxis, and to somehow foretell which entities, if any, might be

successors to Abraxis in the future.  This definition also purports to require Dr. Brittain to ascertain whether any individual with whom he has ever been in contract might be employed and/or retained by Abraxis, or even just claim to be.  This definition further purports to require Dr. Brittain to conduct an independent investigation into which entities may have, at one time, been owned or controlled by Abraxis, without any guidance provided as to how such terms should be defined.  Elan and Dr. Brittain, therefore, will interpret the term, "Abraxis" to mean the corporate entity Abraxis BioScience, Inc., which is the Defendant in this litigation.

B.    Elan and Dr. Brittain object to the definition of "Elan" because it is overly broad, unduly burdensome, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence in that it seeks to sweep into its purview entities unrelated to this litigation.  This definition also purports to require Dr. Brittain to ascertain whether any individual with whom he has ever been in contract might be employed and/or retained by Elan, or even just claim to be.  Elan and Dr. Brittain also object to the definition of "Elan" to the extent that is seeks to invade protections provided by the attorney-client privilege and/or work product doctrine.  Elan and Dr. Brittain, therefore, will interpret the term "Elan" to mean the corporate entity Elan Pharma International Limited, which is the Plaintiff in this litigation.

C.    Elan and Dr. Brittain object to the definition of "Elan Experts and Consultants" to the extent that it seeks to invade any protections provided by the attorney-client privilege and/or work product doctrine.

D.    Elan and Dr. Brittain object that Abraxis's purported requirement that Dr. Brittain provide a privilege log is unduly burdensome as Elan has already produced a privilege

log in this litigation that includes relevant privileged documents in Dr. Brittain's possession, custody and control, if any.

## OBJECTIONS TO REQUESTS FOR DOCUMENTS

**REQUEST NO. 1.**

Documents and tangible things, including tangible reports, physical models, compilations of data, photographs, audio tapes, video tapes, computer data and printouts, and other material prepared by the witness or for the witness or his agents, servants or employees in preparation of the witness's expert report in this matter or in anticipation of the witness's trial and deposition testimony.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45.  Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials, if any, responsive to this Request, to the extent that such materials are or were within Dr. Brittain's possession, custody and control and were considered by Dr. Brittain in forming the opinions that he has or will provide in this matter, will be or previously have been produced.

**REQUEST NO. 2.**

Documents and tangible things, including but not limited to all materials, notices, memoranda, statements, depositions, and correspondence reviewed by the witness and/or his agents, servants and/or employees, including treatises, articles and authoritative materials, in preparation of the witness's expert report in this litigation or in anticipation of the witness's trial and deposition testimony.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome in that it lacks any temporal parameters. Ostensibly, Dr. Brittain has spent his entire career "in preparation" for his expert report. Elan and Dr. Brittain also object that this Request is vague and ambiguous in that the term "reviewed" is undefined and subject to misinterpretation. Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials, if any, responsive to this Request, to the extent that such materials are or were within Dr. Brittain's possession, custody and control and were considered by Dr. Brittain in forming the opinions that he has or will provide in this matter, will be or previously have been produced.

**REQUEST NO. 3.**

Documents and tangible things, including but not limited to correspondence, notes, factual observations, calculations, supporting data, and material sent to the witness and/or his agents servants and/or employees by Elan or Counsel for Elan in connection with this litigation or related to Abraxane.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Brittain further object to the extent

that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials, if any, responsive to this Request, to the extent that such materials are or were within Dr. Brittain's possession, custody and control and were considered by Dr. Brittain in forming the opinions that he has or will provide in this matter, will be or previously have been produced.

**REQUEST NO. 4.**

The witness's entire file on this matter, including all work product and papers, such as notes, correspondence, research, memoranda, and any other tangible or electronic material.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45.  Elan and Dr. Brittain also object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.  Elan and Dr. Brittain further object that this Request is vague and ambiguous as the term "witness's entire file" is undefined and subject to misinterpretation.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials, if any, responsive to this Request, to the extent that such materials are or were within Dr. Brittain's possession, custody and control and were considered by Dr. Brittain in forming the opinions that he will provide in this matter, will be or previously have been produced.

**REQUEST NO. 5.**

Electronic data reflecting work by the witness and/or his agents, servants and/or employees in connection with this litigation or related to Abraxane.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Brittain also object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials, if any, responsive to this Request, to the extent that such materials are or were within Dr. Brittain's possession, custody and control and were considered by Dr. Brittain in forming the opinions that he will provide in this matter, will be or previously have been produced.

**REQUEST NO. 6.**

Materials reviewed, read, considered or used by the witness and/or his agents, servants and employees in connection with his work in this litigation.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work

product doctrine. Elan and Dr. Brittain also object that the term "in connection with" is vague and ambiguous because it is without any temporal parameters.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials, if any, responsive to this Request, to the extent that such materials are or were within Dr. Brittain's possession, custody and control and were considered by Dr. Brittain in forming the opinions that he will provide in this matter, will be or previously have been produced.

**REQUEST NO. 7.**

All of the witness's and/or his agents, servants and/or employees' notes concerning the assignment and/or work he has done on his own and/or at the Request of Elan or counsel for Elan in regard to this litigation, including reports and case summaries prepared by the witness or prepared for the witness by any individual working with him.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials, if any, responsive to this Request, to the extent that such materials are or were within Dr. Brittain's possession, custody and control and were considered by Dr. Brittain in forming the opinions that he will provide in this matter, will be or previously have been produced.

**REQUEST NO. 8.**

Records of time, expenses and charges for time the witness and/or his agents, servants and/or employees have spent on any matter related to this litigation.

7

**RESPONSE.**

Elan and Dr. Brittain object that this Request is vague and ambiguous as the term "related" is undefined and subject to misinterpretation. Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that Dr. Brittain will produce non-privileged documents, if any, responsive to this Request.

**REQUEST NO. 9.**

Reports and transcripts of depositions and/or trial testimony offered by the witness as an expert in any litigation other than in this case.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Brittain also object to the extent that this Request seeks testimony subject to a protective order in another matter. Elan and Dr. Brittain further object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Dr. Brittain's testimony in unrelated cases has no bearing on the subject matter of this lawsuit or the claims and defenses of the parties. Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that Dr. Brittain has no documents responsive to this Request.

**REQUEST NO. 10.**

Documents reflecting agreements between the witnesses and/or his agents, servants and/or employees and Counsel for Elan, including but not limited to receipts, checks, and billing records reflecting that compensation.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Brittain also object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks information regarding Dr. Brittain's agreements with Counsel for Elan, if any, unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials responsive to this Request, if any, will be or previously have been produced.

**REQUEST NO. 11.**

Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Elan, including but not limited to receipts, checks, and billing records reflecting that compensation.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Brittain also object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks information regarding Dr. Brittain's agreements

with Elan, if any, unrelated to the subject matter of this litigation or the claims and defenses of

the parties.  Elan and Dr. Brittain further object to the extent that this Request seeks information

protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain

respond that non-privileged materials responsive to this Request, if any, will be or previously

have been produced.

**REQUEST NO. 12.**

Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane or intravenous administration of Abraxane or derivatives of Abraxane.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly

burdensome to the extent that it seeks expert discovery beyond that which is contemplated by

Federal Rules of Civil Procedure 26 and 45.  Elan and Dr. Brittain further object that this

Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of

admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject

matter of this litigation or the claims and defenses of the parties.  Elan and Dr. Brittain further

object to the extent that this Request seeks information protected by the attorney-client privilege

and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain

respond that non-privileged materials, if any, responsive to this Request, to the extent that such

materials are or were within Dr. Brittain's possession, custody and control and were considered

by Dr. Brittain in forming the opinions that he will provide in this matter, will be or previously

have been produced.

**REQUEST NO. 13.**

Documents used by the witness as course material, including syllabi, in any course taught by the witness that includes material related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), intravenous administration, pre-clinical trials or clinical trials or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Brittain object that this Request is vague and ambiguous as it suggests that there exists a single definition for the terms provided in the witness's field of expertise, but fails to provide that definition. Elan and Dr. Brittain also object that this Request is overly broad and unduly burdensome in that it lacks any temporal parameters. Elan and Dr. Brittain further object to this Request to the extent that it seeks documents not in the possession, custody and control of Dr. Brittain.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that Dr. Brittain has no documents responsive to this Request.

**REQUEST NO. 14.**

Publications, articles, abstract, lecture materials or slides, posters, handouts, or presentations drafted in full or in party by the witness related to crystallinity, amorphousness, cross-linking, adsorption, colloidal x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), intravenous administration, pre-clinical trials or clinical trials or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Brittain object that this

Request purports to require Dr. Brittain to review materials to ascertain whether such material addresses any of the described topics, based on the vague and ambiguous assertion that such topics should be defined in accordance with his field of specialty. Such a task would require months, not mere days, even if there were a single definition of the provided terms in Dr. Brittain's field of endeavor. Dr. Brittain does not have administrative assistance available to him; and Abraxis has heretofore refused to advise whether it will reimburse Dr. Brittain for the time that he would have to spend away from gainful activity to complete such an onerous task. In this regard, Abraxis's Request borders on harassment. Elan and Dr. Brittain also object that this Request is overly broad and unduly burdensome in that it lacks any temporal parameters. Elan and Dr. Brittain further object to this Request to the extent that it seeks documents not in the possession, custody and control of Dr. Brittain.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that materials, if any, responsive to this Request, to the extent that such materials were within Dr. Brittain's possession, custody and control and were considered by Dr. Brittain in forming the opinions that he will provide in this matter, will be or previously have been produced.

**REQUEST NO. 15.**

Documents reflecting or referring to communications between the witness and Elan.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Brittain also object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of

admissible evidence insofar as it seeks communications between Dr. Brittain and Elan unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials responsive to this Request, if any, will be or previously have been produced.

**REQUEST NO. 16.**

Documents reflecting or referring to communications between the witness and Counsel for Elan related to this litigation.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials responsive to this Request, if any, will be or previously have been produced.

**REQUEST NO. 17.**

Documents that reflect or contain direct or indirect communications with any Elan Expert or Consultant related to this litigation or Abraxane.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by

Federal Rules of Civil Procedure 26 and 45.  Elan and Dr. Brittain also object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject matter of this litigation or the claims and defenses of the parties.  Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that materials, if any, responsive to this Request, to the extent that such materials were within Dr. Brittain's possession, custody and control and were considered by Dr. Brittain in forming the opinions that he will provide in this matter, will be or previously have been produced.

**REQUEST NO. 18.**

Documents prepared by, or supplied directly or indirectly by any Elan Expert or Consultant related to this case or Abraxane.

**RESPONSE.**

Elan and Dr. Brittain object that this Request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45.  Elan and Dr. Brittain further object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject matter of this litigation or the claims and defenses of the parties.  Elan and Dr. Brittain further object to the extent that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Subject to and without waiving the foregoing objections, Elan and Dr. Brittain respond that non-privileged materials, if any, responsive to this Request, to the extent that such materials were within Dr. Brittain's possession, custody and control and were considered by Dr. Brittain in forming the opinions that he will provide in this matter, will be or previously have been produced.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Elan Pharma International Limited and*
*Dr. Harry Brittain*

*Of Counsel:*

Stephen Scheve
Linda M. Glover
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77042-4995
(713) 229-1659

Paul F. Fehlner
Jeffrey Sullivan
Lisa Chiarini
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112-4498
(212) 408-2527

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
(215) 801-3625

Dated: November 5, 2007
185617.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of November, 2007, the attached **ELAN PHARMA**

**INTERNATIONAL LIMITED'S OBJECTIONS TO ABRAXIS BIOSCIENCE, INC.'S**

**NOTICE OF DEPOSITION AND SUBPOENA DUCES TECUM TO DR. HARRY**

**BRITTAIN** was served upon the below-named counsel of record at the addresses and in the

manner indicated:

Josy W. Ingersoll, Esquire                                              <u>HAND DELIVERY</u>
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Michael A. Jacobs, Esquire                                        <u>VIA ELECTRONIC MAIL</u>
Morrison & Foerster, LLP
425 Market Street
San Francisco, CA  94105-2482

Emily A. Evans, Esquire                                            <u>VIA ELECTRONIC MAIL</u>
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA  94304-1018

Anders T. Aannestad, Esquire                                    <u>VIA ELECTRONIC MAIL</u>
Morrison & Foerster, LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130


                                        */s/ Tiffany Geyer Lydon*
                                        _____
                                        Tiffany Geyer Lydon

173077.1

## Other Documents

[1:06-cv-00438-GMS Elan Pharma International Limited v. Abraxis Bioscience Inc.](#)

MEDIATION, PATENT, PaperDocuments

**U.S. District Court**

**District of Delaware**

## Notice of Electronic Filing

The following transaction was entered by Lydon, Tiffany on 11/5/2007 at 7:06 PM EST and filed on 11/5/2007

| | |
|---|---|
| **Case Name:** | Elan Pharma International Limited v. Abraxis Bioscience Inc. |
| **Case Number:** | 1:06-cv-438 |
| **Filer:** | Elan Pharma International Limited |
| | Harry Brittain |
| **Document Number:** | 403 |

**Docket Text:**
OBJECTIONS by Harry Brittain, Elan Pharma International Limited *to Abraxis Bioscience, Inc.'s Notice of Deposition and Subpoena Duces Tecum to Dr. Harry Brittain*. (Lydon, Tiffany)

**1:06-cv-438 Notice has been electronically mailed to:**

Steven J. Balick     sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

Jeremy W. Bock     JBock@mofo.com

Paul F. Coyne     pcoyne@mofo.com

John G. Day     jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

Emily A. Evans     Eevans@mofo.com

Josy W. Ingersoll     jingersoll@ycst.com, corpcal@ycst.com, corporate@ycst.com

Michael A. Jacobs     mjacobs@mofo.com

Karen Elizabeth Keller     kkeller@ycst.com, corpcal@ycst.com, corporate@ycst.com

Diana B. Kruze     dkruze@mofo.com

Tiffany Geyer Lydon     tlydon@ashby-geddes.com, dfioravanti@ashby-geddes.com, nlopez@ashby-geddes.com

Lauren E. Maguire     lmaguire@ashby-geddes.com

Elena C. Norman     enorman@ycst.com, corpcal@ycst.com, corporate@ycst.com

Jeffrey D. Sullivan     jeffrey.sullivan@bakerbotts.com

Eric S. Walters     ewalters@mofo.com

**1:06-cv-438 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=11/5/2007] [FileNumber=470772-0]
[96403bb4cd3e3d0ff21fd2c14470cddd890e368070ee0915dd3d929d917a2b46ed73
401468a0abc64e94df89a205809276feebf0735b17e9fe8e2f62687890e6]]

# EXHIBIT 6

**Harry G. Brittain's Document Production Privilege Log (November 15, 2007)**
Elan Pharmaceutical v. Abraxis Bioscience, Inc. Case No. 06-438-GMS

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 1. | TPP0005827 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 2. | TPP0005833 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 3. | TPP0005839 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 4. | TPP0005845 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 5. | TPP0005851 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 6. | TPP0005857 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 7. | TPP0005863 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 8. | TPP0005869 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 9. | TPP0005875 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 10. | TPP0005881 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 11. | TPP0005912 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 12. | TPP0005943 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 13. | TPP0005974 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 14. | TPP0006005 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 15. | TPP0006036 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 16. | TPP0006067 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 17. | TPP0006073 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 18. | TPP0006079 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 19. | TPP0006085 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 20. | TPP0006091 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 21. | TPP0006097 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 22. | TPP0006103 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 23. | TPP0006109 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 24. | TPP0006115 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 25. | TPP0006121 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 26. | TPP0006127 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|-------|-------------|------|------|-------------|------|-----|-----|-----------|
| 27. | TPP0006133 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 28. | TPP0006139 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 29. | TPP0006145 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 30. | TPP0006151 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 31. | TPP0006157 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 32. | TPP0006163 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 33. | TPP0006169 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 34. | TPP0006175 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 35. | TPP0006181 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 36. | TPP0006187 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 37. | TPP0006193 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 38. | TPP0006199 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 39. | TPP0006205 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 40. | TPP0006211 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 41. | TPP0006217 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 42. | TPP0006223 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 43. | TPP0006229 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 44. | TPP0006235 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 45. | TPP0006241 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 46. | TPP0006247 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 47. | TPP0006253 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 48. | TPP0006259 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 49. | TPP0006265 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 50. | TPP0006271 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 51. | TPP0006277 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 52. | TPP0006283 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 53. | TPP0006289 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 54. | TPP0006295 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 55. | TPP0006301 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 56. | TPP0006307 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 57. | TPP0006313 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 58. | TPP0006319 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 59. | TPP0006325 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 60. | TPP0006331 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 61. | TPP0006337 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 62. | TPP0006343 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 63. | TPP0006349 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 64. | TPP0006355 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 65. | TPP0006361 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 66. | TPP0006367 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 67. | TPP0006373 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 68. | TPP0006379 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 69. | TPP0006385 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 70. | TPP0006391 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 71. | TPP0006397 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 72. | TPP0006403 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 73. | TPP0006409 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 74. | TPP0006415 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 75. | TPP0006421 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 76. | TPP0006427 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 77. | TPP0006433 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 78. | TPP0006439 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 79. | TPP0006445 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 80. | TPP0006451 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 81. | TPP0006457 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 82. | TPP0006463 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 83. | TPP0006469 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 84. | TPP0006475 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 85. | TPP0006481 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 86. | TPP0006487 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 87. | TPP0006493 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 88. | TPP0006499 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 89. | TPP0006505 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 90. | TPP0006511 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 91. | TPP0006517 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 92. | TPP0006523 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 93. | TPP0006529 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 94. | TPP0006535 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 95. | TPP0006541 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 96. | TPP0006547 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 97. | TPP0006553 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 98. | TPP0006559 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 99. | TPP0006565 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 100. | TPP0006571 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 101. | TPP0006577 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 102. | TPP0006583 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 103. | TPP0006589 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 104. | TPP0006595 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 105. | TPP0006601 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 106. | TPP0006607 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 107. | TPP0006613 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 108. | TPP0006619 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 109. | TPP0006625 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 110. | TPP0006631 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 111. | TPP0006637 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 112. | TPP0006643 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 113. | TPP0006649 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 114. | TPP0006655 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 115. | TPP0006661 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 116. | TPP0006667 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 117. | TPP0006673 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 118. | TPP0006679 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 119. | TPP0006685 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 120. | TPP0006691 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 121. | TPP0006697 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 122. | TPP0006703 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 123. | TPP0006709 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 124. | TPP0006715 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 125. | TPP0006721 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 126. | TPP0006727 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 127. | TPP0006733 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 128. | TPP0006739 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 129. | TPP0006745 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 130. | TPP0006751 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 131. | TPP0006757 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 132. | TPP0006763 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 133. | TPP0006769 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 134. | TPP0006775 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 135. | TPP0006781 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 136. | TPP0006787 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 137. | TPP0006793 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 138. | TPP0006799 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|-------|-------------|------|------|-------------|------|----|----|-----------|
| 139. | TPP0006805 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 140. | TPP0006811 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 141. | TPP0006817 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 142. | TPP0006823 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 143. | TPP0006829 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 144. | TPP0006835 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 145. | TPP0006841 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 146. | TPP0006847 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 147. | TPP0006853 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 148. | TPP0006859 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 149. | TPP0006865 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 150. | TPP0006871 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 151. | TPP0006877 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 152. | TPP0006883 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|-------|-------------|------|------|-------------|------|-----|-----|-----------|
| 153. | TPP0006889 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 154. | TPP0006895 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 155. | TPP0006901 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 156. | TPP0006907 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 157. | TPP0006913 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 158. | TPP0006919 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 159. | TPP0006925 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 160. | TPP0006931 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 161. | TPP0006937 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 162. | TPP0006943 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 163. | TPP0006949 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 164. | TPP0006955 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 165. | TPP0006961 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 166. | TPP0006967 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 167. | TPP0006973 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 168. | TPP0006979 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 169. | TPP0006985 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 170. | TPP0006991 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 171. | TPP0006997 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 172. | TPP0007003 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 173. | TPP0007009 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 174. | TPP0007015 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 175. | TPP0007021 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 176. | TPP0007027 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 177. | TPP0007033 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 178. | TPP0007039 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 179. | TPP0007045 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 180. | TPP0007051 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 181. | TPP0007057 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 182. | TPP0007063 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 183. | TPP0007069 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 184. | TPP0007075 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 185. | TPP0007081 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 186. | TPP0007087 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 187. | TPP0007093 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 188. | TPP0007099 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 189. | TPP0007105 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 190. | TPP0007111 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 191. | TPP0007117 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 192. | TPP0007123 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 193. | TPP0007129 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 194. | TPP0007135 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 195. | TPP0007141 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 196. | TPP0007147 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 197. | TPP0007153 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 198. | TPP0007159 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 199. | TPP0007165 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 200. | TPP0007171 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 201. | TPP0007177 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 202. | TPP0007183 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 203. | TPP0007189 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 204. | TPP0007195 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 205. | TPP0007201 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 206. | TPP0007207 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 207. | TPP0007213 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 208. | TPP0007219 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 209. | TPP0007225 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 210. | TPP0007231 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 211. | TPP0007237 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 212. | TPP0007243 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 213. | TPP0007249 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 214. | TPP0007255 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 215. | TPP0007261 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 216. | TPP0007267 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 217. | TPP0007273 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 218. | TPP0007279 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 219. | TPP0007285 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 220. | TPP0007291 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 221. | TPP0007297 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 222. | TPP0007303 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| 223. | TPP0007309 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 224. | TPP0007315 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 225. | TPP0007321 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 226. | TPP0007327 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 227. | TPP0007333 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 228. | TPP0007339 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 229. | TPP0007345 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 230. | TPP0007351 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 231. | TPP0007357 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 232. | TPP0007363 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 233. | TPP0007369 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 234. | TPP0007375 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 235. | TPP0007381 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 236. | TPP0007387 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 237. | TPP0007393 | | Test Data | Test data prepared in conjunction with the Elan- | Harry G. Brittain | | | Attorney Mental |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Abraxis litigation at request of counsel. | | | | Impression Work Product |
| 238. | TPP0007399 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 239. | TPP0007405 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 240. | TPP0007411 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 241. | TPP0007417 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 242. | TPP0007423 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 243. | TPP0007429 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 244. | TPP0007435 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 245. | TPP0007441 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 246. | TPP0007447 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 247. | TPP0007453 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 248. | TPP0007459 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 249. | TPP0007465 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 250. | TPP0007471 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 251. | TPP0007477 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work |

| | | | | | | | | Product |
|---|---|---|---|---|---|---|---|---|
| 252. | TPP0007483 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 253. | TPP0007489 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 254. | TPP0007495 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 255. | TPP0007501 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 256. | TPP0007507 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 257. | TPP0007513 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 258. | TPP0007519 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 259. | TPP0007525 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 260. | TPP0007531 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 261. | TPP0007537 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 262. | TPP0007543 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 263. | TPP0007549 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 264. | TPP0007555 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 265. | TPP0007561 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| 266. | TPP0007567 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 267. | TPP0007573 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 268. | TPP0007579 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 269. | TPP0007585 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 270. | TPP0007591 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 271. | TPP0007597 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 272. | TPP0007603 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 273. | TPP0007609 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 274. | TPP0007615 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 275. | TPP0007621 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 276. | TPP0007627 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 277. | TPP0007633 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 278. | TPP0007639 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 279. | TPP0007645 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 280. | TPP0007651 | | Test Data | Test data prepared in conjunction with the Elan- | Harry G. Brittain | | | Attorney Mental |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Abraxis litigation at request of counsel. | | | | Impression Work Product |
| 281. | TPP0007657 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 282. | TPP0007663 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 283. | TPP0007669 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 284. | TPP0007675 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 285. | TPP0007681 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 286. | TPP0007712 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 287. | TPP0007743 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 288. | TPP0007754 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 289. | TPP0007765 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 290. | TPP0007771 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 291. | TPP0007777 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 292. | TPP0007808 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 293. | TPP0007819 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 294. | TPP0007825 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | Product |
| 295. | TPP0007856 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 296. | TPP0007887 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 297. | TPP0007898 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 298. | TPP0007909 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 299. | TPP0007915 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 300. | TPP0007921 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 301. | TPP0007922 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 302. | TPP0007923 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 303. | TPP0007924 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 304. | TPP0007925 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 305. | TPP0007926 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 306. | TPP0007927 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 307. | TPP0007938 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |
| 308. | TPP0007944 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | Attorney Mental Impression Work Product |

| 309. | TPP0007945 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 310. | TPP0007946 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 311. | TPP0007947 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 312. | TPP0007948 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 313. | TPP0007949 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 314. | TPP0007950 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 315. | TPP0007951 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 316. | TPP0007952 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 317. | TPP0007953 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 318. | TPP0007954 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 319. | TPP0007955 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 320. | TPP0007956 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 321. | TPP0007957 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 322. | TPP0007958 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 323. | TPP0007959 | | Test Data | Test data prepared in conjunction with the Elan- | Harry G. Brittain | | | Attorney Mental |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Abraxis litigation at request of counsel. | | | | Impression Work Product |
| 324. | TPP0007990 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 325. | TPP0008021 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 326. | TPP0008032 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 327. | TPP0008043 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 328. | TPP0008049 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 329. | TPP0008055 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 330. | TPP0008086 | 1/31/2007 | Invoice | Invoice for consulting work conducted in conjunction with the Elan-Abraxis litigation. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 331. | TPP0008087 | 2/28/2007 | Invoice | Invoice for consulting work conducted in conjunction with the Elan-Abraxis litigation. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 332. | TPP0008088 | 4/2/2007 | Invoice | Invoice for consulting work conducted in conjunction with the Elan-Abraxis litigation. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 333. | TPP0008090 | 4/30/2007 | Invoice | Invoice for consulting work conducted in conjunction with the Elan-Abraxis litigation. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 334. | TPP0008091 | 5/31/2007 | Invoice | Invoice for consulting work conducted in conjunction with the Elan-Abraxis litigation. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 335. | TPP0008092 | 7/31/2007 | Invoice | Invoice for consulting work conducted in conjunction with the Elan-Abraxis litigation. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 336. | TPP0008096 | 4/25/2006 | Lab Notebook | Laboratory notebook reflecting tests conducted in conjunction with the Elan-Abraxis litigation at the request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 337. | TPP0008152 | 3/1/2007 | Lab Notebook | Laboratory notebook reflecting tests conducted in conjunction with the Elan-Abraxis litigation at the | Harry G. Brittain | | | Attorney Mental Impression Work |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | request of counsel. | | | | Product |
| 338. | TPP0008190 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 339. | TPP0008212 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 340. | TPP0008234 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 341. | TPP0008249 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 342. | TPP0008260 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 343. | TPP0008271 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 344. | TPP0008282 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 345. | TPP0008293 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 346. | TPP0008304 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 347. | TPP0008315 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 348. | TPP0008326 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 349. | TPP0008337 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 350. | TPP0008348 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 351. | TPP0008370 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| 352. | TPP0008381 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
|---|---|---|---|---|---|---|---|---|
| 353. | TPP0008392 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 354. | TPP0008403 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 355. | TPP0008434 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 356. | TPP0008465 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 357. | TPP0008466 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 358. | TPP0008479 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 359. | TPP0008510 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 360. | TPP0008541 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 361. | TPP0008572 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 362. | TPP0008603 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 363. | TPP0008634 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 364. | TPP0008665 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 365. | TPP0008696 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 366. | TPP0008727 | | Test Data | Test data prepared in conjunction with the Elan- | Harry G. Brittain | | | Attorney Mental |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | Abraxis litigation at request of counsel. | | | | Impression Work Product |
| 367. | TPP0008758 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 368. | TPP0008789 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 369. | TPP0008820 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 370. | TPP0008851 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 371. | TPP0008852 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 372. | TPP0008853 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 373. | TPP0008854 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 374. | TPP0008855 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 375. | TPP0008856 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 376. | TPP0008857 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 377. | TPP0008858 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 378. | TPP0008859 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 379. | TPP0008860 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 380. | TPP0008861 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work |

| | | | | | | | | Product |
|---|---|---|---|---|---|---|---|---|
| 381. | TPP0008862 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 382. | TPP0008863 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 383. | TPP0008864 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 384. | TPP0008865 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 385. | TPP0008866 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 386. | TPP0008867 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 387. | TPP0008868 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 388. | TPP0008869 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 389. | TPP0008870 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 390. | TPP0008871 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 391. | TPP0008872 | 3/23/2007 | Presentation | Presentation prepared in conjunction with the Elan-Abraxis litigation at the reqquest of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 392. | TPP0008892 | 5/8/2006 | Presentation | Presentation prepared in conjunction with the Elan-Abraxis litigation at the reqquest of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 393. | TPP0008900 | | Presentation | Presentation prepared in conjunction with the Elan-Abraxis litigation at the request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 394. | TPP0008908 | | Presentation | Presentation prepared in conjunction with the Elan-Abraxis litigation at the reqquest of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| 395. | TPP0008923 | | Presentation | Presentation prepared in conjunction with the Elan-Abraxis litigation at the reqquest of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
|------|------------|--|--------------|----------------------------------------------------|-------------------|--|--|---------------------------------------|
| 396. | TPP0008961 | 4/24/2006 | Lab Notebook | Laboratory notebook reflecting tests conducted in conjunction with the Elan-Abraxis litigation at the request of counsel. | Harry G. Brittain Julia Springer | | | Attorney Mental Impression Work Product |
| 397. | TPP0008970 | 5/8/2006 | Lab Notebook | Laboratory notebook reflecting tests conducted in conjunction with the Elan-Abraxis litigation at the request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 398. | TPP0008971 | 5/25/2006 | Lab Notebook | Laboratory notebook reflecting tests conducted in conjunction with the Elan-Abraxis litigation at the request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 399. | TPP0008972 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 400. | TPP0009264 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 401. | TPP0009549 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 402. | TPP0009800 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 403. | TPP0010073 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 404. | TPP0010326 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 405. | TPP0010337 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 406. | TPP0010348 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 407. | TPP0010359 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 408. | TPP0010370 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 409. | TPP0010372 | | Test Data | Test data prepared in conjunction with the Elan- | Harry G. Brittain | | | Attorney Mental |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Abraxis litigation at request of counsel. | | | | Impression Work Product |
| 410. | TPP0010374 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 411. | TPP0010376 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 412. | TPP0010389 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 413. | TPP0010392 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 414. | TPP0010395 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 415. | TPP0010398 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 416. | TPP0010401 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 417. | TPP0010404 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 418. | TPP0010407 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 419. | TPP0010410 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 420. | TPP0010413 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 421. | TPP0012166 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 422. | TPP0013307 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 423. | TPP0014454 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work |

| | | | | | | | | Product |
|---|---|---|---|---|---|---|---|---|
| 424. | TPP0015680 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 425. | TPP0017495 | | Test Report | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G Brittain | | | Attorney Mental Impression Work Product |
| 426. | TPP0017498 | | Test Report | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G Brittain | | | Attorney Mental Impression Work Product |
| 427. | TPP0017501 | | Test Report | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G Brittain | | | Attorney Mental Impression Work Product |
| 428. | TPP0017505 | | Test Report | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G Brittain | | | Attorney Mental Impression Work Product |
| 429. | TPP0017510 | | Test Report | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G Brittain | | | Attorney Mental Impression Work Product |
| 430. | TPP0017514 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 431. | TPP0017542 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 432. | TPP0017570 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 433. | TPP0017598 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 434. | TPP0017626 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 435. | TPP0017627 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 436. | TPP0017628 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 437. | TPP0017629 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |

| 438. | TPP0017630 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
|---|---|---|---|---|---|---|---|---|
| 439. | TPP0017631 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 440. | TPP0017632 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 441. | TPP0017633 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 442. | TPP0017634 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 443. | TPP0017635 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 444. | TPP0017636 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 445. | TPP0017637 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 446. | TPP0017638 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 447. | TPP0017639 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 448. | TPP0017640 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 449. | TPP0017641 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 450. | TPP0017642 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 451. | TPP0017643 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 452. | TPP0017644 | | Image | Test data prepared in conjunction with the Elan- | Harry G. Brittain | | | Attorney Mental |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Abraxis litigation at request of counsel. | | | | Impression Work Product |
| 453. | TPP0017645 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 454. | TPP0017646 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 455. | TPP0017647 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 456. | TPP0017648 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 457. | TPP0017649 | | Image | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 458. | TPP0017650 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 459. | TPP0017678 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 460. | TPP0017706 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 461. | TPP0017739 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 462. | TPP0017772 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 463. | TPP0017805 | | Test Data | Test data prepared in conjunction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 464. | TPP0017838 | | Test Data | Test data prepared in conjuction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 465. | TPP0017871 | | Test Data | Test data prepared in conjuction with the Elan-Abraxis litigation at request of counsel. | Harry G. Brittain | | | Attorney Mental Impression Work Product |
| 466. | TPP0017904 | | Test Data | Test data prepared in conjuction with the Elan-Abraxis litigation at request of counsel. | Harry G Brittain | | | Attorney Mental Impression Work |

| | | | | | | | | Product |
|---|---|---|---|---|---|---|---|---|

# EXHIBIT 7

| | |
|---|---|
| **From:** | Kruze, Diana B. |
| **Sent:** | Thursday, November 15, 2007 2:52 PM |
| **To:** | 'fred.barrera@bakerbotts.com'; PAUL.FEHLNER@BakerBotts.com; Jeffrey.Sullivan@BakerBotts.com; linda.glover@BakerBotts.com |
| **Cc:** | 'jingersoll@ycst.com'; Norman, Elena; Jacobs, Michael A.; Bock, Jeremy W.; Evans, Emily A.; Walters, Eric S.; Coyne, Paul F.; Aannestad, Anders T.; steve.scheve@bakerbotts.com; jennifer.cozeolino@bakerbotts.com; lisa.chiarini@bakerbotts.com; joseph.silecchia@bakerbotts.com; jason.perlman@bakerbotts.com; sipz25@aol.com; SBalick; JDay |
| **Subject:** | RE: Elan v. Abraxis |
| **Importance:** | High |

Counsel:

Abraxis is dismayed Dr. Brittain's "privilege" log.  First, it is being produced less than 24 hours before the Brittain deposition is scheduled to begin, while the examining attorney is in transit to New York.  Second, it contains over 450 entries: more documents than Abraxis's privileged documents for this entire case.  Third, the privilege log is facially deficient, as it does not include dates, and claims "attorney mental work product," even though all of the descriptions only say "data."  Most importantly, Dr. Brittain has been designated by Elan as a testifying expert on both infringement and invalidity.  Under Rule 26, Elan may not maintain work product immunity over these documents.

Withholding these documents is a blatant violation of the Federal Rules, and a deliberate attempt to prejudice Abraxis.  We demand immediate production of these documents, and will seek appropriate remedies from the Court for Elan's misconduct.

Diana

---

**From:** fred.barrera@bakerbotts.com [mailto:fred.barrera@bakerbotts.com]
**Sent:** Thursday, November 15, 2007 2:30 PM
**To:** Kruze, Diana B.
**Cc:** PAUL.FEHLNER@BakerBotts.com; Jeffrey.Sullivan@BakerBotts.com; linda.glover@BakerBotts.com
**Subject:** Elan v. Abraxis

Diana,
Attached please find Harry Brittain's privilege log.
Regards,
Fred
<<Brittain privilege log.pdf>>

Alfredo A. Barrera III
**BAKER BOTTS** L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4495
713.229.1489 (Tel)
713.229.2789 (Fax)
fred.barrera@bakerbotts.com

*************************************************************

This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
**************************************************************

**From:**     linda.glover@bakerbotts.com
**Sent:**     Thursday, November 29, 2007 11:40 AM
**To:**       Kruze, Diana B.; Jeffrey.Sullivan@bakerbotts.com
**Cc:**       Aannestad, Anders T.
**Subject:** Re: Elan vs Abraxis/Meet ad Confer

Dear Diana,

Please permit the following to memorialize that portion of our meet and confer not discussed below.

Once again, Elan expressed grave concern about Abraxis's redaction of laboratory notebooks on the purported grounds of privilege.

Abraxis has represented to the Court and to Elan that it has withheld laboratory notebooks only on the basis of privilege. Abraxis produced an individual privilege log in which many notebook entries were described as containing information that was eventually to be conveyed to an attorney. Case law is abundantly clear that the attorney-client privilege applies to confidential communications in which legal advice is sought or rendered, not to facts memorialized for potential discussion with counsel sometime in the hazy future.

Not only is Abraxis's claim of privilege over these notebooks suspect, Abraxis has now removed the above-referenced entries from its privilege log, but failed to produce the corresponding notebooks. Mloreover, Abraxis has never produced a redaction log to establish that redactions were made for reasons other than privilege. Accordingly, Elan can only assume that Abraxis is withholding these notebooks on an erroneous claim of privilege, but refusing to include them in its privilege log.

Elan's local counsel has contacted the Court to seek a hearing with Judge Sleet on this matter. Also on Elan's agenda is a motion for protection from Abraxis's attempt to depose Dr. Winkler, a non-testifying expert who served as nothing more than a vendor.

In response to a request that Elan sign a declaration attesting to the production of all documents referring to Abraxis or Abraxane, Elan reminded Abraxis that Emily Evans had claimed to be "personally offended" when asked to certify that Abraxis's production of laboratory notebooks was complete. Abraxis offered no explanation as to why Elan should be expected to do that which Abraxis has, itself, refused to do.

Abraxis demanded that Elan respond to each of the points in your email regarding Abraxis/Abraxane documents. Please provide controlling authority that would require Elan to respond to what are essentially interrogatories at this stage of the litigation.

In general, Elan advised that the questions posed by Abraxis in your email reach far beyond the breadth of the document request at issue. Elan also advised that after the October 2 hearing, it went back to employees whose individual mailboxes were not among those to be searched to ensure that nothing had been overlooked. The recent production is the fruit of that search.
Elan has gone above and beyond that which is required by the Federal Rules to locate and produce documents that refer to Abraxis or Abraxane. Moreover, Abraxis has had ample opportunity to ask fact witnesses-and indeed, asked fact witnesses- about the existence of such documents. There simply is no "there" there, and Abraxis's insistence otherwise is unwarranted. This is particulalry so as it is Abraxis, not Elan, who is charged with infringement.

Regards,

Linda

----- Original Message -----
From: Kruze, Diana B. <DKruze@mofo.com>
To: Sullivan, Jeffrey D.
Cc: Glover, Linda; Aannestad, Anders T. <AAannestad@mofo.com>
Sent: Wed Nov 28 14:24:02 2007
Subject: Elan vs Abraxis/Meet ad Confer

Dear Jeffrey:

Please allow this email to summarize the portion of our meet and confer that dealt with Elan's withholding of expert documents on the

grounds of privilege or work-product.

    *    Elan stated that they were only withholding documents from Brittain's production; they are not withholding documents from any other expert on privilege or work product grounds

    *    Abraxis explained that the Federal Rules and case law make clear that Elan has waived any privilege or work product over Brittain's documents, as Brittain is a testifying expert. Elan stated that its basis for withholding these documents was as follows: Brittain was retained as a consulting expert prior to the litigation by Sipio (who also operates as a consultant to Elan). Elan maintains that the work done by Brittain for Sipio was separate and distinct from this lawsuit. Elan promised to send case law supporting their position.

    *    Brittain's privilege log: I explained that Brittain's privilege log was deficient in several respects. As promised, here is a list of some of those deficiencies:

            a) There are no date entries

      b) There is no meaningful description of the documents being withheld.

      c) There is no list of attorneys whose "mental impressions" are found within the documents

      d) The current description of the documents ("test data") is directly at odds with the privilege claimed ("attorney mental impressions"). Please    provide an explanation of how testing by a testifying expert can contain "attorney mental impressions."

        I requested that Elan fix these deficiencies by supplementing as soon as possible. Elan agreed to supplement, but would not agree to a date certain to produce a supplemental log.

Please let me know if any of my summary is incomplete or incorrect.

Thanks so much,

Diana


Diana Kruze
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: 650.813.5649
Facsimile: 650.494.0792
dkruze@mofo.com <http://www.mofo.com>


========================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
========================================================================

# EXHIBITS 8 AND 9

## REDACTED IN THEIR ENTIRETY

# EXHIBIT 10

AO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

ELAN PHARMA INTERNATIONAL LIMITED

V.

ABRAXIS BIOSCIENCE, INC.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 06-438-GMS (D. Del.)

TO: Jeffrey D. Winkler, c/o Steven J. Balick, Ashby & Geddes, 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, DE 19899

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801 | November 30, 2007 9:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Exhibit A

| PLACE | DATE AND TIME |
|---|---|
| Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801 | November 23, 2007 9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* Counsel for Defendant | October 19, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER  Jeffrey T. Castellano
Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801  (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                         DATE                              SIGNATURE OF SERVER

                                                           _____
                                                           ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(D) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to this Exhibit:

The term "Abraxis" means Abraxis BioScience, Inc., its predecessors, successors and assigns, its officers, employees, agents, attorneys, consultants, and representatives, or other persons acting or purporting to act on its behalf, and any other legal entities (foreign or domestic) that are or have been owned or controlled by Abraxis.

The term "Abraxane" refers to Abraxane for Injectable Suspension (paclitaxel protein-bound particles for injectable suspension), an albumin-bound form of paclitaxel supplied as a lyophilized powder for reconstitution prior to intravenous infusion. The term "Abraxane" also includes Abraxane as reconstituted according to the instructions on the product label. Abraxane was developed and is marketed by Abraxis.

The terms "Document" or "Documents" shall have the broadest meaning permitted under Rules 26 and 34 of the Federal Rules of Civil Procedure, Rule 1001 of the Federal Rules of Evidence, and relevant case law.

The term "Elan" means Elan Pharma International Limited, its predecessors, successors and assigns, its officers, employees, agents, attorneys, consultants, and representatives, or other persons acting or purporting to act on its behalf, and any other legal entities (foreign or domestic) that are or have been owned or controlled by Elan.

The term "Elan Experts and Consultants" means any expert or third party consultant retained by Elan in connection with this litigation, or in connection with any analysis, experiment (formal or informal) or testing of Abraxane, including but not limited to Cory J. Berkland, Harry J. Brittain, Samuel J. Danishefsky, David J. Haidak, John C. Jarosz, Mark Cornell Manning, James M. McBride, Eric J. Munson, David R. Taft, Robert O. Williams III, and Jeffrey D. Winkler.

The term "Counsel for Elan" means any attorney retained by or acting on behalf of Elan, as well as any employees, agents, representatives or other persons acting on such an attorney's behalf.

To the extent you believe you cannot produce an otherwise-responsive Document because of privilege, Abraxis requests that you provide a privilege log. For each Document withheld on the basis of privilege, describe the claimed privilege and identify the date, author or originator, person to whom addressed, sent or shown (including copies), type of Document, present custodian and general subject matter of the Document.

## REQUESTED DOCUMENTS

1.     Documents and tangible things, including tangible reports, physical models, compilations of data, photographs, audio tapes, video tapes, computer data and printouts, and other material prepared by the witness or for the witness and/or his agents, servants and/or employees in preparation of the witness's expert report in this matter or in anticipation of the witness's trial and deposition testimony.

2.    Documents and tangible things, including but not limited to all materials, notices, memoranda, statements, depositions, and correspondence reviewed by the witness and/or his agents, servants and/or employees, including treatises, articles and authoritative materials, in preparation of the witness's expert report in this litigation or in anticipation of the witness's trial and deposition testimony.

3.    Documents and tangible things, including but not limited to correspondence, notes, factual observations, calculations, supporting data, and material sent to the witness and/or his agents, servants and/or employees by Elan or Counsel for Elan in connection with this litigation or related to Abraxane.

4.    The witness's entire file on this matter, including all work product and work papers, such as notes, correspondence, research, memoranda, and any other tangible or electronic material.

5.    Electronic data reflecting work by the witness and/or his agents, servants and/or employees in connection with this litigation or related to Abraxane.

6.    Materials reviewed, read, considered or used by the witness and/or his agents, servants and /or employees in connection with his work in this litigation.

7.    All of the witness's and/or his agents, servants and/or employees' notes concerning the assignments and/or work he has done on his own and/or at the request of Elan or Counsel for Elan in regard to this litigation, including reports and case summaries prepared by the witness or prepared for the witness by any individual working with him.

8.    Records of time, expenses and charges for time the witness and/or his agents, servants and/or employees have spent on any matter related to this litigation.

9.    Reports and transcripts of depositions and/or trial testimony offered by the witness as an expert in any litigation other than in this case.

10.    Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Counsel for Elan related to this case, including but not limited to receipts, checks, and billing records reflecting that compensation.

11.    Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Elan, including but not limited to receipts, checks, and billing records reflecting that compensation.

12.    Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information, regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane.

13.    Documents used by the witness as course material, including syllabi, in any course taught by the witness that includes material related to crystallinity, amorphousness, cross-

linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

14.     Publications, articles, abstracts, lecture materials or slides, posters, handouts, or presentations drafted in full or in part by the witness related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state NMR, or transmission electron microscopy as those subjects are defined in the witness's field of specialty.

15.     Documents reflecting or referring to communications between the witness and Elan.

16.     Documents reflecting or referring to communications between the witness and Counsel for Elan related to this litigation.

17.     Documents that reflect or contain direct or indirect communications with any Elan Expert or Consultant related to this litigation or Abraxane.

18.     Documents prepared by, or supplied directly or indirectly by any Elan Expert or Consultant related to this case or Abraxane.

# EXHIBIT 11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ELAN PHARMA<br>INTERNATIONAL LIMITED, | ) | |
| | ) | |
| | ) | C.A. No. 06-438-GMS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABRAXIS BIOSCIENCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ELAN PHARMA INTERNATIONAL LIMITED'S OBJECTIONS TO ABRAXIS BIOSCIENCE, INC.'S SUBPOENA DUCES TECUM TO DR. JEFFREY D. WINKLER

Pursuant to Federal Rules of Civil Procedure 26, 30, and 34, Elan Pharma International Limited ("Elan") and Dr. Jeffrey D. Winkler ("Dr. Winkler") hereby object to Abraxis BioScience Inc.'s ("Abraxis") Subpoena Duces Tecum to Dr. Winkler.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Elan Pharma International Limited and*
*Dr. Jeffrey D. Winkler*

*Of Counsel:*

Stephen Scheve
Linda M. Glover
BAKER BOTTS LLP
One Shell Plaza
910 Lousiana Street
Houston, TX 77042-4995
(713) 229-1659

Paul F. Fehlner
Jeffrey D. Sullivan
Lisa Chiarini
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112-4498
(212) 408-2527

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
(215) 801-3625

Dated:  November 9, 2007
185762.1

## INTRODUCTORY STATEMENT

Elan and Dr. Winkler hereby object and respond to Abraxis's Subpoena Duces Tecum ("Subpoena") to Dr. Winkler.  Elan's and Dr. Winkler's objections and responses are not intended to waive, nor do they waive, Elan's and Dr. Winkler's right to move to quash and/or to seek protection from Abraxis's Subpoena Ad Testificandum to Dr. Winkler.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

A.    Elan and Dr. Winkler object to the definition of "Abraxis" because it is overly broad, unduly burdensome, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  This definition purports to require Elan and Dr. Winkler to conduct an independent investigation into which entities, if any, might be predecessors of Abraxis, and to somehow foretell which entities, if any, might be successors to Abraxis in the future.  This definition also purports to require Dr. Winkler to ascertain whether any individual with whom he has ever been in contract might be employed and/or retained by Abraxis, or even just claim to be.  This definition further purports to require Dr. Winkler to conduct an independent investigation into which entities may have, at one time, been owned or controlled by Abraxis, without any guidance provided as to how such terms as "owned" or "controlled" should be defined.  Elan and Dr. Winkler, therefore, will interpret the term, "Abraxis" to mean the corporate entity Abraxis BioScience, Inc., which is the Defendant in this litigation.

B.    Elan and Dr. Winkler object to the definition of "Elan" because it is overly broad, unduly burdensome, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence in that it seeks to sweep into its purview entities unrelated to this litigation.  This definition also purports to require Dr. Winkler to

1

ascertain whether any individual with whom he has ever been in contract might be employed and/or retained by Elan, or even just claim to be. Elan and Dr. Winkler also object to the definition of "Elan" because is seeks to invade protections provided by the attorney-client privilege and/or work product doctrine. Elan and Dr. Winkler, therefore, will interpret the term "Elan" to mean the corporate entity Elan Pharma International Limited, which is the Plaintiff in this litigation.

C.     Elan and Dr. Winkler object to the definition of "Elan Experts and Consultants" because it seeks to invade any protections provided by the attorney-client privilege and/or work product doctrine.

D.     Elan and Dr. Winkler object that Abraxis's purported requirement that Dr. Winkler provide a privilege log is unduly burdensome as Elan has already produced a privilege log in this litigation that includes relevant privileged documents in Dr. Winkler's possession, custody and control, if any, to the extent that they are discoverable.

## OBJECTIONS TO REQUESTS FOR DOCUMENTS

**REQUEST NO. 1.**

Documents and tangible things, including tangible reports, physical models, compilations of data, photographs, audio tapes, video tapes, computer data and printouts, and other material prepared by the witness or for the witness or his agents, servants or employees in preparation of the witness's expert report in this matter or in anticipation of the witness's trial and deposition testimony.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not

designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler further object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 2.**

Documents and tangible things, including but not limited to all materials, notices, memoranda, statements, depositions, and correspondence reviewed by the witness and/or his agents, servants and/or employees, including treatises, articles and authoritative materials, in preparation of the witness's expert report in this litigation or in anticipation of the witness's trial and deposition testimony.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler also object that this Request is overly broad in that it lacks any temporal parameters. Elan and Dr. Winkler further object that this Request is vague and ambiguous as the terms "reviewed" and "in preparation of" are undefined and subject to misinterpretation. Elan and Dr. Winkler additionally object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 3.**

Documents and tangible things, including but not limited to correspondence, notes, factual observations, calculations, supporting data, and material sent to the witness and/or his agents servants and/or employees by Elan or Counsel for Elan in connection with this litigation or related to Abraxane.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler further object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 4.**

> The witness's entire file on this matter, including all work product and papers, such as notes, correspondence, research, memoranda, and any other tangible or electronic material.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler also object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine. Elan and Dr. Winkler further object that this Request is vague and ambiguous as the term "witness's entire file" is undefined and subject to misinterpretation.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 5.**

> Electronic data reflecting work by the witness and/or his agents, servants and/or employees in connection with this litigation or related to Abraxane.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to

violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler further object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 6.**

Materials reviewed, read, considered or used by the witness and/or his agents, servants and employees in connection with his work in this litigation.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler further object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine. Elan and Dr. Winkler also object that the term "in connection with" is vague and ambiguous because it is undefined and without any temporal parameters and is therefore subject to misinterpretation.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been

produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 7.**

> All of the witness's and/or his agents, servants and/or employees' notes concerning the assignment and/or work he has done on his own and/or at the Request of Elan or counsel for Elan in regard to this litigation, including reports and case summaries prepared by the witness or prepared for the witness by any individual working with him.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler further object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 8.**

> Records of time, expenses and charges for time the witness and/or his agents, servants and/or employees have spent on any matter related to this litigation.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is vague and ambiguous as the term "related" is undefined and subject to misinterpretation. Elan and Dr. Winkler further object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 9.**

Reports and transcripts of depositions and/or trial testimony offered by the witness as an expert in any litigation other than in this case.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler also object because this Request seeks testimony subject to a protective order in another matter. Elan and Dr. Winkler further object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Dr. Winkler's testimony in unrelated cases has no bearing on the subject matter of this lawsuit or the claims

and defenses of the parties.  Elan and Dr. Winkler further object because this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that Dr. Winkler has no documents responsive to this Request.

**REQUEST NO. 10.**

Documents reflecting agreements between the witnesses and/or his agents, servants and/or employees and Counsel for Elan, including but not limited to receipts, checks, and billing records reflecting that compensation.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45.  In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report.  Elan and Dr. Winkler also object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence because it seeks information regarding Dr. Winkler's agreements with Counsel for Elan, if any, unrelated to Dr. Winkler's work that was considered by Dr. Eric Munson in forming the opinions that he will provide in this matter. Elan and Dr. Winkler further object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 11.**

Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Elan, including but not limited to receipts, checks, and billing records reflecting that compensation.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler also object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence because it seeks information regarding Dr. Winkler's agreements with Elan, if any, unrelated to Dr. Winkler's work that was considered by Dr. Eric Munson in forming the opinions that he has or will provide in this matter. Elan and Dr. Winkler further object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 12.**

Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane or intravenous administration of Abraxane or derivatives of Abraxane.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler further object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents, if any, unrelated to Dr. Winkler's work that was considered by Dr. Eric Munson in forming the opinions that he will provide in this matter. Elan and Dr. Winkler further object that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that Dr. Winkler has no documents responsive to this Request.

**REQUEST NO. 13.**

Documents used by the witness as course material, including syllabi, in any course taught by the witness that includes material related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), intravenous administration, pre-clinical trials or clinical trials or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr.

Winkler also object that this Request is vague and ambiguous as it suggests that there exists a single definition for the terms provided in the witness's field of expertise, but fails to provide such definition. Elan and Dr. Winkler also object that this Request is overly broad and unduly burdensome in that it lacks any temporal parameters. Elan and Dr. Winkler further object to this Request because it seeks documents not in the possession, custody and control of Dr. Winkler.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

## REQUEST NO. 14.

Publications, articles, abstract, lecture materials or slides, posters, handouts, or presentations drafted in full or in party by the witness related to crystallinity, amorphousness, cross-linking, adsorption, colloidal x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), intravenous administration, pre-clinical trials or clinical trials or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

## RESPONSE.

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler also object that this Request purports to require Dr. Winkler to review materials to ascertain whether such material addresses any of the described topics, based on the vague and ambiguous assertion that such topics should be defined in accordance with his field of specialty. Such a task would require months, not mere days, even if there were a single definition of the

provided terms in Dr. Winkler's field of endeavor.  Dr. Winkler does not have administrative assistance available to him; and Abraxis has heretofore refused to reimburse Dr. Winkler for the time that he would have to spend away from gainful activity to complete such an onerous task. Elan and Dr. Winkler also object that this Request is overly broad and unduly burdensome in that it lacks any temporal parameters.  Elan and Dr. Winkler further object to this Request because it seeks documents not in the possession, custody and control of Dr. Winkler.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 15.**

Documents reflecting or referring to communications between the witness and Elan.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45.  In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report.  Elan and Dr. Winkler also object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks communications between Dr. Winkler and Elan unrelated to the subject matter of this litigation or the claims and

defenses of the parties. Elan and Dr. Winkler further object because this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 16.**

Documents reflecting or referring to communications between the witness and Counsel for Elan related to this litigation.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler further object because this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 17.**

Documents that reflect or contain direct or indirect communications with any Elan Expert or Consultant related to this litigation or Abraxane.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler also object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Winkler further object because this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that non-privileged materials, if any, responsive to this Request will be or previously have been produced, but only to the extent that such materials are or were within Dr. Winkler's possession, custody and control, and memorialize Dr. Winkler's work that was considered by Dr. Eric Munson in formulating the opinions that Dr. Munson has or will provide in this matter.

**REQUEST NO. 18.**

Documents prepared by, or supplied directly or indirectly by any Elan Expert or Consultant related to this case or Abraxane.

**RESPONSE.**

Elan and Dr. Winkler object that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil

Procedure 26 and 45. In particular, Elan and Dr. Winkler object that this Request seeks to violate the protections of Rule 26(b)(4)(B) accorded Dr. Winkler, a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan and Dr. Winkler further object that this Request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Winkler further object because this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Winkler respond that Dr. Winkler has no documents responsive to this Request.

# EXHIBIT 12

**From:**          Kruze, Diana B.
**Sent:**          Wednesday, November 28, 2007 12:24 PM
**To:**            'Jeffrey.Sullivan@bakerbotts.com'
**Cc:**            'linda.glover@bakerbotts.com'; Aannestad, Anders T.
**Subject:**       Elan vs Abraxis/Meet ad Confer

Dear Jeffrey:

Please allow this email to summarize the portion of our meet and confer that dealt with Elan's withholding of expert documents on the grounds of privilege or work-product.

- Elan stated that they were only withholding documents from Brittain's production; they are not withholding documents from any other expert on privilege or work product grounds
- Abraxis explained that the Federal Rules and case law make clear that Elan has waived any privilege or work product over Brittain's documents, as Brittain is a testifying expert. Elan stated that its basis for withholding these documents was as follows: Brittain was retained as a consulting expert prior to the litigation by Sipio (who also operates as a consultant to Elan). Elan maintains that the work done by Brittain for Sipio was separate and distinct from this lawsuit. Elan promised to send case law supporting their position.
- Brittain's privilege log: I explained that Brittain's privilege log was deficient in several respects. As promised, here is a list of some of those deficiencies:
    a) There are no date entries
    b) There is no meaningful description of the documents being withheld.
    c) There is no list of attorneys whose "mental impressions" are found within the documents
    d) The current description of the documents ("test data") is directly at odds with the privilege claimed ("attorney mental impressions"). Please    provide an explanation of how testing by a testifying expert can contain "attorney mental impressions."
    I requested that Elan fix these deficiencies by supplementing as soon as possible. Elan agreed to supplement, but would not agree to a date certain to produce a supplemental log.

Please let me know if any of my summary is incomplete or incorrect.

Thanks so much,

Diana


Diana Kruze
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: 650.813.5649
Facsimile: 650.494.0792
dkruze@mofo.com

1

# EXHIBIT 13

----- Original Message -----
From: fred.barrera@bakerbotts.com <fred.barrera@bakerbotts.com>
To: Kruze, Diana B.
Cc: jacqueline.lowe@bakerbotts.com <jacqueline.lowe@bakerbotts.com>;
Jeffrey.Sullivan@bakerbotts.com <Jeffrey.Sullivan@bakerbotts.com>;
linda.glover@bakerbotts.com <linda.glover@bakerbotts.com>; Coyne, Paul F.
Sent: Tue Feb 12 16:48:20 2008
Subject: RE: Elan v. Abraxis

Diana,
Attached please find a portion of Elan's revised privilege log.  I have attached only
three pages of the log as those are those only pages we have revised.  I attempted to send
the entire log to you by email today but received a "Undeliverable:Delivery Status
Notification (Failure)" message.  Zipped up the privilege log is 16 megs, which appears to
be too large for your email server.

We will be sending a CD with the entire log to you tomorrow.

Regards,

Fred
<<Revisions to Elan Priv Log.PDF>>
Alfredo A. Barrera III
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4495
713.229.1489 (Tel)
713.229.2789 (Fax)
fred.barrera@bakerbotts.com

**********************************************************************
This electronic mail transmission may contain confidential or privileged information. If
you believe you have received this message in error, please notify the sender by reply
transmission and delete the message without copying or disclosing it.
**********************************************************************

Elan's First Amended Document Production Privilege Log (February 12, 2008)[1]

*Elan Phara International Limited v. Abraxis Bioscience, Inc.* Case No. 06-438-GMS

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 1. | ELANP 0000097 | 7/15/98 | Fax | Attorney communication to attorney working on behalf of client advising of legal developments and rendering legal advice regarding European Patent Application 93201883.1. | Micaela Modiano, Esq. (Modiano Josif Pisanty & Staub) | Martin Katz, Esq. (Rocky, Milnanov & Katz) | | Attorney-Client |
| 2. | ELANP 0000111-12 | 12/13/98 | Fax | Attorney-client communication rendering legal advice regarding European Patent Application | Michele Schafer, Esq. (McDermott, Will & Emery) | Gary Liversidge | | Attorney-Client |
| 3. | ELANP 0000118-19 | 11/1/97 | Fax | Attorney communication to attorney working on behalf of client advising of legal developments and rendering legal advice regarding European Patent Application 93201883.1. | Paul West, Esq. (Ladas & Parry) | Michele Schafer, Esq. (McDermott, Will & Emery) | | Attorney-Client |
| 4. | ELANP 0000120-21 | 11/1/97 | Fax | Attorney communication to attorney working on behalf of client advising of legal developments and rendering legal advice regarding European Patent Application 93201883.1. | Paul West, Esq. (Ladas & Parry) | Michele Schafer, Esq. (McDermott, Will & Emery) | | Attorney-Client |
| 5. | ELANP 0000543-44 | 12/13/97 | Fax | Attorney-client communication rendering legal advice regarding European Patent Application | Michele Schafer, Esq. (McDermott, Will & Emery) | Gary Liversidge | | Attorney-Client |
| 6. | ELANP 0000553-54 | 11/1/97 | Fax | Attorney communication to attorney working on behalf of client advising of legal developments and rendering legal advice regarding European Patent Application 93201883.1. | Paul West, Esq. (Ladas & Parry) | Michele Schafer, Esq. (McDermott, Will & Emery) | | Attorney-Client |
| 7. | ELANP 0008844, 46 | 4/21/98 | Fax | Attorney communication to attorney working on behalf of client rendering legal advice regarding European Patent Application 93201883.1. | Martin Katz, Esq. (Rocky, Milnanov & Katz) | Guido Modiano, Esq. (Modiano Josif Pisanty & Staub) | Gary Liversidge; Michele Schafer, Esq. (McDermott, Will & Emery) | Attorney-Client |
| 8. | ELANP 0008850 | 4/13/98 | Fax | Attorney-client communication rendering legal advice regarding European Patent Applications. | Michele Schafer, Esq. (McDermott, Will & Emery) | Gary Liversidge | | Attorney-Client |
| 9. | ELANP 0008883-85 | 6/10/98 | Fax | Attorney-client communication rendering legal advice regarding European Patent Applications. | Michele Schafer, Esq. (McDermott, Will & Emery) | Larry Stenson | | Attorney-Client |
| 10. | ELANP 0008886-905 | 4/13/98 | Memo | Document prepared by attorney and rendering legal advice regarding European patent application 93201883.1 | Michele Schafer, Esq. (McDermott, Will & Emery) | Martin Katz, Esq. (Rocky, Milnanov & Katz) | | Attorney-Client |

[1] All communications between Baker Botts L.L.P., William J. Sipio, and Elan relating to this litigation, as well as other communications and documents prepared in anticipation of this litigation are withheld on Attorney-client privilege and/or work product doctrine. Furthermore, such documents are not identified in the privilege log.

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|---|---|---|---|---|---|---|---|---|
| 3867. | 3086163 | 07/23/1998 | Memo | Memo prepared at the request of Marty Katz, Esq., to facilitate legal services regarding the European mother patent. | Gary Liversidge | Larry Stenson | | Attorney-Client |
| 3868. | 3086165 | 09/18/1998 | Memo | Memo prepared at the request of Marty Katz, Esq., to facilitate legal services regarding the European mother patent. | Gary Liversidge | | | Attorney-Client |
| 3869. | 3086327 | 08/10/1998 | Agenda | Memo reflecting requests for legal services from Marty Katz, Esq., regarding the European mother patent. | Gary Liversidge | | | Attorney-Client |
| 3870. | ELANP02300 12 | 11/11/2002 | Letter | Attorney communication to attorney working on behalf of client rendering legal advice regarding Japanese patent application no. 4-11226. | Takashi Ishida, Esq. (A. Aoki, Ishida & Associates) | Huw Hallybone, Esq. (Carpmaels & Ransford) | | Attorney-Client |
| 3871. | 3094090 | 03/31/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |
| 3872. | 3094091 | 04/05/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |
| 3873. | 3094092 | 05/15/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |
| 3874. | 3094093 | 03/31/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |
| 3875. | 3094094 | 03/31/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |
| 3876. | 3094095 | 01/03/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |
| 3877. | 3094096 | 03/27/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |
| 3878. | 3094097 | 05/11/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |
| 3879. | 3094098 | 05/19/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |
| 3880. | 3094099 | 06/27/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |

365

| Log # | Doc. ID No. | Date | Type | Description | From | To | CC | Privilege |
|-------|-------------|------|------|-------------|------|-----|-----|-----------|
| 3881. | 3094100 | 03/27/06 | Report | Report discussing infringing product prepared by consultant at the request of William Sipio, Esq., in anticipation of litigation. | Consulting Expert | William Sipio, Esq. | | Attorney Mental Impression Work Product |

366

# EXHIBIT 14

## REDACTED IN ITS ENTIRETY

# EXHIBIT 15

-----Original Message-----
From: Walters, Eric S.
Sent: Thursday, October 25, 2007 7:49 PM
To: 'linda.glover@bakerbotts.com'
Cc: 'Steve.Scheve@BakerBotts.com'; 'PAUL.FEHLNER@BakerBotts.com';
'Jeffrey.Sullivan@BakerBotts.com'; 'sipz25@aol.com'; 'Lisa.Chiarini@BakerBotts.com';
'SBalick@ashby-geddes.com'; 'jday@ashby-geddes.com'; Jacobs, Michael A.; Evans, Emily A.
Subject: Re: Elan v. Abraxis: Meet and Confer

Dear Linda,

Thank you for your email.  I stand by my summary of the meet and confer discussion.  The
parties' subsequent exchange of emails, however, has certainly clarified Elan's position
with respect to expert document discovery.  We firmly believe that for the reasons
previously stated, Elan's position with respect to Dr. Winkler and the testing documents
is contrary to the Federal Rules, and Elan is proceeding at its peril in choosing not to
comply with the rules.

I would also note that Abraxis has numerous outstanding document requests directed to
testing documents within Elan's possession, custody or control.  Since you claim that
Abraxis's experts are within Elan's control, a supplemental production of testing
documents should have been made at the time of expert reports -- there is no possible
justification for withholding these documents even under Elan's faulty interpretation of
its expert disclosure obligations.

With respect to the privilege log, we believe the current log contains sufficiently
detailed entries to comply with the Federal Rules, and that any further motion practice is
precluded by Judge Sleet's order from the last discovery conference.  Nonetheless, in an
effort to assuage Elan's concerns, we will produce a supplemental log next week with
additional detail on some of the entries.  We do not believe there is an obligation under
the Rules to tie privilege log entries with specific interrogatory objections.  If you
have authority to the contrary, please let me know.

Eric

-----Original Message-----
From: linda.glover@bakerbotts.com <linda.glover@bakerbotts.com>
To: Walters, Eric S.
CC: Steve.Scheve@BakerBotts.com <Steve.Scheve@BakerBotts.com>; PAUL.FEHLNER@BakerBotts.com
<PAUL.FEHLNER@BakerBotts.com>; Jeffrey.Sullivan@BakerBotts.com
<Jeffrey.Sullivan@BakerBotts.com>; sipz25@aol.com <sipz25@aol.com>;
Lisa.Chiarini@BakerBotts.com <Lisa.Chiarini@BakerBotts.com>; SBalick@ashby-geddes.com
<SBalick@ashby-geddes.com>; jday@ashby-geddes.com <jday@ashby-geddes.com>; Jacobs, Michael
A.; Evans, Emily A.
Sent: Wed Oct 24 14:55:58 2007
Subject: RE: Elan v. Abraxis: Meet and Confer

Dear Eric,

It appears as though we were on two different calls.  At no time did I state that Elan would "permit" Dr. Winkler to produce documents in response to a subpoena duces tecum.  As you will recall, I stated that Elan would not accept service on behalf of Dr. Winkler. Moreover, I stated that I would not respond to a hypothetical question as to whether Elan would claim work product privilege in response to an Abraxis subpoena duces tecum issued to Dr. Winkler.  Instead, I advised that any determination as to whether Elan will object to a subpoena duces tecum to Dr. Winkler will be made at the appropriate time and in accordance with the Federal Rules of Civil Procedure.  Robert Riddle, whom you know was on the call, confirms my recollection of our conversation.


Thank you for providing me with citation to Dyson Technology Ltd. v. Maytag Corp., 241 F.R.D. 247 (D. Del. 2007), which supports Elan's position that Abraxis is entitled to only limited discovery from a non-testifying expert, such as Dr. Winkler.  See id. at 250 n. 3.


As to TMI, I stand by my email of this morning.  I read TMI thoroughly.  The facts in TMI bear absolutely no resemblance to those at issue here.


As I have already advised Emily Evans, Rule 26(a) requires that an expert report include a statement of the data or other information considered by the witness in forming his or her opinion.  See e.g. United States v. Chapman University, Cause No. SACV-04-1256-PSG (RCx), 2007 WL 2808557 at *2 (C.D. Cal. Sept. 19, 2007) ("Specifically the two-page letter does not contain a complete statement of opinions to be expressed as required; does not contain the basis and reasons for the opinions, as required; does not contain any statement of the data or information considered in forming any opinions, as required . . . .")(emphasis added).  There is absolutely no requirement in Rule 26(a) for the production of documents beyond exhibits used as a summary of or as support for the expert's opinion.


Accordingly, Elan stands on its position that it is not obligated to produce documents to Abraxis absent a valid request under the Federal Rules of Civil Procedure.  Indeed, when Elan attempted to accommodate Abraxis outside the parameters of the Rules (by producing a CD with documents listed in expert reports as having been relied upon by the experts to the extent that such documents were not in the public domain, attached as exhibits to the reports, or previously produced ), Elan's voluntary cooperation was met with a threat and a blatant mischaracterization of Rule 26(a).  As I stated yesterday, and reconfirm today, requiring Abraxis to proceed pursuant to the Rules in light of such behavior can hardly be characterized as a failure to cooperate.  Rather, it is a reasoned response to questionable tactics.


As to Abraxis's privilege log, it was addressed during the October 2 hearing with Judge Sleet.  If Abraxis wants to take the position that its representations about the privilege log to Judge Sleet are not subject to his further consideration, then it is certainly free to do so.  Please let me know Abraxis's final decision in this regard by tomorrow at 5 p.m. CST.


Regards,


Linda

-----Original Message-----
From: Walters, Eric S. [mailto:EWalters@mofo.com]
Sent: Wednesday, October 24, 2007 2:40 PM
To: Glover, Linda

Cc: Scheve, Steve; Fehlner, Paul F.; Sullivan, Jeffrey D.; sipz25@aol.com; Chiarini, Lisa;
SBalick@ashby-geddes.com; jday@ashby-geddes.com; Jacobs, Michael A.; Evans, Emily A.
Subject: RE: Elan v. Abraxis: Meet and Confer


Dear Linda,

Unfortunately, your attempt to memorialize our discussion is incorrect in several
respects, and incomplete in others. Without attempting to explicitly address every
inaccuracy, let me clarify the record from the call as follows.

Elan stated during the call that it would permit Dr. Winkler to produce documents in
response to a subpoena duces tecum served on him, but would not produce Dr. Winkler for
deposition. Your email, to the contrary, suggests that the only documents you will allow
to be produced are those "considered" by Dr. Munson. We do not believe this is correct. I
told you that we were in the process of serving deposition and document subpoenas directly
on Dr. Winkler as you had declined to accept service. You indicated Elan's intention to
move for a protective order for the deposition. As discussed, to the extent Elan fails to
produce Dr. Winkler for deposition, Abraxis intends to move to preclude any Elan expert
reports that rely on Dr. Winkler's declaration, including Dr. Munson's. I encouraged you
to review In re TMI Litig., 193 F.3d 613, 705-06 (3d Cir. 1999) (affirming exclusion of
expert testimony where the expert relied on summaries of data delivered by non-testifying
"consultants"), and to reconsider your position not to produce Dr. Winkler for deposition.
You wrote this morning that you saw nothing in the opinion to change your mind. I
recommend that you re-review the section of the TMI opinion beginning at page 705 (which
is the pincite that I gave you yesterday during our call). In that section, the Third
Circuit upheld the exclusion of the testimony of an expert who had relied on summary data
sheets prepared by non-testifying consultants. Noting that the non-testifying consultants
did not prepare expert reports and that there was no evidence in the record as to how the
summary data sheets were created, the Third Circuit concluded that "[t]hey have no
demonstrated indicia of reliability" and affirmed the exclusion of the expert's testimony.
TMI is therefore instructive in that, without Dr. Winkler's laboratory records and
deposition, it would be impossible for the court to assess the reliability of his
opinions, such that Abraxis will move to exclude the testimony of Dr. Munson and testimony
of any other expert who relies on Dr. Winkler's or Dr. Munson's declaration.

I also urged Elan to reconsider its position regarding testing documents. Elan is
blatantly violating Federal Rule of Civil Procedure 26(a)(2)(B) by failing to produce
these documents, which are plainly "data or other information considered by the witness in
forming the opinions." To the extent you have any doubt about that, I would encourage you
to review the recent opinion by Judge Sleet confirming the broad disclosure requirements
of Rule 26(a)(2)(B). See Dyson Technology Limited v. Maytag Corporation, 241 F.R.D. 247
(D.Del. 2007).

As explained on the call, several of our experts have informed us that they need these
documents in order to complete their analyses, and Elan's failure to produce them as
required by the Federal Rules is interfering with orderly expert discovery. As discussed,
it is likely that our experts will need to produce supplemental reports once they finally
receive Elan's testing documents, and as discussed we will not produce our experts for
deposition twice. Contrary to Elan's argument that it can take piecemeal expert
depositions over multiple days as long as it does not exceed seven hours, Federal Rule of
Civil Procedure 30(d)(1) quite explicitly limits depositions to one day absent leave of
court: "Unless otherwise authorized by the court or stipulated by the parties, a
deposition is limited to one day of seven hours." (Emphasis added.)  Elan's refusal to
produce its testing documents is not a sufficient justification to recall our experts for
multiple days of deposition, and Elan proceeds down this path at its peril. Therefore, as
explained on the call, not only was and is Elan required to produce these documents, it is
in its best interest to do so if it wishes to complete expert discovery in a manner that
provides an opportunity to examine our experts on all of their opinions. I also informed
you that in light of your email to Emily yesterday informing us that Elan would not
produce testing documents until it received a request that it do so, we wil be serving
amended subpoenas requesting documents be produced within 10 days.

I also expressed concern that Elan had led Abraxis to believe it would be producing these
documents, but then failed to do so. I attempted to discuss a schedule for the production

of testing documents, but you refused to agree to any date by which Elan would produce them, claiming that Abraxis had not cooperated in the scheduling of fact depositions. You stated that Elan would only produce its expert's testing documents in response to what you considered properly issued discovery. You declined to state whether Elan had any objections to the subpoenas and deposition notices that had been served on it, but that you would only issue objections within the time required under the Rules.

Elan's refusal to produce testing documents that could and should have been produced more than three weeks ago is interfering with expert discovery. It is disappointing, to say the least, that Elan has chosen to lead us to believe it would produce these documents as it was required to do, but then refused to do so. Elan's approach is not only in clear violation of the rules, but contrary to Judge Sleet's directive to the parties to cooperate in completion of discovery.

As discussed in your email, Elan identified what it claims are deficiencies in Abraxis's privilege log. I told you I would take these comments under advisement and hoped to respond later today, although we may not be able to get back to you until tomorrow. While we have voluntarily agreed to review the log and revise it if we believe it to be appropriate, as discussed, fact discovery is now closed, and Judge Sleet's order is quite explicit that any further discovery motions are limited to follow-up from the issues raised by the parties' earlier motions.

Best regards,

Eric

_____

From: linda.glover@bakerbotts.com [mailto:linda.glover@bakerbotts.com]
Sent: Tuesday, October 23, 2007 4:06 PM
To: Walters, Eric S.
Cc: Steve.Scheve@bakerbotts.com; PAUL.FEHLNER@bakerbotts.com;
Jeffrey.Sullivan@bakerbotts.com; sipz25@aol.com; Lisa.Chiarini@bakerbotts.com;
SBalick@ashby-geddes.com; jday@ashby-geddes.com
Subject: Elan v. Abraxis: Meet and Confer

Dear Eric,

Please allow the following to memorialize our 4 p.m. CST meet and confer.  You opened the discussion by stating Abraxis's opinion that Dr. Winkler is a testifying expert because Dr. Munson relied on work done by Dr. Winkler.  You advised that unless Elan permits Abraxis to depose Dr. Winkler, Abraxis will move to preclude Dr. Munson's report.  I responded by stating that Dr. Winkler is a consulting expert whose work was considered by a testifying expert for purposes of formulating an opinion.  Accordingly, the Federal Rules provide that he may not be deposed.  Abraxis, however, is entitled to obtain any reports, notes or other records created by Dr. Winkler and considered by Dr. Munson. This information has already been produced to Abraxis.  You asked that I review 193 F.3d 613, 705, which I will do.

You then stated that, in Abraxis's opinion, it would be in Elan's best interest to promptly produce notebooks, data, electronic files, and software of Dr. Munson.  You advised that if Elan waited for a request under the Federal Rules of Civil Procedure to produce such information, Abraxis's experts would be obliged to issue supplemental reports.  You advised that Abraxis will not permit Elan to depose Abraxis's witnesses more than once.  Accordingly, if Elan delays producing this information, Elan will not be permitted to depose Abraxis's experts after they issue their supplemental reports.  You also indicated that Elan had promised to produce this information but was now reneging on its promise.  I responded that the only Federal Rule of which I am aware that would place any parameters on Elan's right to depose Abraxis's experts is Rule 30, which limits an individual's deposition to 7 hours absent leave of court.  Rule 30 certainly does not prohibit Elan from spreading those 7 hours over more than 1 day.  I also advised that Elan had voluntarily agreed to produce the documents its experts had relied upon and listed in their reports.  Elan made this production last Friday.  Under no circumstances, and at no time, did Elan agree to produce raw data or electronic files.  Moreover, Elan's voluntary

production was met with Abraxis's mischaracterization of Rule 26(a) and threats to seek court intervention. Accordingly, Elan informed Ms. Evans this morning that any further requests for information from Elan's experts must be compliant with the Federal Rules of Civil Procedure. You advised that Elan was failing to cooperate with Abraxis by not producing this information absent a proper request. I responded that requiring compliance with the Federal Rules hardly constitutes a failure to cooperate. I also noted that Abraxis views cooperation from a skewed perspective. When Elan sought Abraxis's cooperation to produce Drs. Soon-Shiong, Desai and Hawkins in October – so as to prevent an abundance of depositions in November - Abraxis refused. In essence, Abraxis unilaterally took back the thirty additional days of discovery granted by Judge Sleet during the October 2 hearing. Thus, Abraxis promotes cooperation only when it benefits Abraxis.

We then discussed Abraxis's privilege log, which remains deficient. You intimated that Elan has little recourse on this issue as it was not raised before Judge Sleet during the October 2 hearing. I responded that it had, indeed, been raised, and that Abraxis represented to the Court that it was working on the log. You asked for specifics concerning the deficiencies. I advised that the descriptions of documents are insufficient to determine whether a privilege is applicable. For instance, "communication with counsel re patent application" does not necessarily describe a privileged communication. Instead, the communication must seek or render legal advice. Similarly, Abraxis has included Dr. Desai's laboratory notebooks on its privilege log and claimed that they are protected by attorney-client privilege. Yet, no attorney is listed as a party to the alleged communications and there are no descriptions indicating that advice was sought or rendered. I also advised that Abraxis claimed privilege in response to many of Elan's interrogatories, yet there were no entries on its log to confirm such privileges. You stated that you would look into Elan's complaints and get back to me by the end of the day tomorrow. You would not provide a date certain by which Abraxis would produce a log compliant with the Federal Rules. I advised that I would send a case holding that the failure to produce a compliant privilege log may lead to a waiver of privilege. That case is attached.

<<Westlaw_Document_16_35_16_7448.doc>>

Regards,

Linda

========================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to http://www.mofo.com/Circular230.html

========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
========================================================================

**From:** linda.glover@bakerbotts.com [mailto:linda.glover@bakerbotts.com]
**Sent:** Friday, January 04, 2008 2:32 PM
**To:** Evans, Emily A.; Walters, Eric S.; Kruze, Diana B.
**Cc:** Steve.Scheve@bakerbotts.com; PAUL.FEHLNER@bakerbotts.com; Jeffrey.Sullivan@bakerbotts.com;
Lisa.Chiarini@bakerbotts.com; Robert.Riddle@bakerbotts.com; fred.barrera@bakerbotts.com
**Subject:** Elan v. Abraxis

Dear Counsel,

Elan has reconsidered its objections to Abraxis's subpoena *ad testificandum* to Dr. Winkler, and Elan is now willing to present him for deposition. Elan does not withdraw any objection other than that directed to producing Dr. Winkler for deposition.

Dr. Winkler is on his honeymoon until the week of January 21.   He can be made available thereafter on January 23 or 25. Please advice whether Abraxis still wishes to depose Dr. Winkler.

Regards,

Linda

# EXHIBITS 16 - 17

## REDACTED IN THEIR ENTIRETY

# EXHIBIT 18

Page 1

1                UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE
2

ELAN PHARMA                    )
3    INTERNATIONAL LIMITED,          )
          Plaintiff,            )
4                                    )
vs.                            ) Case No. 06-438-GMS
5                                    )
ABRAXIS BIOSCIENCE, INC.,      )
6         Defendant.               )
7

8                  ORAL VIDEOTAPED DEPOSITION
9                    CORY BERKLAND, Ph.D.
10                    DECEMBER 14, 2007
11

12      ORAL VIDEOTAPED DEPOSITION OF CORY BERKLAND, Ph.D.,
13   produced as a witness at the instance of the Plaintiff
14   and duly sworn, was taken in the above-styled and
15   numbered cause on the 14th day of December, 2007, from
16   9:12 a.m. to 7:36 p.m., before Melinda Barre, Certified
17   Shorthand Reporter in and for the State of Texas,
18   reported by computerized stenotype machine at the
19   offices of Baker Botts, 910 Louisiana, 32nd Floor,
20   Houston, Texas, pursuant to the Federal Rules of Civil
21   Procedure and the provisions stated on the record or
22   attached hereto.
23

24

25

Page 70

1  relook at the subpoena and re-search for any
2  documents that may be responsive to that subpoenaing.
3      A. Okay.
4          MR. SULLIVAN: And I'll confirm for the
5  record that I undertook to undertake an investigation
6  into whether there were any communications brought in
7  this litigation with -- as between Dr. Berkland and
8  Dr. Shi that would not have been captured by the
9  Munson production.
10          We will make a further investigation on
11  the computer; but to a point-blank question,
12  Dr. Berkland clarified to me that he did not believe
13  any other such documents existed. We will confirm
14  that on the computer.
15          MS. KRUZE: I'm just looking at your
16  representation here on the record, Mr. Sullivan. If
17  you could, please undertake a general investigation
18  of whether Dr. Berkland's response to the subpoena
19  was complete.
20          MR. SULLIVAN: And I will make the same
21  undertaking with probably the same preliminary
22  representation that we believe it to be.
23          MS. KRUZE: Thank you.
24      Q. (By Ms. Kruze) So, Dr. Berkland, returning
25  to your subpoena, are you aware that the subpoena

Page 71

1  also directed you to produce all notebooks, paper and
2  basically any other data regarding your preparation
3  of the manipulated samples?
4      A. Yes. I'm aware.
5          MR. SULLIVAN: Object.
6      Q. (By Ms. Kruze) Are you aware that the
7  subpoena also included any paper generated by a
8  person working for you like David Shi?
9          MR. SULLIVAN: Object.
10      A. Yes. I'm aware of that.
11      Q. (By Ms. Kruze) Did you produce all your
12  hard-copy notes?
13      A. Yes, I did.
14      Q. And did you produce all data relating to any
15  work you conducted?
16      A. Yes, I did.
17      Q. Are you aware that you didn't produce a
18  single hard-copy piece of paper about your sample
19  preparation in the case?
20      A. Yes. I'm aware of that; and I'd like to
21  clarify that, if I may.
22          So for this particular case I was
23  directly involved with David Shi -- Lianjun Shi.
24  I'll refer to him as David probably throughout most
25  of this deposition. And David and I exchanged

Page 72

1  verbally on multiple occasions what was done, how
2  samples were handled, what were the experimental
3  variables that were used.
4          I then recorded those in what I would
5  consider to be a precursor document to the report.
6  That's something that would end up being modified
7  into the final report. So much in the same way that
8  when you start executing a Word document, when you
9  start writing a letter, it's not common practice for
10  you to include when you've pasted a letterhead into
11  that letter. It's not common practice for you when
12  you write the greeting on that letter to include that
13  document. So what I included was all that
14  information compiled in my expert report.
15      Q. Did you keep a lab notebook with regards to
16  your sample preparation?
17      A. No. I did not keep a lab notebook.
18      Q. Did David Shi keep a lab notebook of his
19  experiments?
20      A. David Shi did not keep a lab notebook, and
21  I'd like to put that in context. So previously when
22  I was asked questions regarding whether or not it was
23  common practice for my students to keep lab
24  notebooks, I answered in the affirmative; and then I
25  further said that it would be for any procedures that

Page 73

1  were not considered to be routine or common in the
2  laboratory.
3          In addition, in this particular case,
4  rather than writing this down in a lab notebook and
5  then translating it into a report document, we chose
6  to take that information, put it into a document that
7  was refined into the report.
8      Q. Is it your testimony that preparing
9  manipulated samples of Abraxane is routine in your
10  lab?
11          MR. SULLIVAN: Object.
12      A. It is my opinion that working with
13  nanoparticles and separating them is incredibly
14  routine in our laboratory, specifically --
15      Q. (By Ms. Kruze) So it's your testimony --
16      A. I'd like to further my answer. So
17  specifically I think you'll see from the years of
18  experience of David Shi, he has worked for nearly a
19  decade in industry. He has a Ph.D. degree. He is a
20  doctor. He has experience in two different
21  postdoctoral positions, and he now works in the
22  pharmaceutical industry. So David Shi is trustworthy
23  to carry out these routine experiments. And based on
24  my knowledge and my expertise, we have also worked
25  with micron-sized particles, nanosized particles,

Page 78

1   this information directly rather than putting it down
2   in a notebook and then translating that to a report
3   was indeed true.
4       Q.   So it wasn't your assumption when you wrote
5   this e-mail that David did keep a detailed notebook.
6   Is that your testimony?
7       A.   Yeah.  That's my testimony based on what
8   David had told me verbally.
9       Q.   So you were just confirming with him that he
10  did not, in fact, keep a detailed notebook.  Is that
11  correct?
12      A.   Yeah.  I wanted to pose the question to him
13  in additional time just to make sure he hadn't
14  scribbled a few things down somewhere that maybe I
15  would need to take a look at.
16      Q.   For a peer-reviewed journal article would
17  you keep a laboratory notebook of the experiments
18  that you did?
19          MR. SULLIVAN:  Object.
20      A.   I think I actually answered a similar
21  question previously.  Is there any way to go back and
22  read my answer how I responded to the questions about
23  notebooks a couple of hours ago?  If not, I can just
24  try to capture that again.
25      Q.   (By Ms. Kruze)  I think this is the first

TSG Reporting - Worldwide     877-702-9580

Page 79

1   time that I've asked you that question, actually.
2           So if you were working on a
3   peer-reviewed article, would you keep a laboratory
4   notebook of your experiments?
5           MR. SULLIVAN:  Object.
6       A.   The question you asked previously, I
7   believe, was is it routine in your laboratory to keep
8   a laboratory notebook.  And I addressed that question
9   with some additional information.  So I'll try to
10  reiterate that information here as well.
11          When we generate data that we would
12  like to publish, it is important for us to take the
13  essential data that we would need to reproduce in
14  that document and record it in some way.
15          As I said before, in this way and
16  this -- on this particular instance instead of
17  recording it into a laboratory notebook, I recorded
18  it into a precursor document for the final report
19  that I submitted.  So it's not as if this information
20  was lost at some point along the way and we're
21  relying on recollection or speculation.  We're
22  relying on information that was recorded.
23          Here it was not recorded in the context
24  of a laboratory notebook because we have a particular
25  machine in the laboratory, a centrifuge in the

TSG Reporting - Worldwide     877-702-9580

Page 80

1   laboratory, that always -- almost always is at the
2   exact same settings.
3           At the time David was in the
4   laboratory, this was the centrifuge he used
5   continually.  He knew how to set up this machine so
6   that it ran samples and separated particulates with a
7   particular size routinely.  In addition, he was used
8   to handling nanoparticulate formulations.  And he did
9   this the way you would expect a professional in the
10  laboratory to do this.  He would use a similar
11  approach and a similar methodology every time.  He
12  would take the same precautions to protect himself.
13  He would take similar precautions to protect the
14  integrity of the sample.
15      Q.   Is it scientifically accepted practice to
16  not write down experiments in a laboratory notebook?
17          MR. SULLIVAN:  Object.
18      A.   I think I addressed that question.
19      Q.   (By Ms. Kruze)  And I think I'm looking for
20  an answer to the question.
21      A.   Okay.
22      Q.   If your recordkeeping practice was
23  challenged by someone on the fact that it's not
24  scientifically accepted practice, how would you
25  respond?

TSG Reporting - Worldwide     877-702-9580

Page 81

1           MR. SULLIVAN:  Object.
2       A.   I would respond in the same way I've
3   responded previously, that there is no rule that says
4   information has to be recorded into a laboratory
5   notebook.  As a matter of fact, there are a variety
6   of programs out there right now that are
7   computational-based laboratory recording software.
8           So instead of writing this down into a
9   laboratory notebook, you create a document using the
10  appropriate software; and you record your experiments
11  in that manner.  So the use of a laboratory notebook
12  in my mind is not a critical component to good
13  bookkeeping or good recordkeeping.
14      Q.   (By Ms. Kruze)  Did you record the lot
15  number of the Abraxane vials that you received?
16      A.   It was my impression that the lot number of
17  the Abraxane vials was available to me because those
18  particular boxes which show the lot number have been
19  recorded prior to being sent to me.
20      Q.   So you didn't record that?
21      A.   I think I have -- in my expert report I have
22  an image of one of those boxes that shows the lot
23  number.
24      Q.   How many boxes did you receive?
25      A.   I think the total number of boxes we

TSG Reporting - Worldwide     877-702-9580

Page 198

1  shipment of six vials on or around January 19th,
2  another shipment of six vials on or around
3  March 15th.
4      Q.  Did you make any notes about the first vials
5  that you received?
6          MR. SULLIVAN:  Object.
7      A.  I'd probably have to ask you to clarify if I
8  made any notes.
9      Q.  (By Ms. Kruze)  Did you write down the
10  expiration dates of all the six vials you received in
11  January?
12      A.  I think I answered this question already,
13  but I'd be happy to answer it again.  So based on my
14  recollection, the expiration date for the first set
15  of vials was 8 of 2008 and for the second set of
16  vials was 11 of 2008.
17      Q.  But you did not write the information down
18  for all 12 of the vials.  Is that correct?
19      A.  At the time I was under the impression that
20  that information was taken care of.  So my job as a
21  scientist was to take a product or a sample or an
22  unknown, whatever it may be, and analyze -- or in
23  this case I'm just separating that product to allow
24  the analysis of a particular portion of that product.
25      Q.  So you didn't record any of the expiration

Page 199

1  dates of the vials.  Is that correct?
2      A.  The expiration date for one of the vials is
3  included in my report.  I think it's -- I think my
4  report got messed up here.  For some reason my
5  appendices got flipped around here.  I think it's
6  appendix C.
7      Q.  That's right.  You have a copy of one box.
8  Is that correct?
9      A.  That's correct.  I have a copy of a box of
10  Abraxane, and I believe that was one of the boxes
11  that was received in the first shipment.
12      Q.  But you don't know for sure?
13      A.  I could get that information.
14      Q.  If you would provide us with that
15  information, we would appreciate it, yes.
16      A.  So to the best of my knowledge and according
17  to what I recall, that information was handled,
18  recorded.
19      Q.  But you did not record it?
20      A.  But I did not record that information other
21  than what appears in appendix C, although there are
22  several boxes and vials that are left in my
23  laboratory and I could easily confirm the materials
24  that are remaining, as well as any boxes that are
25  left.  We kept a few of the boxes after a product was

Page 200

1  used, so ...
2      Q.  When did you prepare the samples that were
3  used by Dr. Munson in his NMR analysis?
4      A.  So the samples were prepared on a couple of
5  different occasions.  Maybe you can help me.  I
6  believe the first samples were prepared by the
7  lyophilization method.  The second samples were
8  prepared by the air-dried method.  And if we could
9  refer to them using those terms, that will help me
10  remember which sample in particular you're referring
11  to.  Thank you.
12      Q.  When did you prepare the lyophilized samples
13  of Abraxane?
14      A.  The lyophilized samples of Abraxane were
15  prepared by a person in my laboratory, and that
16  occurred around a week after receipt of the first
17  shipment of Abraxane.
18      Q.  And who personally prepared the samples of
19  Abraxane?
20      A.  The sample preparation was actually handled
21  by a couple of people, myself and David Shi, Liunjun
22  Shi.  I'll contextualize that a little bit.
23          So David has the expertise in the
24  laboratory for handling these types of samples.  I
25  could have easily went into a laboratory and

Page 201

1  conducted these studies; but, as you know, in an
2  academic laboratory everyone has specific roles that
3  they are experts in.  So my role in this particular
4  study with regards to the sample preparation was to
5  discuss with David and communicate the appropriate
6  conditions, the appropriate methods to handle the
7  samples and the appropriate separation method.  And
8  David's job was to then execute those studies, and I
9  confirmed the execution of those studies after the
10  fact on multiple occasions.
11      Q.  So it's David's expertise to actually
12  prepare, physically prepare, the samples that were
13  used in Dr. Munson's NMR analysis.  Is that correct?
14      A.  Yes.  And I'd like to reiterate or remind
15  you from the earlier conversation on the subject that
16  David is well qualified to do these experiments.  He
17  has ten years of -- approximately ten years of
18  industry experience, worked approximately six years
19  as a postdoc at the time that he had completed these
20  studies.  He's published in the area of nanoscience,
21  nanotechnology.  He's filed patents in the past on
22  that subject matter.  And David was actually
23  specifically chosen by me as the most senior
24  representative of the laboratory that would be the
25  most capable and the most reliable in executing a set

Page 202

1  of simple instructions to separate Abraxane.
2          Furthermore, I'd like to reiterate --
3  maybe I never mentioned this before, but I'd like to
4  just establish or emphasize the fact that the amount
5  of work that went into separating the nanoparticle
6  fraction shouldn't be overestimated.  Essentially
7  there's just a few steps.  You follow something
8  similar to the package insert to reconstitute the
9  sample.  You transfer that to a centrifuge tube.  You
10 push a button on the centrifuge tube, which is set to
11 handle particles in this size range.  45 minutes
12 later you come back.  You decant off the liquid, and
13 you dry the pellet that you retained.
14     Q.  How much did you pay David for all of his
15 work?
16          MR. SULLIVAN:  Object.
17     A.  David is paid as -- at the time he was paid
18 as a postdoctoral research associate.
19     Q.  (By Ms. Kruze)  By the university?
20     A.  By the university.
21     Q.  Does the university know that you were using
22 David's time for this litigation?
23     A.  The work that was conducted was compensated
24 through a service agreement with Eric Munson, and
25 under that service agreement we considered our sample

TSG Reporting - Worldwide       877-702-9580

Page 203

1  preparation to be part of the necessary techniques to
2  do the NMR analysis.  And, therefore, the
3  compensation was provided through a service agreement
4  to Eric Munson's lab.  That money is then used to
5  support his lab and also to support our lab with
6  respect to the amount of time and human effort,
7  supplies, et cetera, that were involved in the sample
8  handling.
9     Q.  So that the jury is entirely clear,
10 Dr. Berkland, you did not personally prepare the
11 samples of Abraxane that were used in Dr. Munson's
12 analysis.  Is that correct?
13          MR. SULLIVAN:  Object.
14     A.  Yeah.  I'd like to provide a lot of
15 clarification on that point.  So although I did not
16 personally prepare the samples, David Shi is the
17 expert in this case; and he has years and years of
18 experience doing these procedures.  They were
19 routine.  That is something he did on a regular
20 basis.  It was something that he was very, very
21 comfortable in doing.
22          Again, I'm not going to attest to his
23 personnel accolades as far as experience but David is
24 a responsible and reliable individual and there's
25 absolutely no reason to doubt that David would not

TSG Reporting - Worldwide       877-702-9580

Page 204

1  execute a simple set of instructions.
2          In industry if you do something where
3  you do not follow orders, your job is terminated.  In
4  the academic community if you do something where you
5  do not follow orders, your job is in jeopardy and
6  also your scientific integrity is in jeopardy.  David
7  would not do that.
8     Q.  But we don't know that because David's not
9  here, right?
10          MR. SULLIVAN:  Objection.
11     A.  Is that a question?  Yeah.  David is not
12 here.  So you rely upon me as David's representative,
13 as a person who can attest to David's credibility, as
14 a person who has described not only the routineness
15 of these experiments, but also exactly what was done
16 in my report to the level that I think it was
17 sufficient to include in the report.  So you're
18 really relying on my reputation as well.
19     Q.  (By Ms. Kruze)  Again, so the jury's clear,
20 Dr. Berkland, you did not personally prepare the
21 samples of Abraxane that were tested in this case?
22          MR. SULLIVAN:  Objection.
23     Q.  (By Ms. Kruze)  Yes or no?
24     A.  I answered that question.
25     Q.  And the answer is no, you did not personally

TSG Reporting - Worldwide       877-702-9580

Page 205

1  prepare them, correct?
2     A.  I gave an answer previously to that
3  question.
4     Q.  Dr. Berkland, did you or did you not
5  personally prepare the samples that were used in the
6  NMR testing in this case?
7          MR. SULLIVAN:  Objection.
8     A.  Preparation of samples for NMR was actually
9  carried out by Professor Munson's laboratory.
10    Q.  (By Ms. Kruze)  So Dr. Munson prepared the
11 samples?
12          MR. SULLIVAN:  Objection.
13    A.  That's not what I said.  I said preparation
14 of the samples for NMR analysis was handled by
15 Dr. Munson's laboratory.
16    Q.  (By Ms. Kruze)  You testified earlier that
17 12 vials of Abraxane were provided by Elan's counsel
18 in total.  Is that correct?
19    A.  That was my testimony, yes.  And it was
20 stipulated that that was to the best of my knowledge.
21    Q.  And you also testified that they were
22 provided at two different times, these samples.  Is
23 that correct?
24    A.  That is correct.
25    Q.  Given the fact that these samples were

TSG Reporting - Worldwide       877-702-9580

Page 206

1  provided at two different times, how are you sure
2  that the sample preparation was done exactly the same
3  way both times?
4        MR. SULLIVAN: Object.
5    A.  Again, I can tell you without a doubt that
6  David is reliable, that the sample preparation method
7  is very clear, very few steps. It would take a
8  minimal amount of time.
9        And David is a Ph.D. To the best of my
10 knowledge, he's something around 42 or 43 years old.
11 He has years and years of experience, and he is
12 trustworthy and reliable. It wouldn't matter what
13 the sample was, David would handle it consistently
14 and methodically; and he would handle it in a
15 professional manner.
16   Q.  (By Ms. Kruze)  So really the only reason
17 why you think that the sample preparation was done
18 exactly the same way is based on David's reputation.
19 Is that right?
20        MR. SULLIVAN: Object.
21   A.  No. That's not true.
22   Q.  (By Ms. Kruze)  What else is it based on,
23 Dr. Berkland?
24   A.  I met personally with David prior to each
25 sample preparation, and I confirmed afterwards that

TSG Reporting - Worldwide     877-702-9580

Page 207

1  the conditions that we talked about were followed.
2    Q.  And the only reason why you know that is
3  because David told you that. Is that correct?
4        MR. SULLIVAN: Object.
5    A.  So the reason that I know that the samples
6  were handled in exactly the same way both times? The
7  reason I know those things is because I asked David,
8  and David confirmed those things to me.
9        Again, I'd just like to reiterate that
10 David's professional experience -- I could think of
11 no one else that I would rather give those samples to
12 and have them be handled in a professional manner
13 executing a few routine steps in the laboratory and
14 reporting that back to me so that I can record it in
15 a document that would become my report.
16   Q.  (By Ms. Kruze)  Do you know when Elan's
17 counsel originally ordered all these samples?
18   A.  The only thing I can attest to is when we
19 received the samples.
20   Q.  So you don't know where Elan kept the
21 samples when they were in its custody. Is that
22 correct?
23        MR. SULLIVAN: Object.
24   A.  Yeah. I wasn't at Elan and could not
25 testify to how the samples were stored while they

TSG Reporting - Worldwide     877-702-9580

Page 208

1  were at Elan. But I can attest to the fact that
2  Abraxane has been tested very, very stringently
3  through experiments that are required by the FDA to
4  show that they are stable under a variety of
5  different conditions.
6        You know, the FDA is relentless in
7  terms of showing stability such that the product that
8  you put into a person is exactly what it was when you
9  first prepared the product. The expiration date for
10 those products was well longer than a year out from
11 the time that we did the studies.
12   Q.  (By Ms. Kruze)  But you have no personal
13 knowledge of how Elan treated or stored the samples
14 before you received them. Is that correct?
15        MR. SULLIVAN: Object.
16   A.  I do not have firsthand knowledge of how the
17 particular samples were stored prior to shipment to
18 me.
19   Q.  (By Ms. Kruze)  Why did David resuspend the
20 Abraxane in water instead of saline?
21        MR. SULLIVAN: Object.
22   A.  Okay. If I may, I would just like to turn
23 to that section in my appendix that talks about the
24 method for reconstitution.
25   Q.  (By Ms. Kruze)  Just to help you out, 14 and

TSG Reporting - Worldwide     877-702-9580

Page 209

1  15 discuss the particle isolation.
2    A.  And appendix C is a copy of the box of one
3  of the samples we received and a copy of the package
4  insert. Specifically I'd like to draw attention to
5  the section that is boxed that gives the step-by-step
6  methods for reconstitution.
7    Q.  Certainly. Where does it refer to water?
8    A.  In this document the subheading or title for
9  that particular section is called "Preparation for
10 Intravenous Administration."
11       So in the context of a doctor being in
12 an office, he would want to take the Abraxane product
13 and reconstitute it using .9 percent sodium chloride,
14 20 mls of that. The reason for using the sodium
15 chloride is so that you balance the osmolarity of the
16 product that you're injecting with the osmolarity of
17 the blood. You want me to be isotonic.
18       What happens is if you inject something
19 into the body and it's not balanced with the salt
20 concentration in the body or, more broadly speaking,
21 the tonicity or osmolarity of the body, you can have
22 side effects related to the injection. So in this
23 particular instance .9 percent sodium chloride is
24 referred to in the context of preparation for
25 intravenous administration.

TSG Reporting - Worldwide     877-702-9580



Page 314

1          UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE
2
ELAN PHARMA                    )
3 INTERNATIONAL LIMITED,        )
        Plaintiff,              )
4                              )
     vs.              ) Case No. 06-438-GMS
5                              )
ABRAXIS BIOSCIENCE, INC.,    )
6     Defendant.              )
7
8          REPORTER'S CERTIFICATE
9 ORAL VIDEOTAPED DEPOSITION OF CORY BERKLAND, Ph.D
10          DECEMBER 14, 2007
11
12    I, Melinda Barre, Certified Shorthand Reporter in
13 and for the State of Texas, hereby certify to the
14 following:
15    That the witness, CORY BERKLAND, Ph.D., was duly
16 sworn and that the transcript of the deposition is a
17 true record of the testimony given by the witness;
18    That the deposition transcript was duly submitted on
19 _____ to the witness or to the attorney for
20 the witness for examination, signature, and return to me
21 by _____.
22    That a copy of this certificate was served on all
23 parties shown herein on _____ and filed
24 with the Clerk.
25    I further certify that I am neither counsel for,

TSG Reporting - Worldwide        877-702-9580

Page 315

1 related to, nor employed by any of the parties in the
2 action in which this proceeding was taken, and further
3 that I am not financially or otherwise interested in the
4 outcome of this action.
5    Further certification requirements pursuant to
6 Rule 203 of the Texas Code of Civil Procedure will be
7 complied with after they have occurred.
8    Certified to by me on this 17th day of
9 December, 2007.
10
11    _____
12    Melinda Barre, Texas CSR 2192
      Expiration Date:  December 31, 2008
13    Firm Registration No. 189
14
15
16
17
18
19
20
21
22
23
24
25

TSG Reporting - Worldwide        877-702-9580

| | | |
|---|---|---|
| **Name of Case:** | Elan Pharma International Limited v. Abraxis Bioscience, Inc., Case No. 06-438-GMS, District of Delaware | |
| **Date of Deposition:** | 12/14/2007 | |
| **Name of Witness:** | Cory Berkland | |

Reason Codes:
1. To clarify the record.
2. To conform to the facts.
3. To correct transcription errors.

| Page | Line | From | To | Reason |
|---|---|---|---|---|
| 14 | 22 | Ari Sphere | AriSphere | 3 |
| 16 | 22 | lead to figure that would | | 1 |
| 17 | 3 | adventure | venture | 3 |
| 28 | 13 | bit | bed | 3 |
| 34 | 24 | sheer | shear | 3 |
| | | sheer appears 13 times | should be corrected to shear | |
| | | sheered appears 1 time | should be corrected to sheared | |
| 121 | 7 | homologyhomology | homology | 3 |
| 136 | 25 | Oswalt | Ostwald | 3 |
| 156 | 5-12 | | Read directly; should be quoted | 3 |
| 174 | 18 | polygamer | oligomer | 3 |
| 177 | 20 | crosslink | crosslinked | 3 |
| 177 | 22 | avoid | void | 3 |
| 187 | 6 | aggrephobic | hydrophobic | 3 |
| 197 | 18 | polygamer | oligomer | 3 |
| 203 | 16-17 | David Shi is the expert in this case; | David Shi has expertise with sample preparation; | 1 |
| 211 | 16 | for | or | 3 |
| 225 | 13 | rpm or | | 3 |
| 261 | 21 | micron | Micron, Inc. | 1 |
| 266 | 13-14 | of the -- I omitted a couple of words -- because | | 1 |
| 309 | 6 | micron's | Micron's | 1 |

| Page | Line | From | To | Reason |
|------|------|------|-----|--------|
|      |      |      |     |        |

Subject to the above changes, I certify that the transcript is true and correct.

_____          ___2/18/2008_____
Signature                                   Date

# EXHIBIT 19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C. A. No. 06-438-GMS ) |
| ABRAXIS BIOSCIENCE, INC., | ) ) |
| Defendant. | ) ) ) ) |

## NOTICE OF DEPOSITION AND SUBPOENA
## DIRECTED TO LIANJUN SHI (A/K/A DAVID SHI)

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30 of the Federal Rules of Civil

Procedure, Defendant Abraxis BioScience, Inc. ("Abraxis") will take the deposition by oral

examination of Lianjun Shi (a/k/a David Shi), commencing at 9:00 a.m. on December 14, 2007,

at Foulsten Siefkin LLP, 9200 Indian Creek Parkway, Suite 450, Overland Park, Kansas 66210-

2017. The deposition will be taken before a person authorized to administer an oath and will

continue from day to day, Saturdays, Sundays, and holidays excepted, until completed. The

deposition will be recorded by video, audio, and stenographic means.

PLEASE TAKE FURTHER NOTICE that pursuant to Rule 45 of the Federal Rules of

Procedure, Abraxis is serving a subpoena *ad testificandum and duces tecum* upon the deponent

in the form appended hereto for the deposition described above and for the production of the

items described in Exhibit A to the subpoena by no later than December 11, 2007.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
*jingersoll@ycst.com*
Elena C. Norman (No. 4780)
*enorman@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
Jeffrey T. Castellano (No. 4837)
*jcastellano@ycst.com*
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
302-571-6600
*Attorneys for ABRAXIS BIOSCIENCE, INC.*

OF COUNSEL:

Michael A. Jacobs
MORRISON & FOERSTER, LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000   Telephone
(415) 268-7522  Facsimile
MJacobs@mofo.com

Emily A. Evans
MORRISON & FOERSTER, LLP
755 Page Mill Road
Palo Alto, CA  94304-1018
(650) 813-5600  Telephone
(650) 494-0792  Facsimile
EEvans@mofo.com

Dated:   December 4, 2007

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF KANSAS

ELAN PHARMA INTERNATIONAL LIMITED

V.

ABRAXIS BIOSCIENCE, INC.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 06-438-GMS (D.Del.)

TO: LIANJUN SHI (a/k/a DAVID SHI)
Department of Chemical and Petroleum Engineering
University of Kansas, 2030 Becker Drive, Lawrence KS  66047

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION Foulsten Siefkin LLP, 9200 Indian Creek Parkway, Suite 450, Overland Park, Kansas 66210 | DATE AND TIME December 14, 2007 9:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
See attached Exhibit A

| PLACE Foulsten Siefkin LLP, 9200 Indian Creek Parkway, Suite 450, Overland Park, Kansas 66210 | DATE AND TIME December 11, 2007 9:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *signature* Counsel for Defendant | DATE December 4, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Karen E. Keller, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th
Floor, Wilmington, DE 19801  (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(D) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to this Exhibit:

The term "Abraxis" means Abraxis BioScience, Inc., its predecessors, successors and assigns, its officers, employees, agents, attorneys, consultants, and representatives, or other persons acting or purporting to act on its behalf, and any other legal entities (foreign or domestic) that are or have been owned or controlled by Abraxis.

The term "Abraxane" refers to Abraxane for Injectable Suspension (paclitaxel protein-bound particles for injectable suspension), an albumin-bound form of paclitaxel supplied as a lyophilized powder for reconstitution prior to intravenous infusion. The term "Abraxane" also includes Abraxane as reconstituted according to the instructions on the product label. Abraxane was developed and is marketed by Abraxis.

The terms "Document" or "Documents" shall have the broadest meaning permitted under Rules 26 and 34 of the Federal Rules of Civil Procedure, Rule 1001 of the Federal Rules of Evidence, and relevant case law.

The term "Elan" means Elan Pharma International Limited, its predecessors, successors and assigns, its officers, employees, agents, attorneys, consultants, and representatives, or other persons acting or purporting to act on its behalf, and any other legal entities (foreign or domestic) that are or have been owned or controlled by Elan.

The term "Elan Experts and Consultants" means any expert or third party consultant retained by Elan in connection with this litigation, or in connection with any analysis, experiment (formal or informal) or testing of Abraxane, including but not limited to Cory J. Berkland, Harry J. Brittain, Samuel J. Danishefsky, David J. Haidak, John C. Jarosz, Mark Cornell Manning, James M. McBride, Eric J. Munson, David R. Taft, Robert O. Williams III, Jeffrey D. Winkler, Dewey Barich, Lianjun (aka "David") Shi, Dr. Manoj Maniar and Dr. Stephen Bryn.

The term "Counsel for Elan" means any attorney retained by or acting on behalf of Elan, as well as any employees, agents, representatives or other persons acting on such an attorney's behalf.

To the extent you believe you cannot produce an otherwise-responsive Document because of privilege, Abraxis requests that you provide a privilege log. For each Document withheld on the basis of privilege, describe the claimed privilege and identify the date, author or originator, person to whom addressed, sent or shown (including copies), type of Document, present custodian and general subject matter of the Document.

## REQUESTED DOCUMENTS

1.     Documents and tangible things, including tangible reports, physical models, compilations of data, photographs, audio tapes, video tapes, computer data and printouts, and other material prepared by the witness or for the witness and/or his agents, servants and/or employees in connection with the witness's work on behalf of Elan, Counsel for Elan, or Elan Experts and Consultants in connection with this litigation or related to Abraxane.

2.    Documents and tangible things, including but not limited to all materials, notes, memoranda, statements, depositions, and correspondence reviewed by the witness and/or his agents, servants and/or employees, including treatises, articles and authoritative materials in connection with the witness's work on behalf of Elan, Counsel for Elan, or Elan Experts and Consultants in connection with this litigation or related to Abraxane.

3.    Documents and tangible things, including but not limited to correspondence, notes, factual observations, calculations, supporting data, and material sent to the witness and/or his agents, servants and/or employees by Elan, Counsel for Elan, or an Elan Expert or Consultant in connection with this litigation or related to Abraxane.

4.    The witness's entire file on this matter, including all work product and work papers, such as notes, correspondence, research, memoranda, and any other tangible or electronic material.

5.    Electronic data reflecting work by the witness and/or his agents, servants and/or employees in connection with this litigation or related to Abraxane.

6.    Materials reviewed, read, considered or used by the witness and/or his agents, servants and /or employees in connection with his work in this litigation.

7.    All of the witness's and/or his agents, servants and/or employees' notes concerning the assignments and/or work he has done on his own and/or at the request of Elan, Counsel for Elan, or Elan Experts and Consultants in regard to this litigation, including reports and case summaries prepared by the witness or prepared for the witness by any individual working with him.

8.    Records of time, expenses and charges for time the witness and/or his agents, servants and/or employees have spent on any matter related to this litigation.

9.    Reports and transcripts of depositions and/or trial testimony offered by the witness as an expert in any litigation other than in this case.

10.    Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Elan, Counsel for Elan, or Elan Experts and Consultants related to this case, including but not limited to receipts, checks, and billing records reflecting that compensation.

11.    Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Elan, including but not limited to receipts, checks, and billing records reflecting that compensation.

12.    Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information, regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane.

13.     Documents used by the witness as course material, including syllabi, in any course taught by the witness that includes material related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

14.     Publications, articles, abstracts, lecture materials or slides, posters, handouts, or presentations drafted in full or in part by the witness related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state NMR, or transmission electron microscopy as those subjects are defined in the witness's field of specialty.

15.     Documents reflecting or referring to communications between the witness and Elan.

16.     Documents reflecting or referring to communications between the witness and Counsel for Elan related to this litigation or Abraxane.

17.     Documents that reflect or contain direct or indirect communications with any Elan Expert or Consultant related to this litigation or Abraxane.

18.     Documents prepared by, or supplied directly or indirectly by any Elan Expert or Consultant related to this litigation or Abraxane.

19.     A copy of all instructions, including the user manual and any technical reports, the came with the software the witness used for his deconvolution experiments.

20.     Any hardcopy computer printouts from the witness's deconvolution experiments.

21.     Documents, including photocopies or pictures, of the labels on any Abraxane vials or other containers containing Abraxane or any Abraxane derivative supplied directly or indirectly by Elan, Elan's Counsel, or any Elan Expert or Consultant.

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on December 4, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on December 4, 2007, I caused a true and correct copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

> Linda Glover, Esquire
> Stephen Scheve, Esquire
> BAKER BOTTS L.L.P.
> One Shell Plaza
> 910 Louisiana Street
> Houston, TX  77002-4995
> steve.scheve@bakerbotts.com

> Paul F. Fehlner, Esquire
> BAKER BOTTS L.L.P.
> 30 Rockefeller Plaza
> New York, NY  10112-4498
> paul.fehlner@bakerbotts.com

065496.1001

William J. Sipio, Esquire
1375 Brentwood Road
Yardley, PA  19067
sipz25@aol.cm

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
Elena C. Norman (No. 4780)
enorman@ycst.com
Karen E. Keller (No. 4489)
kkeller@ycst.com
Jeffrey T. Castellano (No. 4837)
jcastellano@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899
(302) 571-6600

Attorneys for Defendant
ABRAXIS BIOSCIENCE, INC.

2

065496.1001

# EXHIBIT 20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUBPOENA *AD TESTIFICANDUM* SERVED ON LIANJUN SHI | § §  § § § § § § | Miscellaneous Docket No. M8-85 <br><br> *Elan Pharma International Limited v. Abraxis BioScience, Inc.*; U.S. District Court; District of Delaware; Cause No. 06-438-GMS; Chief Judge Gregory M. Sleet |

## ELAN PHARMA INTERNATIONAL LIMITED'S AND LIANJUN SHI'S (A/K/A DAVID SHI) MOTION TO QUASH ABRAXIS BIOSCIENCE, INC.'S SUBPOENA *AD TESTIFICANDUM* DIRECTED TO LIANJUN SHI

Pursuant to Federal Rule of Civil Procedure 45(c), Elan Pharma International Limited ("Elan") and Lianjun Shi ("Dr. Shi") move to quash a subpoena *ad testificandum* issued by the defendant in a patent infringement matter pending before Chief Judge Gregory Sleet in the District of Delaware.

### I.    Background Facts

On July 19, 2006, Elan filed suit in the District of Delaware (the "Lawsuit") asserting the infringement of its U.S. Patent Nos. 5,399,363 and 5,834,025 against Abraxis BioScience, Inc. ("Abraxis").[1]  Fact discovery in the Lawsuit ended on August 13, 2007.[2]  Opening expert reports were due on September 29.[3]  On that date, Elan served, among others, the report of Dr. Berkland, an Associate Professor at the University of Kansas and an expert in the preparation of nanoparticulate formulations.[4]  Abraxis thereafter served Dr. Berkland with a subpoena *duces*

---

[1]    All references herein to "Exhibits" refer to the exhibits attached to the accompanying Declaration of Jeffrey D. Sullivan. Elan's       Original Complaint is attached as Exhibit 1.

[2]    *See* Scheduling Order, attached as Exhibit 2; July 16, 2007 docket entry extending discovery until August 13 is attached as Exhibit 3.  Limited fact discovery was permitted by Chief Judge Sleet on those issues presented to him during an October 2 hearing.  The transcript of that hearing is attached as Exhibit 4 and demonstrates that the deposition of Dr. Shi was never under consideration or raised before the Court.

[3]    *See* Order, attached at Exhibit 5.

[4]    *See* Notice of Service, attached as Exhibit 6.

*tecum*, seeking the production of various categories of documents.[5]  On November 6, 2007, in response to Abraxis's subpoena, Dr. Berkland produced an email in which he and Dr. Shi, a post-doctoral student at the University of Kansas, discussed preparing samples of the accused Abraxis product.[6]

On December 10 — a mere four (4) days before the Court-ordered conclusion of expert discovery, some four (4) months after the close of fact discovery, and more than one (1) month after the production of Dr. Berkland's document in which Dr. Shi was identified — Abraxis purported to invoke the authority of this Court and served upon Dr. Shi a subpoena *ad testificandum*.[7]  Abraxis's subpoena purported to require Dr. Shi to appear for deposition on December 14.

Elan has contacted Abraxis in an attempt to determine the legitimate bases, if any, for its subpoena to Dr. Shi.  Abraxis, however, has failed to respond.  Elan, therefore, can only surmise that Abraxis's subpoena to Dr. Shi is part of a transparent fishing expedition into matters that are peripheral to Dr. Berkland's expert opinion.  Unable to directly contravene Dr. Berkland's findings, Abraxis now seeks an end run around them.

## II.    Argument And Authorities

### A.    Abraxis's Subpoena *Ad Testificandum* To Dr. Shi Is Facially Invalid.

Federal Rule of Civil Procedure 30 requires that a party desiring to take a deposition upon oral examination provide "reasonable notice."  *See* Fed. R. Civ. P. 30(b)(1).  The District of Delaware, in which the underlying litigation is pending, interprets "reasonable notice" as not less than seven (7) days.  *See* Del. Local. Rule. 30.1.  As Abraxis's subpoena *ad testificandum*

---

[5]    *See* Abraxis BioScience Inc.'s Subpoena Duces Tecum to Dr. Cory Berkland, attached as Exhibit 7.

[6]    See Email and Letter, attached as Exhibit 8.

[7]    *See* Abraxis BioScience Inc.'s Subpoenas Ad Testificandum and Duces Tecum to Lianjun Shi (a/k/a David Shi), attached as Exhibit 9.

purported to require Dr. Shi to appear for deposition a mere four (4) days after service, it plainly failed to provide reasonable notice. For this reason alone, Abraxis's subpoena *ad testificandum* to Dr. Shi should be quashed.

**B.     Abraxis Cannot Conduct Fact Discovery Of Dr. Shi Absent Leave Of Court.**

It is undisputed that fact discovery in the Lawsuit ended on August 13, 2007. Dr. Shi is not and never has been an expert witness for Elan. In order to depose Dr. Shi, Abraxis must demonstrate that manifest injustice would occur absent a modification to the Scheduling Order or obtain Elan's and Dr. Shi's agreement to a deposition. *See* Fed. R. Civ. P. 16(e). Abraxis has not filed a motion in the District of Delaware seeking to modify the Scheduling Order.[8] Moreover, Abraxis has not obtained Elan's or Dr. Shi's agreement to the date and time noticed for Dr. Shi's deposition. Accordingly, Abraxis's subpoena *ad testificandum* to Dr. Shi must be quashed.

**C.     Even If Dr. Shi Were A Consulting Expert, Abraxis Would Be Required To Demonstrate Exceptional Circumstances To Depose Him.**

Abraxis has no basis to contend that Dr. Shi is a consulting expert witness to Elan. Even if it did, however, the Federal Rules would preclude Abraxis from deposing Dr. Shi absent a showing of exceptional circumstances.

Federal Rule of Civil Procedure 26(b)(4) sets forth the conditions under which facts known and opinions held by experts may be discovered. *See* Fed. R. Civ. P. 26(b)(4). Rule 26(B)(4)(b) applies to facts and opinions acquired or developed in anticipation of litigation or trial, and it divides experts into two categories: those who will testify at trial (Fed. R. Civ. P. 26(b)(4)(A)), and those, who though retained in anticipation of litigation, will not testify at trial (Fed. R. Civ. P. 26(b)(4)(B)). *See id.* The facts to which an expert is expected to testify, and the grounds for his opinions, are discoverable. *See* Fed. R. Civ. P. 26(b)(4)(A). The facts and opinions held or

---

[8]     *See* Docket; Cause No. 06-438; *Elan Pharma International Limited v. Abraxis BioScience, Inc.*; in the United States District Court; District of Delaware, attached as Exhibit 10.

known by non-testifying experts, however, are discoverable only upon a showing of exceptional circumstances. *See* Fed. R. Civ. P. 26(b)(4)(B). Specifically, Rule 26(b)(4)(B) provides that:

> A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial . . . only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

*Id.* Rule 26(b)(4)(B) "has been construed to require as an exceptional circumstance, a basic lack of ability to discover the equivalent information on the part of the party moving for discovery." *See Delcastor, Inc. v. Vail Assoc., Inc.*, 108 F.R.D. 405 (D. Colo. 1985).

Elan has not designated Dr. Shi as a testifying expert in the Lawsuit and has no intention of doing so. Nor has Elan engaged Dr. Shi as a consulting expert. It would be a monumental stretch for Abraxis to argue that Dr. Shi's ministerial functions in preparing samples of the accused product for Dr. Berkland somehow implicitly make him a consulting expert of Elan. Regardless, Abraxis has not made the requisite showing of exceptional circumstances in this Court or in the District of Delaware that would permit Abraxis to depose Dr. Shi even if he were deemed a consulting expert. Accordingly, Federal Rule of Civil Procedure 26(b)(4)(B) mandates that Abraxis's subpoenas *ad testificandum* to Dr. Shi be quashed.

### III.     Conclusion

Abraxis should not be allowed to invoke the authority of this Court to bypass the mandates of the Federal Rules of Civil Procedure, the Delaware Local Rules, and the clear scheduling mandate of Chief Judge Sleet. Accordingly, Elan respectfully requests that this Court quash Abraxis's subpoena *ad testificandum* directed to Dr. Shi.

Dated: December 18, 2007

Respectfully submitted,

*[signature]*

Jeffrey D. Sullivan (JS-7979)
BAKER BOTTS, L.L.P.
30 Rockefeller Plaza
New York, New York 10112-4498
Telephone: (212) 408-2500
Facsimile: (212) 408-2501

*Attorneys for Elan Pharma International Limited
and Lianjun Shi*

*Of Counsel:*

Stephen Scheve
Linda Glover
BAKER BOTTS, L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77042-4995
Telephone: (713) 229-1659

Paul F. Fehlner
BAKER BOTTS, L.L.P.
30 Rockefeller Plaza
New York, New York 10112-4498
Telephone: (212) 408-2527

William J. Sipio
1375 Brentwood Road
Yardley, Pennsylvania 19067
Telephone: (215) 801-3625
Facsimile: (866) 317-2059

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

ny02/606435

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C. Section 1746 that on the 18th day of December, 2007, the attached was served upon the below-named counsel of record at the addresses and in the manner indicated:

Josy W. Ingersoll, Esquire                          <u>VIA FEDERAL EXPRESS</u>
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Michael A. Jacobs, Esquire                          <u>VIA FEDERAL EXPRESS</u>
Morrison & Foerster, LLP
425 Market Street
San Francisco, CA  94105-2482

Emily A. Evans, Esquire                             <u>VIA FEDERAL EXPRESS</u>
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA  94304-1018

Jason G. Perlman
Paralegal

# EXHIBIT 21

1

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

- - -

ELAN PHARMA INTERNATIONAL :

LIMITED,                    :

                            :

        Plaintiff,          : CIVIL ACTION NO.

                            :  06438GMS

            v.              :

                            :

ABRAXIS BIOSCIENCES, INC.,:

                            :

        Defendant.          :

- - -

VIDEOTAPED DEPOSITION UNDER ORAL

EXAMINATION OF

LIANJUN SHI

Bridgewater, New Jersey

January 7, 2008

- - -

REPORTED BY:  DANA N. SREBRENICK, CSR RPR CLR

- - -

ESQUIRE DEPOSITION SERVICES
90 Woodbridge Center Drive
Woodbridge, New Jersey 07095
(732) 283-1060

JOB NO. 64310

**42**

1  Q.  Okay. So let's talk about your
2  sample preparation.
3  To begin with, you testified
4  earlier that you personally prepared samples
5  of Abraxane; is that correct?
6  MR. SULLIVAN: Object.
7  A.  My boss just asked me to
8  isolate the particle in the bottle. So --
9  Q.  Did you personally isolate
10  nanoparticles of Abraxane?
11  A.  I forgot it is Abraxane or not,
12  but I did personally isolate the nanoparticle
13  that Dr. Cory Berkland gave me.
14  Q.  But you don't remember whether
15  the product he gave you was Abraxane?
16  A.  No.
17  Q.  Did you personally perform all
18  the steps necessary to isolate the
19  nanoparticles?
20  THE WITNESS: Court reporter,
21  can you repeat that question for me, please?
22  (Whereupon, the question is
23  read back by the reporter.)
24  A.  Yes.
25  Q.  Did anyone else help you

**43**

1  prepare the samples?
2  A.  No.
3  Q.  Is there any documentation of
4  the procedures that you used to prepare the
5  nanoparticle samples?
6  MR. SULLIVAN: Object.
7  A.  Can you repeat the question?
8  Q.  Is there any documentation of
9  the procedures you used to isolate the
10  nanoparticles of Abraxane?
11  A.  The instructions in the bottle.
12  Q.  Is there any other
13  documentation?
14  MR. SULLIVAN: Object.
15  A.  No. Just Dr. Cory Berkland and
16  I just had a brief discussion.
17  Q.  So before beginning the
18  preparation, Dr. Berkland and you discussed
19  the procedures that you wanted to use; is
20  that correct?
21  A.  Yes.
22  Q.  What was your input in those
23  discussions?
24  MR. SULLIVAN: Object.
25  A.  What import (sic) mean?

**44**

1  Q.  What did you discuss when you
2  spoke with Dr. Berkland about the procedures
3  you wanted to use?
4  MR. SULLIVAN: Object.
5  A.  That's -- that's a routine
6  procedure, so I just ask him what's the size
7  of the nanoparticle inside the bottle.
8  Q.  So the only discussion --
9  MR. SULLIVAN: I'm sorry, were
10  you finished, Dr. Shi? Were you finished
11  with your answer?
12  Q.  He was just making sure that we
13  didn't interrupt each other.
14  Were you finished with your
15  previous answer?
16  A.  And he told me the size, and we
17  discussed the speed and the time.
18  Q.  So other than discussions about
19  the speed, time and size, those are the only
20  things that you talked about with Dr.
21  Berkland?
22  MR. SULLIVAN: Object.
23  A.  The temperature, the
24  centrifugation temperature.
25  Q.  I'm sorry, did you say

**45**

1  centrifugation temperature?
2  A.  Yes, also separation
3  temperature. That's the same thing.
4  Q.  Other than those matters, those
5  are the only things that Dr. Berkland
6  discussed with you?
7  A.  He just -- he asked me for the
8  steps of the -- on the sheet including the
9  bottle.
10  Q.  And by the sheet included in
11  the bottle, do you mean the package insert
12  for Abraxane?
13  A.  I can't remember. I just
14  remember a sheet, a piece -- a sheet like
15  this. I --
16  MS. KRUZE: I'm going to mark
17  as Shi Exhibit 1, the expert report of Cory
18  Berkland. And I'll note for the record that
19  this exhibit contains restricted,
20  confidential information. I'm not going to
21  be discussing any of it, so you're free to
22  remain in the room, Mr. Bokar.
23  MR. SULLIVAN: Well, I'm going
24  to object to the extent that it contains
25  confidential -- restricted, confidential

94

1    Q.   Okay.
2    A.   So I just follow his
3    instruction.
4    Q.   What temperature did you use
5    when you were freeze-drying the samples?
6    A.   I can't remember, but I think
7    it could be like minus 50 degrees Centigrade.
8    Q.   Did -- was it your decision,
9    the temperature to use in the lyophilization?
10   A.   The -- actually the
11   lyophilization machine runs day and night so
12   it always keep the -- I think like around a
13   certain tem -- temperature, yeah.  It's not
14   my decision, yeah.
15   Q.   So the machine is always at
16   around minus 50 degrees?
17   A.   Yes.
18   Q.   Is this machine sterile?
19       MR. SULLIVAN:  Object.
20   A.   Machine sterile?  I don't know.
21   Q.   How many other people have
22   access to the lyophilization machine that you
23   used?
24   A.   You mean at same time or
25   different time?

95

1    Q.   At the same time.
2    A.   I can't remember.
3    Q.   Did --
4    A.   I can't remember.
5    Q.   Did other people have access to
6    this lyophilization machine at the same time
7    that you were using it?
8    A.   Yes.
9    Q.   How many people approximately
10   have access to the machine that you were
11   using?
12   A.   I have to count the number.
13   Q.   You can just give me an
14   approximate number.  So is it over ten
15   people?
16   A.   Approximately.
17   Q.   Over 20 people?
18   A.   Around ten -- ten people, I
19   think.
20   Q.   So around ten people had access
21   to the same machine that you were using at
22   the same time as these samples were prepared?
23   A.   I don't know if there are any
24   samples.  I can't remember if there -- if
25   there were any samples on the machine when I

96

1    used it.
2    Q.   Okay.
3    A.   But -- yeah, our -- our lab had
4    like at least ten people so everyone had
5    access to that -- had a right to use this
6    machine -- can access to the -- can have
7    access -- can access to the lyophilizer
8    machine, lyophilizer.
9    Q.   How long exactly were the
10   samples freeze-dried?
11   A.   I can't remember how long.
12   Q.   And you personally were the
13   only person --
14   A.   Uh-huh.
15   Q.   -- to lyophilize these samples;
16   is that right?
17   A.   Right, right.
18   Q.   So the only person who would
19   know exactly what time would be you; is that
20   correct?
21   A.   I think, but I don't remember
22   exactly how long, but at least three or four
23   hours.
24   Q.   And did you write down the time
25   for anybody?

97

1    A.   I'm sorry?
2    Q.   Did you write down how long
3    they were lyophilized?
4    A.   No.
5    Q.   Are you aware that --
6    A.   24 hours, that's the least time
7    I used to use.
8    Q.   So just to clarify for the
9    record, the minimum amount of time is --
10   A.   24 hours are -- were at least
11   the minimum time I used to dry the sample on
12   the lyophilizer.
13   Q.   But you can't remember the
14   exact amount of time?
15   A.   No.
16   Q.   Even approximately?
17       MR. SULLIVAN:  Object.
18   Q.   I'm sorry.  You have to give
19   verbal answers.
20   A.   Approximately.  I think less
21   than one week.
22   Q.   Less than one week.  So between
23   24 hours and one week?
24   A.   Yes.
25   Q.   And what did you do with the

98

samples after they were freeze-dried?
A. **After lyophilization?**
Q. Yes.
A. **I -- I take the samples from the lyophilizer and the cover and the cap -- the cover, it was a lid, a cap, and then label it, and then told Cory Berkland samples were ready for picking up.**
Q. And these samples, they were still in separate vials?
A. **In separate vials -- separate centrifuge.**
Q. Tubes?
A. **Uh-huh, tubes.**
Q. Did you do any testing to establish the purity of those samples?
MR. SULLIVAN: Object.
A. **Impurity?**
Q. Purity.
A. **No, I didn't.**
Q. Are you aware of any testing that Dr. Berkland did to test the purity of those samples that you prepared?
MR. SULLIVAN: Object.
A. **No.**

99

Q. To the best of your knowledge, did Dr. Berkland ever do any testing to establish the purity?
A. **I don't know. I don't -- I just -- my job is separate in nanoparticles.**
Q. Were you concerned about the purity of the samples?
A. **No.**
MR. SULLIVAN: Objection.
A. **No, I cannot.**
Q. No?
A. **I cannot.**
Q. So I'm sorry, is it your testimony that you were not concerned about the purity of the samples?
MR. SULLIVAN: Object.
A. **Like I said, my job is separate nanoparticle. I just present the nanoparticle to Dr. Berkland, yeah.**
Q. Okay. I'm going to mark as Shi Exhibit 2 a e-mail chain between Cory Berkland, Eric Munson, Dewey Barich and Dr. Shi.
A. **Uh-huh.**
Q. And the Bates numbers are

100

Munson 0000666 --
A. **Uh-huh.**
Q. -- to 682.
(Exhibit Shi 2, Document Bates numbered Munson 0000666 through Munson 0000682, marked for identification.)
Q. Actually, and certainly take your time to familiarize yourself with this exhibit, but I'm going to be asking you questions about the page identified as Munson 0000670, which has your name in all of the to, from, cc fields.
A. **Which page?**
Q. If you look down in the lower right-hand corner, there's some cryptic numbers --
A. **Okay.**
Q. -- and the one you want ends in 670. I'd like to direct your attention to the middle e-mail --
A. **Uh-huh.**
Q. -- that's present in that chain.
A. **Uh-huh, uh-huh.**
MR. SULLIVAN: Dr. Shi, let

101

Ms. Kruze finish with her question, and she'll do the same for you.
Q. So again, to direct your attention to the middle e-mail.
A. **Uh-huh.**
Q. And would you agree that this is from Shi, Lianjun, which is yourself?
A. **Yes.**
Q. And it was sent Thursday, January 25th, 2007, at 4:01 p.m. Would you agree with that?
A. **Yes.**
Q. It was to Cory Berkland and Dewey Barich and cc'd Dr. Munson, Eric Munson. Would you agree with that?
A. **Yes.**
Q. Could you please read the text of the e-mail for the record?
A. **Uh-huh, uh-huh. "I am not sure that the isolated nanoparticles without washing with water are pure enough for NMR."**
Q. Well, what did you mean by that?
MR. SULLIVAN: Object to the form.

106

1   the sample -- how long custody sample, I
2   didn't know.
3        Q.    So just so the record is clear,
4   you don't know who had custody over the
5   samples next; is that right?
6        A.    After I submit the sample.
7             MR. SULLIVAN:  Submit.
8        Q.    Sorry?
9        A.    Submit sample.
10       Q.    Submit sample?
11       A.    Yeah.  I didn't know.
12       Q.    Whose custody?
13            When you prepared the samples
14   the first time in January 2007, other than
15   the lyophilization step, which we talked
16   about before, where was your sample
17   preparation conducted?
18            MR. SULLIVAN:  Object.
19       A.    Where?
20       Q.    Physically, the location, yes.
21       A.    In Dr. Berkland's lab.
22       Q.    How many people had access to
23   that lab?
24            MR. SULLIVAN:  Object.
25       A.    I can't remember exact number.

107

1   Probably like ten people accessed the lab,
2   yeah.
3        Q.    Were any other experiments
4   being conducted at the same time you were
5   preparing these samples?
6        A.    You mean me?
7        Q.    No.  By -- well, yes, by you,
8   let's start by you.
9        A.    No.
10       Q.    Were any other experiments
11   being conducted by any of the ten people,
12   other ten people who had access to the lab at
13   the same time you were preparing the samples?
14            MR. SULLIVAN:  Object.
15       A.    I can't remember.
16       Q.    How many people, approximately,
17   had the opportunity to access the samples you
18   were preparing?
19            MR. SULLIVAN:  Object.
20       A.    So you mean during the
21   preparation?
22       Q.    Yes.
23       A.    Or after the preparation?
24   During the preparation?
25       Q.    During the preparation.

108

1        A.    I'm the only one.  I'm the only
2   one.
3        Q.    And after the preparation?
4        A.    Before picking -- before --
5   before the -- pick the sample up?
6        Q.    Yes.
7        A.    I was the only one to.
8        Q.    Earlier you testified that ten
9   other people, approximately, had access to
10   the same lab you were working in; is that
11   correct?
12       A.    Lab work or lab?
13       Q.    Laboratory.
14       A.    Laboratory?
15       Q.    Yes.
16       A.    Yes.  Our laboratory because
17   our group had at least ten people, had ten
18   people, yeah.
19       Q.    So approximately ten people had
20   access to the same laboratory that you were
21   conducting your sample preparation in; is
22   that correct?
23       A.    Theoretically, yes.
24       Q.    Were you involved with these
25   samples that you prepared in any other way?

109

1             MR. SULLIVAN:  Object.
2        A.    No.  I just follow the
3   instruction that Cory Berkland asked me.
4        Q.    Were you involved in any NMR
5   testing of these samples?
6        A.    No.  That's not my job.
7        Q.    Okay.  So now let's talk about
8   the second set of samples.
9        A.    Okay.
10       Q.    You testified earlier that you
11   also prepared a second set of samples; is
12   that correct?
13       A.    You mean the air-dry?  The
14   air-dry, yes.
15       Q.    And you also testified earlier
16   that you prepared the air-dried samples in
17   approximately March 2007; is that correct?
18       A.    Yes.
19       Q.    Did you personally prepare
20   these air-dried samples in March 2007?
21       A.    Yes, I will.
22       Q.    So you personally performed all
23   the steps yourself?
24       A.    Yes.
25       Q.    Was Dr. Berkland present,

126

1    hood.
2        Q.    Are fume hoods sterile?
3            MR. SULLIVAN:  Object.
4        A.    It -- it is a regular fume
5    hood.
6        Q.    Was your fume hood sterile?
7            MR. SULLIVAN:  Object.
8        A.    I don't know.  It's a regular.
9    I just -- I can say only it's a regular, it
10    can suck the air and remove the -- like any
11    toxic gas off from the hood.  So I don't know
12    if it is sterile -- sterile or not.  So what
13    does sterile mean?
14        Q.    Were you using separate Petrie
15    dishes for the separate samples or did you
16    put them all in one Petrie dish?
17            MR. SULLIVAN:  Object.
18        A.    I can't remember how many
19    Petrie dishes I used.  I think at least two
20    Petrie dishes.
21        Q.    At least two Petrie dishes?
22        A.    Probably.  I can't remember.
23        Q.    So did you pool that second set
24    of samples?
25        A.    Uh-huh.

127

1            MR. SULLIVAN:  Object.
2        A.    Pool, what does pool mean?
3        Q.    Did you put two different
4    samples together in one Petrie dish?
5        A.    I can't remember exact how many
6    Petrie dish I use, but I think at least two
7    Petrie dish.  I can't remember.
8        Q.    Do you remember whether you put
9    separate samples together at least one time
10    in one Petrie dish --
11            MR. SULLIVAN:  Objection.
12        Q.    -- or whether they were
13    separated from each other?
14            MR. SULLIVAN:  Object.
15        A.    I really can't remember.
16        Q.    Where did you get the rubber
17    bands that you used?
18        A.    Rubber bands.  I -- I think I
19    once ordered from the -- Fisher Scientific.
20        Q.    Do you know whether the rubber
21    bands you used were sterile?
22            MR. SULLIVAN:  Object.
23        A.    I don't know.  It was in the --
24    inside plastic bag when I opened it.
25        Q.    How long did the manipulated

128

1    sample sit under the fume hood?
2            MR. SULLIVAN:  Object.
3        A.    I can't remember exactly how
4    long the sample sit in the hood because after
5    I finished sample preparation in the hood, I
6    told -- I told Dr. Berkland and the -- and
7    the sample was now in the hood.  And he told
8    me he will take care of and he will ask
9    somebody to pick up the sample.  So I think
10    at least overnight.  I don't know how long.
11    I can't remember.
12        Q.    Could it have been more than a
13    day?
14            MR. SULLIVAN:  Object.
15        A.    I can't remember any nothing --
16    how long.
17        Q.    How many other people had
18    access to that fume hood?
19            MR. SULLIVAN:  Object.
20        A.    January 2007?
21        Q.    I think it would actually --
22    sorry to correct you -- would be March
23    2007 --
24        A.    Oh, March 2007.
25        Q.    -- is that correct?

129

1        A.    March 2007, so theoretically,
2    I -- I was only one to use this hood because
3    I was only chemist in -- in Dr. Berkland's
4    lab.
5        Q.    So you were the only person
6    with access to the lab other than
7    Dr. Berkland?
8        A.    Theoretically.  Yeah.
9        Q.    Did you do any testing to
10    establish the purity of the second set of
11    samples?
12            MR. SULLIVAN:  Object.
13        A.    I didn't do that.  That's --
14    that was not my job.
15        Q.    Are you aware whether
16    Dr. Berkland did any purity testing on the
17    second set of samples?
18            MR. SULLIVAN:  Object.
19        A.    No idea.  I didn't know that.
20        Q.    Did you have any other
21    involvement with these samples after you told
22    Dr. Berkland that they were in the fume hood?
23            MR. SULLIVAN:  Object.
24        A.    So I -- I -- I'm think -- I --
25    I -- a guy from Dr. Munson's group came in

142

```
 1        A.    I didn't know any -- because
 2   this is what -- I actually, I got the e-mail
 3   -- probably I forgot Dr. Cory Berkland called
 4   me or not.  I forgot.  And he just asked me,
 5   the notebook, where the notebook is.  I
 6   didn't know what happened, why did he ask me
 7   the notebook -- where is notebook is.
 8        Q.    Did you search for any
 9   documents in response to the subpoena?
10        MR. SULLIVAN:  Objection.
11   Asked and answered.
12        A.    Search, search --
13        Q.    Look for?
14        A.    Look for what?
15        Q.    Any documents that are
16   responsive to the subpoena.
17        A.    I don't have any.  Yeah,
18   what -- what kind of documents are you -- did
19   you looking for me from?
20        Q.    Well, an example, Dr. Shi, is
21   the document that you just referred to about
22   Dr. Berkland e-mailing you.  So that would be
23   one example of a document that you have that
24   we requested.
25        A.    I -- actually, it's like the
```

143

```
 1   old e-mail, my company deletes old e-mail
 2   like every three months.  So it -- it was
 3   deleted e-mail.
 4        Q.    So there are communications
 5   between you and Dr. Berkland that have been
 6   deleted?
 7        MR. SULLIVAN:  Objection.
 8   Mischaracterizes.
 9        A.    That's the only one I -- I
10   remember.  Right now I -- I know why he
11   said -- he asked for my notebook.  At that
12   time I didn't know anything about it -- this
13   case.
14        Q.    Okay.  So speaking of
15   notebooks, are you --
16        A.    So I -- so I don't have any
17   reason to keep the e-mail, this e-mail.
18        Q.    So speaking of notebooks, are
19   you aware that the subpoena also asked you to
20   produce any notebooks that you had regarding
21   your sample preparation?
22        A.    Notebook?
23        Q.    Or any other paper?
24        A.    I don't have any -- I don't
25   have notebook with me.
```

144

```
 1        Q.    When you were conducting this
 2   preparation, did you generate any documents?
 3        MR. SULLIVAN:  Object.
 4        A.    What -- what documents do you
 5   mean?
 6        Q.    One example is, did you write
 7   anything down on a piece of paper while you
 8   were conducting these experiments?
 9        A.    No, I didn't.
10        Q.    And did you write anything on a
11   computer while you were conducting these
12   experiments?
13        A.    No, I didn't.
14        Q.    So you did not generate a
15   single piece of paper in connection with your
16   preparation of these samples; is that
17   correct?
18        MR. SULLIVAN:  Object.
19        A.    It was my routine procedure to
20   separate the nanoparticles.  So I -- I -- I
21   just did a separation of nanoparticle.  So
22   I -- I think Dr. -- I think it's the
23   responsibility of Dr. Berkland to record
24   the -- the conditions I used because he knew,
25   we discussed.
```

145

```
 1        Q.    So is it standard for a
 2   scientist to keep a lab notebook?
 3        MR. SULLIVAN:  Object.
 4        A.    Keep the -- keep --
 5        Q.    A lab notebook.
 6        A.    Keep lab notebook?  I don't
 7   know because I -- I moved from Kansas.  So
 8   I'm not allowed to keep the notebook in
 9   the -- used in the KU.
10        Q.    I'm sorry.  Yes, my -- I was
11   confusing.
12        Is it standard practice for a
13   scientist to write down their experiments in
14   a laboratory notebook?
15        MR. SULLIVAN:  Object.
16        A.    Of course I record all the --
17   the, like -- I conducted research.  So I
18   record all the data and the phenomenon --
19   phenomenons I observed during the experiment
20   in my notebook, but in this case it's a
21   routine procedure.  Like I said, I did it
22   many times a day.  I don't think I need to
23   record the procedure -- the standard
24   procedure in -- in my notebook.  Like, I
25   don't need to take down when I wear a lab
```

162

1   the beginning of the deposition, Abraxis also
2   objects to the admissibility of Dr. Shi's
3   testimony and the issues will be briefed most
4   likely in a motion in limine.  And I think if
5   you don't have anything else --
6               MR. SULLIVAN:  The deposition
7   is closed.
8               MS. KRUZE:  Great.
9               THE VIDEOGRAPHER:  This
10  concludes today's video deposition.  The time
11  is 2:40.
12              (Witness excused.)
13              (Deposition concluded at
14  approximately 2:40 p.m.)
15
16
17
18
19
20
21
22
23
24
25

164

1               INSTRUCTIONS TO WITNESS
2
3               Please read your deposition
4   over carefully and make any necessary
5   corrections.  You should state the reason in
6   the appropriate space on the errata sheet for
7   any corrections that are made.
8               After doing so, please sign the
9   errata sheet and date it.
10              You are signing same subject to
11  the changes you have noted on the errata
12  sheet, which will be attached to your
13  deposition.
14              It is imperative that you
15  return the original errata sheet to the
16  deposing attorney within thirty (30) days of
17  receipt of the deposition transcript by you.
18  If you fail to do so, the deposition
19  transcript may be deemed to be accurate and
20  may be used in court.
21
22
23
24
25

163

1                 CERTIFICATE
2
3
4          I HEREBY CERTIFY that the
5   witness was duly sworn by me and that the
6   deposition is a true record of the testimony
7   given by the witness.
8
9
10  _____
    DANA N. SREBRENICK
11  a Federally-Approved Registered
    Professional Reporter
12  Notary Public of New Jersey
13
14
15
            (The foregoing certification of
16  this transcript does not apply to any
    reproduction of the same by any means, unless
17  under the direct control and/or supervision
    of the certifying reporter.)
18
19
20
21
22
23
24
25

165

1               - - - - - -
                 E R R A T A
2               - - - - - -
3   PAGE  LINE  CHANGE
4   ___  ___  _____
5   ___  ___  _____
6   ___  ___  _____
7   ___  ___  _____
8   ___  ___  _____
9   ___  ___  _____
10  ___  ___  _____
11  ___  ___  _____
12  ___  ___  _____
13  ___  ___  _____
14  ___  ___  _____
15  ___  ___  _____
16  ___  ___  _____
17  ___  ___  _____
18  ___  ___  _____
19  ___  ___  _____
20  ___  ___  _____
21  ___  ___  _____
22  ___  ___  _____
23  ___  ___  _____
24  ___  ___  _____
25  ___  ___  _____

**(Pages 162 to 165)**

# EXHIBIT 22

## REDACTED IN ITS ENTIRETY

# EXHIBIT 23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C. A. No. 06-438-GMS |
| ABRAXIS BIOSCIENCE, INC., | ) ) | |
| Defendant. | ) ) ) ) | |

## NOTICE OF DEPOSITION AND SUBPOENA DIRECTED TO DEWEY BARICH

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30 of the Federal Rules of Civil

Procedure, Defendant Abraxis BioScience, Inc. ("Abraxis") will take the deposition by oral

examination of Dewey Barich, commencing at 9:00 a.m. on December 13, 2007, at Foulsten

Siefkin LLP, 9200 Indian Creek Parkway, Suite 450, Overland Park, Kansas  66210-2017.  The

deposition will be taken before a person authorized to administer an oath and will continue from

day to day, Saturdays, Sundays, and holidays excepted, until completed.  The deposition will be

recorded by video, audio, and stenographic means.

PLEASE TAKE FURTHER NOTICE that pursuant to Rule 45 of the Federal Rules of

Procedure, Abraxis has served a subpoena *ad testificandum and duces tecum* upon the deponent

in the form appended hereto for the deposition described above and for the production of the

items described in Exhibit A to the subpoena by no later than December 10, 2007.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*Karen L. Keller*

Josy W. Ingersoll (No. 1088)
*jingersoll@ycst.com*
Elena C. Norman (No. 4780)
*enorman@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
Jeffrey T. Castellano (No. 4837)
*jcastellano@ycst.com*
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
302-571-6600
*Attorneys for ABRAXIS BIOSCIENCE, INC.*

OF COUNSEL:

Michael A. Jacobs
MORRISON & FOERSTER, LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000   Telephone
(415) 268-7522  Facsimile
MJacobs@mofo.com

Emily A. Evans
MORRISON & FOERSTER, LLP
755 Page Mill Road
Palo Alto, CA  94304-1018
(650) 813-5600  Telephone
(650) 494-0792  Facsimile
EEvans@mofo.com

Dated:   November 30, 2007

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

ELAN PHARMA INTERNATIONAL LIMITED

V.

ABRAXIS BIOSCIENCE, INC.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 06-438-GMS (D. Del.)

TO: Dewey Barich, 5114 Congressional Place, Lawrence KS 66049 (Home)

20A McCollum Laboratory, The University of Kansas, Dept. of Pharmaceutical Chemistry, 2095 Constant Ave
Lawrence, Kansas 66047 (Work)

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION<br>Foulsten Siefkin LLP, 9200 Indian Creek Parkway, Suite 450, Overland Park,<br>Kansas 66210 | DATE AND TIME<br>December 13, 2007<br>9:00 a.m. CST |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
See attached Exhibit A

| PLACE<br>Foulsten Siefkin LLP, 9200 Indian Creek Parkway, Suite 450, Overland Park,<br>Kansas 66210 | DATE AND TIME<br>December 10, 2007<br>9:00 a.m. CST |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>November 29, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jeffrey T. Castellano, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street,
17th Floor, Wilmington, DE 19801  (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                      DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(D) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation material, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (e)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to this Exhibit:

The term "Abraxis" means Abraxis BioScience, Inc., its predecessors, successors and assigns, its officers, employees, agents, attorneys, consultants, and representatives, or other persons acting or purporting to act on its behalf, and any other legal entities (foreign or domestic) that are or have been owned or controlled by Abraxis.

The term "Abraxane" refers to Abraxane for Injectable Suspension (paclitaxel protein-bound particles for injectable suspension), an albumin-bound form of paclitaxel supplied as a lyophilized powder for reconstitution prior to intravenous infusion. The term "Abraxane" also includes Abraxane as reconstituted according to the instructions on the product label. Abraxane was developed and is marketed by Abraxis.

The terms "Document" or "Documents" shall have the broadest meaning permitted under Rules 26 and 34 of the Federal Rules of Civil Procedure, Rule 1001 of the Federal Rules of Evidence, and relevant case law.

The term "Elan" means Elan Pharma International Limited, its predecessors, successors and assigns, its officers, employees, agents, attorneys, consultants, and representatives, or other persons acting or purporting to act on its behalf, and any other legal entities (foreign or domestic) that are or have been owned or controlled by Elan.

The term "Elan Experts and Consultants" means any expert or third party consultant retained by Elan in connection with this litigation, or in connection with any analysis, experiment (formal or informal) or testing of Abraxane, including but not limited to Cory J. Berkland, Harry J. Brittain, Samuel J. Danishefsky, David J. Haidak, John C. Jarosz, Mark Cornell Manning, James M. McBride, Eric J. Munson, David R. Taft, Robert O. Williams III, Jeffrey D. Winkler, Dewey Barich, Dr. Manoj Maniar and Dr. Stephen Bryn.

The term "Counsel for Elan" means any attorney retained by or acting on behalf of Elan, as well as any employees, agents, representatives or other persons acting on such an attorney's behalf.

To the extent you believe you cannot produce an otherwise-responsive Document because of privilege, Abraxis requests that you provide a privilege log. For each Document withheld on the basis of privilege, describe the claimed privilege and identify the date, author or originator, person to whom addressed, sent or shown (including copies), type of Document, present custodian and general subject matter of the Document.

## REQUESTED DOCUMENTS

1.      Documents and tangible things, including tangible reports, physical models, compilations of data, photographs, audio tapes, video tapes, computer data and printouts, and other material prepared by the witness or for the witness and/or his agents, servants and/or employees in connection with the witness's work on behalf of Elan, Counsel for Elan, or Elan Experts and Consultants in connection with this litigation or related to Abraxane.

2.     Documents and tangible things, including but not limited to all materials, notices, memoranda, statements, depositions, and correspondence reviewed by the witness and/or his agents, servants and/or employees, including treatises, articles and authoritative materials in connection with the witness's work on behalf of Elan, Counsel for Elan, or Elan Experts and Consultants in connection with this litigation or related to Abraxane.

3.     Documents and tangible things, including but not limited to correspondence, notes, factual observations, calculations, supporting data, and material sent to the witness and/or his agents, servants and/or employees by Elan, Counsel for Elan, or an Elan Expert or Consultant in connection with this litigation or related to Abraxane.

4.     The witness's entire file on this matter, including all work product and work papers, such as notes, correspondence, research, memoranda, and any other tangible or electronic material.

5.     Electronic data reflecting work by the witness and/or his agents, servants and/or employees in connection with this litigation or related to Abraxane.

6.     Materials reviewed, read, considered or used by the witness and/or his agents, servants and /or employees in connection with his work in this litigation.

7.     All of the witness's and/or his agents, servants and/or employees' notes concerning the assignments and/or work he has done on his own and/or at the request of Elan, Counsel for Elan, or Elan Experts and Consultants in regard to this litigation, including reports and case summaries prepared by the witness or prepared for the witness by any individual working with him.

8.     Records of time, expenses and charges for time the witness and/or his agents, servants and/or employees have spent on any matter related to this litigation.

9.     Reports and transcripts of depositions and/or trial testimony offered by the witness as an expert in any litigation other than in this case.

10.     Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Elan, Counsel for Elan, or Elan Experts and Consultants related to this case, including but not limited to receipts, checks, and billing records reflecting that compensation.

11.     Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Elan, including but not limited to receipts, checks, and billing records reflecting that compensation.

12.     Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information, regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane.

13.     Documents used by the witness as course material, including syllabi, in any course taught by the witness that includes material related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

14.     Publications, articles, abstracts, lecture materials or slides, posters, handouts, or presentations drafted in full or in part by the witness related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state NMR, or transmission electron microscopy as those subjects are defined in the witness's field of specialty.

15.     Documents reflecting or referring to communications between the witness and Elan.

16.     Documents reflecting or referring to communications between the witness and Counsel for Elan related to this litigation or Abraxane.

17.     Documents that reflect or contain direct or indirect communications with any Elan Expert or Consultant related to this litigation or Abraxane.

18.     Documents prepared by, or supplied directly or indirectly by any Elan Expert or Consultant related to this litigation or Abraxane.

19.     A copy of all instructions, including the user manual and any technical reports, the came with the software the witness used for his deconvolution experiments.

20.     Any hardcopy computer printouts from the witness's deconvolution experiments.

21.     Documents, including photocopies or pictures, of the labels on any Abraxane vials or other containers containing Abraxane or any Abraxane derivative supplied directly or indirectly by Elan, Elan's Counsel, or any Elan Expert or Consultant.

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on November 30, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on November 30, 2007, I caused a true and correct copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
>
> Linda Glover, Esquire
> Stephen Scheve, Esquire
> BAKER BOTTS L.L.P.
> One Shell Plaza
> 910 Louisiana Street
> Houston, TX  77002-4995
> steve.scheve@bakerbotts.com
>
> Paul F. Fehlner, Esquire
> BAKER BOTTS L.L.P.
> 30 Rockefeller Plaza
> New York, NY  10112-4498
> paul.fehlner@bakerbotts.com

William J. Sipio, Esquire
1375 Brentwood Road
Yardley, PA  19067
sipz25@aol.cm

> YOUNG CONAWAY STARGATT
> & TAYLOR, LLP
>
> *Karen E Keller*
> _____
> Josy W. Ingersoll (No. 1088)
> jingersoll@ycst.com
> Elena C. Norman (No. 4780)
> enorman@ycst.com
> Karen E. Keller (No. 4489)
> kkeller@ycst.com
> Jeffrey T. Castellano (No. 4837)
> jcastellano@ycst.com
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19899
> (302) 571-6600
>
> Attorneys for Defendant
> ABRAXIS BIOSCIENCE, INC.

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ELAN PHARMA INTERNATIONAL    )
LIMITED,    )
    )
    Plaintiff,    )
    )
    v.    )    Case No.  06-438-GMS
    )
ABRAXIS BIOSCIENCE, INC.,    )
    )
    Defendant.    )
    )

## ELAN PHARMA INTERNATIONAL LIMITED'S OBJECTIONS TO ABRAXIS BIOSCIENCE, INC.'S SUBPOENAS AD TESTIFICANDUM AND DUCES TECUM DIRECTED TO DEWEY BARICH

Pursuant to Federal Rules of Civil Procedure 26, 30, 34, and 45, Elan Pharma International Limited ("Elan") hereby objects to Abraxis BioScience Inc.'s ("Abraxis") Subpoenas *Ad Tesificandum* and *Duces Tecum* to Dr. Barich.

## INTRODUCTORY STATEMENT

Elan hereby objects and responds to Abraxis's subpoenas *ad testificandum* and *duces tecum* ("Subpoenas") to Dr. Barich. Elan's objections and responses are not intended to waive, nor do they waive, Elan's right to move to quash and/or to seek protection from Abraxis's Subpoenas to Dr. Barich. Elan has standing to challenge the Subpoenas because they affect a personal right or privilege with respect to the materials subpoenaed. In particular, if Abraxis contends that Dr. Barich is a fact witness, fact discovery concluded on August 13, 2007 and Abraxis has not sought a modification to the Scheduling Order. Alternatively, if Abraxis

contends that Dr. Barich is a consulting expert for Elan, then he and Elan are entitled to the protections against discovery afforded by Federal Rule of Civil Procedure 26(b)(4)(B).

## OBJECTION TO TIME FOR PERFORMANCE

Elan objects to the time and place for performance set forth in the Subpoenas directed to Dr. Barich. Counsel for Abraxis made no attempt to coordinate the date of Dr. Barich's potential deposition with Counsel for Elan, and Elan's counsel is unavailable on December 13. Similarly, Elan objects to the date that Abraxis established for the production of Dr. Barich's documents as it does not allow a reasonable time for compliance. Abraxis's subpoena duces tecum seeks the production of 21 categories of documents via requests that are overly broad and unduly burdensome. Indeed, many of the requests contained therein lack any temporal parameters. It is unreasonable for Abraxis to assume that a production in response to its subpoena duces tecum could be accomplished in a mere 10 days.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

A.   Elan objects to the definition of "Abraxis" because it is overly broad, unduly burdensome, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. This definition purports to require Dr. Barich to conduct an independent investigation into which entities, if any, might be predecessors of Abraxis, and to somehow foretell which entities, if any, might be successors to Abraxis in the future. This definition also purports to require Dr. Barich to ascertain whether any individual with whom he has ever been in contract might be employed and/or retained by Abraxis, or even just claim to be. This definition further purports to require Dr. Barich to conduct an independent investigation into which entities may have, at one time, been

2

owned or controlled by Abraxis, without any guidance provided as to how such terms as "owned" or "controlled" should be defined.

B.      Elan objects to the definition of "Elan" because it is overly broad, unduly burdensome, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence in that it seeks to sweep into its purview entities unrelated to this litigation.  This definition also purports to require Dr. Barich to ascertain whether any individual with whom he has ever been in contract might be employed and/or retained by Elan, or even just claim to be.  Elan also objects to the definition of "Elan" because is seeks to invade protections provided by the attorney-client privilege and/or work product doctrine.

C.      Elan objects to the definition of "Elan Experts and Consultants" because it seeks to invade protections provided by the attorney-client privilege and/or work product doctrine as they pertain to consulting experts.

D.      Elan objects that Abraxis's purported requirement that Dr. Barich provide a privilege log is unduly burdensome as Elan has already produced a privilege log in this litigation that would contain entries for Dr. Barich's privileged documents, if any.

## OBJECTIONS TO REQUESTS FOR DOCUMENTS

**REQUEST NO. 1.**

Documents and tangible things, including tangible reports, physical models, compilations of data, photographs, audio tapes, video tapes, computer data and printouts, and other material prepared by the witness or for the witness or his agents, servants or employees in connection with the witness's work on behalf of Elan, counsel for Elan, or Elan's Experts and Consultants in connection with this litigation or related to Abraxane.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13,

2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects

that this Request is overly broad and unduly burdensome because it seeks expert discovery

beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular,

Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be

accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who

did not produce an expert report. Elan further objects that this Request seeks information

protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that any

documents that Dr. Barich has responsive to this Request have already been produced by Dr.

Munson.

**REQUEST NO. 2.**

Documents and tangible things, including but not limited to all materials, notices,
memoranda, statements, depositions, and correspondence reviewed by the witness and/or his
agents, servants and/or employees, including treatises, articles and authoritative materials, in
connection with the witness's work on behalf of Elan, counsel for Elan, or Elan Experts and
Consultants in connection with this litigation or related to Abraxane.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13,

2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects

that this Request is overly broad and unduly burdensome because it seeks expert discovery

beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular,

Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be

accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who

did not produce an expert report. Elan also objects that this Request is overly broad in that it

lacks any temporal parameters. Elan further objects that this Request is vague and ambiguous as the terms " reviewed" and "in connection with" are undefined and subject to misinterpretation. Elan additionally objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich has no documents responsive to this Request.

**REQUEST NO. 3.**

Documents and tangible things, including but not limited to correspondence, notes, factual observations, calculations, supporting data, and material sent to the witness and/or his agents servants and/or employees by Elan, Counsel for Elan or an Elan's Expert or Consultants in connection with this litigation or related to Abraxane.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich will produce documents responsive to this Request.

**REQUEST NO. 4.**

The witness's entire file on this matter, including all work product and work papers, such as notes, correspondence, research, memoranda, and any other tangible or electronic material.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine. Elan further objects that this Request is vague and ambiguous as the term "witness's entire file" is undefined and subject to misinterpretation.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich will produce documents responsive to this Request.

**REQUEST NO. 5.**

Electronic data reflecting work by the witness and/or his agents, servants and/or employees in connection with this litigation or related to Abraxane.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who

did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that any documents that Dr. Barich has responsive to this Request have already been produced by Dr. Munson.

## REQUEST NO. 6.

Materials reviewed, read, considered or used by the witness and/or his agents, servants and employees in connection with his work in this litigation.

## RESPONSE.

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine. Elan also objects that the term "in connection with" is vague and ambiguous because it is undefined and lacks temporal parameters. Accordingly, it is subject to misinterpretation.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich has no documents responsive to this Request.

## REQUEST NO. 7.

All of the witness's and/or his agents, servants and/or employees' notes concerning the assignment and/or work he has done on his own and/or at the Request of Elan, Counsel for Elan, or Elan's Experts and Consultants in regard to this litigation, including reports

and case summaries prepared by the witness or prepared for the witness by any individual working with him.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich has no documents responsive to this Request.

**REQUEST NO. 8.**

Records of time, expenses and charges for time the witness and/or his agents, servants and/or employees have spent on any matter related to this litigation.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine. Elan further objects that

this Request is vague and ambiguous as the term "related" is undefined and subject to misinterpretation.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich will produce documents responsive to this Request.

**REQUEST NO. 9.**

Reports and transcripts of depositions and/or trial testimony offered by the witness as an expert in any litigation other than in this case.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich has no documents responsive to this Request.

**REQUEST NO. 10.**

Documents reflecting agreements between the witnesses and/or his agents, servants and/or employees and Counsel for Elan, or Elan Experts or Consultants related to this case, including but not limited to receipts, checks, and billing records reflecting that compensation.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects

that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich has no documents responsive to this Request.

**REQUEST NO. 11.**

Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Elan, including but not limited to receipts, checks, and billing records reflecting that compensation.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich has no documents responsive to this Request.

## REQUEST NO. 12.

Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane.

## RESPONSE.

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich will produce documents responsive to this Request.

## REQUEST NO. 13.

Documents used by the witness as course material, including syllabi, in any course taught by the witness that includes material related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), intravenous administration, pre-clinical trials or clinical trials or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

## RESPONSE.

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular,

Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich has no documents responsive to this Request.

**REQUEST NO. 14.**

Publications, articles, abstract, lecture materials or slides, posters, handouts, or presentations drafted in full or in party by the witness related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state NMR, or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine. Elan also objects that this Request purports to require Dr. Barich to review materials to ascertain whether such material addresses any of the described topics, based on the vague and ambiguous assertion that such topics should be defined in accordance with his field of specialty. Such a task would require months, not mere days, even if there were a single definition of the provided terms in Dr. Barich's field of endeavor. Dr. Barich does not have administrative assistance available to him;

and Abraxis has not offered to reimburse Dr. Barich for the time that he would have to spend away from gainful activity to complete such an onerous task. Elan also objects that this Request is overly broad and unduly burdensome in that it lacks any temporal parameters. Elan further objects to this Request because it seeks documents not in the possession, custody and control of Dr. Barich.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich will produce documents responsive to this Request.

**REQUEST NO. 15.**

Documents reflecting or referring to communications between the witness and Elan.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich has no documents responsive to this Request.

**REQUEST NO. 16.**

Documents reflecting or referring to communications between the witness and Counsel for Elan related to this litigation or Abraxane.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich will produce documents responsive to this Request.

**REQUEST NO. 17.**

Documents that reflect or contain direct or indirect communications with any Elan Expert or Consultant related to this litigation or Abraxane.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich will produce documents responsive to this Request.

**REQUEST NO. 18.**

Documents prepared by, or supplied directly or indirectly by any Elan Expert or Consultant related to this case or Abraxane.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich has no documents responsive to this Request.

**REQUEST NO. 19.**

A copy of all instructions, including the user manual and any technical reports, the (*sic*) came with the software the witness used for his deconvolution experiments.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be

accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that any documents Dr. Barich has responsive to this Request have already been produced by Dr. Munson.

**REQUEST NO. 20.**

Any hardcopy computer printouts from the witness's deconvolution experiments.

**RESPONSE.**

Elan objects that this Request is untimely as fact discovery closed on August 13, 2007. To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report. Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan responds that any documents that Dr. Barich has responsive to this Request have already been produced by Dr. Munson.

**REQUEST NO. 21.**

Documents, including photocopies or pictures, of the labels on any Abraxane vials or other containers containing Abraxane or any Abaxane derivative supplied directly or indirectly by Elan, Elan's Counsel, or any Elan Expert or Consultant.

**RESPONSE.**

   Elan objects that this Request is untimely as fact discovery closed on August 13, 2007.  To the extent that Abraxis contends that Dr. Barich is a consulting expert, Elan objects that this Request is overly broad and unduly burdensome because it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45.  In particular, Elan objects that this Request seeks to violate the protections of Rule 26(b)(4)(B) that would be accorded Dr. Barich as a consulting expert who is not designated to testify in this matter and who did not produce an expert report.  Elan further objects that this Request seeks information protected by the attorney-client privilege and/or work product doctrine.

   Subject to and without waiving the foregoing objections, Elan responds that Dr. Barich will produce documents responsive to this Request.

<div align="right">

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____
Steven J. Balick (I.D. #2114)
John G.  Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware  19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff Elan Pharma*
*International Limited and Dr. Dewey Barich*

</div>

*Of Counsel:*

Stephen Scheve
Linda M. Glover
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77042-4995
(713) 229-1659

Paul F. Fehlner
Jeffrey Sullivan
Lisa Chiarini
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112-4498
(212) 408-2527

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
(215) 801-3625

Dated: December 7, 2007

186511.1

# EXHIBIT 24

Page 1

1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF DELAWARE

3

4    ELAN PHARMA                    )

     INTERNATIONAL LIMITED,         )

5                                   )

          Plaintiff,               )

6                                   )   No. 06-438-GMS

     vs.                            )

7                                   )

     ABRAXIS BIOSCIENCE,            )

8    INC.,                          )

                                    )

9         Defendant.                )

10

11

12

13

14

15              TRANSCRIPT OF PROCEEDINGS

16           TAKEN ON BEHALF OF THE PLAINTIFF

17                 DECEMBER 13, 2007

18

19

20

21

22

23

24

25

Page 2

```
 1          UNITED STATES DISTRICT COURT
 2          FOR THE DISTRICT OF DELAWARE
 3
 4   ELAN PHARMA                  )
     INTERNATIONAL LIMITED,       )
 5                                )
           Plaintiff,    )
 6                                )  No. 06-438-GMS
     vs.                          )
 7                                )
     ABRAXIS BIOSCIENCE,    )
 8   INC.,                        )
                                  )
 9          Defendant.     )
10
11
12          TRANSCRIPT OF PROCEEDINGS,
13   taken on the 13th day of December, 2007, between
14   the hours of eight o'clock in the forenoon and
15   six o'clock in the afternoon of that day, at the
16   offices of Foulston Siefkin, 9200 Indian Creek
17   Parkway, Overland Park, Kansas, before Tara
18   Schwake, a Certified Realtime Reporter and Notary
19   Public within and for the State of Illinois, in a
20   certain cause now pending in the United States
21   District Court, for the District of Delaware,
22   wherein Elan Pharma International Limited is
23   Plaintiff and Abraxis Bioscience, Inc., is
24   Defendant.
25
```

Page 3

```
 1   APPEARANCES
 2
 3   FOR THE PLAINTIFF:
 4        MORRISON FOERSTER, LLP
 5        755 Page Mill Road
 6        Palo Alto, California  94304-1018
 7        (650) 813-4294
 8        by:  Mr. Paul F. Coyne
 9        pcoyne@mofo.com
10
11   ALSO PRESENT:
12        MIDWEST LITIGATION SERVICES
13        711 North 11th Street
14        St. Louis, Missouri  63101
15        (314) 644-2191
16        1-800-280-DEPO
17        By:  Ms. Tara Schwake, CRR, RPR
18           Ms. Leda Gipson, Videographer
19
20
21
22
23
24
25
```

Page 4

```
 1          THE VIDEOGRAPHER:  This is the
 2   scheduled deposition of Dr. Dewey Barich.  This
 3   deposition was scheduled today, Thursday,
 4   December 13, 2007, at the offices of Foulston
 5   Siefkin in Overland Park, Kansas.
 6          This deposition was in the matter
 7   of Elan Pharma International Limited, Plaintiff,
 8   versus Abraxis Bioscience, Inc., Defendants, in
 9   the United States District Court for the District
10   of Delaware, Case No. 06-438-GMS.
11          The time now is 9:52 a.m.  Will
12   counsel that is present please introduce
13   themself?
14          MR. COYNE:  Paul Coyne of Morrison
15   and Foerster for Defendant Abraxis Bioscience.
16          It's 9:52 in the morning, fifty-two
17   minutes after this deposition was scheduled to
18   begin, and I note for the record that Dr. Barich
19   has not appeared for his deposition.  In
20   addition, counsel for Elan and Barich is also not
21   present.  Baker, Botts first stated that it was
22   counsel for Dr. Barich in an e-mail sent late
23   yesterday while I was in transit from California
24   to Kansas.
25          In that e-mail, counsel for Elan
```

Page 5

```
 1   and Dr. Barich purported to cancel this
 2   deposition, though Dr. Barich had not moved to
 3   quash the subpoena, had not moved for a
 4   Protective Order, and had not served objections.
 5   In fact, no objections were served by Dr. Barich
 6   until this morning, fourteen minutes before this
 7   deposition was scheduled to begin.
 8          We object to Dr. Barich and Baker,
 9   Botts' failure to comply with the subpoena and
10   intend to move for costs.
11          Thank you, we can go off the
12   record.
13          THE VIDEOGRAPHER:  We are now going
14   off the record at 9:53 a.m.
15          (Wherein, the taking of the instant
16   proceedings ceased.)
17
18
19
20
21
22
23
24
25
```

Page 6

```
 1           NOTARIAL CERTIFICATE
 2  STATE OF ILLINOIS      )
                           )
 3  COUNTY OF WILLIAMSON    )
 4        I, TARA SCHWAKE, a Notary Public
 5  and Registered Professional Reporter within and
 6  for the State of Illinois, do hereby certify that
 7  I appeared at the time and place first
 8  hereinbefore set forth; that I took down in
 9  shorthand the entire proceedings had at said time
10  and place, and that the foregoing pages
11  constitute the complete and correct transcript of
12  my said shorthand notes.
13
14
15
16
17          _____
18            Notary Public in and for
19            The State of Illinois
20
21  My commission expires June 7, 2009
22
23
24
25
```

**A**

**Abraxis (5)**
1:7 2:7,23 4:8,15
**addition (1)**
4:20
**afternoon (1)**
2:15
**Alto (1)**
3:6
**APPEARANCES (1)**
3:1
**appeared (2)**
4:19 6:7
**a.m (2)**
4:11 5:14

**B**

**Baker (2)**
4:21 5:8
**Barich (8)**
4:2,18,20,22 5:1,2,5,8
**BEHALF (1)**
1:16
**Bioscience (5)**
1:7 2:7,23 4:8,15
**Botts (2)**
4:21 5:9

**C**

**California (2)**
3:6 4:23
**cancel (1)**
5:1
**Case (1)**
4:10
**cause (1)**
2:20
**ceased (1)**
5:16
**certain (1)**
2:20
**CERTIFICATE (1)**
6:1
**Certified (1)**
2:18
**certify (1)**
6:6
**commission (1)**
6:21
**complete (1)**
6:11
**comply (1)**
5:9
**constitute (1)**
6:11
**correct (1)**
6:11
**costs (1)**

5:10
**counsel (4)**
4:12,20,22,25
**COUNTY (1)**
6:3
**Court (4)**
1:1 2:1,21 4:9
**Coyne (3)**
3:8 4:14,14
**Creek (1)**
2:16
**CRR (1)**
3:17

**D**

**day (2)**
2:13,15
**December (3)**
1:17 2:13 4:4
**Defendant (4)**
1:9 2:9,24 4:15
**Defendants (1)**
4:8
**Delaware (4)**
1:2 2:2,21 4:10
**deposition (7)**
4:2,3,6,17,19 5:2,7
**Dewey (1)**
4:2
**District (8)**
1:1,2 2:1,2,21,21 4:9
 4:9
**Dr (7)**
4:2,18,22 5:1,2,5,8

**E**

**eight (1)**
2:14
**Elan (6)**
1:4 2:4,22 4:7,20,25
**entire (1)**
6:9
**expires (1)**
6:21
**e-mail (2)**
4:22,25

**F**

**F (1)**
3:8
**fact (1)**
5:5
**failure (1)**
5:9
**fifty-two (1)**
4:16
**first (2)**
4:21 6:7

**Foerster (2)**
3:4 4:15
**foregoing (1)**
6:10
**forenoon (1)**
2:14
**forth (1)**
6:8
**Foulston (2)**
2:16 4:4
**fourteen (1)**
5:6

**G**

**Gipson (1)**
3:18
**go (1)**
5:11
**going (1)**
5:13

**H**

**hereinbefore (1)**
6:8
**hours (1)**
2:14

**I**

**Illinois (4)**
2:19 6:2,6,19
**Indian (1)**
2:16
**instant (1)**
5:15
**intend (1)**
5:10
**International (4)**
1:4 2:4,22 4:7
**introduce (1)**
4:12

**J**

**June (1)**
6:21

**K**

**Kansas (3)**
2:17 4:5,24

**L**

**late (1)**
4:22
**Leda (1)**
3:18
**Limited (4)**
1:4 2:4,22 4:7
**LITIGATION (1)**
3:12

**LLP (1)**
3:4
**Louis (1)**
3:14

**M**

**matter (1)**
4:6
**MIDWEST (1)**
3:12
**Mill (1)**
3:5
**minutes (2)**
4:17 5:6
**Missouri (1)**
3:14
**morning (2)**
4:16 5:6
**Morrison (2)**
3:4 4:14
**move (1)**
5:10
**moved (2)**
5:2,3

**N**

**North (1)**
3:13
**NOTARIAL (1)**
6:1
**Notary (3)**
2:18 6:4,18
**note (1)**
4:18
**notes (1)**
6:12

**O**

**object (1)**
5:8
**objections (2)**
5:4,5
**offices (2)**
2:16 4:4
**Order (1)**
5:4
**Overland (2)**
2:17 4:5
**o'clock (2)**
2:14,15

**P**

**Page (1)**
3:5
**pages (1)**
6:10
**Palo (1)**
3:6

**Park (2)**
2:17 4:5
**Parkway (1)**
2:17
**Paul (2)**
3:8 4:14
**pcoyne@mofo.com ...**
3:9
**pending (1)**
2:20
**Pharma (4)**
1:4 2:4,22 4:7
**place (2)**
6:7,10
**Plaintiff (6)**
1:5,16 2:5,23 3:3 4:7
**please (1)**
4:12
**present (3)**
3:11 4:12,21
**proceedings (4)**
1:15 2:12 5:16 6:9
**Professional (1)**
6:5
**Protective (1)**
5:4
**Public (3)**
2:19 6:4,18
**purported (1)**
5:1

**Q**

**quash (1)**
5:3

**R**

**Realtime (1)**
2:18
**record (3)**
4:18 5:12,14
**Registered (1)**
6:5
**Reporter (2)**
2:18 6:5
**Road (1)**
3:5
**RPR (1)**
3:17

**S**

**scheduled (4)**
4:2,3,17 5:7
**Schwake (3)**
2:18 3:17 6:4
**sent (1)**
4:22
**served (2)**
5:4,5

**SERVICES (1)**
3:12
**set (1)**
6:8
**shorthand (2)**
6:9,12
**Siefkin (2)**
2:16 4:5
**six (1)**
2:15
**St (1)**
3:14
**State (4)**
2:19 6:2,6,19
**stated (1)**
4:21
**States (4)**
1:1 2:1,20 4:9
**Street (1)**
3:13
**subpoena (2)**
5:3,9

**T**
**taken (2)**
1:16 2:13
**Tara (3)**
2:17 3:17 6:4
**Thank (1)**
5:11
**themself (1)**
4:13
**Thursday (1)**
4:3
**time (3)**
4:11 6:7,9
**today (1)**
4:3
**transcript (3)**
1:15 2:12 6:11
**transit (1)**
4:23

**U**
**United (4)**
1:1 2:1,20 4:9

**V**
**versus (1)**
4:8
**Videographer (3)**
3:18 4:1 5:13
**vs (2)**
1:6 2:6

**W**
**WILLIAMSON (1)**
6:3

**Y**
**yesterday (1)**
4:23

**0**
**06-438-GMS (3)**
1:6 2:6 4:10

**1**
**1-800-280-DEPO (1)**
3:16
**11th (1)**
3:13
**13 (2)**
1:17 4:4
**13th (1)**
2:13

**2**
**2007 (3)**
1:17 2:13 4:4
**2009 (1)**
6:21

**3**
**314 (1)**
3:15

**6**
**63101 (1)**
3:14
**644-2191 (1)**
3:15
**650 (1)**
3:7

**7**
**7 (1)**
6:21
**711 (1)**
3:13
**755 (1)**
3:5

**8**
**813-4294 (1)**
3:7

**9**
**9:52 (2)**
4:11,16
**9:53 (1)**
5:14
**9200 (1)**
2:16
**94304-1018 (1)**
3:6

# EXHIBIT 25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | | |
|---|---|---|
| IN RE SUBPOENA *AD TESTIFICANDUM* | § | Miscellaneous Docket No._____ |
| SERVED ON DEWEY BARICH | § | |
| | § | *Elan Pharma International Limited v.* |
| | § | *Abraxis BioScience, Inc.*; U.S. District |
| | § | Court; District of Delaware; Cause No. 06- |
| | § | 438-GMS; Chief Judge Gregory M. Sleet |
| | § | |

**ELAN PHARMA INTERNATIONAL LIMITED'S AND DEWEY BARICH'S MOTION
TO QUASH ABRAXIS BIOSCIENCE, INC.'S SUBPOENA *AD TESTIFICANDUM*
DIRECTED TO DEWEY BARICH**

Pursuant to Federal Rule of Civil Procedure 45(c), Elan Pharma International
Limited ("Elan") and Dewey Barich ("Dr. Barich") move to quash a subpoena *ad testificandum*
issued by the defendant in a patent infringement matter pending before Chief Judge Sleet in the
District of Delaware.

## I.        Background Facts

On July 19, 2006, Elan filed suit in the District of Delaware (the "Lawsuit")
asserting U.S. Patent Nos. 5,399,363 and 5,834,025 against Abraxis BioScience, Inc.
("Abraxis")[1]  Fact discovery in the Lawsuit ended on August 13, 2007.[2]  Opening expert reports
were due on September 29.[3]  On that date, Elan served, among others, the report of Dr. Eric
Munson, a Professor at University of Kansas and an expert in solid state nuclear magnetic
resonance ("SSNMR").[4]  In his report, Dr. Munson described the SSNMR testing done on
Abraxis's accused product and opined that it infringed the patents-in-suit.

---

[1] All references to Exhibits are attached to the Declaration of Robert Riddle.  Elan's Original Complaint is attached
as Exhibit 1.
[2] *See* Scheduling Order, attached as Exhibit 2; July 16, 2007 docket entry extending discovery until August 13 is
attached as Exhibit 3.  Limited fact discovery was permitted by Chief Judge Sleet on those issues presented to him
during an October 2 hearing.  The transcript from that hearing is attached as Exhibit 4 and demonstrates that the
deposition of Barich was not considered.
[3] *See* September 17 Order, attached as Exhibit 5
[4] Pertinent portions of Dr. Munson's expert report are attached as Exhibit 6.

On November 29, 2007, Abraxis deposed Dr. Munson. During his deposition, Dr. Munson identified Dr. Barich, a post-doctoral student at Kansas University, as the person who physically placed samples of the accused product into the SSNMR spectrosope for testing.[5] In other words, Dr. Barich served a ministerial role in the testing conducted by Dr. Munson. He neither analyzed the NMR results, nor offered any opinions concerning them.

Invoking the authority of this Court, Abraxis issued a subpoena *ad testificandum* and *duces tecum* to Dr. Barich on November 30, the day after Dr. Munson's deposition.[6] Elan contacted Abraxis in an attempt to determine the legitimate bases, if any, for its subpoenas to Dr. Barich. Abraxis, however, failed to respond.

Counsel for Elan immediately contacted Dr. Barich and offered to represent him for purposes of his deposition. Dr. Barich did not initially accept the offer, but did advise Elan's counsel that he was unavailable for deposition on the noticed date of December 13. Elan thereafter served objections on its own behalf to the date and time noticed for Dr. Barich's deposition.[7] Elan's Counsel also notified Abraxis by email on two separate occasions that Dr. Barich had indicated his unavailability on the date noticed and that he was considering whether to retain separate counsel or to accept representation by counsel for Elan.[8]

Late in the afternoon on December 12, Dr. Barich agreed to be represented by counsel for Elan for the purposes of his deposition. Counsel for Elan served objections on Dr. Barich's behalf to Abraxis's subpoena *ad testificandum* before the time scheduled for performance.[9] Counsel for Elan also immediately contacted counsel for Abraxis with alternate

---

[5] Pertinent portions of Dr. Munson's testimony are attached as Exhibit 7.
[6] Abraxis BioScience, Inc.'s Notice and Subpoenas Ad Testificandum and Duces Tecum Directed to Dewey Barich are attached as Exhibit 8.
[7] Elan Pharma International Limited's Objections to Subpoenas Ad Testificandum and Duces Tecum Directed to Dewey Barich are attached as Exhibit 9.
[8] *See* L. Glover December 12 email, attached as Exhibit 10.
[9] Dewey Barich's Objections to Subpoenas Ad Testificandum and Duces Tecum are attached as Exhibit 11.

dates for Dr. Barich's deposition.[10]  Counsel for Abraxis, however, has failed to respond to two inquiries regarding whether the alternate date suggested for Dr. Barich's deposition is acceptable. Accordingly, Elan and Dr. Barich have no choice but to file this motion seeking to quash Abraxis's subpoena *ad testificandum*.

## II.    Argument and Authorities

### A.    Abraxis cannot conduct fact discovery of Dr. Barich absent leave of court.

It is undisputed that fact discovery in the Lawsuit ended on August 13, 2007.  In order to depose Dr. Barich, Abraxis must demonstrate that manifest injustice will occur absent a modification to the Scheduling Order or obtain Dr. Barich's and Elan's agreement to a deposition outside the bounds of the designated discovery period.  *See* Fed. R. Civ. P. 16(e). Abraxis has not filed a motion with the District of Delaware seeking to modify the Scheduling Order.[11]  Moreover, while Elan and Dr. Barich have agreed to a deposition, that agreement hinges on scheduling the deposition at a mutually agreeable time and place.  Accordingly, Abraxis's subpoenas *ad testificandum* to Dr. Barich's must be quashed.

### B.    Even if Dr. Barich were a consulting expert, Abraxis would be required to demonstrate exceptional circumstances to depose him.

Abraxis has no basis to contend that Dr. Barich is a consulting expert witness to Elan.  Even if it did, however, the Federal Rules would preclude Abraxis from deposing Dr. Barich absent a showing of exceptional circumstances.

Federal Rule of Civil Procedure 26(b)(4) sets forth the conditions under which facts known and opinions held by experts may be discovered.  *See* Fed. R. Civ. P. 26(b)(4).  Rule 26(B)(4)(b) applies to facts and opinions acquired or developed in anticipation of litigation or

---

[10] *See* Exhibit 9 and L. Glover email attached as Exhibit 10.
[11] *See* Docket Sheet, Cause No. 06-438-GMS; Elan Pharma International Limited v. Abraxis BioScience, Inc.; In the United States District Court; District of Delaware, attached as Exhibit 12.

trial, and it basically divides experts into two categories: those who will testify at trial (Fed. R. Civ. P. 26(b)(4)(A)), and those, who though retained in anticipation of litigation, will not testify at trial (Fed. R. Civ. P. 26(b)(4)(B)). *See id.* The facts to which an expert is expected to testify, and the grounds for his or her opinions, are discoverable. *See* Fed. R. Civ. P. 26(b)(4)(A). The facts and opinions of non-testifying experts, however, are discoverable only upon a showing of exceptional circumstances. *See* Fed. R. Civ. P. 26(b)(4)(B). Specifically, Rule 26(b)(4)(B) provides that:

> A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial . . . only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

*Id.* Rule 26(b)(4)(B) "has been construed to require as an exceptional circumstance, a basic lack of ability to discover the equivalent information on the part of the party moving for discovery." *See Delcastor, Inc. v. Vail Assoc., Inc.*, 108 F.R.D. 405 (D. Colo. 1985).

Elan has not designated Dr. Barich as a testifying expert in the Lawsuit.[12]  Indeed, it would be a monumental stretch for Abraxis to claim that Dr. Barich's ministerial functions qualify him as a consulting expert. Regardless, Abraxis has not made the requisite showing of exceptional circumstances in this Court or in the District of Delaware that would permit Abraxis to depose Dr. Barich even if he were deemed a consulting expert. Accordingly, Federal Rule of Civil Procedure 26(b)(4)(B) mandates that Abraxis's subpoena *ad testificandum* to Dr. Barich be quashed.

---

[12] *See* Declaration of Robert Riddle, attached as Exhibit 13.

**III.     Conclusion**

Abraxis should not be allowed to invoke the authority of this Court to bypass the mandates of the Federal Rules of Civil Procedure and to strong arm Dr. Barich, who performed a purely a ministerial function, into appearing for deposition on a date that is not acceptable to either Dr. Barich or counsel for Elan.  Accordingly, Elan respectfully requests that this Court quash the subpoenas *ad testificandum* directed to Dr. Barich.


Respectfully  submitted,

MONACO, SANDERS, et al.


/s/ Russell L. Powell
Russell L. Powell, KS #19488
1001 E. 101st Terrace, Suite 170
Kansas City, MO 64131
(816) 523-2400 x 122
(816) 942-0006 facsimile
rpowell@kcattorneys.net

*Of Counsel:*

Stephen Scheve
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77042-4995
Telephone:  (713) 229-1659

Paul F. Fehlner
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112-4498
Telephone:  (212) 408-2527

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
Telephone:  (215) 801-3625
Facsimile:  (866) 317-2059

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Elan Pharma International Limited and*
*Dewey Barich*

Dated:  December 14, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December, 2007, the attached was served upon the

below-named counsel of record at the addresses and in the manner indicated:

Josy W. Ingersoll, Esquire                                              VIA ELECTRONIC MAIL
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Michael A. Jacobs, Esquire                                              VIA ELECTRONIC MAIL
Morrison & Foerster, LLP
425 Market Street
San Francisco, CA  94105-2482

Emily A. Evans, Esquire                                                 VIA ELECTRONIC MAIL
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA  94304-1018

/s/ Russell L. Powell
_____
Russell L. Powell, KS #19488

# EXHIBIT 26

Page 1

1              IN THE UNITED STATES DISTRICT COURT
                    DISTRICT OF DELAWARE

2

3   ELAN PHARMA INTERNATIONAL    )
    LIMITED,                     )
4                                )
              Plaintiff,         )
5                                )
    vs.                          )  Case No.  06438GMS
6                                )
    ABRAXIS BIOSCIENCE, INC.,    )
7                                )
              Defendant.         )
8

9

10

11       VIDEOTAPED DEPOSITION OF DEWEY H. BARICH, PhD
12              TAKEN BY DIANA B. KRUZE
13            ON BEHALF OF THE DEFENDANT
14               JANUARY 25, 2008
15                  9:15 a.m.
16

17

18

19

20          REPORTED BY NAOLA C. VAUGHN
            REGISTERED PROFESSIONAL REPORTER
21        CERTIFIED COURT REPORTER (MO #1052
            CERTIFIED REALTIME REPORTER
22

23

24

25

Page 22

1  there are a number of parameters that you must
2  optimize. Some of these are done simply to calibrate
3  the instruments. This is done with a standard compound
4  as opposed to the actual sample that you're going to
5  analyze.
6        But then each sample has its own properties.
7  You might have to learn what some of those properties
8  are in order to collect data. Even after you've done
9  that, there are still some other choices that can be
10  made. And with the work I do for Professor Munson that
11  I'm doing as part of this service center that he has,
12  where we're working on external samples as opposed to
13  academic research samples, I usually speak with him
14  directly to find out how he wants that work, what
15  parameters he might like to have used.
16      Q.  When Dr. Munson first contacted you about
17  this case, what expertise did he request that you
18  provide?
19      MR. RIDDLE: Objection, form.
20      A.  I'm not sure that any expertise I have was
21  his motivation. These service center projects that
22  come to him are carried out by different people in his
23  lab. Some of the graduate students perform the
24  experiments on other projects. I happened to be his
25  choice for this one. I don't know why.

Page 23

1      Q.  BY MS. KRUZE: What was the assignment that
2  he gave you?
3      A.  He told me that there was a project coming up
4  that would be associated with Professor Berkland. And
5  some period of time before I was provided any
6  samples -- he told me this a few days perhaps. And he
7  said that he would let me know that something was
8  coming up, and at some point he said, you know, we're
9  ready to start this work; talk to Professor Berkland
10  about the samples.
11      Q.  Okay. And what work specifically did either
12  Dr. Munson or Dr. Berkland request that you do?
13      A.  Professor Munson asked me to collect routine
14  solid state NMR experiments on the samples that were
15  provided by Professor Berkland.
16      Q.  And what are your qualifications for that
17  work?
18      A.  I've been operating solid state NMR
19  spectrometers for -- I suppose at the time about
20  13 years. Although the work that we were doing is so
21  routine that -- as I mentioned, some of this other
22  service center work is done by graduate students. We
23  even have -- for example, the Pharmaceutical Chemistry
24  Department at the University of Kansas has a very nice
25  summer student program. And we have one to two

Page 24

1  students a year in our lab who we train to operate the
2  instrument. And the work that we actually did on these
3  samples, those students could have done once they were
4  trained to use the instrument.
5      Q.  Do you consider yourself an expert in solid
6  state NMR?
7      MR. RIDDLE: Objection, form.
8      A.  Solid state NMR can be used for quite a
9  variety of things. I have a fair bit of experience
10  doing a number of those. I'm not exactly sure what
11  constitutes being an expert in something.
12      Q.  BY MS. KRUZE: Well, how would you define the
13  term "expert"?
14      MR. RIDDLE: Objection, form.
15      A.  Well, that's a good question.
16        I guess in very simple terms it's someone who
17  has a fairly extensive knowledge of something.
18      Q.  BY MS. KRUZE: And you testified earlier that
19  you've written approximately 25 to 30 papers about
20  solid state NMR; is that right?
21      MR. RIDDLE: Objection, form.
22      A.  I don't recall exactly what I said.
23      Q.  BY MS. KRUZE: And I'm not trying to trick
24  you. So -- let me just rephrase the question.
25        Do you think that you have extensive

Page 25

1  knowledge regarding solid state NMR?
2      A.  As I said, I've been operating NMR
3  spectrometers for quite a few years. In my graduate
4  work actually I didn't, because my project was to
5  combine both theoretical calculation work and
6  experimental work. As it turns out, quite a bit of the
7  work that I did on those projects was actually the
8  calculation side. I was the only one in those
9  projects, at least in most of those projects, who did
10  any of the calculation work. And in quite a few of
11  those, in fact, the solid state NMR was done by someone
12  else on the paper. This is how, of course, academic
13  research is done. It's usually a -- several graduate
14  students may be asked to --
15      Q.  Pardon me.
16      A.  Several graduate students may be asked to
17  contribute to a particular project.
18        As a post-doc at the University of Utah, in
19  the sense of splitting my time between both calculation
20  and experimental work, I did that as well.
21      Q.  So do you think that you have extensive
22  experience in solid state NMR?
23      A.  I suppose if working with something for over
24  10 years is, yes.
25      Q.  Okay. What expertise do you have in

7 (Pages 22 to 25)

DEWEY H. BARICH, Ph.D. - JANUARY 25, 2008

Page 62

1  temperature. But I'm just referring to general
2  conditions, but that's just an example to help clarify
3  the question.
4      A.  Okay.  Well, our spectrometer room is kept at
5  68 degrees Fahrenheit. And all the routine analyses
6  that we do are simply done at room temperature.
7      Q.  So but I think the question was: When
8  comparing NMR results is it important that these tests
9  be conducted under the same conditions, regardless of
10 what they may specifically have been?
11     MR. RIDDLE:  Objection, form.
12     A.  That really depends upon the sample. If you
13 have a sample that's not sensitive to some particular
14 parameter, and you study that, or some series of
15 samples that are the same material, for example, but
16 you're collecting them at different times -- if they're
17 insensitive to some parameter, then if it changes, that
18 does not matter.
19     Q.  BY MS. KRUZE:  Okay. Can experiments
20 conducted five months apart be relied upon for a
21 comparison?
22     A.  Yes.
23     MR. RIDDLE:  Sorry.
24     THE WITNESS:  I'm sorry.
25     MR. RIDDLE:  That's okay.  Objection, form.

Page 63

1          Go ahead and answer, please.
2      A.  Yes. Once you've collected the data, you've
3  collected it in the same routine way that we always
4  collect it, it's stored and it's -- you're really
5  finished with that.
6          If you look at -- well, I think that answers
7  it.
8      Q.  BY MS. KRUZE:  Okay. Does it increase the
9  error rate to conduct tests that you're using for
10 comparison five months apart?
11     A.  What error rate?
12     Q.  Well, if you were to assign an error rate,
13 for example, to tests that you conducted when you're
14 comparing one test to another, if you conducted them
15 five months apart, a longer period of time apart, would
16 that increase the error rate or have no effect?
17     MR. RIDDLE:  Objection, form.
18     A.  Well, again, I'm not sure what you mean by
19 error rate. You potentially have -- you do have an
20 error rate associated with any measurement. That's how
21 science works. So what error rate do you mean?
22     Q.  BY MS. KRUZE:  So the error rate of your
23 final conclusion.
24     MR. RIDDLE:  Objection, form.
25     Q.  BY MS. KRUZE:  Regarding your comparison of

Page 64

1  the two samples.
2      MR. RIDDLE:  Objection, form.
3      A.  Well, okay.  Which -- what two samples?
4  What --
5      Q.  BY MS. KRUZE:  Well, how about this one?  If
6  you run -- can you accurately use a standard that
7  wasn't -- that was run five months prior to you running
8  the sample that you're comparing that standard to?
9      MR. RIDDLE:  Ms. Vaughn, would you read that back
10 for me, please.
11     (Requested portion of the record read.)
12     MR. RIDDLE:  Objection, form.
13     A.  I'm sorry. I'm still -- I'm just not sure
14 what you're asking me.
15     Q.  BY MS. KRUZE:  Well, let's come back to error
16 rates then.
17         Do you know why solid state NMR was used to
18 analyze the samples in this case?
19     A.  Well, solid state NMR is a very powerful
20 technique for analyzing any number of things. It's
21 clearly a technique that Professor Munson uses
22 extensively in his laboratory. But why a choice was
23 made to do it here, I don't know.
24     Q.  Did you ever have discussions with Dr. Munson
25 where he talked about using x-ray powder diffraction on

Page 65

1  Abraxane?
2      A.  No.
3      Q.  How many different NMR runs did you conduct
4  in connection with this case?
5      MR. RIDDLE:  Objection, form.
6      A.  I believe that we had 34 spectra of different
7  samples that I was provided.
8      Q.  BY MS. KRUZE:  And when did you conduct these
9  NMR runs?
10     A.  They were the -- all the experiments as a
11 whole were conducted between sometime in January of
12 2007 through late April. In fact, the first few days,
13 I believe, of May of 2007.
14     Q.  So approximately over a five-month time span?
15 And did you --
16     MR. RIDDLE:  Wait. Was that a -- were you asking
17 a question? Was it approximately over a five-month
18 time span a question because then you started asking
19 another question. Were you withdrawing the first
20 question?
21     Q.  BY MS. KRUZE:  Certainly, if you want to
22 answer the question, go ahead. I said that's
23 approximately a five-month time span; is that correct?
24     MR. RIDDLE:  Objection to form.
25     MS. KRUZE:  Am I counting wrong?

17 (Pages 62 to 65)

DEWEY H. BARICH, Ph.D. · JANUARY 25, 2008

Page 70

1   entire process for whichever ones he might have been
2   present for.
3       MS. KRUZE:  Okay.  I know we're probably about to
4   run out of tape; so this is a good time for us to take
5   another break.
6       THE VIDEOGRAPHER:  We're off the record.  It's
7   11:23 a.m. Central Standard Time.
8       (Recessed from 11:23 a.m. to 11:37 a.m.)
9       THE VIDEOGRAPHER:  We're back on the record.  It's
10  11:37 a.m. Central Standard Time.
11      Q.  BY MS. KRUZE:  So before the break, we were
12  talking about Dr. Munson's presence while you were
13  doing these samples.
14          Did you save all of the data associated with
15  your 34 runs?
16      A.  Yes.
17      Q.  And did you ever print out a hard copy of any
18  of the data?
19      A.  For some of the conference calls that I was
20  asked to attend, I believe that I was -- I believe we
21  had some printouts at at least some of those
22  teleconferences.
23      Q.  Did you ever save over original data?
24      A.  No.
25      Q.  Did you ever rename a file name?

Page 71

1       MR. RIDDLE:  Objection, form.
2       A.  No.
3       Q.  BY MS. KRUZE:  And where is all of this data
4   stored from these 34 runs?
5       A.  On the Sun computer that's the -- on the
6   console of the spectrometer.
7       Q.  And that computer is a Sun work station?
8       A.  Yes.  It's a Sun Sparkstation I think is its
9   model.
10      Q.  Did you record any information on paper when
11  you conducted your NMR experiments?
12      A.  These experiments are actually so routine
13  that all the parameters that are specific to the
14  experiment are stored as part of the spectrometer
15  software.  So, no, I didn't handwrite anything.
16      Q.  So you did not keep a lab notebook?
17      A.  No.
18      Q.  Did you record any information about the
19  samples you received?
20      A.  No.
21      Q.  For example, what the sample even was?
22      MR. RIDDLE:  Objection, form.
23      A.  The file name on the spectrometer I might
24  include something in its file name that would help
25  determine which spectrum that was.

Page 72

1       Q.  BY MS. KRUZE:  What about the amount of
2   sample you received?  Did you record that information?
3       A.  No.
4       Q.  Do you usually keep a lab notebook in your
5   work as a research associate?
6       A.  No, I do not.
7       Q.  Did you send all of the data from all of the
8   runs to Dr. Munson?
9       A.  At some point he asked me to provide him a CD
10  with all of the data that was collected, and I did
11  provide that to him.
12      Q.  Did you ever send Elan's counsel the data
13  from the runs?
14      A.  No.
15      Q.  Do you know if Dr. Munson sent all of the
16  data from all of the NMR runs to Elan's counsel?
17      A.  I have no personal knowledge of what
18  Professor Munson sent.
19      Q.  Are there any spectra -- actually, strike
20  that.
21          Is there any data that you did not give to
22  Dr. Munson in relation to this case?
23      A.  No.
24      Q.  Did any of the runs fail to produce spectra?
25      MR. RIDDLE:  Objection, form.

Page 73

1       A.  I believe there was one run where there was
2   an instrument problem of some sort, and at the end of
3   that run there was a spectrum acquired that contained
4   no -- the data that was there was only the noise.
5   There was no free induction decay because of some
6   problem with the spectrometer.  That was in one of the
7   early runs that was carried out.
8       Q.  BY MS. KRUZE:  But all of the other 33 runs
9   generated spectra?
10      MR. RIDDLE:  Objection, form.
11      A.  Actually all 34 of the spectra -- of the free
12  induction decays.  Of course, we collect NMR data in
13  the time domain, so in the simplist hypothetical case,
14  we talk, for example, about ringing the bell earlier,
15  that analogy.
16          The free induction decay is a decaying sine
17  wave.  That's what we call an NMR, the time domain
18  data.  All 34 of the samples -- all 34 of the spectra,
19  excuse me -- all 34 of the free induction decays that
20  were stored had some data.  The one I was just
21  referring to, because that particular run was quite
22  long -- I don't remember how long.  But one thing that
23  we sometimes do is we collect the spectrum several
24  times.  And we discussed earlier that we collect more
25  than one acquisition.  And the computer adds those

19 (Pages 70 to 73)

DEWEY H. BARICH, Ph.D. - JANUARY 25, 2008

Page 78

1    MS. KRUZE: Okay.
2    MR. RIDDLE: Just so you know.
3    MS. KRUZE: Certainly. What time is it?
4    MR. RIDDLE: Yeah, that's fine.
5    MS. KRUZE: Well, why don't we break now. And
6  then we can give Dr. Barich some time to read it and to
7  do whatever you need to do. Yeah.
8    THE VIDEOGRAPHER: We're off the record at
9  11:55 a.m. Central Standard Time.
10    (Recessed from 11:55 a.m. to 12:17 p.m.)
11    (Exhibits 4 through 8 marked.)
12    THE VIDEOGRAPHER: We're back on the record. It's
13  12:17 p.m. Central Standard Time.
14    Q. BY MS. KRUZE: So before the break and during
15  the break you had an opportunity to read this very long
16  email. So I'm going to ask you some general questions
17  about the data that's generated by an NMR machine and
18  the operating systems you use.
19    So earlier you testified that you have a
20  Sun -- a physical Sun computer; is that correct?
21    A. Professor Munson's lab does, yes.
22    Q. Okay. And what operating system does that
23  Sun computer use?
24    A. I might have to check to tell you the precise
25  name of the operating system. It's Sun's -- I think

Page 79

1  it's called Sun OS. I'm not sure I could tell you the
2  version number of it.
3    Q. Do you know if that computer has a piece of
4  software called Solaris?
5    A. I'm not certain.
6    Q. Okay. Do you know if that computer has the
7  specific version of Solaris, Solaris 9?
8    A. The one at the spectrometer does not.
9    Q. Have you ever tried to open the data
10  generated by the spectrometer in Munson's lab with any
11  computer other than the computer that you were just
12  describing?
13    MR. RIDDLE: Objection. I don't know if you want
14  to clarify, but there were two computers. He was
15  describing one at the instrument, I believe, and one in
16  the lab. I don't know if you want to clarify.
17    MS. KRUZE: That's true.
18    Q. BY MS. KRUZE: So have you ever -- other than
19  both of those two computers, have you ever tried to
20  open the data generated by the NMR spectrometer on any
21  other computer?
22    A. Yes, I have.
23    Q. And what computer have you opened the data
24  on?
25    A. I've opened the data on a Windows PC using

Page 80

1  the GRAMS 32 software.
2    Q. And did the GRAMS 32 software generate
3  spectra from the NMR data?
4    A. The GRAMS software was able to open the
5  Spinsight file. So that you have the time domain free
6  induction decay. And it has the tools necessary to
7  process the spectrum so that you could perform what is
8  called a Fourier transform on the time domain data to
9  convert it into a spectrum.
10    Q. Will a spectrum appear exactly the same way
11  if you do that sort of -- if you work on GRAMS and do
12  the transformation as if you used Spinsight?
13    A. There are a number of parameters that can be
14  used when processing NMR data.
15    Q. Um-hum.
16    A. The Fourier transform simply converts time
17  domain data into what we call frequency domain data.
18  There are other parameters that you can use. It's
19  always necessary with NMR data to phase it. We choose,
20  because it is more appealing to the human eye, to phase
21  the data so that the peaks go up and that there's a
22  baseline at the bottom of the plot. Any software that
23  can process NMR data has that functionality to it.
24    Q. So without knowing the specific parameters,
25  you would not necessarily get the same spectra if you

Page 81

1  used GRAMS as if you used Spinsight --
2    MR. RIDDLE: Objection.
3    Q. BY MS. KRUZE: -- is that correct?
4    MR. RIDDLE: Sorry. Objection, form.
5    A. I've never really compared the spectrum
6  process on one computer versus another. So I . . .
7    Q. BY MS. KRUZE: So you wouldn't know whether
8  they'd be the same?
9    A. I really wouldn't know.
10    Q. Okay. Would it surprise you to learn that
11  the spectra, in fact, are very different if you process
12  them on one computer using a different software, say,
13  for example, GRAMS, versus using a Sun computer with
14  Solaris and Spinsight?
15    MR. RIDDLE: Objection, form.
16    A. Well, you said very different.
17    Q. BY MS. KRUZE: That's correct.
18    A. And I don't know what that means.
19    MS. KRUZE: Well, let's do this. Why don't I mark
20  as Exhibit 3A these spectra that were generated on a
21  different computer.
22    (Exhibit 3A marked.)
23    MS. KRUZE: So this spectra was generated --
24    MR. RIDDLE: And I'll just note for the record we
25  object to this exhibit. It has handwriting at the top

21 (Pages 78 to 81)

DEWEY H. BARICH, Ph.D. - JANUARY 25, 2008

Page 114

1 the pacdihyd stand for crystalline paclitaxel dihydrate
2 standard?
3      A.   This is a -- this is the spectra -- in fact,
4 the one you mentioned is the proton T1 study on the
5 sample that was provided to Professor Munson as
6 paclitaxel dihydrate.
7      Q.   And the last page -- oh, I'm sorry.  There's
8 two more pages.  The fifth page.
9          The 9-126-3, and the last sample is a hybrid
10 of that amor_9-126-3.  Do these samples all stand for
11 the amorphous standard of paclitaxel?
12      A.   Yes.
13      Q.   Okay.  And page 6.  On page 6 we have number
14 030801, 080103, and cp010803.  Do all of these numbers
15 stand for crystalline paclitaxel anhydrous standard?
16      A.   Yes.
17      Q.   And is there any reason why the numbers are
18 in a different order on these three samples?
19      A.   It's a simple transcription error on my part
20 when typing in the numbers.
21      Q.   So these are all the same?
22      A.   For the file name.  These -- the sample
23 analyzed associated with these files is the same
24 sample.
25      Q.   Okay.  So let's talk about some of the runs

Page 115

1 that you did.  Earlier you testified that you conducted
2 NMR analysis on the Abraxane total composition, which
3 is the sample names at AsRec, correct?
4      A.   Yes.
5      Q.   Where did you get these samples?
6      A.   I was provided a commercial looking package
7 of Abraxane from -- it came from Professor Berkland's
8 lab.
9      Q.   Did you physically get it from Dr. Berkland?
10      A.   I don't remember now where -- I don't
11 remember if that sample was brought to me or if I was
12 asked to go over to his lab and pick it up.
13      Q.   Do you remember how many vials you acquired?
14      A.   One.
15      Q.   Was that one vial in its original packaging?
16      A.   Yes.
17      Q.   What was the expiration date on that box?
18      A.   I don't recall.
19      Q.   Were the vials sealed shut?
20      A.   There's only one vial in the package, and it
21 was sealed, yes.
22      Q.   Did you document any of this?
23      A.   No.
24      Q.   How long did you keep the sample before you
25 analyzed it using solid state NMR?

Page 116

1      MR. RIDDLE:  Could you repeat the question?  I'm
2 sorry.
3      (Requested portion of the record read.)
4      MR. RIDDLE:  Objection, form.
5      A.   I don't recall exactly.  I mentioned earlier
6 the very busy spectrometer schedule in Professor
7 Munson's lab.  I think I might have had the package for
8 perhaps a few days before I was able to get instrument
9 time.
10      Q.   BY MS. KRUZE:  How did you store it?
11      A.   In a hood in our lab.
12      Q.   That seven other people have access to?
13      A.   Yes.
14      Q.   How much material was in that vial?
15      A.   The package says that there is approximately
16 1 gram of material inside the vial.
17      Q.   How much material did you actually use?
18      A.   Approximately 300 milligrams.
19      Q.   How much of a sample do you need to
20 accurately run a solid state NMR experiment?
21      MR. RIDDLE:  Objection, form.
22      A.   That depends upon the size of rotor that
23 you're using.  A smaller rotor, of course, holds a
24 smaller amount of material.  In the case of the
25 7-millimeter rotors that we were using here, we're

Page 117

1 typically able to put approximately 300 milligrams in.
2 That's what we consider a full rotor.  We're unable to
3 add much more material than that.
4      Q.   BY MS. KRUZE:  Did you test the purity of the
5 samples?  The sample.  Pardon me.
6      MR. RIDDLE:  Objection, form.
7      A.   No, I did not.
8      Q.   BY MS. KRUZE:  Are you aware if Dr. Munson
9 tested the purity of the sample?
10      MR. RIDDLE:  Objection, form.
11      A.   I do not know.
12      Q.   BY MS. KRUZE:  Were all of the AsReceived
13 samples run with MAS cross-polarization?
14      A.   Yes, they were.
15      Q.   Before you ran the samples, did you calibrate
16 the NMR machine?
17      A.   Yes, I did.
18      Q.   Can you describe how you calibrate the NMR
19 machine before you run samples?
20      A.   Of course.  We use a standard compound in our
21 lab.  It's a material called 3-methyl-glutaric acid.
22      THE WITNESS:  Would you like me to spell that?
23      MS. KRUZE:  I think she's given up on us.
24      A.   In general, we refer to it as MGA an
25 abbreviation.  We have a rotor of MGA.  It's already

30 (Pages 114 to 117)

Page 146

1  the actual measurements, just intrinsically, has an
2  amount of uncertainty in it.
3      Q.  BY MS. KRUZE:  Let's hypothetically say that
4  the experiment that you're conducting has an error rate
5  of 50 percent.  How off do you think you would be day
6  to day doing that same experiment?
7      MR. RIDDLE:  Objection, form.
8      A.  That's a complicated question, really.
9  The -- it depends upon -- in part upon the reason for
10  the uncertainty.
11      For example, in the case of this table I just
12  came up with, it would be hard to fathom that we would
13  come and measure a 5-foot table and find that it's
14  2-1/2 feet wide, okay.  But if -- what if I had to
15  measure it in a less direct way?  For example, what if
16  I'm measuring its width if it were sitting in the
17  parking lot outside and I would simply look out the
18  window.  That's a harder measurement to perform.  And
19  it's just the nature of the way measurements work, that
20  maybe in that case the uncertainty in the measurement
21  would be greater.
22      It also depends, too, what if -- what if the
23  table is sitting in the parking lot, but there are
24  100 different tables down there, that from here I can't
25  distinguish one from the next from the next, and now

Page 147

1  I'm not even sure I've measured the same table.
2      Q.  BY MS. KRUZE:  Okay.  Out of the nine spectra
3  that you generated for the Abraxane AsReceived formula,
4  do you know which one Dr. Munson chose to give Abraxis?
5      MR. RIDDLE:  Objection, form.
6      A.  Well, again, I collected time domain data.
7  They were then processed and Professor Munson evaluated
8  them.
9      If I look at -- let me just find the right
10  exhibit here for you.
11      Q.  BY MS. KRUZE:  And that's 3, the last page.
12      A.  Okay.  And this is the --
13      Q.  First page.
14      A.  -- front page of that one.  Very good.  This
15  is my -- here.  I have my clip here.
16      If I look at this list that's been presented
17  here, I see that -- I see that the file whose name is
18  formul_AsRec_vacp4.45k_pd2 appears to be the one that
19  Professor Munson used in his report.
20      Q.  And the acquisition data for that run is in
21  Exhibit 7; is that correct?
22      MR. RIDDLE:  Objection, form.  And note again that
23  this is not a complete form of the exhibit.
24      A.  Okay.  Exhibit 7, as I stated earlier,
25  appears to be the entries of two different files

Page 148

1  associated with a Spinsight data set.  I'll take your
2  word for it that these printouts are the -- of those
3  two files from the directory that I just described.
4  But I'm not able to see that that's the case here.
5      Q.  BY MS. KRUZE:  I going to mark as Exhibit 8
6  Appendix F from Dr. Munson's report.  And this is the,
7  for the record, actual spectrum that Dr. Munson chose
8  to present to us for the Abraxane sample.
9      (Discussion off the record.)
10      Q.  BY MS. KRUZE:  So before you again is
11  Appendix F, which is the spectrum that Dr. Munson chose
12  to use for his report.  Is this one spectrum
13  representative of the eight other spectrum -- spectra
14  that you generated?
15      MR. RIDDLE:  Objection, form.  And also note for
16  the record that this is not a complete version of
17  Dr. Munson's report.  It's only an isolated page --
18  pages.
19      MS. KRUZE:  Actually, do you mind if we go off the
20  record for a moment.  I just want to discuss a
21  housekeeping matter --
22      MR. RIDDLE:  Sure.
23      MS. KRUZE:  -- with Dr. Munson's report.  And then
24  we can go back.
25      THE VIDEOGRAPHER:  We're off the record.  It's

Page 149

1  3:13 p.m. Central Standard Time.
2      (Recessed from 3:13 p.m. to 3:27 p.m.)
3      THE VIDEOGRAPHER:  We're back on the record.  It
4  is 3:27 p.m. Central Standard Time.
5      Q.  BY MS. KRUZE:  So before the break, we had
6  just marked Exhibit 8, which is Exhibit F to
7  Dr. Munson's report, which is a spectrum of the
8  Abraxane total composition.  And the question that was
9  pending was:  Is this one spectrum representative of
10  the eight other spectra that you generated for the same
11  sample?
12      MR. RIDDLE:  Objection, form.
13      A.  Well, I can't see the other spectra right
14  now.  And I've never looked over them in any kind of
15  detail.  So I don't think I could answer that.
16      Q.  BY MS. KRUZE:  Have you seen other spectra
17  for the Abraxane total composition besides this one
18  document?
19      A.  Yes, I have.
20      Q.  And just based on your recollection, because
21  unfortunately we weren't provided with spectra by
22  Elan's counsel, is this representative of your memory
23  of the other spectra?
24      MR. RIDDLE:  Objection, form.  And object to the
25  side bar.

Page 150

1    A.  Well, I'm a little confused by your question
2  because, for example, you've handed me an
3  exhibit here -- and, in fact, more than one.  But, for
4  example, Exhibit 5 is a printout of one of the
5  parameter files associated with one of the data sets.
6  And that -- so that means -- that tells me that you are
7  able to -- I believe that you were provided an
8  electronic copy of these data files.  And, in fact,
9  this is a printout of the contents of one of those data
10  files.  And so I believe that you have those.
11        But when I collected this data for
12  Professor Munson, part of acquiring a spectrum when it
13  is completed is to process it, simply look at it to
14  look for the presence of anything that might suspect --
15  suggest to you that there's something wrong with the
16  data.  It's a very, very cursory glance at the data
17  set.  And then you move on.  And I'm sure that I would
18  have done that at the time as part of what I was doing.
19  We always do that.
20    Q.  BY MS. KRUZE:  So I'm sorry.  Your answer was
21  you are -- you do not know whether this spectrum would
22  be representative or --
23    A.  Well, could we reread the original question?
24    (Requested portion of the record read.)
25    A.  I really don't recall.  It's been, at this

Page 151

1  point, approximately a year since these data were
2  collected.  And I looked at them in passing at the
3  time.  I didn't study them in any way.
4    Q.  BY MS. KRUZE:  I'm going to mark as Exhibit 9
5  a set of spectra that were generated using a different
6  computer and a different software than what you used.
7  And so I cannot tell you that they are representative
8  of the results that you achieved.  But if they will
9  assist you in any way, I'll be happy to show you what
10  we have been able to get from the data that was
11  provided.
12        Again, as I think we saw from Exhibit 3A and
13  3B, which you have over there, what we were able to get
14  versus what Elan was able to get seems to very
15  different, but let's see if it helps.
16    MR. RIDDLE:  Would you mind letting us know what
17  software and what computer system, things like that?  I
18  mean, that may be helpful information.
19    MS. KRUZE:  Certainly.  And we provided that in an
20  email.  But as for this specific data, I don't have it
21  written down.  So I'd have to check.
22    MR. RIDDLE:  That's fine.  If you represent it's
23  the information contained in your email of Exhibit 3,
24  then we can look at that.
25    MS. KRUZE:  I think so.

Page 152

1    MR. RIDDLE:  Okay.
2    MS. KRUZE:  But I would have to confirm that
3  before I make that representation, but I'll be happy to
4  do so after the deposition.  Find out exactly what this
5  was generated on.
6    MR. RIDDLE:  Okay.
7    MS. KRUZE:  So this will be Exhibit 9, I believe.
8    (Exhibit 9 marked.)
9    Q.  BY MS. KRUZE:  Now, if you find it helpful.
10  If you don't find the spectra helpful, that's certainly
11  a valid opinion, too.  There are several different
12  spectra that are all associated with the AsReceived
13  samples in this packet that I just handed you.
14        One thing that I would like to note for the
15  record that I can tell -- you can probably tell right
16  away -- about these spectra is that they appear --
17  instead of going from right to left, they go from left
18  to right.
19    MR. RIDDLE:  That's what it was.
20    A.  Yes.  I noticed that right away.  I'm a
21  little surprised that any software specifically
22  designed to process NMR data has done that, because it
23  is convention in NMR for historical reasons to plot
24  with numbers increasing from -- with the values of
25  the -- on the X axis to increase from right to left.  I

Page 153

1  have --
2    Q.  BY MS. KRUZE:  Although these do, if you'll
3  look at the X axis, the X axis itself does seem to
4  follow that.
5    A.  Oh.
6    Q.  It's just the actual image that appears to be
7  mirrored.
8    MR. RIDDLE:  Well, of course, we certainly object
9  to these to the extent they don't represent any more
10  data than what has been depicted.
11    MS. KRUZE:  Well, and again, I really cannot tell
12  you my frustration or, you know, go into the prejudice
13  we've suffered due to the non-production of these
14  files.  But any sort of problem that we've had
15  reproducing this data has been the cause of Elan's
16  non-production.
17    MR. RIDDLE:  And, again, since you brought it up,
18  we'll note for the record that we produced all the
19  electronic data, the ability and software and
20  capability to look at the data, analyze the data is
21  widely available, readily available, and commonly used
22  by those that work in NMR.
23    MS. KRUZE:  I disagree with those
24  characterizations, but that will be up to the judge to
25  decide.

39 (Pages 150 to 153)

DEWEY H. BARICH, Ph.D. · JANUARY 25, 2008

Page 182

1    A.  I really -- I really don't have an opinion on
2  that.  I wasn't -- I didn't perform the analysis, and
3  as I recall -- I don't recall there being any
4  discussion of how he came to that number.  So I
5  couldn't comment on --
6    Q.  So did you --
7    A.  I can't form an opinion on it from what I
8  have seen so far.
9    Q.  So there was no discussion in his report, as
10  you saw it, of how he came to that 50 percent number?
11    MR. RIDDLE:  Objection, form.
12    A.  Not that I recall.
13    Q.  BY MS. KRUZE:  Do you know how he did, in
14  fact, reach that 50 percent number?
15    A.  No, I don't.
16    Q.  Does solid state NMR typically have an error
17  rate of 50 percent?
18    MR. RIDDLE:  Objection, form.
19    A.  Solid state NMR can do a wide variety of
20  things.  And --
21    Q.  BY MS. KRUZE:  So for crystallinity,
22  determining crystallinity.
23    A.  I really don't know.  The matters -- the
24  projects I've been involved in where I've looked at
25  analyzing the data and so on were academic research

Page 183

1  projects in which the samples were somewhat favorable
2  to doing the analysis.  This is how we do research.
3  You know, we try to choose a sample or a system that's
4  going to be favorable.
5      Now, in the case of the neotame work, we --
6  and I don't recall exact numbers, but we had relatively
7  small error rates there.  But we had a favorable system
8  for working with there.  The samples -- the spectra
9  that you're showing me here, this analysis, this is
10  what I would call a real world sample, and it's much
11  more complicated than the academic projects that I've
12  been involved in.  And I haven't studied these spectra
13  in any real detail before.  And I just don't think I
14  could answer that question in any definitive way.
15    Q.  If this data was being prepared for
16  submission to a peer review journal, do you believe
17  that a reviewer would accept a statement referring to a
18  50 percent error rate?
19    MR. RIDDLE:  Objection, form.
20    A.  You're asking me to know what someone else
21  would think, and I just -- I can't do that.
22    Q.  BY MS. KRUZE:  Well, do you generally rely on
23  analytical methods with a 50 percent error rate?
24    A.  Well, that would depend on the -- on what I
25  was doing.

Page 184

1    Q.  Say you were trying to determine something
2  for the purposes of litigation.
3    A.  I've never been involved in litigation
4  before; so I don't know what would constitute -- I have
5  no idea.
6    Q.  Say you were trying to determine the
7  crystallinity, if any, in a product.
8    MR. RIDDLE:  Objection, form.  I'm not sure what
9  the question is anymore.
10    A.  Well, again, I have -- before today and in
11  some events leading up to today, I've just never been
12  involved in this, and I just don't know.
13    Q.  BY MS. KRUZE:  Let's talk briefly about your
14  experience with deconvolution.  You testified earlier
15  that you've used deconvolution several times before,
16  correct?
17    A.  Yes.
18    Q.  Okay.  And have you ever used deconvolution
19  to determine the exact number of peaks that can be
20  fitted into a curve?
21    A.  Yes.
22    Q.  Do you agree with this statement:  Curve
23  fitting is frequently misused and misunderstood?  And
24  that comes, just so you have some background, from the
25  GRAMS manual.

Page 185

1    A.  I really don't know if I agree with that or
2  not.  Deconvolution is a process that was at least
3  briefly described in even some undergraduate courses
4  that I took.  I not sure I remember doing any there,
5  but it was described.  It's an analytical tool that you
6  can use -- is it possible -- well, I'm sorry.  I just
7  don't know what to really make of that statement.
8  That's a judgment on, I guess, its author's part.
9    Q.  Do you agree that for any deconvolution it is
10  always possible to use more peaks?
11    MR. RIDDLE:  Objection, form.
12    A.  Whenever you're performing data analysis --
13  and in this case we're talking about deconvolution, and
14  a peak is a parameter.  You can always add parameters.
15  We're cautioned against using too many.
16      For example, in a simpler case, if you --
17  something that's often done in -- perhaps done in
18  something like an algebra or trigonometry course, you
19  might simply end up with a straight line plot.  You do
20  what we call a linear regression on that.  And you have
21  two parameters that describe the fit of that, a slope
22  and an intersect.
23      If you chose to come up with a more
24  complicated model -- I'm not sure why you would do
25  that, but if you chose to, you would -- you could

ESQUIRE DEPOSITION SERVICES - ST. LOUIS
314.621.6173                                888.462.2780                                FAX 314.621.1667

DEWEY H. BARICH, Ph.D. - JANUARY 25, 2008

Page 186

1 potentially add enough parameters, and, in fact, the
2 instructors usually caution against this. However many
3 data points you have, you have to -- you don't want to
4 get to the number of parameters -- you don't want your
5 number of parameters to equal the number of data points
6 because then you've eliminated all of your -- the term
7 there is degrees of freedom.
8      But you can -- what you usually want to do is
9 use the smallest number of parameters that you can.
10     Q.  BY MS. KRUZE:  Is another way of putting
11 that, do you agree that the goal is to identify the
12 smallest number of peaks that provide the best fit?
13     MR. RIDDLE:  Objection, form.
14     A.  Generally speaking, what you want to do is
15 add the fewest parameters to get the fit.  Inevitably
16 that will depend upon the context and how you are
17 performing the analysis, which is going to be different
18 from one matter to another.
19     Q.  BY MS. KRUZE:  Were you present when
20 Dr. Munson conducted his deconvolution in this case?
21     MR. RIDDLE:  Objection, form.
22     A.  I was present for at least some of it.
23     Q.  BY MS. KRUZE:  Did he use your computer?
24     A.  At times, yes.
25     Q.  When Dr. Munson conducted his deconvolution,

Page 187

1 did he manually input the number of peaks?
2     A.  At times he did.  At times he -- as I recall,
3 at times he asked me to move the mouse and click a few
4 buttons for him.
5     Q.  So did you at times input the desired number
6 of peaks?
7     A.  The way the Spinsight software deconvolution
8 routine works, you can add peaks with this function.
9 And sometimes he said, Dewey, would you add a peak
10 here.
11      Now, in the process of doing that fitting, he
12 would sometimes -- what would usually happen is he'd
13 say, Dewey, I want to look at this data; will you open
14 up the files for me.  And so I would open them up.
15 He'd come into my office, and have them on the screen
16 for him.  And then sometimes he might say, you know,
17 would you do this or this or this.  Sometimes he would
18 ask us to just trade suite -- seats, and he would take
19 the mouse and keyboard and so on and do it himself.
20     Q.  Did he or you also have the software identify
21 the number of peaks that it thought had the best fit?
22     A.  The Spinsight software doesn't operate in
23 quite that way.  It doesn't have any automated
24 mechanism for adding peaks on its own.  You tell it --
25 pardon me.  You tell it how many peaks to use and do

Page 188

1 the fitting with those.
2     Q.  So it was either you or Dr. Munson who placed
3 a peak manually wherever you wanted to when you were
4 deconvoluting?
5     MR. RIDDLE:  Objection, form.
6     A.  When you're deconvoluting, you -- in the
7 Spinsight software, you place a peak.  You have the
8 control to alter the intensity of the peak, the width
9 of the peak, the position of the peak.
10      And as you're deconvoluting, you have to
11 evaluate the baseline of the peak.  And Professor
12 Munson would change the parameters of the peaks there
13 to try to get a -- what we call a flat baseline so that
14 you've accounted for the intensity of the peak in the
15 spectrum with model peaks of the -- from the
16 deconvolution.
17     Q.  BY MS. KRUZE:  So Dr. Munson controlled the
18 intensity of the peak, the width of the peak, and the
19 position of the peak while he was doing his
20 deconvolution data?
21     A.  Those are the --
22     MR. RIDDLE:  Object.  Sorry.  Sorry, Dewey.
23     THE WITNESS:  Of course.
24     MR. RIDDLE:  Objection, form.
25     A.  Those are the parameters that can be

Page 189

1 controlled by the user in the software.
2     Q.  BY MS. KRUZE:  How many different
3 combinations did Dr. Munson you try?
4     MR. RIDDLE:  Objection, form.
5     A.  How many did we try on what?
6     Q.  BY MS. KRUZE:  On one peak.  When you were
7 deconvoluting the one peak at 204 parts per million.
8     A.  Okay.  Now, of course, you understand that he
9 was doing the analysis.  Sometimes because I was
10 sitting there, he'd have me move a mouse or click a
11 button or something, but --
12     Q.  Yeah.  I'm just curious how many combinations
13 you went through.
14     A.  As I recall, that peak -- when we're
15 deconvoluting, there are two mathematical models we use
16 for peaks.  They're called -- their names are
17 Lorentzian and the Gaussian.  There are different
18 occasions and situations in which you might have one
19 the other or even some combination of the two.  And the
20 peak that you're referring to -- oh, let me add that
21 Lorentzian peaks and Gaussian peaks are symmetric.  So
22 from the top of the peak to the left looks the same as
23 from the top of the peak to the right.
24      When we had the peak you're talking about up
25 on the screen, you could see that it's not symmetric.

ESQUIRE DEPOSITION SERVICES - ST. LOUIS
314.621.6173                    888.462.2780                    FAX 314.621.1667

DEWEY H. BARICH, Ph.D. - JANUARY 25, 2008

Page 194

1 that's magenta, pink, reads "Residual."
2     Q.   Yes.
3     A.   I don't see -- I don't see that, at least not
4 in the region of the -- there's a box here around the
5 peaks that we can see some noise to either side of that
6 box in the remaining area.
7         I don't see -- I don't see the residual in
8 the region where the peaks are, where the model peaks
9 are. So in order to tell you if I think this is a good
10 fit, I would like to see the -- what remains of the
11 original spectrum if you remove the intensity due to
12 the models, and I just don't see that here. Now, this
13 is -- as I recall, this is from Dr. Atwood's report; is
14 that right?
15    Q.   Yes. This was attached to Dr. Atwood's
16 report.
17    A.   Okay. And so that means that this is -- was
18 performed with GRAMS 32.
19    Q.   I actually don't know what type of software
20 it is.
21    A.   Okay. Oh, okay.
22    Q.   I'm assuming -- and, again, I, you know, can
23 look into that --
24    A.   Sure.
25    Q.   -- but I just don't know for sure.

Page 195

1     A.   No. I'm just -- I don't think that detail
2 is -- what I was -- what I'm thinking of is, for
3 example, the deconvolution software in Spinsight, you
4 can see the -- you can see the data and the model peak,
5 and you can see the residual, which is -- it's the data
6 minus the model. And so you can actually see the
7 baseline in that.
8         The software that I used at the University of
9 Utah worked -- in that respect worked about the same,
10 where you'd have the data, the model, and the
11 difference between the two, which we would call the
12 residual. And that's always -- in the two software
13 packages that I've used, that's just readily available.
14 We have GRAMS 32 in Professor Munson's lab, but it's
15 not something we use very often. We just -- we just
16 don't. And I've looked at it from time to time, but
17 I'm just not familiar with it, and I just don't
18 entirely understand what it is that I'm looking at
19 here.
20    Q.   If you were assessing the validity of
21 deconvolution data, would you want to see the different
22 combinations that the author had tried in reaching
23 their conclusion?
24    MR. RIDDLE:   Objection, form.
25    A.   I don't know that there necessarily are

Page 196

1 different combinations or -- for example, the software
2 I used at the University of Utah -- and, mind you, this
3 is deconvolution software, but it's for a relatively
4 targeted case. It's not -- it's not -- it was not
5 designed to be used on a wide variety of things, as,
6 for example, GRAMS 32 is.
7         But the way that software functioned, you
8 identified a place for a -- to locate a model, and you
9 could then -- you could allow some or all of the
10 parameters associated with the description of that
11 model to be fit. There were times that we would choose
12 to include or exclude some of those parameters,
13 depending on what it was we were looking at.
14    Q.   BY MS. KRUZE:   So the type of --
15    A.   And so on.
16    Q.   Sorry. I didn't mean to --
17    A.   Go on.
18    Q.   So the type of software you use can affect
19 deconvolution results; is that correct?
20    A.   Well, I think that the interface is
21 different. Now, I was mentioning that the University
22 of Utah software was specific. It was designed to
23 measure the chemical shift tensor values, for example.
24 And so it incorporated that model, which you simply
25 would not have in other cases, you know, if you're not

Page 197

1 collecting that kind of data. And so that was a facet
2 of the software that was fairly specific to what we
3 were doing.
4         But in general, I wouldn't expect the
5 software to matter except that the interface in how it
6 operates is different, and you need to -- the operator
7 needs to understand it and so forth.
8    Q.   If you remember, did Dr. Munson or you input
9 any other information or assumptions to generate the
10 deconvoluted pick -- peaks that he used in his report?
11    MR. RIDDLE:   Can you -- Ms. Vaughn, would you
12 repeat that question for me, please?
13    (Requested portion of the record read.)
14    MR. RIDDLE:   Objection, form.
15    A.   The way the software in Spinsight works, you
16 click on this one button, it says add peak, and you go
17 click where you want the top of the peak to be. And
18 sometimes when you click, you might not have it very
19 close to the actual peak. It's just some point on the
20 screen. You can then adjust the position with a little
21 scroll bar on the software.
22         Each peak that you generate is assigned by
23 the software in intensity and -- it's actually called
24 an amplitude. That's synonymous. A width, a
25 frequency, which refers to its position along the

50 (Pages 194 to 197)

DEWEY H. BARICH, Ph.D. · JANUARY 25, 2008

Page 198

1  horizontal axis. Each peak that you include into your
2  fit has those three properties.
3       There's also then a parameter that defines
4  the ratio of Lorentzian to Gaussian -- I mentioned
5  earlier you can have those two and you can have some
6  combination of the two. And there's a bar there that
7  allows the operator to choose what ratio to use.
8       Q. BY MS. KRUZE: Did you save any of the
9  specific parameters that you and Dr. Munson used for
10 this deconvolution data?
11      A. I did not.
12      Q. Do you remember any of them?
13      A. No. No.
14      Q. Without knowing any of those specific
15 parameters, would you be able to replicate exactly what
16 you did?
17      A. So in other words, could we -- could we -- is
18 it possible to open that data and do the analysis
19 again, to do the deconvolution?
20      Q. Well, that's interesting to me, too. I
21 didn't ask exactly that, but I'll take that, too.
22      A. Oh, I actually thought that's what you were
23 asking, obviously.
24      Well, the data certainly hasn't changed and
25 so I think the analysis could be repeated.

Page 199

1       Q. So if I was to inspect your computer, I could
2  find the files of exactly what parameters were used for
3  this deconvolution data?
4       MR. RIDDLE: Objection, form.
5       A. No. But the spectrometer -- the data's still
6  on the spectrometer. It can still be opened. As I
7  understand it, you have copies of those data. You
8  should be able to open those with some software
9  package. And the -- since the analysis was done, the
10 data haven't changed.
11      Q. BY MS. KRUZE: Oh, I'm talking about the
12 deconvolution.
13      A. Well, yes, I understand.
14      Q. Let's come back to that.
15      A. But that deconvolution was simply performed
16 on a processed data file.
17      Q. So the various parameters that you and
18 Dr. Munson used in just the deconvolution phase of the
19 experiments, without knowing those specific parameters,
20 would somebody be able to replicate your work?
21      MR. RIDDLE: Objection, form.
22      A. As you're asking that, I'm reminded of when
23 we actually -- while I was at the university of Utah,
24 when the software that we used there -- oh. I see. We
25 have three minutes. Okay. I think that's enough.

Page 200

1       When I first started working there, the data
2  we worked up on a VAX computer. That software was
3  later transferred to a Sun computer. And as part of
4  testing the move of that software to another platform
5  and it's now compiled by a different compiler and so
6  on. One thing that we did was we analyzed the same
7  data, but now on that other computer. And we got, if
8  not -- we got equivalent results. So --
9       Q. BY MS. KRUZE: When you say equivalent, so
10 you didn't get exactly the same results or -- I'm just
11 trying to understand the analogy.
12      A. Again -- well, yeah. We get back to -- we
13 talk about measurements and so on, and, you know, there
14 could be -- you know, was -- the computer calculates
15 the number out to some relatively large number of
16 decimal places. Am I able to say that they're the same
17 all the way down there? No. But we have something we
18 call significant figures in science. And in the
19 context of down to some significant value, yes, we were
20 able to reproduce the fits and so on.
21      Q. Do you think a set of experiments --
22      THE WITNESS: Yeah. Sorry. I think we're -- are
23 we -- okay. We better --
24      MS. KRUZE: Let's just stay off.
25      THE WITNESS: Yeah.

Page 201

1       THE VIDEOGRAPHER: We're off the record at
2  5:18 p.m.
3       (Recessed from 5:18 p.m. to 5:46 p.m.)
4       THE VIDEOGRAPHER: We're back on the record. It
5  is 5:46 p.m. Central Standard Time.
6       Q. BY MS. KRUZE: So before the break we were
7  discussing deconvolutions. Since the peak placement in
8  the Spinsight software is chosen by the user, would you
9  describe the deconvolution that Dr. Munson performed to
10 be subjective?
11      MR. RIDDLE: Objection, form.
12      A. Let me clarify the way that the Spinsight
13 software works. I described that you can adjust those
14 parameters. There is also a mechanism to tell the
15 computer to optimize, with whatever algorithm it uses
16 to do it, those parameters. And I don't know -- I
17 don't know if the deconvolutions that were done in my
18 office were the only ones that Professor Munson used or
19 not.
20      And the ones that we did, I don't -- I don't
21 recall if we did or did not make use of that automated
22 function that can tell it to go and optimize the
23 parameters of the fits. There's a button that reads --
24 I forget exactly what it reads. It's right there on
25 the screen when you have the software open. I don't

ESQUIRE DEPOSITION SERVICES - ST. LOUIS

314.621.6173                888.462.2780                FAX 314.621.1667

Page 210

1  the samples, I count, one, two -- not counting the
2  instrument calibration, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10,
3  11, 12, 13, 14, 15, 16 samples.  Is that your count as
4  well?
5      A.  Yes.
6      Q.  Why didn't you bill for all the runs that you
7  did?
8      A.  When Professor Munson asked me to do this, he
9  said that he wanted -- he only wanted to use the -- he
10  only wanted to bill for the spectra that we -- that he
11  felt he had learned something from.
12      For example, some of the early runs we
13  altered spinning speeds and were doing some
14  optimization.  And in the course of doing that -- this
15  is something you routinely do in collecting solid state
16  NMR data because there are parameters that need to be
17  optimized.  And he didn't feel comfortable billing for
18  those things that led up to collecting the -- if you
19  will, the final spectrum that he collected along the
20  way.
21      Q.  Has anyone requested that you provide them
22  with a report of all the work that you did in this
23  case?
24      A.  Outside of me discussing the status of things
25  with Professor Munson, no.

Page 211

1      Q.  And do you plan to testify at trial in this
2  case?
3      MR. RIDDLE:  Objection, form.
4      A.  No one has ever spoken to me about doing so.
5      Q.  BY MS. KRUZE:  So let's turn back to some of
6  the NMR runs that you did.
7      Earlier you explained that you did several
8  NMR runs on manipulated samples that were freeze dried.
9  Do you recall that portion of your testimony?
10      MR. RIDDLE:  Objection, form.
11      A.  I believe so.
12      Q.  BY MS. KRUZE:  And you may want to grab the
13  exhibits where we have the listing of all of the
14  different samples, which I think is -- here we go.
15  Exhibit 3, the last page.  You can look at that one and
16  there's also the sample names.
17      A.  Exhibit 4?
18      Q.  Yes.
19      A.  There we go.
20      Q.  Do you remember the time period when you
21  received the lyophilized samples?
22      A.  I recall picking them up.  I don't recall a
23  date associated with it.
24      Q.  When roughly did you pick up the samples?
25      A.  And you said the lyophilized?

Page 212

1      Q.  Correct.
2      A.  Of course at the time -- it's hard for me, as
3  you ask me to think about this, because at the time I
4  didn't know that the one I picked up was lyophilized,
5  and the later one I picked up was air dried and so on.
6      I believe that the lyophilized sample was the
7  earlier of the two, and that one, I believe, was
8  provided to me in mid to late January.
9      Q.  Do you agree that you conducted your first
10  tests on these samples in around mid to late January?
11      A.  If that's when I received them, yes.
12      Q.  And do you agree that your last test on this
13  sample was performed in May?
14      MR. RIDDLE:  Objection, form.
15      A.  As I recall, the lyophilized sample we
16  acquired data on in mid to late January.  The samples
17  we collected data on in late April and early May
18  included the sample that was provided that we were told
19  was paclitaxel dihydrate.  And I believe -- excuse me.
20  It's been a while and I just haven't -- I'm just trying
21  to recall for you.
22      I believe in late April and early May we --
23  Professor Munson asked me to acquire data on a number
24  of samples, including the separated material samples.
25      Q.  BY MS. KRUZE:  So between January, when you

Page 213

1  received these samples, and May, when you did your
2  final tests on these samples, were the samples that you
3  used sitting on a shelf?
4      MR. RIDDLE:  Objection, form.
5      Q.  BY MS. KRUZE:  Or were they packed in a rotor
6  that was sitting around?
7      A.  The --
8      MR. RIDDLE:  Sorry.
9      THE WITNESS:  Of course.
10      MR. RIDDLE:  Objection, form.
11      A.  The samples were kept in their rotor during
12  this entire period.  They were kept in a hood in the
13  lab in -- I mentioned earlier we keep the rotors
14  themselves then inside a glass vial.  That vial was
15  placed in the hood.
16      Q.  BY MS. KRUZE:  So all of the tests that you
17  did on the lyophilized Abraxane was the same sample
18  stored in the same rotor that was sitting around?
19      MR. RIDDLE:  Objection, form.
20      A.  Yes.
21      Q.  BY MS. KRUZE:  Okay.  How much material did
22  you originally receive of the lyophilized manipulated
23  sample?
24      MR. RIDDLE:  Objection, form.
25      A.  I don't recall.

54 (Pages 210 to 213)

DEWEY H. BARICH, Ph.D. - JANUARY 25, 2008

Page 230

1    A.  If you know something generally about the
2  sample, you can often identify a pulse delay that will
3  be long enough to avoid what we call saturation.
4        If a T1 value is, for example, 10 seconds,
5  and you pulse -- you apply -- you acquire each
6  acquisition one second apart, you'll do what we call
7  saturate.  So you don't wait long enough.  You still
8  get some signal from that, but you get much less than
9  you might if you wait longer.
10        But in the case, for example, of paclitaxel,
11  that molecule has several what we call relaxation
12  synchs.  This could be a methyl group that's part of
13  the chemical structure.
14        These -- the presence of these relaxation
15  synchs has a tendency to cause the T1 of different
16  samples of the same chemical to have approximately the
17  same T1.  And so much like we know the T1 of the
18  methyl-glutaric acid standard that we've discussed at
19  times today.  I could pick up a completely new sample
20  of MGA and have a fairly good idea of what its T1 is.
21    Q.  BY MS. KRUZE:  But knowing that T1 for MGA
22  would not tell you the T1 for paclitaxel; is that
23  right?
24    MR. RIDDLE:  Objection, form.
25    Q.  BY MS. KRUZE:  Necessarily.

Page 231

1    MR. RIDDLE:  Objection, form.
2    A.  Well, the two materials are different.  I was
3  speaking here of MGA because I'd -- I've actually
4  worked with it more because we use it so routinely.
5    Q.  BY MS. KRUZE:  Okay.  Have you done any work
6  for Elan after May 2007?
7    MR. RIDDLE:  Object -- yeah.  I'm going to --
8  objection, form.
9    A.  Okay.  I was asked to -- and what was the
10  date you mentioned?
11    Q.  BY MS. KRUZE:  May 2007.
12    A.  Okay.  I mean, for example, would you
13  consider work for Elan anything I did in preparing for
14  today, for example?
15    Q.  Well, other than preparing for your
16  deposition.
17    A.  Okay.
18    Q.  Did you do any work for --
19    MS. KRUZE:  Let's give him a moment to change the
20  tape.  Otherwise, he'll get cut off.
21    THE VIDEOGRAPHER:  We're off the record at 6:45.
22    (Recessed from 6:45 a.m. to 6:54 p.m.)
23    THE VIDEOGRAPHER:  We're back on the record.  It
24  is 6:54 p.m. Central Standard Time.
25    Q.  BY MS. KRUZE:  And before we took our break,

Page 232

1  I had asked you if you had done any work for Elan after
2  May 2007.
3    A.  Okay.  Yes, I have.
4    Q.  And what work is that?
5    A.  Professor Munson came to me and said there
6  had been a request to provide the electronic data.
7  Now, if I had simply been asked to put that data --
8  transfer that data on to a CD, that would have been
9  part of my service center duties.  But there was a
10  request to provide the free induction decays in a -- to
11  have those files provided in a text format.
12        As it turns out, Spinsight saves that -- we
13  talked about the data structure having -- the file name
14  in Spinsight in the operating system is a directory.
15  That directory contains a number of files.  One of
16  those files is called data.  The contents of which are
17  the stored time domain data.  But it's stored by
18  Spinsight in an -- in what's -- essentially is a binary
19  file instead of a text file.
20        And so I ended up spending some time writing
21  a program that would simply take that data file that
22  Spinsight saves and create -- I had it create another
23  file that was just called data.txt.
24    Q.  So you had to work to convert this data in a
25  text format; is that my understanding?

Page 233

1    A.  Well, it's -- I had never before in 13,
2  14 years been asked to do this --
3    Q.  Right.
4    A.  -- with any spectrometer company.  With any
5  spectrometer company's software.  This -- the program
6  that I wrote to do that is quite short.  I hadn't
7  written a program for a while; so it took me a few
8  minutes to recall how to do some things, but I think I
9  got it done in some couple of hours.
10        And once I had that done, then converting the
11  data file that Spinsight -- the file called data that
12  Spinsight had saved into the data.txt file, that --
13  taking care of that through this collection of files
14  didn't take very much time.
15    Q.  And it was your understanding that there was
16  a specific request for the free induction decay data in
17  text format?
18    A.  That was my understanding of what Professor
19  Munson was asking.  He said that we were -- he said he
20  was providing the data in, if you will, the native
21  Spinsight form.  But he said that there were -- I
22  didn't understand exactly what he was saying, but he
23  asked me, can you -- is it possible to save that free
24  induction decay data in a file that's a text file.  I
25  told him we could do it.  It's not necessary, but that

59 (Pages 230 to 233)

DEWEY H. BARICH, Ph.D. - JANUARY 25, 2008

Page 234

1  we could.  So he asked me to do it and I did.
2      Q.  So just in front of you is Exhibit 3B, a
3  spectrum.  Did Dr. Munson ever request that you print
4  out the spectrum that were generated?
5      MR. RIDDLE:  Objection, form.
6      A.  Spectrum -- what spectrum that was generated?
7  I mean, the one in front of me or . . .
8      Q.  BY MS. KRUZE:  Well, for example, the one in
9  front of you, but, yes, all the spectra associated with
10  these runs.
11      MR. RIDDLE:  Objection, form.
12      A.  During this whole process, for example, when
13  one of these teleconferences was coming up, he would
14  say -- he would let me know that there was a
15  teleconference; that he would appreciate it if I would
16  attend.  I certainly might have, at his request, opened
17  one of these -- one or more of those files and
18  processed it into a spectrum, gotten it into an image
19  file that I probably then provided to him.  And, you
20  know, it was -- the ones I'm referring to were used in
21  discussion at these teleconferences.
22      Q.  BY MS. KRUZE:  Did you find it odd that
23  Dr. Munson asked you to convert all the free induction
24  decay data into text format?
25      MR. RIDDLE:  Objection, form.

Page 235

1      Q.  BY MS. KRUZE:  With a software you had to
2  create?
3      MR. RIDDLE:  Objection, form.
4      A.  I did find it an unusual request.  I know
5  that there's quite a few data packages -- software
6  packages that are capable of opening Spinsight data; so
7  I didn't understand why the request was being made.
8      Q.  BY MS. KRUZE:  So would -- is producing the
9  free induction decay data in text format, you wouldn't
10  call that the ordinary course of someone in the solid
11  state NMR business?
12      MR. RIDDLE:  Objection, form.
13      A.  That really depends on the spectrometer
14  software in use.  I've only worked with a few.  There
15  are others out there.  Maybe some of them store it in
16  text format in the first place.  That I don't have any
17  reference for comparison.  In the case of the Spinsight
18  data, I found it a little surprising.
19      Q.  BY MS. KRUZE:  Okay.  Other than that
20  conversion of the data into text format, did you do any
21  other work for Elan after May 2007?
22      A.  In addition to not considering any
23  preparation for today?
24      Q.  Correct.
25      A.  I don't believe so.

Page 236

1      Q.  Are you aware of any other testing of
2  Abraxane done in connection with this litigation other
3  than the NMR work that you performed?
4      MR. RIDDLE:  Objection, form.  And also,
5  Dr. Barich, I would instruct you to answer this
6  question, but to not reveal any attorney-client
7  communication.  To the extent you can answer without
8  revealing it, feel free to do so.
9      THE WITNESS:  Okay.  I'm sorry.  It's the end of
10  the day.  Could you just read the question back.
11      (Requested portion of the record read.))
12      MR. RIDDLE:  I think you can answer this with a
13  yes or no question.  With a yes or no answer.  I'm
14  sorry.
15      A.  No.
16      Q.  BY MS. KRUZE:  Looking very briefly at one of
17  the exhibits that we earlier had marked, this is
18  Barich 14.  Now, I told you earlier that this data was
19  not generated using Spinsight, to the best of my
20  knowledge.  That may not be right, actually.
21      But do you know whether Spinsight can
22  generate a picture similar to the one depicted on
23  Barich 14 with the peaks placed together in that?
24      A.  Simply being overlaid as they are here?
25      Q.  That's correct.

Page 237

1      A.  I believe that it can.
2      Q.  Okay.  And did you ever generate pictures
3  with Dr. Munson when you were doing your deconvolution
4  data with pictures similar to what's depicted on
5  Barich 14, where you can see the overlay of the peaks?
6      MR. RIDDLE:  Could I have that question read back,
7  please?  And also I'll note we're at 7 hours now.  The
8  deposition is technically over, but I'll go ahead and
9  allow Dr. Barich to answer this last question, once I
10  hear it.
11      MS. KRUZE:  I had just one or two other.  I mean,
12  I know we're done, and I do not want to keep this man
13  here any longer than he needs to.  Would you mind just
14  a couple more minutes.
15      MR. RIDDLE:  Yeah, really, I mean Dr. Barich
16  shouldn't be here.  It's late and we're at seven hours.
17      MS. KRUZE:  Yeah.  I appreciate that.
18      (Requested portion of the record read.)
19      MR. RIDDLE:  Objection, form.  You can go ahead
20  and answer this one.  It will be our last question.
21      A.  All right.  When you say generate picture,
22  for example, I sat with him while he did at least some
23  deconvolution work.  That was something that was
24  displayed on a screen.  I don't know if he ever did any
25  other analysis.  I'm -- I -- we might have -- well, I

ESQUIRE DEPOSITION SERVICES - ST. LOUIS
314.621.6173                    888.462.2780                    FAX 314.621.1667

Page 238

1  just -- I don't have any recollection of the -- of
2  generating image files, for example, of the
3  deconvolutions that were done when I was with him. I
4  don't remember if we did it then, or he could have done
5  it later on his own. I don't recall.
6      MS. KRUZE: Okay. Well, again, thank you so much,
7  Dr. Barich, for coming here today.
8      THE WITNESS: Well, of course.
9      MS. KRUZE: And with that, if you have any
10 redirect, Robert.
11     MR. RIDDLE: No. We don't have any. We're done.
12     MS. KRUZE: Okay. So with that, the deposition is
13 closed. Thank you everyone for your time.
14     THE VIDEOGRAPHER: We're off the record. It is
15 7:05 p.m. Central Standard Time.
16     (Deposition concluded at 7:05 p.m.)
17
18
19
20
21
22
23
24
25

Page 240

1  STATE OF _____ )
2  COUNTY OF _____ )
3
4      I, DEWEY H. BARICH, PhD, do hereby state that
5  the foregoing statements are true and correct, to the
6  best of my knowledge and belief.
7
8
9  _____
10     DEWEY H. BARICH, PhD
11
12
13     Subscribed and sworn to before me this
14 _____ day of _____, 2008.
15
16
17 _____
18     NOTARY PUBLIC
19
20
21
22
23
24
25

Page 239

1      C E R T I F I C A T I O N
2
3      I, Naola C. Vaughn, Certified Court Reporter
4  within and for the State of Missouri, DO HEREBY CERTIFY
5  that the aforementioned witness came before me at the
6  time and place hereinbefore mentioned, and having been
7  duly sworn to tell the whole truth of his knowledge
8  touching upon the matter in controversy aforesaid; that
9  the witness was examined on the 25th day of January
10 2008, and examination was taken in shorthand and later
11 reduced to printing; that signature by the witness is
12 not waived and said deposition is herewith forwarded to
13 the taking attorney
14 for filing with the Court.
15     IN WITNESS WHEREOF, I have hereunto
16 subscribed my name this 31st day of January 2008.
17
18
19
20
21 _____
     NAOLA C. VAUGHN, CCR, CRR, RPR
22   Missouri CCR No. 1052
23
24
25

Page 241

1  February 1, 2008
2
   MR. Robert Riddle
3  Baker Botts, L.L.P.
   One Shell Plaza
4  910 Louisiana
   Houston, Texas 77002-4995
5
   IN RE: Elan Pharma International v. Abraxis Bioscience
6      Case No. 0606438GMS
7  Dear Mr. Riddle:
   Enclosed please find a copy of the transcript of the
8  deposition testimony of DEWEY H. BARICH, PhD, taken on
   January 25, 2008, in the above-captioned matter. I
9  understand you will obtain signature from the witness.
10
   After he has reviewed the transcript and made any
11 necessary corrections on the deposition correction
   sheet incorporated at the end of the transcript, please
12 have him sign the original signature page in the
   presence of a notary public and return the signature
13 page, along with the correction sheets, directly to
   Ms. Diana B. Kruze.
14
   If you have any questions regarding this matter, please
15 do not hesitate to contact me at Esquire Deposition
   Services, (314) 621-6173.
16
   Sincerely,
17
18
   Naola C. Vaughn, RPR, CCR, CRR
19
   Enclosures
20 cc: All counsel of record
21
22
23
24
25

61 (Pages 238 to 241)

# EXHIBIT 27

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF  KANSAS

ELAN PHARMA INTERNATIONAL LIMITED

V.

ABRAXIS BIOSCIENCE, INC.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 06-438-GMS (D. Del.)

TO: Eric J. Munson, c/o Steven J. Balick, Ashby & Geddes, 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, DE 19899

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION<br>Foulsten Siefkin LLP, 9200 Indian Creek Parkway, Suite 450, Overland Park, Kansas 66210 | DATE AND TIME<br>December 6, 2007<br>9:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documentsor objects at the place, date, and time specified below (list documents or objects):

See attached Exhibit A

| PLACE<br>Foulsten Siefkin LLP, 9200 Indian Creek Parkway, Suite 450, Overland Park, Kansas 66210 | DATE AND TIME<br>November 30, 2007<br>9:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Counsel for Defendant | DATE<br>October 19, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER    Jeffrey T. Castellano
Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801  (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

American LegalNet, Inc.
www.FormsWorkflow.com

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____         _____
                         DATE                                    SIGNATURE OF SERVER

                                                              _____
                                                              ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
  (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
  (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
  (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
    (i) fails to allow reasonable time for compliance;
    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
    (iv) subjects a person to undue burden.
    (B) If a subpoena
    (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
    (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
  (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to this Exhibit:

The term "Abraxis" means Abraxis BioScience, Inc., its predecessors, successors and assigns, its officers, employees, agents, attorneys, consultants, and representatives, or other persons acting or purporting to act on its behalf, and any other legal entities (foreign or domestic) that are or have been owned or controlled by Abraxis.

The term "Abraxane" refers to Abraxane for Injectable Suspension (paclitaxel protein-bound particles for injectable suspension), an albumin-bound form of paclitaxel supplied as a lyophilized powder for reconstitution prior to intravenous infusion. The term "Abraxane" also includes Abraxane as reconstituted according to the instructions on the product label. Abraxane was developed and is marketed by Abraxis.

The terms "Document" or "Documents" shall have the broadest meaning permitted under Rules 26 and 34 of the Federal Rules of Civil Procedure, Rule 1001 of the Federal Rules of Evidence, and relevant case law.

The term "Elan" means Elan Pharma International Limited, its predecessors, successors and assigns, its officers, employees, agents, attorneys, consultants, and representatives, or other persons acting or purporting to act on its behalf, and any other legal entities (foreign or domestic) that are or have been owned or controlled by Elan.

The term "Elan Experts and Consultants" means any expert or third party consultant retained by Elan in connection with this litigation, or in connection with any analysis, experiment (formal or informal) or testing of Abraxane, including but not limited to Cory J. Berkland, Harry J. Brittain, Samuel J. Danishefsky, David J. Haidak, John C. Jarosz, Mark Cornell Manning, James M. McBride, Eric J. Munson, David R. Taft, Robert O. Williams III, and Jeffrey D. Winkler.

The term "Counsel for Elan" means any attorney retained by or acting on behalf of Elan, as well as any employees, agents, representatives or other persons acting on such an attorney's behalf.

To the extent you believe you cannot produce an otherwise-responsive Document because of privilege, Abraxis requests that you provide a privilege log. For each Document withheld on the basis of privilege, describe the claimed privilege and identify the date, author or originator, person to whom addressed, sent or shown (including copies), type of Document, present custodian and general subject matter of the Document.

## REQUESTED DOCUMENTS

1.    Documents and tangible things, including tangible reports, physical models, compilations of data, photographs, audio tapes, video tapes, computer data and printouts, and other material prepared by the witness or for the witness and/or his agents, servants and/or employees in preparation of the witness's expert report in this matter or in anticipation of the witness's trial and deposition testimony.

2.    Documents and tangible things, including but not limited to all materials, notices, memoranda, statements, depositions, and correspondence reviewed by the witness and/or his agents, servants and/or employees, including treatises, articles and authoritative materials, in preparation of the witness's expert report in this litigation or in anticipation of the witness's trial and deposition testimony.

3.    Documents and tangible things, including but not limited to correspondence, notes, factual observations, calculations, supporting data, and material sent to the witness and/or his agents, servants and/or employees by Elan or Counsel for Elan in connection with this litigation or related to Abraxane.

4.    The witness's entire file on this matter, including all work product and work papers, such as notes, correspondence, research, memoranda, and any other tangible or electronic material.

5.    Electronic data reflecting work by the witness and/or his agents, servants and/or employees in connection with this litigation or related to Abraxane.

6.    Materials reviewed, read, considered or used by the witness and/or his agents, servants and /or employees in connection with his work in this litigation.

7.    All of the witness's and/or his agents, servants and/or employees' notes concerning the assignments and/or work he has done on his own and/or at the request of Elan or Counsel for Elan in regard to this litigation, including reports and case summaries prepared by the witness or prepared for the witness by any individual working with him.

8.    Records of time, expenses and charges for time the witness and/or his agents, servants and/or employees have spent on any matter related to this litigation.

9.    Reports and transcripts of depositions and/or trial testimony offered by the witness as an expert in any litigation other than in this case.

10.    Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Counsel for Elan related to this case, including but not limited to receipts, checks, and billing records reflecting that compensation.

11.    Documents reflecting agreements between the witness and/or his agents, servants and/or employees and Elan, including but not limited to receipts, checks, and billing records reflecting that compensation.

12.    Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information, regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane.

13.    Documents used by the witness as course material, including syllabi, in any course taught by the witness that includes material related to crystallinity, amorphousness, cross-

linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

14.     Publications, articles, abstracts, lecture materials or slides, posters, handouts, or presentations drafted in full or in part by the witness related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state NMR, or transmission electron microscopy as those subjects are defined in the witness's field of specialty.

15.     Documents reflecting or referring to communications between the witness and Elan.

16.     Documents reflecting or referring to communications between the witness and Counsel for Elan related to this litigation.

17.     Documents that reflect or contain direct or indirect communications with any Elan Expert or Consultant related to this litigation or Abraxane.

18.     Documents prepared by, or supplied directly or indirectly by any Elan Expert or Consultant related to this case or Abraxane.

19.     A copy of all instructions, including the user manual and any technical reports, the cam with the software the witness used for his deconvolution experiments.

20.     Any hardcopy computer printouts from the witness's deconvolution experiments.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) | |
| | ) | C.A. No. 06-438-GMS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ABRAXIS BIOSCIENCE, INC., | ) ) | |
| Defendant. | ) ) | |

**ELAN PHARMA INTERNATIONAL LIMITED'S OBJECTIONS TO ABRAXIS BIOSCIENCE, INC.'S SUBPOENA DUCES TECUM AND AMENDED SUBPOENA DUCES TECUM TO DR. ERIC MUNSON**

Pursuant to Federal Rules of Civil Procedure 26, 30 and 34, Elan Pharma International Limited ("Elan") and Dr. Eric Munson ("Dr. Munson") hereby object to Abraxis BioScience Inc.'s ("Abraxis") Subpoena Duces Tecum ("Subpoena") and Amended Subpoena Duces Tecum ("Amended Subpoena").

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Plaintiff*
*Elan Pharma International Limited and Dr.*
*Eric Munson*

*Of Counsel:*

Stephen Scheve
Linda M. Glover
BAKER BOTTS LLP
One Shell Plaza
910 Lousiana Street
Houston, TX 77042-4995
(713) 229-1659

Paul F. Fehlner
Jeffrey D. Sullivan
Lisa Chiarini
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112-4498
(212) 408-2527

William J. Sipio
1375 Brentwood Road
Yardley, PA 19067
(215) 801-3625

Dated: November 1, 2007

## OBJECTION TO TIME FOR PERFORMANCE

Counsel for Elan received Abraxis's Subpoena to Dr. Munson on Friday, October 19 at 11:15 p.m.  The Subpoena commands Dr. Munson to produce certain documents requested by an attached Exhibit A on or before November 30, 2007.

Counsel for Elan received Abraxis's Amended Subpoena to Dr. Munson on October 24 at 7:51 p.m.  The Amended Subpoena commands Dr. Munson to produce certain documents requested by an attached Exhibit A on or before November 2, 2007.  There are, however, no attachments to the Amended Subpoena.  Accordingly, Elan and Dr. Munson are at a loss to determine whether Abraxis has abandoned its request for the production of documents, or simply inadvertently failed to attach the Exhibit A initially attached to the Subpoena to the Amended Subpoena.

To the extent that Abraxis purports to require Dr. Munson to produce documents on November 2 based on a non-existent Exhibit A attached to the Amended Subpoena, Elan and Dr. Munson object that the Amended Subpoena seeks the production of documents before the time permitted by the Federal Rules of Civil Procedure and Delaware local rules.  The Federal Rules of Civil Procedure require that a subpoena provide a reasonable time for compliance.  *See* Fed. R. Civ. P. 45(c)(3(A)(i).  The Delaware local rules provide that a reasonable notice period is not less than 7 business days.  Del. Local Rule 30.1.  As indicated above, Elan's counsel received Abraxis's Amended Subpoena to Dr. Munson on October 24.  Pursuant to Federal Rule of Civil Procedure 6, service was not effective until October 28.  *See* Fed. R. Civ. P. 6; *see also* 2005 Notes of Advisory Committee.  Accordingly, at a minimum, Elan and Dr. Munson have until November 6 to object and respond to Abraxis's Amended Subpoena.  In light of the overly broad and unduly burdensome nature of the requests propounded by Abraxis in its Exhibit A—should

such Exhibit A remain viable, however, the minimum response time cannot be characterized as "reasonable." Accordingly, Elan and Dr. Munson will respond to the Subpoena and/or Amended Subpoena in as expeditious a manner as is reasonably possible under the circumstances.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

A.    Elan and Dr. Munson object to the definition of "Abraxis" because it is overly broad, unduly burdensome, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. This definition purports to require Elan and Dr. Munson to conduct an independent investigation into which entities, if any, might be predecessors of Abraxis, and to somehow foretell which entities, if any, might be successors to Abraxis in the future. This definition also purports to require Dr. Munson to ascertain whether any individual with whom he has ever been in contract might be employed and/or retained by Abraxis, or even just claim to be. This definition further purports to require Dr. Munson to conduct an independent investigation into which entities may have, at one time, been owned or controlled by Abraxis, without any guidance provided as to how such terms should be defined. Elan and Dr. Munson, therefore, will interpret the term, "Abraxis" to mean the corporate entity Abraxis BioScience, Inc., which is the Defendant in this litigation.

B.    Elan and Dr. Munson object to the definition of "Elan" because it is overly broad, unduly burdensome, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence in that it seeks to sweep into its purview entities unrelated to this litigation. This definition also purports to require Dr. Munson to ascertain whether any individual with whom he has ever been in contract might be employed and/or retained by Elan, or even just claim to be. Elan and Dr. Munson also

object to the definition of "Elan" to the extent that is seeks to invade protections provided by the attorney-client privilege and/or work product doctrine. Elan and Dr. Munson, therefore, will interpret the term "Elan" to mean the corporate entity Elan Pharma International Limited, which is the Plaintiff in this litigation.

C.     Elan and Dr. Munson object to the definition of "Elan Experts and Consultants" to the extent that it seeks to invade any protections provided by the attorney-client privilege and/or work product doctrine.

D.     Elan and Dr. Munson object that Abraxis's purported requirement that Dr. Munson provide a privilege log is unduly burdensome as Elan has already produced a privilege log in this litigation that includes relevant privileged documents in Dr. Munson's possession, custody and control, if any.

## OBJECTIONS TO REQUESTS FOR DOCUMENTS

**REQUEST NO. 1.**

Documents and tangible things, including tangible reports, physical models, compilations of data, photographs, audio tapes, video tapes, computer data and printouts, and other material prepared by the witness or for the witness or his agents, servants or employees in preparation of the witness's expert report in this matter or in anticipation of the witness's trial and deposition testimony.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, to the extent that such materials are or were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he has or will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 2.**

Documents and tangible things, including but not limited to all materials, notices, memoranda, statements, depositions, and correspondence reviewed by the witness and/or his agents, servants and/or employees, including treatises, articles and authoritative materials, in preparation of the witness's expert report in this litigation or in anticipation of the witness's trial and deposition testimony.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, to the extent that such materials are or were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he has or will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 3.**

Documents and tangible things, including but not limited to correspondence, notes, factual observations, calculations, supporting data, and material sent to the witness and/or his agents servants and/or employees by Elan or Counsel for Elan in connection with this litigation or related to Abraxane.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson also object that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, to the extent that such materials are or were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he has or will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 4.**

The witness's entire file on this matter, including all work product and papers, such as notes, correspondence, research, memoranda, and any other tangible or electronic material.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson also object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine. Elan and Dr. Munson further object that this request is vague and ambiguous as the term "witness's entire file" is undefined and subject to misinterpretation.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, to the extent that such materials are or were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 5.**

Electronic data reflecting work by the witness and/or his agents, servants and/or employees in connection with this litigation or related to Abraxane.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson also object that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, to the extent that such materials are or were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 6.**

Materials reviewed, read, considered or used by the witness and/or his agents, servants and employees in connection with his work in this litigation.

8

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine. Elan and Dr. Munson also object that the term "in connection with" is vague and ambiguous because it is without any temporal parameters.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, to the extent that such materials are or were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 7.**

All of the witness's and/or his agents, servants and/or employees' notes concerning the assignment and/or work he has done on his own and/or at the request of Elan or counsel for Elan in regard to this litigation, including reports and case summaries prepared by the witness or prepared for the witness by any individual working with him.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, to the extent that such materials

are or were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 8.**

Records of time, expenses and charges for time the witness and/or his agents, servants and/or employees have spent on any matter related to this litigation.

**RESPONSE.**

Elan and Dr. Munson object that this request is vague and ambiguous as the term "related" is undefined and subject to misinterpretation. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, if any, will be or previously have been produced.

**REQUEST NO. 9.**

Reports and transcripts of depositions and/or trial testimony offered by the witness as an expert in any litigation other than in this case.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson also object to the extent that this request seeks testimony subject to a protective order in another matter. Elan and Dr. Munson further object that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Dr. Munson's testimony in unrelated cases has no bearing on the subject matter of this lawsuit or the claims and defenses of the

parties. Elan and Dr. Munson further object to the extent that this request seeks information

protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson

respond that Dr. Munson has no documents responsive to this request.

**REQUEST NO. 10.**

Documents reflecting agreements between the witnesses and/or his agents,
servants and/or employees and Counsel for Elan, including but not limited to receipts, checks,
and billing records reflecting that compensation.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly

burdensome to the extent that it seeks expert discovery beyond that which is contemplated by

Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson also object that this request

seeks irrelevant information and is not reasonably calculated to lead to the discovery of

admissible evidence to the extent that it seeks information regarding Dr. Munson's agreements

with Counsel for Elan, if any, unrelated to the subject matter of this litigation or the claims and

defenses of the parties. Elan and Dr. Munson further object to the extent that this request seeks

information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson

respond that non-privileged materials responsive to this Request, if any, will be or previously

have been produced.

**REQUEST NO. 11.**

Documents reflecting agreements between the witness and/or his agents, servants
and/or employees and Elan, including but not limited to receipts, checks, and billing records
reflecting that compensation.

11

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson also object that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks information regarding Dr. Munson's agreements with Elan, if any, unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, if any, will be or previously have been produced.

**REQUEST NO. 12.**

Documents, including laboratory notebook entries, raw data, reports, memoranda, or other communications, including electronic mail messages or other electronic information regarding laboratory manipulation or testing of Abraxane or derivatives of Abraxane or intravenous administration of Abraxane or derivatives of Abraxane.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson further object that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Munson further

object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, to the extent that such materials were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 13.**

Documents used by the witness as course material, including syllabi, in any course taught by the witness that includes material related to crystallinity, amorphousness, cross-linking, adsorption, colloidal dispersions, x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), intravenous administration, pre-clinical trials or clinical trials or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Munson object that this request purports to require Dr. Munson to review all course material in every course he has ever taught to ascertain whether such material addresses any of the described topics, based on the vague and ambiguous assertion that such topics should be defined in accordance with his field of specialty. Such a task would require months, not mere days, even if there were a single definition of the provided terms in Dr. Munson's field of endeavor. Dr. Munson does not have administrative assistance available to him; and Abraxis has heretofore refused to advise whether it will reimburse Dr. Munson for the time that he would have to spend away from gainful activity to complete such an onerous task. In this regard, Abraxis's request borders on harassment. Elan

and Dr. Munson also object that this request is overly broad and unduly burdensome in that it lacks any temporal parameters. Elan and Dr. Munson further object to this request to the extent that it seeks documents not in the possession, custody and control of Dr. Munson.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that materials responsive to this Request, to the extent that such materials were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 14.**

Publications, articles, abstract, lecture materials or slides, posters, handouts, or presentations drafted in full or in party by the witness related to crystallinity, amorphousness, cross-linking, adsorption, colloidal x-ray crystallography, solid-state nuclear magnetic resonance ("NMR"), intravenous administration, pre-clinical trials or clinical trials or transmission electron microscopy, as those subjects are defined in the witness's field of specialty.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. In particular, Elan and Dr. Munson object that this request purports to require Dr. Munson to review all course material in every course he has ever taught to ascertain whether such material addresses any of the described topics, based on the vague and ambiguous assertion that such topics should be defined in accordance with his field of specialty. Such a task would require months, not mere days, even if there were a single definition of the provided terms in Dr. Munson's field of endeavor. Dr. Munson does not have administrative assistance available to him; and Abraxis has heretofore refused to advise whether it will reimburse Dr. Munson for the time that he would have to spend away from gainful activity to complete such an onerous task. In this regard, Abraxis's request borders on harassment. Elan and Dr. Munson also object that this request is overly broad and unduly burdensome in that it

14

lacks any temporal parameters. Elan and Dr. Munson further object to this request to the extent that it seeks documents not in the possession, custody and control of Dr. Munson.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that materials responsive to this Request, to the extent that such materials were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 15.**

Documents reflecting or referring to communications between the witness and Elan.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson also object that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks communications between Dr. Munson and Elan unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, if any, will be or previously have been produced.

**REQUEST NO. 16.**

Documents reflecting or referring to communications between the witness and Counsel for Elan related to this litigation.

15

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson also object that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks communications between Dr. Munson and Elan unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, if any, will be or previously have been produced.

**REQUEST NO. 17.**

Documents that reflect or contain direct or indirect communications with any Elan Expert or Consultant related to this litigation or Abraxane.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson also object that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, if any, to the extent that such materials were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 18.**

Documents prepared by, or supplied directly or indirectly by any Elan Expert or Consultant related to this case or Abraxane.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson further object that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information regarding Abraxane unrelated to the subject matter of this litigation or the claims and defenses of the parties. Elan and Dr. Munson further object to the extent that this request seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, to the extent that such materials were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 19.**

A copy of all instructions, including the user manual and any technical reports that cam[e] *sic* with the software the witness used for his deconvolution experiments.

**RESPONSE.**

Elan and Dr. Munson object that this request is overly broad and unduly burdensome to the extent that it seeks expert discovery beyond that which is contemplated by Federal Rules of Civil Procedure 26 and 45. Elan and Dr. Munson also object that this request is vague and ambiguous as the term "technical reports" if vague and ambiguous and subject to misinterpretation. Elan and Dr. Munson further object to the extent that this request seeks documents not in the possession, custody and control of Dr. Munson.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, if any, to the extent that such materials were within Dr. Munson's possession, custody and control and were considered by Dr. Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

**REQUEST NO. 20.**

Any hardcopy computer printouts from the witness's deconvolution experiments.

**RESPONSE.**

Elan and Dr. Munson object that this request is seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. For example, this request is not limited to deconvolution experiments performed by Dr. Munson to assist him in forming his expert opinion in this matter. Elan and Dr. Munson further object to the extent that this request seeks third party documents that Dr. Munson is contractually obligated not to disclose.

Subject to and without waiving the foregoing objections, Elan and Dr. Munson respond that non-privileged materials responsive to this Request, if any, to the extent that such materials were within Dr. Munson's possession, custody and control and were considered by Dr.

Munson in forming the opinions that he will provide in this matter, if any, will be or previously have been produced.

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of November, 2007, the attached **ELAN PHARMA INTERNATIONAL LIMITED'S OBJECTIONS TO ABRAXIS BIOSCIENCE, INC.'S SUBPOENA DUCES TECUM AND AMENDED SUBPOENA DUCES TECUM TO DR. ERIC MUNSON** was served upon the below-named counsel of record at the addresses and in the manner indicated:

Josy W. Ingersoll, Esquire                                     HAND DELIVERY
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Michael A. Jacobs, Esquire                                     VIA ELECTRONIC MAIL
Morrison & Foerster, LLP
425 Market Street
San Francisco, CA  94105-2482

Emily A. Evans, Esquire                                        VIA ELECTRONIC MAIL
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA  94304-1018

Anders T. Aannestad, Esquire                                   VIA ELECTRONIC MAIL
Morrison & Foerster, LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130

Lauren E. Maguire

173077.1

# EXHIBIT 28

| Data File from MUNSON0002203 | Hardcopy | Hardcopy Produced On | Spectra (Munson Rpt Appendix) | Other Spectra | Other Spectra Produced on |
|---|---|---|---|---|---|
| HT1_formul_AsRec | | 1/24/2007 | | | |
| pac_sep_vtat2_070131 | MUNSON0007602 | 12/18/2007 | | | |
| pac_sep_vacp_070131 | MUNSON0007792 | 12/18/2007 | | | |
| pac_sep_HT1_070131 | MUNSON0007283 | 12/18/2007 | | | |
| pac_sep_vtat4k_070130 | MUNSON0007570 | 12/18/2007 | | | |
| formul_AsRec_vacp4.45k_pd2 | MUNSON0009883 | 1/22/2008 | F | MUNSON0002211 | 11/29/2007 |
| | MUNSON0010033 | 1/22/2008 | | | |
| formul_AsRec_vacp5.5k_pd2 | MUNSON0009969 | 1/22/2008 | | | |
| formul_AsRec_toss5.5k_pd2a | MUNSON0010065 | 1/22/2008 | | | |
| formul_AsRec_toss5.5k_pd10b | MUNSON0010001 | 1/22/2008 | | | |
| formul_AsRec_toss5.5k_pd5 | MUNSON0010097 | 1/22/2008 | | | |
| formul_AsRec_toss5.5k_pd2 | MUNSON0001304 | 11/7/2007 | | | |
| formul_AsRec_toss5.5k_10a | MUNSON0001540 | 11/7/2007 | | | |
| formul_AsRec_toss4.0k_pd10 | MUNSON0001594 | 11/7/2007 | | | |
| pac_sep_vacp4.45k_pd10_070201 | MUNSON0003331 | 12/14/2007 | | | |
| pac_sep_vacp4.45k_070201 | MUNSON0003363 | 12/14/2007 | | | |
| pac_sepnew3_070325 | MUNSON0007870 | 12/18/2007 | | | |
| pac_sepnew2_070322 | MUNSON0008060 | 12/18/2007 | | | |
| pac_sepnew_070321 | MUNSON0008795 | 12/18/2007 | | BERKLAND000430 BERKLAND000433 | |
| pac_sep4_070316 | MUNSON0005069 | 12/14/2007 | | | |
| pac_sep_vacp_sum | MUNSON0004556 | 12/14/2007 | | MUNSON0002212 | 11/29/2007 |
| pac_sep_vacp_070315 | MUNSON0004188 | 12/14/2007 | | | |
| pac_sep3_070314 | MUNSON0002526 | 12/14/2007 | | | |
| pac_sep2_ramptoss5BS64_070307 | MUNSON0005616 | 12/14/2007 | | MUNSON0002213 | 11/29/2007 |
| continuation of pac_sep2_ramptoss5BS64_070307 | MUNSON0006068 | 12/14/2007 | | | |
| pac_sep_ramptoss5BS64_070307 | MUNSON0006519 | 12/14/2007 | | | |
| 9-126-3_2_ramptoss5BS64 | MUNSON0003730 | 12/14/2007 | | MUNSON0002204 | 11/29/2007 |
| 9-126-3_ramptoss5BS64 | MUNSON0003299 | 12/14/2007 | | | |
| 080103_ramptoss5BS64 | MUNSON0003200 | 12/14/2007 | | MUNSON0002208 | 11/29/2007 |
| HT1_030801 | MUNSON0004611 | 12/14/2007 | | | |
| cp010803_070502 | MUNSON0003047 | 12/14/2007 | C | | |
| sep2_070501 | MUNSON0002894 | 12/14/2007 | G; K | MUNSON0002214 | 11/29/2007 |
| amor_9-126-3_070430 | MUNSON0003146 | 12/14/2007 | E | MUNSON0002205 | 11/29/2007 |
| sepnew1_070429 | MUNSON0009915 | 1/22/2008 | H; L | MUNSON0002215 | 11/29/2007 |
| pacdihydr_070420 | MUNSON0002948 | 12/14/2007 | D | MUNSON0002209 MUNSON0002210 | 11/29/2007 11/29/2007 |
| pacdihydr_HT1_070420 | MUNSON0009163 | 12/18/2007 | | | |
| continuation 1 of pacdihydr_HT1_070420 | MUNSON0009499 | 12/18/2007 | | | |
| continuation 2 of pacdihydr_HT1_070420 | MUNSON0008428 | 12/18/2007 | | | |
| | | | | MUNSON0002216 | 11/29/2007 |

# EXHIBIT 29

## Villegas, Ethel

| | |
|---|---|
| **From:** | Villegas, Ethel |
| **Sent:** | Wednesday, November 21, 2007 4:02 PM |
| **To:** | 'Jerry Atwood' |
| **Cc:** | Evans, Emily A. |
| **Subject:** | Elan v. Abraxis |

Dear Dr. Atwood,

I have uploaded documents to a secured website for your review.

```
To access the site, please use this link: http://share.mofo.com
Username: ABRX-Atwood
Password:
Folder: "MUNSON0002204-2463" and "NMR data in Electronic Form"
```

Thank you,

Ethel Villegas | Senior Litigation Paralegal | Morrison & Foerster | 755 Page Mill Road | Palo Alto, CA 94304
tel: 650.813.5765 | fax: 650 494-0792 | email: evillegas@mofo.com | web: www.mofo.com

1

# EXHIBIT 30

**VARIAN**

## SOFTWARE LICENSE AGREEMENT

This License Agreement ("Agreement"), made and entered into as of the date signed on behalf of Varian, Inc. below, is by and between Varian, Inc., a Delaware corporation, with offices at 3120 Hansen Way, Palo Alto, California 94304 ("VARIAN") and Morrison & Foerster LLP, having offices at 755 Page Mill Road, Palo Alto, California 94304 ("LICENSEE, you, or your").

WHEREAS, VARIAN is in the business of developing, marketing, and licensing products including spectrometers and other analytical instruments, and the software to control and analyze data therefrom; and

WHEREAS, LICENSEE is desirous of obtaining certain rights and licenses from VARIAN to the Spinsight V4.3.2 Software for InfinitySBC Spectrometers, for use only on a workstation and/or personal computer, but not in connection with the operation or control of a Varian InfinitySBC Spectrometer or any other analytical instruments;

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein, the parties hereto agree as follows:

**LICENSE GRANT.** In return for payment of the License Fee of $1100.00 and subject to your compliance with the terms and conditions of this Agreement, VARIAN grants you a non-exclusive, royalty-free, world-wide, non-transferable license to install and use, on a single hardware device, the executable code version of Varian Spinsight V4.3.2 Software (the "Software"). You may not alter and/or make derivative works of the Software; (ii) decompile, disassemble, or otherwise reverse engineer the Software; (iii) encumber, sell, rent, lease, or transfer rights to the Software; (iv) remove or alter any trademark, logo, copyright or other proprietary notices, legends, symbols or labels in the Software.

**PROPRIETARY RIGHTS.** Title, ownership rights, and intellectual property rights in the Software shall remain in VARIAN and/or its suppliers or licensors. You acknowledge such ownership and intellectual property rights and will not take any action to jeopardize, limit or interfere in any manner with VARIAN's or its suppliers' or licensors' ownership of or rights with respect to the Software. The Software is protected by copyright, patent, trade secret and/or other intellectual property laws and by international treaties. All trademarks used in connection with the Software are owned by VARIAN, its suppliers or licensors, and no license to use any such trademarks is provided hereunder. You must treat the Software as any copyrighted material, provided however, that you may make a backup copy of the Software for archival purposes. All rights not expressly granted are reserved by VARIAN.

**DISCLAIMER OF WARRANTY.** THE SOFTWARE IS FURNISHED "AS-IS" AND WITHOUT WARRANTY OF ANY KIND. VARIAN and its suppliers and licensors expressly disclaim all warranties and representations, whether expressed or implied, including, but not limited to, any warranty of merchantability, fitness for a particular purpose, error-free operation, noninfringement, accuracy, quality, or any warranty arising by course of dealing or custom or trade with respect to the Software or defects in the disk or other physical media and documentation, operation of the Software, and any particular application of the Software.

Use of the Software is at your sole discretion. You will be solely responsible for and bear the entire risk of any damage to your computer system or loss of data that results from the installation or use of the Software. Should the Software prove defective in any respect, you and not VARIAN assume the entire cost of any service and repair. This disclaimer of warranty constitutes an essential part of this Agreement. No use of the Software is authorized hereunder except under this Disclaimer.

**LIMITATION OF LIABILITY.** VARIAN, ITS SUPPLIERS AND LICENSORS SHALL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, OR PUNITIVE DAMAGES, INCLUDING BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES, BUSINESS INTERUPTION ARISING OUT OF OR RELATING TO USE OF THE SOFTWARE, INABILITY TO USE THE SOFTWARE, PROCUREMENT OF SUBSTITUTE SOFTWARE; MALFUNCTION OF THE SOFTWARE AND/OR DEFECTS IN THE SOFTWARE, WHETHER BASED ON CONTRACT, TORT, BREACH OF ANY EXPRESS OR IMPLIED WARRANTY OR OTHER LEGAL OR

EQUITABLE GROUNDS, EVEN IF VARIAN HAS BEEN ADVISED OF THE POSSIBLITY OF ANY SUCH DAMAGES, AND REGARDLESS OF ANY FUNDAMENTAL BREACH HEREOF OR OF ANY OTHER AGREEMENT.

VARIAN's maximum liability for any damages related to the Software shall be limited to $100.

**NO TRAINING, NO SUPPORT, NO SERVICE.** The Software comes with no training, no support, and no service from VARIAN. It is LICENSEE's sole responsibility to install and use the Software. In particular, VARIAN cautions you that normal installation procedures include configuration with a Varian InfinitySBC Spectrometer used in association with the Software, and VARIAN makes no representation as to the procedures and or difficulties that may or may not be encountered in your use of the Software in which you have not purchased and will not install a Varian InfinitySBC Spectrometer in conjunction with the Software.

**NO AGENCY.** Nothing in this Agreement shall be deemed to create any relationship of agency, partnership, or joint venture between you and VARIAN.

**TERMINATION.** If you materially breach this Agreement your right to use the Software will terminate immediately and without notice. All provisions of this Agreement shall remain in effect except the License Grant. Upon termination, you shall discontinue use of and destroy all copies of the Software.

**CONFLICTING AGREEMENTS.** In the event of any conflict or contradiction between the terms of this Agreement and the terms and conditions of collateral transactions between the parties, this Agreement shall govern all rights, obligations and liabilities concerning the Software.

**PARTIAL INVALIDITY.** In the event of the invalidity of any provision of this agreement, the parties agree that such invalidity shall not affect the validity of the remaining provisions of this agreement.

**CHOICE OF LAW, JURISDICTION.** This Agreement shall be deemed to be made under and shall be governed by and construed in accordance with the laws of the State of California, without regard to its choice of law rules. You expressly agree that exclusive jurisdiction for any claim or dispute relating to or arising out of this Agreement resides in the state and federal courts of the Northern District of California.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals and duly executed this Agreement the day and year first above written.

**VARIAN, INC.**

By: _____     Date: 12/21/07

Name: Casey Torrez
(Print)

Title: Contracts Manager

**LICENSEE**

By: _____     Date: 12/17/07

Name: Eric S. Walters
(Print)

Title: Partner

# EXHIBIT 31

_____

| | |
|---|---|
| **From:** | Evans, Emily A. |
| **Sent:** | Tuesday, December 04, 2007 7:35 AM |
| **To:** | 'Jeffrey.Sullivan@bakerbotts.com' |
| **Cc:** | Stephen Scheve (steve.scheve@bakerbotts.com); Paul F. Fehlner (paul.fehlner@bakerbotts.com); 'linda.glover@bakerbotts.com' |
| **Subject:** | Abraxis: Munson documents |

Dear Jeffrey:

At Dr. Munson's deposition, I noted the following deficiencies in his production in response to his subpoena:

- All emails, including attachments, relating to this litigation that were exchanged between Elan/Counsel for Elan and Dr. Munson. [Request Nos. 15, 16]

- Dr. Munson's engagement letter with Baker Botts and/or Elan. [Request Nos. 10, 11]

- Records of time and expenses for NMR time, operator time, and spectrometer use in connection with this litigation. [Request No. 8]

- Hardcopies of all NMR data files and NMR analyses created in connection with the work on this litigation, whether or not included in Munson's expert report, as well. [Request Nos. 1, 3, 5, 7, 12, 20]

- Any other documents responsive to Requests Nos. 1-20 that were not previously produced, especially those documents that were created by, reviewed by, sent to, or received from Dr. Munson relating to his work on this litigation.

In addition, as required by FRCP 26(a)(2) and FRCP 26(e)(1), please provide a complete list of the documents, identified by bates numbers where applicable, that were provided to, or reviewed by, Dr. Munson in connection with his expert report, as well as any additional documents provided to Dr. Munson in preparation for his deposition (e.g., any Abraxis Restricted Confidential Information).  *See* FRCP 26(e)(1) ("A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) . . . . With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report <u>and to information provided through a deposition of the expert</u> . . .") (emphasis added).

Please cure these deficiencies by supplementing Dr. Munson's production as soon as possible but no later than 5:00pm, Pacific Time, on Thursday, December 6.

Thank you,

Emily

Emily A. Evans
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304
Tel.:  (650) 813-5625
Fax:  (650) 494-0792
eevans@mofo.com

**From:** Jeffrey.Sullivan@bakerbotts.com [mailto:Jeffrey.Sullivan@bakerbotts.com]
**Sent:** Friday, February 22, 2008 9:20 AM
**To:** Kruze, Diana B.
**Cc:** Steve.Scheve@bakerbotts.com; Robert.Riddle@bakerbotts.com; linda.glover@bakerbotts.com;
Lisa.Chiarini@bakerbotts.com; Jennifer.Cozeolino@bakerbotts.com; jacqueline.lowe@bakerbotts.com;
PAUL.FEHLNER@bakerbotts.com
**Subject:** RE: Elan vs Abraxis/Elan document production

Diana:

    This will be our last correspondence on the subject of the NMR data of Elan, given that
Abraxis has had the electronic files underlying the data for months and has engaged in
literally dozens of hours of deposition not only of Elan's expert witness Dr. Munson, but of
many other fact witnesses.  In short, Abraxis's complaints remain incomprehensible and
baseless.  There is nothing further that Elan could produce, and Elan has more than met its
discovery obligations, for at least the below reasons.

    It is still very difficult to ascertain the nature or basis of Abraxis's complaint. Abraxis has
had Dr. Munson's raw testing data since November 19, 2007, ten (10) days prior to Dr.
Munson's deposition. Everything was disclosed, nothing was cherry-picked. Abraxis was able
to, and did, access and process the testing data. (Atwood Depo Tr. 320:25-321:7; Barich Depo
Tr. 82:10-12, 95:21-96:3, 151:4-11, Exs. 3A, 4, 9; Kruze e-mail dated 2/8/08; Attachment to
Kruze e-mail dated 2/8/08.) Moreover, Abraxis has demonstrated its ability to convert
SpinSight binary files into hardcopy text without any special software. (Barich Depo Tr.
134:22-135:7, Exh. 5.)

    Abraxis asked for Dr. Munson's raw electronic data, and Abraxis was provided with all raw
electronic data as it is kept in the ordinary course of business. (Elan also has produced all
spectra generated from Dr. Munson's raw data.)

    The Rules do not require Elan to produce hardcopies. As a courtesy, however, Elan did
produce hardcopies of the raw electronic data. As you know, the raw electronic time domain
data stored by the SpinSight software is a binary file. (A binary file uses a numeral system that
represents numeric values using two symbols, usually 0 and 1.) So in the spirit of Rule 34(a)
(1)(A), Dr. Munson asked Dr. Barich to translate the binary files into a reasonably usable form,
which in this case was a text file. (Barich Depo Tr. 232:5-23.) As you point out, Dr. Barich
found Dr. Munson's request to convert the binary data both "unusual" and "a little surprising"

because "there's quite a few data packages—software packages that are capable of opening SpinSight data; so I didn't understand why the request was being made." (Barich Depo Tr. at 234:22-235:18.).  Further discussion of hardcopy documents, provided as a courtesy and not required by the Rules in view of the earlier production of electronic files as kept in the ordinary course of business, appears to have little point.  If Abraxis is unhappy with the hardcopy files produced solely as a courtesy, it may rely upon the electronic files.  In any event, your complaints about the production of courtesy hardcopies are ungracious at best.

Dr. Barich's testimony confirmed what we explained in our January 24th email: NMR data is collected in the time domain (Barich Depo Tr. at 73:11-20; 147:6; 220:1-2), which may be further processed into the frequency domain and displayed as a spectrum. (Barich Depo Tr. at 80:4-17, 80:16-23.).  Accordingly, Dr. Barich testified that he might have, at Dr. Munson's request, opened a time domain data file and "processed it into a spectrum" for teleconferences between Elan's counsel and Dr. Munson. (Barich Depo Tr. at 234:12-21.)  All such spectra have been produced.

Further, Abraxis's e-mail grossly mischaracterizes Dr. Barich's testimony:

| | |
|---|---|
| "Only some of the files even opened using GRAMS. Many of the files that did open using GRAMS were skewed, as Dr. Barich readily admitted during his deposition. (Barich Depo Tr. at 82:14-83:5.)" | • Dr. Barich pointed out that the spectra he was shown "hasn't been processed properly." (Barich Depo Tr. 82:14-83:5.)<br><br>• Abraxis improperly processed the time domain data as a two-dimensional NMR experiment. (Barich Depo Tr. 82:14-83:5, 86:16-19 ("what I'm looking at here does not appear to me to be properly processed one-dimensional NMR data. And it's certainly important to process data correctly").) |
| "As Dr. Barich also made clear during his deposition, different software can lead to different spectra, each company that produces a spectrometer "does so in its own way," and "how they choose to store the data is different." (*See, e.g.,* Barich Depo Tr. at 83:18-84:4). Dr. Barich, an expert in ssNMR, has never even used many of the programs listed in your email, including iNMR; NUTS; Origin; RMN; GSim (17); and MestRe Nova." | • Dr. Barich actually testified that different software packages process time domain data in the same way. (Barich Depo Tr. 83:18-84:4.)<br><br>• Dr. Barich testified that he has opened NMR data on a Windows PC using GRAMS 32. (Barich Depo Tr. 79:18-80:9.)<br><br>• Dr. Barich testified that data stored by SpinSight can be transferred to other computer systems and read with other software packages. (Barich Depo Tr. 85:13-18.)<br><br>• Dr. Barich testified that he has personally opened SpinSight data with other software. (Barich Depo Tr. 87:6-12.) |

Abraxis's other conclusions are flatly belied by Dr. Barich's testimony:

| | |
|---|---|
| "Even more ironic, the "produced" hardcopy time domain data, converted with the Barich NMR Software, is unintelligible." | • When asked, Dr. Barich had no trouble explaining the meaning for various parameters found in the hardcopy time domain data. (Barich Depo Tr. 135:8-137:25.) |
| "That Dr. Munson would have run 28 other experiments 'just for fun' without viewing any of the results defies logic." | • Dr. Barich explained that Dr. Munson billed Elan only for 16 samples. (Barich Depo Tr. 209:24-210:20.) |

In short, we have addressed every objection you have raised, and Abraxis has had more than ample opportunity to examine the basis of Dr. Munson's NMR testing. Your continued correspondence raising baseless complaints as to the voluminous documentation and testimony provided to Abraxis serves no purpose except the tactical one of obscuring Abraxis's failure to secure any ssNMR data of its own to refute Dr. Munson's clear and well-supported data. The Court and the jury can draw their own conclusions as to why Abraxis omitted any such testing and instead opted to make endless and obfuscatory collateral attacks based upon nothing other than lawyer argument and false characterizations of Elan's extensive production on its testing. Further correspondence on these issues, months after the close of discovery, and as pre-trial activities are well underway, does not strike us as a fruitful use of the parties' time, nor do we think the Court would look favorably on it.

Thank you and best regards.

JDS

-----Original Message-----
**From:** Kruze, Diana B. [mailto:DKruze@mofo.com]
**Sent:** Friday, February 08, 2008 7:51 PM
**To:** Sullivan, Jeffrey D.
**Cc:** Scheve, Steve; Riddle, Robert; Glover, Linda; Chiarini, Lisa; Cozeolino, Jennifer; Lowe, Jacqueline; Fehlner, Paul F.
**Subject:** RE: Elan vs Abraxis/Elan document production

Dear Jeffrey:

We are deeply disappointed by Elan's continued unwillingness to meet its discovery obligations under the Federal Rules. Your statement that we have had the NMR testing data "in both electronic and hard copy form for months" is patently false.

Regarding the "hard copy" production of this data, this data was neither produced to us (1) as it is kept "in the ordinary course of business" or (2) in a timely manner.

First, the hardcopy time domain files that you produced are all but worthless. As you know, the hardcopy data that you produced was converted from its native form by special software specifically created by Dr. Barich at the instruction of Dr. Munson for the purpose of this litigation. (Barich Depo Tr. 232:5-23.) Contrary to your assertion, Dr. Barich testified that the documents produced in hard copy were not as kept in the ordinary course of business. Barich further testified that he found Munson's request to convert the data both "unusual" and "a little surprising." (Barich Depo Tr. at 234:22-235:18.) Instead, Dr. Barich testified

that this data is normally presented as frequency spectra. Indeed, as you yourself admit, "[f]or the human eye to make sense of data acquired in the time domain," it must be processed into a spectrum. Dr. Barich also testified that this is how the data was presented to Elan's counsel during teleconferences between attorneys and Munson. (Barich Depo Tr. at 234:2-21.) Plainly, the data that you produced to us - data that has been converted using special software written by Dr. Barich specifically for this litigation - is unusable. It is also worthy of note that Elan's counsel did not inform us of this conversion. Rather, we discovered Elan's use of the "Barich NMR Software" for the first time on January 25, 2008. To date, Elan has not provided us with the Barich NMR Software.

Second, your assertion that we have had this hardcopy data for months is belied by Elan's own "Munson Data Summary." As you readily admit, Elan only produced data from 3 runs (out of 34) on November 7 and 8th. These 3 runs were all experiments done with the Abraxane total composition, and according to your chart, do not even represent any of the data used in Munson's final report. In other words, as of Dr. Munson's deposition which occurred on November 29, Elan only had produced 1/11[th] of its testing data to us – in unusable format. As Elan's summary also makes clear, Elan did not produce the overwhelming majority of this data until January 22, 2008, and then only after repeated requests from Abraxis's counsel. (See, e.g., Evans letter dated 12/4; Kruze letter dated 1/22.)

These tests began in January 2007. Elan asserts that Dr. Barich, who generated this data, is a fact witness. According to Elan's assertion, then, this data should have been produced over a year ago during fact discovery. The NMR data also should have been produced during expert discovery, to allow our experts the opportunity to review it and opine on it in their reports. Rather than comply with its discovery obligations, however, Elan waited until after expert reports were due, Drs. Atwood and Munson had been deposed, indeed after the close of both expert and fact discovery, to give us this data. Even more ironic, the "produced" hardcopy time domain data, converted with the Barich NMR Software, is unintelligible.

As for the electronic data, Abraxis has spent thousands of dollars attempting to open and convert these files, and is still unable to view this data in the exact same way that Munson and Barich did. As I explained in my previous email, Abraxis had to: (1) hire an outside consultant; (2) purchase SpinSight software; (3) purchase a Sun Solaris 9 operating system; and (4) acquire an actual Sun computer. As you also know, the electronic time domain data provided to us is raw. There are several critical parameters that must be entered to make the spectra generated from this software exactly the same as what Barich and Munson produced. Dr. Barich confirmed this during his deposition. (See, e.g., Barich Depo Tr. at 80:10-14.) For example, how they apodized the spectra (there are at least 9 different ways to treat the peaks using SpinSight), what line width they chose, and how they phased the data. All these choices affect the shapes of the peaks. To date, we still do not know exactly what parameters Barich and Munson used. All of this information should have been provided to us months ago.

Your assertion that these files could have been opened using other software both misses the point and is incorrect. As a preliminary matter, Abraxis did attempt to open this data using GRAMS software - an industry standard for ssNMR data. Only some of the files even opened using GRAMS. Many of the files that did open using GRAMS were skewed, as Dr. Barich readily admitted during his deposition. (Barich Depo Tr. at 82:14-83:5.)

As Dr. Barich also made clear during his deposition, different software can lead to different spectra, each company that produces a spectrometer "does so in its own way," and "how they choose to store the data is different." (See, e.g., Barich Depo Tr. at 83:18-84:4). Dr. Barich, an expert in ssNMR, has never even used many of the programs listed in your email, including iNMR; NUTS; Origin; RMN; GSim (17); and MestRe Nova.

Moreover, had we chosen to convert this data using different software, Elan would have certainly objected to the data contained therein as manipulated. Indeed, Dr. Riddle objected to the GRAMS data during Barich's deposition.

Most importantly, it is Elan's obligation to produce this data in useable, readable format. It is Elan's obligation to produce it to us in the exact same format that Munson reviewed it in. To date, Elan has failed to do this.

Regarding Elan's "Munson Data Summary" chart, it appears to be both incomplete and incorrect. As a preliminary matter, your experts have produced the following spectra from NMR runs that are not listed in this chart: MUNSON0002466; MUNSON0002468; MUNSON0002489; MUNSON0002216; MUNSON0002467; MUNSON0002488. Of course, given the manner in which Elan produced these documents, it is impossible to ascertain with certainty which runs these spectra are associated with. As a much more serious matter, the chart reveals that Elan itself cannot ascertain which spectra for which runs were actually presented by Munson in his report. As an example, you have reported that Exhibit F to Munson's report is "formul_AsRec_vacp4.45k_pd2." Attached please a printout of the spectrum from "formul_AsRec_vacp4.45k_pd2" electronic file, opened using SpinSight. As you can see, this spectrum is different than Exhibit F. Either Elan's experts have manipulated this data is some undisclosed way, or (more likely) this data does not represent Exhibit F. Please advise. Also of note is MUNSON0002216, which Elan did not link to any run - does Elan even know which sample and run this spectrum is associated with? Please re-review your chart to: (1) make it complete; and (2) correct all errors.

Your assertion that Elan has "made every effort to aid [Abraxis] in gaining access" to this data is insulting. Please advise what steps Elan has taken to assist us. Other than providing us with an incomplete and incorrect "chart," you have never offered to or actually assisted us.

We also take great offense at the following question posed in your email: "if Abraxis were having trouble accessing this data, why was this not addressed with Dr. Munson during his deposition?" Quite frankly, your email dated 1/24/08 contains more useful information than we were able to elicit during Dr. Munson's entire deposition. As you are well aware, Dr. Munson was deliberately non-responsive and evasive during his deposition: some of his rambling answers to the simplest of questions lasted for over 10 minutes. Rather than answer questions directly, Dr. Munson chose to regurgitate his report verbatim to the court reporter. And Dr. Munson's report, as we all know, does not contain the vast majority of the NMR data that Dr. Barich generated. Indeed, Dr. Munson's report does not even allude to the 28 other experiments that Dr. Barich conducted. More importantly, please advise how Abraxis's counsel could have questioned Dr. Munson on data that had not yet been given to Abraxis. (*See above.*) Finally, Abraxis's counsel has repeatedly advised Elan of its deficient production. (*See, e.g.*, Evans 12/4 letter). That my email of 1/23/08 somehow comes as a shock to Elan is disingenuous at best.

Also disingenuous is your statement that "Dr. Munson did not generate/output, and does not have in his possession, custody, or control, any frequency domain spectra other than the ones set forth in his expert report." This is simply not the case. First, Drs. Munson and Berkland produced several unidentified spectra that are not contained in Dr. Munson's report. (*See, e.g*., MUNSON0002466; MUNSON0002468; MUNSON0002489; MUNSON0002216; MUNSON0002467; MUNSON0002488; MUNSON0002213; MUNSON0002204). Second, Dr. Barich testified that he printed out several spectra for Dr. Munson prior to meetings with Elan attorneys. (Barich Depo Tr. at 234:2-21.) And as you correctly point out, the time domain data is unintelligible unless it is viewed as spectra. That Dr. Munson would have run 28 other experiments "just for fun" without viewing any of the results defies logic.

Please allow us to clear up another confusion Elan seems to have. The 34 runs that we are referring to have

nothing to do with "calibration," as Elan's email asserts. These are all runs done on actual samples. Elan's "Munson Data Summary" chart confirms this, as did Dr. Barich during his deposition.

Elan: you have withheld this data from us for over a year. You have deprived us of the opportunity to have our experts review these documents, opine on them, conduct follow-up discovery, and ask deponents questions about them. This data, as you are well aware, is the ONLY evidence that Elan has to show that even a small portion of the paclitaxel in Abraxane is crystalline. Nonetheless, Elan chose to cherry-pick 6 spectra, instead of disclosing to us all 34 spectra considered by its experts, as required by the Federal Rules.

Unfortunately, this is not the only instance of Elan's withholding critical testing data. Elan has withheld its pre-suit tests that were "inconclusive" as to crystallinity. Then, Elan sent us a "privilege log" for Dr. Brittan, a testifying expert, withholding 500 more testing documents. Now, Elan is withholding testing documents from Dr. Munson, also a testifying expert. It is black letter law that Elan cannot use privilege as both a sword and a shield. Elan's pattern of hiding testing documents under the veil of privilege has significantly and irreparably prejudiced Abraxis. As I mentioned before, we will be moving to exclude shortly.

Sincerely,

Diana

Diana Kruze
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: 650.813.5649
Facsimile: 650.494.0792
dkruze@mofo.com

---

**From:** Jeffrey.Sullivan@bakerbotts.com [mailto:Jeffrey.Sullivan@bakerbotts.com]
**Sent:** Thursday, January 24, 2008 4:01 PM
**To:** Kruze, Diana B.
**Cc:** Steve.Scheve@bakerbotts.com; Robert.Riddle@bakerbotts.com; linda.glover@bakerbotts.com; Lisa.Chiarini@bakerbotts.com; Jennifer.Cozeolino@bakerbotts.com; jacqueline.lowe@bakerbotts.com; PAUL.FEHLNER@bakerbotts.com
**Subject:** FW: Elan vs Abraxis/Elan document production

Dear Diana:

We write in response to your below e-mail.

It is very difficult to ascertain the nature or basis of Abraxis's complaint. You refer to Elan's supposed "failure to have produced" documents that you have had in both electronic and hard copy form for months. We have made every effort to aid you in gaining access to them. We have been and remain willing to provide you with multiple different formats of the requested data (which is explicitly not required under Fed. R. Civ. P. 34(b)(iii)). We have indisputably produced these files both "as they are kept in the ordinary course of business" and "in a form . . . in which [they] are ordinarily maintained," as well as producing hard copies upon your request. Fed. R. Civ. P. 34(b)(i)-

(ii).  We have made available witnesses who could testify to any desired aspect of the data acquisition and analysis, and have done nothing to impede such examination.

While we have, then, spent thousands of dollars in expert and lawyer time attempting to assist Abraxis in its analysis of fully produced data, produced in its ordinarily-kept format, we will take this occasion to offer (only as a courtesy) some further suggestions as to what appear to be fundamental misconceptions on your part regarding the nature of this data.  In summary, you have all the data and have had it for months, and (while it is not Elan's job to do Abraxis's work for it), it appears that what you are characterizing as insuperable problems of data analysis should in fact be fairly trivial steps to anyone conversant with NMR.

First, Elan and Dr. Munson have produced all raw (time domain) NMR data acquired in this case. This data was produced at Abraxis's request on November 19, 2007 in electronic form (MUNSON0002203 ) and in the exact manner in which it was collected on the NMR instrument.  Elan and Dr. Munson have also produced hardcopy versions of this data (we will send to you later today a single hardcopy version of one file for which upon review we weren't immediately able to locate a hardcopy counterpart to the data file).  A chart cross-referencing the production numbers for each hard copy counterpart of the data files is attached hereto.  Accordingly, your allegation that Elan and Dr. Munson are withholding information has no basis in fact and is directly contradicted by your admission that you have all the data files.

Turning to the different issue of why Abraxis seems unable to interpret this data (an apparent failing in technical abilities for which Elan can hardly be responsible), we have difficulty understanding why Abraxis is having problems with the data, as it can readily be accessed through a number of computer operating systems using a variety of software applications designed for analysis of NMR data.  Moreover, if Abraxis were having trouble accessing this data, why was this not addressed with Dr. Munson during his deposition? Emily Evans questioned Dr. Munson regarding NMR data, he accurately identified the SpinSight software, and would have answered any other specific questions regarding data acquisition and analysis that were within his knowledge.  That Abraxis chose not to make such further inquiries at that time is, again, not within Elan's control.  Indeed, your e-mail complaining that Abraxis has been unable to access the data comes as a surprise to Elan as Dr. Atwood testified that his analysis of the data was well underway at the time of his deposition.  (Atwood Deposition 12/5/2007 320:25-321:7).

Next, what Abraxis claims to be deficiencies in Elan's production appear to be more a matter of Abraxis's experts' lack of familiarity with NMR spectroscopy.  Accordingly, Elan offers the following explanation of NMR spectroscopy for your experts' consideration:

NMR data is acquired in a time domain (i.e., a free induction decay).  For the human eye to make sense of data acquired in the time domain, it may be processed into a spectrum.  This spectrum displays the data in a frequency domain.  The conversion from the time domain to the frequency domain (i.e., a spectrum) is made using a mathematical

process called a Fourier transformation.



It should be apparent that one could generate data in the time domain, but not then perform further processing to convert that data into a frequency domain. For example, time domain data may be acquired in the course of calibrating an NMR instrument or optimizing data acquisition parameters. Accordingly, one would not expect there to be a spectrum for every time domain data set saved on an NMR instrument. This is in fact the case for Dr. Munson's time domain data -- many related to calibrating operations or the like and were never converted to frequency domain spectra. To be clear, Dr. Munson did not generate/output, and does not have in his possession, custody, or control, any frequency domain spectra other than the ones set forth in his expert report. Accordingly, your assumption that "each run generates a spectrum" is simply incorrect. Some runs may and do generate a time domain data set but no frequency domain data plot (i.e., spectrum).

The CD that Elan and Dr. Munson produced (MUNSON0002203) contains 34 time domain files. Of these 34 files, six (6) were used to generate the spectra provide in Dr. Munson's report. Dr. Munson did not generate spectra for every set of time domain data collected, nor would anyone utilizing an NMR be expected to generate spectra corresponding to every time domain file, such as one related to instrument calibration steps. Accordingly, your accusation that Elan is "cherry picking" data reveals that Abraxis's experts lack even rudimentary knowledge about NMR spectroscopy. To be clear, all frequency domain spectra plots that were ever output have been disclosed to Abraxis.

Finally, the time domain files on the MUNSON0002203 CD are in a useable format that is readily accessible. The data are accessible with or without the SpinSight software. SpinSight data can be imported into a number of common NMR analysis applications, including the GRAMS software used by Abraxis's expert Dr. Atwood. Examples of applications into which SpinSight data may be imported include: GRAMS; iNMR; NUTS; Origin; RMN; ACD/2D NMR Manager; GSim (17); MestRe Nova; etc. These types of applications are available on different computer operating systems, such as, UNIX, PC, and MAC systems. Some of these applications can actually be downloaded from the Internet for free.

Elan is thus mystified by Abraxis's contention that it has spent "countless man-hours trying to open this data, to no avail" and expended "thousands of dollars in purchasing software and platforms." Upon receipt of your email, Elan undertook a simple Google search and found software applications available for free, as well as for a nominal cost, that allow access to UNIX based files (*e.g.*, http://www.freedownloadscenter.com/Best/_tar-converter.html, offering an application for access to .tar format files). Google also reveals how to access SpinSight data, including all the software listed above. Simply stated, information about and tools for accessing NMR data across software applications and operating system platforms are publicly available and readily known to those conversant with NMR spectroscopy.

We are sorry that you and your experts have not made recourse to these readily-available resources and information.  We certainly never suggested or required Abraxis to take any particular steps (such as buying expensive hardware) when other, much simpler, options would have sufficed.  We hope now that we have pointed you in the right direction, you can make whatever review and use you wish of the data that we have long since produced in the only forms in which it exists.  I don't know that there is anything more we could possibly do to aid you in your job of understanding files produced as they are and were stored and used by the producing party, but if you have any follow-up questions, please let us know and we will see what (if anything) we or anyone could do beyond the extensive (and supererogatory) assistance and information we've provided earlier and herein.

Thank you and best regards.

JDS

<<Munson Data Summary.doc>>

-----Original Message-----
From: Kruze, Diana B. [mailto:DKruze@mofo.com]
Sent: Wednesday, January 23, 2008 3:09 PM
To: Sullivan, Jeffrey D.; Fehlner, Paul F.; Scheve, Steve
Cc: Chiarini, Lisa; Riddle, Robert; Glover, Linda
Subject: RE: Elan vs Abraxis/Elan document production

Dear Elan team:

After expenditure of considerable time and money, we are unable to open much of the electronic NMR data that was produced to us as MUNSON0002203.  These NMR tests are the only basis for Elan's contention that a small portion of the paclitaxel in Abraxane is crystalline.  They are central to Elan's infringement case and should have been produced to us in usable form long ago.

From the names of the electronic files produced, we can ascertain that Drs. Munson and Barich ran over 30 different NMR tests in connection with this case.  Each run generates a spectrum, as well as several other data files that contain the specific parameters used for each test.  As you know, Elan has failed to produce many of these spectra in hard copy form, despite the fact that Elan's experts were easily able to convert their data into jpegs and pdfs to send to Elan's counsel.  See, e.g., BERKLAND0000429-433 & MUNSON0002464 (discussing several spectra).  It is black letter law that Elan cannot cherry pick the test results conducted and relied upon by its testifying experts, choosing to present only a few to the jury while hiding the rest.  Nonetheless, Elan has failed to produce the other NMR test results in usable format four months after opening expert reports were due (and many more months after Abraxis asked for Elan's testing).

Elan's production of the data in electronic format does not remedy this deficiency.  As you are aware, there are significant barriers to accessing the data you sent.  First, the data can only be opened using outdated SpinSight software.  Because this legacy software is so outdated, the licensor, Varian, declined to offer any technical assistance or support for the software.  To make matters worse, SpinSight software can only be run on a Sun computer, using a UNIX system.  We also had to purchase and load a Sun Solaris 9 operating system.  We have now learned that, after hiring an outside consultant and securing access to a Sun computer, another piece of outdated operating software is required.  Abraxis's experts, attorneys, IT staff, and outside consultants have spent countless man-hours trying to open this data, to no avail.  Abraxis has also expended thousands of dollars in purchasing software

and platforms, not to mention the still-untallied costs related to the time spent by Abraxis's experts and consultants.


Elan's failure to have produced these documents constitutes a blatant violation of the Federal Rules.  Abraxis has already been significantly prejudiced, including by not being able to (1) conduct follow up discovery, (2) show these documents to our experts and have our experts opine on them in reports, and (3) question Elan's experts regarding these tests during depositions.  Abraxis will seek to preclude Elan's data for the incurable prejudice Abraxis has suffered due to Elan's systematic failure to comply with its discovery obligations


Thanks,

Diana

Diana Kruze
Morrison & Foerster, LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: 650.813.5649
Facsimile: 650.494.0792
dkruze@mofo.com <http://www.mofo.com/>


========================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.


For information about this legend, go to
http://www.mofo.com/Circular230.html


========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.


========================================================================