IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 06-438-GMS |
| ABRAXIS BIOSCIENCE, INC., | ) ) | |
| Defendant. | ) ) | |


**DEFENDANT ABRAXIS BIOSCIENCE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF NONINFRINGEMENT, INVALIDITY, INEQUITABLE CONDUCT, UNCLEAN HANDS, AND NO WILLFULNESS**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...........................................................................................1

II.    THE LEGAL STANDARD...........................................................................1

III.   ABRAXIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF
       NONINFRINGEMENT OF THE '363 PATENT CLAIMS 1, 3, 5, 10, AND 11 ..............1

       A.    Abraxane Does Not Contain "Crystalline Medicament.".....................1

       B.    Abraxane Is Not Essentially Free of Intermolecular Crosslinkages......................3

       C.    Elan Presented No Evidence That Abraxane Contains Any Particles That
             Are Both Entirely Crystalline And Have Surface Modifiers Essentially
             Free of Intermolecular Crosslinkages...................................................5

       D.    Abraxane Does Not Infringe Under The Doctrine of Equivalents .........................6

       E.    Abraxis Does Not Induce Infringement or Contributorily Infringe ......................7

       F.    The Reverse Doctrine of Equivalents Prevents a Finding of Infringement...........8

IV.    ABRAXIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF THE
       ABSENCE OF WILLFUL INFRINGEMENT .....................................................8

V.     ABRAXIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF
       INVALIDITY UNDER 35 U.S.C. § 112 ..........................................................10

       A.    The Evidence Established that '363 and '025 Patent Claims Are Invalid
             Under 35 U.S.C. § 112 .........................................................................10

             1.    Abraxis is Entitled to Judgment That The Specifications Fail To
                   Provide An Enabling Disclosure. ............................................10

             2.    Abraxis is Entitled to Judgment That The Specifications Fail to
                   Provide A Sufficient Written Description. ..............................12

VI.    ABRAXIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF
       UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT DURING
       PROSECUTION OF THE '363 AND '025 PATENTS .........................................13

VII.   ABRAXIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF
       UNENFORCEABILITY OF THE '363 PATENT BASED ON ELAN'S
       UNCLEAN HANDS ....................................................................................15

VIII.  DAMAGES ................................................................................................16

# TABLE OF AUTHORITIES

Page

## CASES

*AK Steel Corp. v. Sollac,*
    344 F.3d 1234 (Fed. Cir. 2003) .................................................................................... 10

*Amstar Corp. v. Envirotech Corp.,*
    823 F.2d 1538 (Fed. Cir. 1987) .................................................................................... 17

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...................................................................................................... 1

*Aptix Corp. v. Quickturn Design Sys., Inc.,*
    269 F.3d 1369 (Fed. Cir. 2001) .................................................................................... 15

*Athletic Alternatives v. Prince Mfg., Inc.,*
    73 F.3d 1573 (Fed. Cir. 1996) ...................................................................................... 7

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.,*
    501 F.3d 1274 (Fed. Cir. 2007) .................................................................................... 10

*Bayer AG v. Elan Pharm. Research Corp.,*
    212 F.3d 1241 (Fed. Cir. 2000) .................................................................................... 6

*CVI/Beta Ventures v. Tura L.P.,*
    112 F.3d 1146 (Fed. Cir. 1997) .................................................................................... 5

*Cargill, Inc. v. Canbra Foods, Ltd.,*
    476 F.3d 1359 (Fed. Cir. 2007) .................................................................................... 13

*Chiron Corp. v. Genentech, Inc.,*
    363 F.3d 1247 (Fed. Cir. 2004) .................................................................................... 12

*Code-Alarm, Inc. v. Electromotive Techs. Corp.,*
    No. 96-1368, 96-1369, 96-1385, 1997 U.S. App. LEXIS 13031 (Fed. Cir. June 4,
    1997) .............................................................................................................................. 16

*DSU Med. Corp. v. JMS Co.,*
    471 F.3d 1293 (Fed. Cir. 2006) .................................................................................... 7

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
    363 F.3d 1263 (Fed. Cir. 2004) .................................................................................... 7

## TABLE OF AUTHORITIES
(continued)

Page

*Enpat, Inc. v. Microsoft Corp.*,
6 F. Supp. 2d 537 (E.D. Va. 1998) ...................................................................... 17

*Ethicon, Inc. v. United States Surgical Corp.*,
921 F. Supp. 901 (D. Conn. 1995) ...................................................................... 14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
344 F.3d 1359 (Fed. Cir. 2003) ............................................................................ 6

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
339 U.S. 605 (1950) ............................................................................................. 8

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
340 F.3d 1314 (Fed. Cir. 2003) ............................................................................ 1

*Hoganas AB v. Dresser Indus., Inc.*,
9 F.3d 948 (Fed. Cir. 1993) ................................................................................. 6

*In re Clark*,
522 F.2d 623 (C.C.P.A. 1975) ............................................................................ 14

*In re Fisher*,
421 F.3d 1365 (Fed. Cir. 2005) .......................................................................... 10

*In re Seagate Tech., LLC* ,
497 F.3d 1360 (Fed. Cir. 2007) ............................................................................ 8

*Johnson & Johnston Assocs., Inc., v. R.E. Serv. Co.*,
285 F.3d 1046 (Fed. Cir. 2002) ............................................................................ 6

*KSR Int'l Co. v. Teleflex, Inc.*,
127 S. Ct. 1727 (2007) ....................................................................................... 10

*Keystone Driller Co. v. Gen. Excavator Co.*,
290 U.S. 240 (1933) ........................................................................................... 15

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*,
487 F.3d 897 (Fed. Cir. 2007) ............................................................................ 13

*Ormco Corp. v. Align Tech., Inc.*,
498 F.3d 1307 (Fed. Cir. 2007) .......................................................................... 11

-ii-

## TABLE OF AUTHORITIES
(continued)

Page

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007) ............................................................................ 17

*Process Control Corp. v. HydReclaim Corp.*,
    190 F.3d 1350 (Fed. Cir. 1999) ............................................................................ 10

*Rohm and Haas Co. v. Crystal Chem. Co.*,
    722 F.2d 1556 (Fed. Cir. 1983) ............................................................................ 14

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d, 1107 (Fed Cir. 1985) .......................................................................... 6, 8

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*,
    275 F.3d 1371 (Fed. Cir. 2002) .............................................................................. 7

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*,
    347 F.3d 1355 (Fed. Cir. 2003) .............................................................................. 6

*Unitherm Food Sys. v. Swift-Eckrich, Inc.*,
    546 U.S. 394 (2006) ................................................................................................ 1

## STATUTES

35 u.s.c. § 112 ........................................................................................................ 10, 12, i

35 U.S.C. § 285 ................................................................................................................ 15

37 C.F.R 1.56 (2000) ...................................................................................................... 13

Fed. R. Civ. P. 11 ............................................................................................................ 15

Fed. R. Civ. P. 37 ............................................................................................................ 15

Fed. R. Civ. P. 50(a) ........................................................................................................ 1

Fed. R. Civ. P. 50(a)(1). "Rule 50(a) .............................................................................. 1

8th Ed., Rev. 6 ................................................................................................................ 14

Patent Office's Manual of Patent Examining Procedure § 2012 ...................................... 14

## I.    INTRODUCTION

Abraxis respectfully moves for judgment as a matter of law under Fed. R. Civ. P. 50(a) on the following issues.

## II.    THE LEGAL STANDARD

Judgment as a matter of law ("JMOL") is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). "Rule 50(a) allows a party to challenge the sufficiency of the evidence prior to submission of the case to the jury, and authorizes the District Court to grant such motions at the court's discretion." *Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 399 (2006).[1] "[T]he trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III.    ABRAXIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF NONINFRINGEMENT OF THE '363 PATENT CLAIMS 1, 3, 5, 10, AND 11

### A.    Abraxane Does Not Contain "Crystalline Medicament."

All claims at issue in this lawsuit require that Abraxane meet the "crystalline medicament" claim element. In its Markman Order, the Court held "crystalline medicament useful in treating cancer" means "a medicament suitable for treating cancer that has a regular arrangement of atoms or molecules in a space lattice, as distinguished by amorphous." The Court has clarified that "the entire medicament has to have a 'has a regular arrangement of atoms or molecules in a space lattice, as distinguished from amorphous.'" (5/19/08 Order at 2).

There has been no evidence that the paclitaxel in Abraxane particles is entirely

---

[1] The Federal Circuit applies the JMOL standard from the district court's respective circuit when reviewing appeals from orders granting or denying JMOL. *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1318 (Fed. Cir. 2003) ("We review the grant or denial of JMOL without deference by reapplying the JMOL standard of the district court.").

crystalline. Elan's evidence on crystallinity came from Dr. Eric Munson, who opined that between 3.5 and 12 percent of the paclitaxel in the nanoparticles in Abraxane is crystalline. (Tr. at 712:7-15). Taking this evidence in a light most favorable to Elan, this means that the paclitaxel in Abraxane particles is between 96.5 and 88% amorphous. Based solely on that opinion, Dr. Munson leapt to the conclusion that there is infringement. (Tr. at 670:9-24). As a matter of law, however, testimony that the paclitaxel in Abraxane is overwhelmingly amorphous cannot support a conclusion that the "entire medicament" is crystalline.[2]

Dr. Munson never provided testimony that the medicament in any nanoparticle is entirely crystalline, let alone that this is true of Abraxane more generally. Thus, no reasonable jury could find for Elan. This result is, of course, consistent with Elan's own conclusion in its motion for reconsideration that the court's claim construction, as reflected in its May 19, 2008 order, was equivalent to a summary judgment given the evidence obtained and disclosed in Dr. Munson's expert report. Elan's Motion for Reconsideration at 1.

Moreover, the evidence at trial shows that Dr. Munson's legally-insufficient 3.5-12% crystallinity figure is premised on incorrect science. Dr. Atwood's testimony establishes that the opinion of Elan's expert Dr. Munson relied exclusively on an incorrect deconvolution analysis. (Tr. at 707:8-12; 1082:9-1097:3; DX-643; DX-644; DX-646). This evidence in concert with Dr. Atwood's and Dr. Desai's testimony that Abraxis's XRPD and other data establish that the paclitaxel in Abraxane is amorphous, whether in the vial or in reconstituted Abraxane, make it impossible for a reasonable jury to conclude that Abraxane meets the crystalline medicament

---

[2] Further, if the claims are construed to cover particles in which the medicament is overwhelmingly amorphous, then they are invalid for failure to meet the written description and enablement requirements. *See* Sections V.A.1-2, below.

limitation.[3]  (Tr. at 1040:22-1041:10; 1052:14-1055:15; 1062:12-1064:1 (DX-41); 1065:14-

1066:3; 1095:12-1097:3; DX-643; DX-644; DX-646; (Dr. Desai) 1232:18-1233:20; 1252:17-

1254:7; JX-21; 1264:17-1266:19; JX-6; 1266:24-1267:16; DX-41; 1293:8-1297:7; DX-06; DX-

239; DX05; testimony of Dr. Soon-Shiong).  Elan did not rebut this evidence, or even question

Dr. Atwood about his opinions.  (Tr. at 1182:19-21).  The evidence is overwhelming.  Abraxane

is amorphous, not crystalline.  (DX-01)  To infringe, the entire medicament must be crystalline,

not amorphous.  (DX-03; DX-07)  Judgment should be entered.

**B.    Abraxane Is Not Essentially Free of Intermolecular Crosslinkages.**

There is no evidence in the record that the human serum albumin ("HSA") adsorbed to

the surface of Abraxane particles is essentially free of intermolecular crosslinkages.

Neither Elan nor its experts conducted any tests to determine whether the albumin (which

is a surface modifier) in Abraxane is crosslinked.  Elan relies entirely on the testimony of

Dr. Manning to meet the relevant claim limitation, which requires that the surface modifier must

be "noncrosslinked" or under the claim construction "essentially free of intermolecular

crosslinkages."  (Markman Order at 2).  Dr. Manning concludes that the albumin in the total

composition (paclitaxel/albumin nanoparticles and the free albumin) is 20% crosslinked.  (Tr. at

561:2-562:14; 594:14-595:19; 1382:9-1385:10).  Nonetheless, it is undisputed that the only test

provided in the record that tested the albumin at the surface of the nanoparticles demonstrates

that it is 55% crosslinked.  (Tr. at 550:11 – 551:23; 594:14-595:19).  Under either analysis, the

albumin (whether 20% or 55% crosslinked) is not "essentially free of intermolecular

crosslinkages."

---

[3] This is true whether or not the Court accounts for the adverse inference that arises from Elan's
conscious decision to withhold testing results.  5/22/08 Order Regarding Abraxis's Motions In
Limine Nos. 1 and 4.

Elan seeks to avoid this conclusion by interpreting "noncrosslinked" to mean not crosslinked by means of "strong permanent" or "covalent" bonds. (Tr. 551:21-23). This conclusion is not consistent with the Court's claim construction and thus cannot avoid entry of judgment as a matter of law. (Markman at 2). Nor did Elan present evidence of testing that demonstrates that the albumin in Abraxane is not crosslinked by means of strong or covalent bonds.

Abraxis, on the other hand, presented extensive testimony from its Vice President of Research and Development (and co-developer of Abraxane) Dr. Neil Desai that not only is the HSA used in Abraxane non-crosslinked but that the crosslinking is actually a critical feature of Abraxane. (Tr. 1218:5-6 ("And around the nanoparticles is a thin layer of the albumin, which is cross-linked"); Tr. 1221:13-19 ("The idea of having albumin as a cross-linked shell around it [amorphous paclitaxel] helps to stabilize that structure...."); 1223:23-1224:2; 1229:1-3; 1229:21-1230:16 (describing the manufacturing process used by which the albumin becomes cross-linked); 1230:22-25; 1258:18-24; 1294:8-24).

Dr. Desai testified about an Abraxis document which set forth a summary table evaluating whether there was cross-linking in the Abraxane particles and found there to be at least 55% of the albumin on the surface of the particles to be cross-linked to each other. (DX112; Tr. 1285:17-1286:9). Furthermore, Dr. Desai testified about experiments performed by Abraxis to investigate the nature of the cross-linking between the albumin and this helped determine that again, 55% of albumin is cross-linked on the surface. (Tr. 1286:10-21). Finally, Dr. Desai testified that further experiments showed that the nature of the cross-linking was due to a disulfide bond (or a disulfide link). (Tr. 1287:2-9; 1287:10-1288:5 (describing studies and result of studies done to discover nature of the albumin cross-linking on the surface of the

nanoparticle – a spontaneously formed disulfide bond); DX-76). The disulfide bond cross-linked is not seen as foreign by the body, since cross-linked albumin is in the body at all times. (Tr. at 1362:3-13). Abraxis's expert Dr. Amiji also testified based on these same documents that Abraxane contains 55% of the albumin on the surface of the particles cross-linked to each other. (Tr. 1377:15-26 ("...albumin...is significantly cross-linked on the surface of Abraxane"); 1378:13-21 ("...total composition of the cross-linked albumin is...about 55%"); 1379:10-14 (same); *see generally* 1377:15-1381:23).

There is no evidence for a finding that Abraxane meets the "non-crosslinked surface modifier" claim limitation, and uncontroverted evidence that it does not. (Tr. 1382:1-8 (no Elan test on cross-linking in Abraxane); 1384:15-21 (no Elan opinion contesting 55%, no testing by Elan on Abraxane cross-linking).) Judgment as a matter of law of noninfringement should be granted.

### C. Elan Presented No Evidence That Abraxane Contains Any Particles That Are Both Entirely Crystalline And Have Surface Modifiers Essentially Free of Intermolecular Crosslinkages.

In addition to the above two independent bases for judgment of noninfringement, judgment should also be entered for Abraxis because Elan did not present any expert opinion or other evidence that any particular particles in Abraxane incorporate <u>both</u> an entirely crystalline medicament and non-crosslinked HSA as a surface modifier. Both must be present in the same particles for infringement to occur. Because this evidence is completely missing, judgment of noninfringement should be entered on this basis as well. *CVI/Beta Ventures v. Tura L.P.,* 112 F.3d 1146, 1162 (Fed. Cir. 1997) (where there is no evidence to support a finding of infringement, an infringement verdict must be reversed and judgment of non-infringement entered).

5

### D.    Abraxane Does Not Infringe Under The Doctrine of Equivalents.

Elan's amendments and disclaimers of amorphousness in the prosecution history for the

'363 patent legally foreclose invocation of the doctrine to reach Abraxane. *See Festo Corp. v.*

*Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003); *Hoganas*

*AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951-53 (Fed. Cir. 1993) (arguments during prosecution –

whether or not required to secure allowance – may result in surrender of scope).  Prosecution

history estoppel is a question of law decided by the Court. *Bayer AG v. Elan Pharm. Research*

*Corp.*, 212 F.3d 1241, 1251 (Fed. Cir. 2000).

While Elan argued that the patentees distinguished only amorphous medicaments

contaminated with solvents (Tr. 305:6-14; 306:14-18; 331:7-10; 369:12-25), as opposed to

amorphous medicaments in general, the record shows that the patentees made numerous

statements disclaiming amorphous particles in general and relying on crystallinity as a limitation

to achieve patentability (Tr. 330:25-331:6; DX-07)  *See Bayer AG*, 212 F.3d at 1254; *Talbert*

*Fuel Sys. Patents Co. v. Unocal Corp.*, 347 F.3d 1355, 1360 (Fed. Cir. 2003).  Elan also

overcame prior art by adding the non-crosslinked limitation.  (Tr. 1376:14-1377:10).

Moreover, judgment should be entered as a matter of law that amorphous medicaments

are not equivalent to the claimed crystalline medicament (Tr. at 351:1-352:17 (Dr. Liversidge);

738:15-739:5 (Dr. Danishefsky); DX-07; DX-03).[4]  Dr. Desai testified that the amorphousness of

the paclitaxel in Abraxane is a "critical" feature.  (Tr. 1220:15-1221:8-19 (crosslinking of

---

[4] Elan's apparent attempt to show equivalents through the testimony of Dr. Taft does not provide
any rational basis for equivalents because there was no showing that the Elan formulations
discussed by Dr. Taft met the asserted claim limitations.  Further, Dr. Taft did not conduct a
proper analysis of the accused product to the claim limitations on an element-by-element basis.
(Tr. at 778:6-778:15).  Infringement, either literally or under the doctrine of equivalents, does not
arise by comparing the accused product "with a preferred embodiment described in the
specification, or with a commercialized embodiment of the patentee." *Johnson & Johnston*
*Assocs., Inc.,  v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (quoting *SRI Int'l v.*
*Matsushita Elec. Corp.*, 775 F.2d, 1107, 1121 (Fed Cir. 1985)).

adsorbed human serum albumin also "critical".)  Similarly, Dr. Amiji testified that the amorphous paclitaxel in Abraxane would not be equivalent to crystalline paclitaxel. (Tr. 1387:13-14; JX-81; 1388:20-1390:9; DX-407).  There was no substantial evidence to the contrary.  In particular, there was no testing presented by Elan regarding this issue.

Further, as a legal matter, application of the doctrine of equivalents to encompass amorphous medicament would violate the Court's construction of "consisting essentially of" by vitiating the "crystalline medicament" claim limitation.  *See Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 275 F.3d 1371, 1375 (Fed. Cir. 2002); *Athletic Alternatives v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996) ("the doctrine of equivalents is not a license to ignore or erase . . . structural and functional limitations of the claim, limitations on which the public is entitled to rely in avoiding infringement.") (citations omitted).  No matter what conclusion the Court reaches regarding literal infringement, infringement under the doctrine of equivalents by an amorphous medicament is legally foreclosed.

### E.     Abraxis Does Not Induce Infringement or Contributorily Infringe.

Indirect infringement requires proof of direct infringement, which Elan failed to show. *E.g.*, *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).

Elan also had to prove those elements specific to its claims of induced infringement, which it failed to do.  In particular, for its induced infringement claim, Elan had to prove that Abraxis acted with the specific intent of inducing infringement.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).  Elan failed to introduce any evidence of such intent to carry its burden on inducement, and judgment should be entered for Abraxis as a matter of law. Further, the uncontradicted testimony of Dr. Desai specifically disproves the presence of the requisite intent.  (Tr. at 1232:18-1233:20; 1252:17-1254:7; JX-21; 1264:17-1266:19; JX-6; 1266:24-1267:16; DX-41; 1293:8-1297:7).

7

**F.    The Reverse Doctrine of Equivalents Prevents a Finding of Infringement.**

As an alternative basis, Abraxis moves for judgment as a matter of law that it does not infringe under the reverse doctrine of equivalents ("RDOE"). Under RDOE, though an allegedly infringing product includes all of the elements of at least one of the patent claims, there still may be no infringement if the product is so changed that although it performs the same or similar function to produce substantially the same result as that defined by a patent claim, it does so in a substantially different way. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950); *SRI Int'l*, 775 F.2d at 1123-24. Abraxis has shown that any "crystalline" particles, if they could be shown to exist in Abraxane, would be incidental and unintentional by-products. (Tr. at 1232:18-1233:20; 1252:17-1254:7; JX-21; 1293:8-24). Once the defendant comes forward with evidence that the reverse doctrine of equivalents applies, to prove infringement, the plaintiff, who retains the burden of proof, must rebut that evidence by a preponderance of the evidence. *SRI Int'l*, 775 F.2d at 1123-24. Elan has not done so and judgment should be entered.

**IV.    ABRAXIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF THE ABSENCE OF WILLFUL INFRINGEMENT**

There is no evidence of willfulness. Elan has the burden of proof of willfulness by clear and convincing evidence, but has failed to adduce *any* evidence that Abraxis proceeded in the face of an objectively high likelihood that its actions infringed a valid '363 patent, and that this objectively high risk was either known or so obvious that it should have been known to Abraxis. *In re Seagate Tech.*, LLC , 497 F.3d 1360 (Fed. Cir. 2007), *cert. denied*, __ U.S. __, 2008 U.S. LEXIS 2153 (2008).

Both Abraxis's documents and Elan's documents, as reflected in the record, demonstrate that both parties believed before or during 2005 that Abraxis did not infringe because Abraxane had amorphous medicament. (Tr. at (Dr. G. Liversidge) 387:23 - 388:23; DX-272;

(Dr. E. Liversidge) 521:15 - 522:16; DX-285; DX-302; DX-328; (Dr. Atwood) 1062:17-
1065:20; DX-41; DX-265; 1096:23-1097:8; 707:8-12 [Dr. Munson]; 1082:9-1097:3; DX-643;
DX-644; DX-646; (Dr. Desai) 1232:18-1233:20; 1252:17-1254:7; JX-21; 1264:17-1266:19; JX-
6; 1266:24-1267:16; DX-41; 1293:8-1297:7; DX-01; DX-03; DX-05; DX-06; DX-07; DX-239;
testimony of Dr. Soon-Shiong). Elan's own statements that it contemplated abandoning an
infringement case are by themselves a sufficient indication of this fact.

Moreover, there is absolutely no testimony or documentary evidence showing that
Abraxis acted recklessly with regard to infringement. To the contrary, Abraxis's internal
documentation regarding Abraxane, its internal testing of Abraxane, its filings with the FDA, and
the highly credible testimony of Drs. Patrick Soon-Shiong and Neil Desai show the
reasonableness of its belief that there was no infringement. (Tr. at 1232:18-1233:20; 1252:17-
1254:7; JX-21; 1264:17-1266:19; JX-6; 1266:24-1267:16; DX-41; JX-06; 1293:8-1297:7;
testimony of Dr. Soon-Shiong). This evidence demonstrates that Abraxis intended to distinguish
itself from Elan by developing an amorphous form of paclitaxel approved for use in humans, and
believed that it had succeeded in that goal. ((Dr. Desai) 1232:18-1233:20; 1252:17-1254:7; JX-
21; 1264:17-1266:19; JX-6; 1266:24-1267:16; DX-41; 1293:8-1297:7; testimony of Dr. Soon-
Shiong). Elan's own documents demonstrate the reasonableness of the belief that a competitor
could avoid infringement of the '363 patent by using an amorphous formulation. That was
Elan's own conclusion. (*E.g.* Tr. 390:2-17; DX-328 ("Competitor must either formulate with
particles above 1000nm (therefore will not be bio equivalent to elan product) or produce
amorphous formulation")). Elan's aggressive litigation tactics should be rejected. (DX-277)

Thus, there is no rational basis for any finding other than nonwillfulness and judgment
should be entered for Abraxis as a matter of law.

9

V.    **ABRAXIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF INVALIDITY UNDER 35 U.S.C. § 112**

    A.    **The Evidence Established that '363 and '025 Patent Claims Are Invalid Under 35 U.S.C. § 112.**

The documents and witnesses presented at trial showed that the applicants claimed far more broadly than Elan had possession of or enabled those of ordinary skill in the art to make and use.  The evidence also showed the applicants' repeated failure to disclose inculpatory information to the PTO during prosecution, resulting in a weakened presumption of validity. *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1745 (2007).

    1.    **Abraxis is Entitled to Judgment That The Specifications Fail To Provide An Enabling Disclosure.**

The "enablement" requirement of § 112 demands that the patent specification enable "those skilled in the art … to make and use [the] full scope of [the] claimed invention without undue experimentation."  The specification must contain enough information to have allowed persons of ordinary skill in the field to make and use *the full scope* of the claimed invention when the patent application was filed.  *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1285 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003). The specification must contain sufficient information such that persons of ordinary skill in the art could make and use the claimed invention in a manner that is useful for its intended purpose.  *In re Fisher*, 421 F.3d 1365, 1378 (Fed. Cir. 2005); *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1358 (Fed. Cir. 1999).

Abraxis has shown that there are multiple reasons why the '363 patent (claims 1, 3, 5, 10 and 11) and the '025 patent (claims 1-3 and 13-15) are invalid for lack of enablement:

    a)    The '363 and '025 patents do not teach how to determine which surface modifiers in what amounts to combine with any particular drug without undue experimentation.

These patents offer far too many combinations of medicaments and surface modifiers in an wide variety of weight ranges. Abraxis exposed this lack of enablement with Elan's own laboratory records, the testimony of its inventors and the testimony of Dr. Amiji. (Dr. Amiji testimony, Day 7 transcript.)

b) The '363 patent fails to teach how to make drug particles or compositions that are "essentially free of contaminants" without undue experimentation. The testimony of Dr. Gary Liversidge (Tr. at 424:1-436:4), Dr. Elaine Liversidge (506:25-509:11), Elan's own records (DX-243; DX-238; JX-53), and Dr. Amiji (Day 7 transcript) demonstrated that Elan was unable to reliably make nanoparticles free of unacceptable levels of contaminants.

c) The patents fail to teach how to make particles including amorphous medicament. (Tr. at 325:18-331:14).

Abraxis also showed that Elan suffered only failures with anticancer drugs before and *after* the issuance of the patents. Indeed, despite extensive efforts, neither Elan nor any of its licensees has successfully brought a commercial embodiment of the patents to market, and the '363 patent is not enabled in any useful way. *See Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007) ("If an inventor attempts but fails to enable his invention in a commercial product that purports to be an embodiment of the patented invention, that is strong evidence that the patent specification lacks enablement.") (Tr. 853:8-10, 18-20). Elan's failures include multiple failed attempts at even developing a nanopaclitaxel formulation worthy of further preclinical development. Most striking, Elan suffered total failure at getting a "Generic Abraxane" formulation off the ground, over ten years after supposedly enabling claims covering Abraxane to the public at large. (Tr. at 395:20-396:13; 398:13-399:11; DX-294; DX-302; DX-328).

11

### 2.    Abraxis is Entitled to Judgment That The Specifications Fail to Provide A Sufficient Written Description.

To satisfy the "written description" requirement of § 112, the specification and claims as originally filed must convey that the inventor invented *the full scope* of the claims that ultimately issued. *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. 2004).

The deficiencies in enablement proven at trial also demonstrate Elan's failure to satisfy the written description requirement. Abraxis established that Elan's patents basically say "go fish" for combinations of crystalline medicament and non-crosslinked surface modifiers that might work. Elan witnesses acknowledged the patents merely describe a screening method, but the claims are to particles, not a method of finding particles. (Tr. 298:9-299:6; 299:13-14.) Abraxis showed that the '363 patent (claims 1, 3, 5, 10 and 11) and the '025 patent (claims 1-3 and 13-15) lack adequate written description because they do not adequately describe:

a) the full range of claimed drug and surface modifier combinations (Dr. Amiji testimony, Day 7 transcript.);

b) particles consisting essentially of 0.1-90% by weight of surface modifier ('363 patent) or about 0.1 to about 99.9% by weight of surface modifier ('025 patent, claims 1-3);

c) particles including amorphous medicament (Tr. at 325:18-331:14); and

d) the claimed methods of the '025 patent in all mammalian species (Tr. 447:15-18; 450:2-14; 522:17 – 531:5; DX-248; DX-297).

As noted above, Elan also suffered total failure at getting a "Generic Abraxane" formulation off the ground, over ten years after supposedly having possession of claims covering Abraxane. (Tr. at 395:20-396:13; 398:13-399:11; DX-294; DX-302; DX-328)

12

## VI.    ABRAXIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT DURING PROSECUTION OF THE '363 AND '025 PATENTS

Making material misstatements or failing to disclose material information to the PTO

with an intent to deceive the PTO in connection with the prosecution of an application for patent

can render the patent unenforceable for inequitable conduct. *McKesson Info. Solutions, Inc. v.*

*Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007). Information or statements are material if

they establish, either alone or in combination with other information or statements, that the

invention sought to be patented more likely than not failed to satisfy one or more of the

requirements for a patent. 37 C.F.R 1.56 (2000). Information or statements also are material if

they refute or are inconsistent with a position that the applicant for a patent took when opposing

an argument made by the examiner that the invention was not patentable or when making an

argument to the examiner that the invention was patentable. *Id.* Adverse testing data that is

directly related to an important issue of patentability, along with the applicant's interpretation of

that data, is material information. *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1366 (Fed.

Cir. 2007). Intent to deceive may be shown through direct or indirect evidence. *See McKesson*,

487 F.3d at 902.

Once materiality and intent are established, they are weighed to determine if inequitable

conduct should be found. *Id.* at 913. When performing this balancing, the higher the level of

materiality of the withheld information or the false and misleading statements, the lower the

level of intent that is required to establish inequitable conduct, and vice versa. *Id.*

Abraxis demonstrated at trial that:

a)  experimental failures of drug and surface modifier combinations was material to the

patentability of the '363 patent (Tr. 438:22-25; 439:13-15; 443:16-20; 509:12-513:5;

13

    b) contamination problems with the particles and compositions covered by the '363

       patent were material to the patentability of the '363 patent (Tr. 424:1-436:4

       (Dr. G. Liversidge); 506:25-509:11 (Dr. E. Liversidge); Elan's own records (DX-243;

       DX-238; JX-53), and Dr. Amiji (Day 7 transcript);

    c) information regarding the species-specific nature of the alleged invention was

       material to the patentability of the '025 patent (Tr. 447:15-18; 450:2-14; 522:17 –

       531:5; DX-248; DX-297).

Elan's own documents and witnesses established that during prosecution of the '363 patent and

the '025 patent, the applicants intentionally withheld the above material information from the

PTO and made the above misleading statements with intent to deceive or mislead the PTO.

Weighing the materiality and the demonstrated intent establishes inequitable conduct rendering

the '363 and '025 patents unenforceable.

    Elan's decision to place the '025 patent into reissue proceedings does not "cure" its

previous misconduct. *In re Clark*, 522 F.2d 623, 627 (C.C.P.A. 1975) (reissue cannot rescue a

patentee who failed to disclose prior art when that failure resulted in the invalidation of the

claims), *accord, Rohm and Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983)

(citing *Clark* as an "unsuccessful attempt to overcome failure to inform the PTO of highly

relevant prior art by reissue of patent"). *See also Ethicon, Inc. v. United States Surgical Corp.*,

921 F. Supp. 901, 904 (D. Conn. 1995) ("no cure is available when the patentee fails to cite

material prior art with intent to deceive") (citing *Clark*, 522 F.2d at 627). In fact, the Patent

Office's Manual of Patent Examining Procedure § 2012 makes clear that Elan's misconduct

during the '025 patent application process bars any revival of the '025 patent through reissue.

(8th Ed., Rev. 6) ("Where such a condition [fraudulent or deceptive intent] is shown to exist the

right to reissue the patent is forfeited. . . . Clearly, where several patents or applications stem

from an original application which contained fraudulent claims ultimately allowed, the doctrine

of unclean hands bars allowance or enforcement of any of the claims of any of the applications

or patents.") (citations omitted).  Therefore, a judgment of unenforceability of both the '363 and

'025 patents should be entered.

## VII.    ABRAXIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF UNENFORCEABILITY OF THE '363 PATENT BASED ON ELAN'S UNCLEAN HANDS

Abraxis proved at trial that Elan has acted inequitably, unfairly, and deceitfully in

bringing this suit and in the manner in which it has conducted itself in this action.[5]  *Aptix*

*Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1378-79 (Fed. Cir. 2001) (citing *Keystone*

*Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245-46 (1933)).  Abraxis's evidence of Elan's

inequitable, unfair, and deceitful behavior included the following:

a)   Elan knew that Abraxane is amorphous and that its patents do not cover Abraxane

(Tr. 387:12-20; 388:18-23; 392:7-9; DX-01; DX-03; DX-07; DX-328; DX-285; DX-

302);

b)   Elan's efforts to copy Abraxane failed, followed immediately by Elan's decision to

sue Abraxis (Tr. at 395:20-13; Tr. at 399:8-14; DX-294; DX-302; DX-328);

c)   Elan established a policy to "[f]orce companies to pay royalties even if they didn't

use the Elan approach," to "[a]ggressively litigate (or threaten) against competitor

companies," and to "[u]se litigation to garner more revenues" (DX277);

---

[5] Should Abraxis receive judgment in its favor, it expects to seek an award of fees under 35 U.S.C. § 285, sanctions under Fed. R. Civ. P. 37, and renewal of its motion under Fed. R. Civ. P. 11.  Abraxis believes that this case is exceptional under § 285 and attorneys fees are warranted because Elan prosecuted this case despite clear evidence known to Elan that Abraxis did not infringe, and due to Elan's litigation misconduct.

d)  Elan has asserted claim construction positions that the Court rejected as lacking any

support (Markman Order at 2);

e)  Elan hid test results that it obtained prior to filing this lawsuit based on alleged

attorney-client and work-product protection, even though at least some of the testing

was conducted or supervised by Elan's testifying experts;

f)  interfering with Abraxis's relationships with doctors, prying into witnesses' personal

affairs and attempting to intimidate witnesses.

These acts, alone and in combination establish Elan's unclean hands.  Because of Elan's conduct,

judgment should be entered for Abraxis that the '363 and '025 patents are unenforceable against

Abraxis in this or future litigation.

## VIII.  DAMAGES

Elan seeks damages for past conduct of approximately $70 million in the form of a

reasonable royalty.  Abraxis established at trial that Elan's damages opinion rests on an

inadequate foundation, and is based on insubstantial or immaterial evidence, including license

agreements that do not include the '363 Patent; license agreements that focus on other patents;

revenue derived from foreign sales; profits based on other know how and other development

assistance; and a purely hypothetical calculation of Abraxane's alleged profits.  (Tr. 851:1-18,

23-25; 852:7-14; 852:25-853:7; 858:19-20.).  This is not a sufficient basis from which a jury

could award any money award of this magnitude.

Furthermore, Elan seeks a jury decision on damages in three impermissible areas.  First,

it requests damages based in part on $28 million in payment received by Abraxis solely for the

right to pursue the potential sale of Abraxane abroad – the Taiho and the Green Cross upfront

payments.  The patents laws operate solely in the United States and thus, these payments cannot

legally be included in any amount sent to the jury.  *Code-Alarm, Inc. v. Electromotive Techs.*

16

*Corp.*, No. 96-1368, 96-1369, 96-1385, 1997 U.S. App. LEXIS 13031, at **3-4 (Fed. Cir.

June 4, 1997) (general rule is that noninfringing sales are not included in royalty base); *Amstar*

*Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1546 (Fed. Cir. 1987) (affirming district court's

decision not to award damages for foreign transactions where defendant's actions "could not

have infringed the [patent at issue]"); *Enpat, Inc. v. Microsoft Corp.*, 6 F. Supp. 2d 537, 539-540

(E.D. Va. 1998) ("Microsoft cannot be required to pay damages for foreign sales which do not

violate United States patent laws. . . . none of [the *Georgia-Pacific*] factors support a conclusion

that Microsoft would pay for the right to engage in foreign sales it already has a legal right to

make. Accordingly, we conclude that Microsoft's foreign sales may not be taken into account in

any determination of a reasonable royalty."). Second, Elan seeks to have the jury decide future

damages by establishing a "go forward" royalty rate. This also is legally impermissible. Juries

are entitled to determine damages up to trial and not future royalties. *Paice LLC v. Toyota Motor*

*Corp.*, 504 F.3d 1293, 1316 (Fed. Cir. 2007) (no right to a jury trial on the amount of ongoing

royalty). Finally, Elan seeks a royalty on approximately $135 million in unearned revenue from

the Astra Zeneca agreement. Because these revenues are not earned as revenue as required by

GAAP, they cannot form a portion of any jury award.  The Court should enter judgment as a matter of law and specifically exclude these items from the jury's consideration.

YOUNG CONWAY STARGATT &
TAYLOR, LLP

Josy W. Ingersoll (#1088)
Elena C. Norman (#4780)
Karen E. Keller (#4489)
Michele Sherretta Budicak (#4651)
Jeffrey T. Castellano (#4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for Defendant*
*Abraxis BioScience, Inc.*

*Of Counsel:*

Michael A. Jacobs (Admitted *pro hac vice*)
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105-2482
(415) 268-7000

Emily A. Evans (Admitted *pro hac vice*)
Eric S. Walters (Admitted *pro hac vice*)
Erik J. Olson (Admitted *pro hac vice*)
Paul F. Coyne (Admitted *pro hac vice*)
Diana B. Kruze (Admitted *pro hac vice*)
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, California  94304-1018
(650) 813-5600

Anders T. Aannestad (Admitted *pro hac vice*)
Morrison & Foerster LLP
12531 High Bluff Drive
San Diego, California 92130
(858) 720-5100

DATED: June 10, 2008

18

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on June 10, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on June 10, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
>
> Linda Glover, Esquire
> Stephen Scheve, Esquire
> BAKER BOTTS L.L.P.
> One Shell Plaza
> 910 Louisiana Street
> Houston, TX 77002-4995
> steve.scheve@bakerbotts.com
>
> Paul F. Fehlner, Esquire
> BAKER BOTTS L.L.P.
> 30 Rockefeller Plaza
> New York, NY 10112-4498
> paul.fehlner@bakerbotts.com

William J. Sipio, Esquire
1375 Brentwood Road
Yardley, PA  19067
sipz25@aol.cm

YOUNG CONAWAY STARGATT
  &  TAYLOR, LLP


/s/ *Karen E. Keller*
Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
Elena C. Norman (No. 4780)
enorman@ycst.com
Karen E. Keller (No. 4489)
kkeller@ycst.com
Jeffrey T. Castellano (No. 4837)
jcastellano@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899
(302) 571-6600

Attorneys for Defendant
ABRAXIS BIOSCIENCE, INC.

2