READ IN OPEN COURT
ON 6/11/08

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 06-438-GMS |
| ABRAXIS BIOSCIENCE, INC. | ) ) ) |
| Defendant. | ) |

## GENERAL JURY INSTRUCTIONS

## **TABLE OF CONTENTS**

Page

GENERAL JURY INSTRUCTIONS ............................................................................................. 1

2.    GENERAL INSTRUCTIONS ........................................................................................... 3

    2.1    Introduction.......................................................................................................... 3

    2.2    Jurors' Duties ...................................................................................................... 4

    2.3    Burdens Of Proof ................................................................................................ 5

3.    THE PARTIES AND THEIR CONTENTIONS .................... .............................. 6

    3.1    The Parties .................................................... ............................................. 6

    3.2    Elan's Contentions ......................................... .............................................. 7

    3.3    Abraxis's Contentions........................................ .............................................. 8

    3.4    Summary Of Patent Issues.................................................................................. 9

4.    INFRINGEMENT............................................................................................................. 10

    4.1    Claim Infringement............................................................................................ 10

    4.2    Patent Claims .................................................................................................... 11

          4.2.1    Patent Claims Generally ........................................................... 11

          4.2.2    Independent And Dependent Claims ........................................ 12

          4.2.3    The Court Determines What Patent Claims Mean..................... 13

          4.2.4    Infringement – Basic and Novel Properties .............................. 20

    4.3    Failure to Produce Evidence – Adverse Inference................................................ 21

    4.4    Patent Infringement (Direct)............................................................................... 22

          4.4.1    Literal Infringement.................................................................. 23

          4.4.2    Infringement Despite Defendant's Improvements or Patents on Improvements ........................................................................... 24

    4.5    Determination Of Infringement .......................................................................... 25

    4.6    Willful Infringement .......................................................................................... 26

5.    Validity ............................................................................................................................ 28

    5.1    Presumption Of Validity ..................................................................................... 29

    5.2    Enablement ....................................................................................................... 30

    5.3    The Written Description Requirement................................................................... 32

    5.4    Level of Ordinary Skill in the Art........................................................................ 33

| 6. | | | Enforceability | 34 |
|---|---|---|---|---|
| | 6.1 | | Inequitable Conduct | 35 |
| | | 6.1.1 | Materiality | 36 |
| | | 6.1.2 | Intent | 37 |
| | | 6.1.3 | Balancing of Materiality and Intent | 38 |
| 7. | | | DAMAGES | 39 |
| | 7.1 | | Generally | 39 |
| | 7.2 | | Compensatory Damages In General | 40 |
| | 7.3 | | Burden Of Proof | 41 |
| | 7.4 | | Date Damages May Begin | 42 |
| | 7.5 | | Reasonable Royalty As A Measure Of Damages | 43 |
| | 7.6 | | Factors For Determining Reasonable Royalty | 44 |
| | 7.7 | | Interest | 46 |
| | 7.8 | | Closing Statement – Damages | 47 |
| 8. | | | DELIBERATIONS AND VERDICT | 48 |

## 2.  GENERAL INSTRUCTIONS

### 2.1    Introduction

Members of the jury, I will now instruct you about the law that you must follow in deciding this case.

I will start by reminding you about your duties as jurors and the instructions you heard at the beginning of the case.

I will then explain the positions of the parties and the law you will apply in this case.

Last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

## 2.2    Jurors' Duties

Remember your duties as jurors as I explained them to you at the beginning of the case. You must decide what the facts are from the evidence you saw and heard in court. Nothing I have said or will say should influence your determination of the facts in any way. Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case. All parties are entitled to the same fair and impartial consideration.

You must also take the principles of law that I will now explain to you and apply them to the facts in reaching your verdict. You are bound by the oath you took to follow my instructions, even if you personally disagree with them.

All of my instructions are important, and you should consider them together as a whole. This includes the instructions that I gave you when we started and during trial. I will not repeat my earlier instructions about evidence and how to weigh and consider it. You have copies of these instructions, however, and you should refer to them as you feel necessary.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

## 2.3    Burdens Of Proof

This is a civil case in which the plaintiff, Elan is accusing the defendant, Abraxis of patent infringement. Elan alleges that Abraxis has infringed the asserted claims of the '363 Patent. Elan has the burden of proving its allegations of patent infringement and its alleged damages by what is called a preponderance of the evidence. That means Elan must produce evidence that, when considered in light of all of the facts, leads you to believe that what Elan claims is more likely true than not. To put it differently, if you were to put Elan's and Abraxis's evidence on the opposite sides of a scale, the evidence supporting Elan's claims would have to make the scales tip somewhat on its side.

Elan also alleges that Abraxis' alleged infringement was willful. Elan must prove its claims of willful infringement by clear and convincing evidence and not by a preponderance of the evidence, the standard that applies to Elan's other claims in this case. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

In this case, Abraxis contends that Elan's patents, both the '363 Patent and the '025 Patent, are invalid and unenforceable. A patent, however, is presumed to be valid. Accordingly, Abraxis has the burden of proving that the patents are invalid and/or unenforceable by clear and convincing evidence. As I discussed earlier, clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in this case and you should, therefore, not consider it at all in your deliberations.

5

## 3.    THE PARTIES AND THEIR CONTENTIONS

### 3.1    The Parties

The plaintiff in this case is Elan Pharma International Limited.  The defendant is Abraxis Bioscience, Inc.

This case involves Elan's '363 Patent, which relates to certain nanoparticles of anti-cancer drugs, including a drug substance you have heard referred to as paclitaxel or taxol.  In particular, the case involves alleged infringement of the '363 Patent by Abraxis's product Abraxane®.  The case also involves certain questions regarding the validity and enforceability of Elan's '363 and '025 Patents.

## 3.2    Elan's Contentions

Elan contends that Abraxis has been and still is making, using, offering to sell, and selling in the United States Abraxane®, which Elan contends contains paclitaxel nanoparticles that infringe claims 3 and 5 of the '363 Patent. I may refer to these particular two claims of the '363 Patent as the "asserted patent claims" or "asserted claims."

Elan asserts that these acts of infringement have been and are "willful," on Abraxis's part, as I will define for you shortly. Elan also asserts that the '363 and '025 Patents are valid and enforceable.

**3.3     Abraxis's Contentions**

Abraxis denies that it infringed or infringes claims 3 or 5 of the '363 Patent because Abraxane® does not satisfy every limitation of the claims, which include the limitations in claim 1.

In particular, Abraxis disputes whether the particles in Abraxane consist essentially of crystalline medicament and a surface modifier that is non-crosslinked. Abraxis does not dispute that Abraxane meets the other limitations of '363 Patent claims 3 and 5 for purposes of determining whether there is infringement in this litigation.

Abraxis denies that it has willfully infringed any of the asserted claims of the '363 Patent and contends that Elan has not presented evidence that Abraxis willfully infringed any of the asserted claims of the '363 Patent.

Abraxis contends that claims 1, 3, 5, 10, and 11 of the '363 Patent and claims 1-3 and 13-15 of the '025 Patent are invalid for lack of enablement and failure to adequately describe the claimed invention.

Abraxis further contends that the '363 Patent is unenforceable due to inequitable conduct before the USPTO.   Abraxis also contends that the '025 Patent is unenforceable due to inequitable conduct before the USPTO.

Finally, Abraxis contends that Elan has failed to prove its measure of damages for any alleged infringement of the '363 Patent.

8

### 3.4 Summary Of Patent Issues

In this case, you must decide several things according to the instructions that I shall give you. Specifically, they include:

#### 3.4.1. Infringement

Has Elan proven by a preponderance of the evidence that Abraxis has been or is now infringing any of claims 3 and 5 of the '363 Patent by making, using, offering to sell, or selling Abraxane® in the United States?

#### 3.4.2 Willfulness

If you find that Abraxis's manufacture, use, sale, or offer for sale of its Abraxane® has infringed claims 3 and 5 of '363 Patent, has Elan proven by clear and convincing evidence that in doing so, Abraxis acted with reckless disregard of the claims of the '363 Patent?

#### 3.4.3 Invalidity

Has Abraxis proven by clear and convincing evidence that claims 1, 3, 5, 10 and 11 of the '363 Patent are invalid because the claims are not enabled and not properly described?

Has Abraxis proven by clear and convincing evidence that claims 1-3 and 13-15 of the '025 Patent are invalid because the claims are not properly enabled and not properly described?

#### 3.4.4. Unenforceability

Has Abraxis proven by clear and convincing evidence that the '363 Patent is unenforceable for inequitable conduct?

Has Abraxis proven by clear and convincing evidence that the '025 Patent is unenforceable for inequitable conduct?

9

## 4.  INFRINGEMENT

### 4.1    Claim Infringement

At the beginning of the trial I gave you some general information about patents and the patent system and a brief overview of the patent laws that relate to this case. If you would like to review my earlier instructions at any time during your deliberations, they will be available to you in the jury room.

If any person makes, uses, sells, or offers for sale something that is covered by a patent claim without the patent owner's permission, that person is said to *infringe* the patent. I will now instruct you on the specific rules you must follow in deciding whether Elan has proven that Abraxis has infringed one or more of the claims of the '363 Patent. To prove infringement of a patent, Elan must persuade you by a preponderance of the evidence that Abraxis has infringed a claim in the patent.

Remember that Elan alleges that Abraxis only infringes claims of the '363 Patent. Thus, you should not consider the '025 Patent or the '118 Patent when determining infringement. Elan has no claim for breach of the parties' 1996 confidentiality agreement.

10

## 4.2    Patent Claims

### 4.2.1    Patent Claims Generally

To decide whether Abraxis has infringed the '363 Patent, you will have to understand the patent "claims." The claims of a patent are the numbered sentences at the end of a patent. The patent claims at issue here are claims 1, 10, and 11 (for validity only), and claims 3 and 5 (for validity and infringement) of the '363 Patent, beginning at column 14, line 6 of the patent as corrected by the attached Certificate of Correction. The claims describe the invention made by the inventor. This is what the patent owner owns and what the patent owner may prevent others from making/doing/selling. Claims may describe products, such as machines or chemicals, or they may describe methods for making or using a product.

Only the claims of the patent can be infringed. A patent may include a discussion of examples of the invention, but the examples cannot be infringed. You should not compare Abraxis's product with any specific example set out in the '363 Patent. You must only compare Abraxane® with the *claims* of the patent when making your decision regarding infringement.

Each claim of a patent represents separate patent protection given to a patent owner, and you must individually consider each of the patent claims involved in this case. The law does not require infringement of all the claims in a patent. There is infringement and entitlement to damages if a single claim of the patent has been infringed.

11

### 4.2.2 Independent And Dependent Claims

Claims are typically divided into parts called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs, and glue are each a separate limitation of the claim.

There are two types of patent claims: independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. In simple terms, an independent claim stands on its own two feet. An independent claim is read alone to determine the limitations that must exist to infringe the claim. Claim 1 of the '363 Patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes all of the limitations in the claims to which it refers. Therefore, to determine what a dependent claim covers, you must look at both the limitation of the dependent claim and the claim or claims to which it refers.

For example, claim 3 is a dependent claim. It refers to claim 1. For a product to infringe dependent claim 3, the product must have all the limitations of both claim 1 and claim 3. Therefore, if you find that claim 1 is not infringed, you must also find that claim 3 and all other claims depending from claim 1 are not infringed.

### 4.2.3    The Court Determines What Patent Claims Mean

It is the Court's duty under the law to define what the patent claims mean.    I have made my determinations and I will now instruct you on the meaning of each claim.  You must use the meaning that I give you for each patent claim to make your decisions if the claim is infringed or invalid.  You must ignore any different definitions used by the witnesses or the attorneys.

I will discuss the limitations of each of the claims at issue for the '363 Patent and '025 Patent.  I will give you a list of these claims as part of the verdict form when I conclude my instructions.

**4.2.3 (a)**    The limitations of claim 1 of the '363 Patent are as follows:

Particles consisting essentially of:

99.9 - 10% by weight of a crystalline medicament useful in treating cancer susceptible for treatment with said medicament,

said medicament having a solubility in water of less than 10 mg/ml, and

having a non-cross-linked surface modifier adsorbed on the surface thereof in an amount of 0.1-90% by weight and sufficient to maintain an average effective particle size of less than 1000 nm,

wherein said medicament is selected from the group consisting of . alkylating agents having a bis-(2-chloroethyl)-amine group, alkylating agents having a substituted aziridine group, alkyl sulfonates, and N-alkyl-N-nitrosoureas; antimetabolites; natural products selected from the group consisting of vinca alkaloids, epipophylotoxins, adriamycine, daunomycine, doctinomycine, daunorubicin, doxorubicin, mithramycin, bleomycin, mitomycin, enzymes, biological response modifiers, camptothecin, taxol and retinoids; hormones and antagonists: radiosensitizers; platinum coordination complexes; anthracenediones; and adrenocortical suppressants.

14

**4.2.3 (b)**  The limitations of claim 3 of the '363 Patent are the same as the limitations of **claim 1** except that the particles have an average effective particle size of less than 300 nm.

**4.2.3 (c)**  The limitations of claim 5 of the '363 Patent are the same as the limitations of **claim 1** except that the anticancer agent is selected from the group consisting of piposulfan, piposulfam, camptothecin, etoposide, taxol, 1,2,4-benzotriazin-3-amine 1,4-dioxide, 1,2,4-bezotriazin-7-amine 1,4-dioxide and retinoic acid.

**4.2.3 (d)**  The limitations of claim 10 of the '363 Patent are as follows:

In a method of treating a mammal comprising administering to the mammal an effective amount of an anticancer agent, the improvement wherein the efficacy of said anticancer agent is increased by administering said anticancer agent in the form of the particles of **claim 1**.

**4.2.3 (e)**  The limitations of claim 11 of the '363 Patent are as follows:

In a method of treating a mammal comprising administering to the mammal an effective amount of an anticancer agent, the improvement wherein the toxicity of said anticancer agent is reduced by administering said anticancer agent in the form of the particles of **claim 1**.

**4.2.3 (f)**      The limitations of claim 1 of the '025 Patent are as follows:

A method of administering a nanoparticulate composition to a mammal without eliciting adverse hemodynamic effects comprising

intravenously administering to said mammal an effective amount of a nanoparticulate drug composition at an infusion rate not exceeding 10 mg/min,

wherein said drug composition comprises:

(a) particles consisting essentially of from about 0.1 to about 99.9% by weight of a crystalline organic drug substance having a solubility in water of less than 10 mg/ml;

(b)      a surface modifier adsorbed on the surface of the drug substance in an amount of from about 0.1 to about 99.99% by weight and sufficient to maintain an effective average particle size of from about 50 nm to about 1000 nm; and

(c)      a pharmaceutically acceptable carrier therefor.

**4.2.3 (g)**      The limitations of claim 2 of the '025 Patent are the same as the limitations of **claim 1** except that the effective average particle size is from about 50 nm to about 400 nm;

**4.2.3 (h)**      The limitations of claim 3 of the '025 Patent are the same as the limitations of **claim 1** except that the drug is an organic therapeutic substance.

**4.2.3 (i)**     The limitations of claim 13 of the '025 Patent are as follows:

A method of administering a nanoparticulate composition to a mammal without eliciting adverse hemodynamic effects comprising

intravenously administering to said mammal an effective amount of a nanoparticulate drug composition at an infusion rate not exceeding 10 mg/min,

wherein said drug composition comprises:

(a)     particles having an effective average particle size of from about 50 to about 1000 nm and consisting essentially of

from about 0.1 to about 99.9% by weight of an organic drug substance entrapped in

from about 99.9 to about 0.1% by weight of liposome or a colloidal polymeric material; and

(b)     a pharmaceutically acceptable carrier therefor.

**4.2.3 (j)**     The limitations of claim 14 of the '025 Patent are the same as the limitations of **claim 13** except that the effective average particle size of the drug is from about 50 to about 400 nm.

**4.2.3 (k)**     The limitations of claim 15 of the '025 Patent are the same as the limitations of **claim 13** except that the drug is an organic therapeutic substance.

### 4.2.3 (l)    Court's Construction of the Patent Claims

The Court has defined certain claim terms in the '363 Patent and the '025 Patent as follows:

(1)    "particles consisting essentially of" is construed to mean "the particles, composed of crystalline medicament and surface modifier, may also include other ingredients that do not affect their basic and novel properties, and are essentially free of solvent and other contaminants;"

(2)    "crystalline medicament useful in treating cancer" is construed to mean "a medicament suitable for treating cancer that has a regular arrangement of atoms or molecules in a space lattice, as distinguished from amorphous;" The term "crystalline medicament" requires that the entire medicament, not merely a portion, be crystalline.

(3)    "non-crosslinked" is construed to mean "the individually adsorbed molecules of the surface modifier are essentially free of intermolecular crosslinkages;

(4)    "surface modifier" is construed to mean "a substance that modifies the surface properties of the crystalline medicament;"

(5)    "adsorbed on the surface" is construed to mean "a molecule retained at the surface of the crystalline medicament that does not chemically bond with such medicament;"

(6)    "in an amount of 0.1-90% by weight and sufficient to maintain an average effective particle size of less than 1000 nm" is construed to mean "an amount of surface modifier that maintains the size of the particles such

18

that at least 90% of the particles have a number average particle size of less than about 1000 nanometers;"

This construction also applies to claims 1, 2, 3 of the '025 Patent for the term "sufficient to maintain an effective average particle size."

(7)     "surfactant" is construed to mean "a stabilizing agent that reduces interfacial tension between oil and water."

(8)     "without eliciting adverse hemodynamic effects" is construed to mean "the claimed method of intravenous administration does not elicit undesired effects on the physical aspects of blood circulation (such as reduction in arterial blood pressure and cardiac function) associated with administration of nanoparticles in the mammals to whom the nanoparticles are administered."

(9)     "at an infusion rate not exceeding 10 mg/min" is construed to mean "intravenously administering the composition at a rate not exceeding 10 milligrams per minute."

(10)    "organic drug substance" is construed to mean "a crystalline carbon-based therapeutic or diagnostic agent suitable for administration to a mammal."

(11)    "colloidal polymeric material" is construed to mean "a polymer capable of forming a suspension of the organic drug substances."

For any of the terms of the patent claims not specifically defined above, you are to give such words their plain and ordinary meaning in applying the claim(s).

### 4.2.4   Infringement – Basic and Novel Properties

With respect to claims 3 and 5 of the '363 Patent, there can be no infringement where the accused product contains additional, unclaimed ingredients that materially affect the basic and novel properties of the invention. To determine the basic and novel properties of the claimed invention, you should consider the language of the patent specification and prosecution history, including any distinctions made by the applicant between the claimed invention and the prior art.

Elan bears the burden of proving by a preponderance of the evidence that these additional, unclaimed ingredients do not have such a material effect.

## 4.3    Failure to Produce Evidence – Adverse Inference

Dr. Harry Brittain was retained as an expert by Elan in this case. Dr. Brittain performed tests on Abraxane® for Elan. Prior to this trial, Abraxis requested that Elan provide it with documents related to this testing. Elan failed to produce these documents. I have been asked to decide whether this action by Elan was proper. I have determined that under the Federal Rules of Civil Procedure it was not. As a result, I instruct you that you may infer that the contents of these documents would have been unfavorable to Elan's case on infringement.

## 4.4    Patent Infringement (Direct)

A patent owner may enforce his right to stop others from making, using, selling, or offering for sale the patented invention by filing a lawsuit for patent infringement. Here, Elan has sued Abraxis and has alleged that Abraxis's product directly infringes at least one claim of the '363 Patent. I will refer to Abraxis's product, Abraxane®, as the accused product.

Deciding whether a claim has been directly infringed is a two-step process. First, the meaning of the patent claim is determined as a matter of law. That job is for the Court, and I have instructed you as to what the key terms of the asserted claims mean as a matter of law. In the second step, you must compare each claim as I have interpreted it to the accused product to determine whether every element of the claim can be found in the accused product. This element-by-element comparison is your responsibility as the jury for this case.

Keep in mind that intent to infringe, actual knowledge of a patent, or knowledge that one is infringing a patent, are not part of a claim of patent infringement. In short, direct infringement can be established even if Abraxis had a good faith belief that its actions were not infringing the '363 Patent and even if Abraxis did not know of the patent.

### 4.4.1   Literal Infringement

For Abraxis's product, Abraxane®, or for a method involving Abraxane to literally infringe any one of the claims of the '363 Patent, Abraxane or the method involving Abraxane must include each and every limitation in the claims, exactly as written. That is why it is called *literal* infringement. If Abraxane or the method involving Abraxane omits any limitation recited in a patent claim, it does not literally infringe that claim.

23

### 4.4.2 Infringement Despite Defendant's Improvements or Patents on Improvements

The fact that a product may constitute an improvement on the claimed invention does not mean that it cannot infringe the patent. The tests for infringement remain as I have instructed you – if you find Abraxane includes all of the elements of at least one of claims of the '363 patent, then the '363 patent claims are infringed by Abraxane, despite Abraxis's improvements.

## 4.5     Determination Of Infringement

Taking each asserted claim of the '363 Patent separately, if you find that Elan has proven by a preponderance of the evidence that each element of the claim is present in Abraxis's accused product, Abraxane®, then you must find that Abraxis's accused product infringes that claim. You must analyze Abraxis's accused product separately under each asserted claim.

**4.6     Willful Infringement**

In this case, Elan argues that Abraxis infringed and, further, that Abraxis infringed

willfully. Even if you have decided that Elan has infringed, you must address the additional

issue of whether or not this infringement was willful. Willfulness requires you to determine two

things: first, whether Abraxis acted despite an objectively high likelihood that its actions

infringed a valid patent; and second, that this objectively high risk was either known or so

obvious that it should have been known to Abraxis. To prove willful infringement, Elan must

establish that Abraxis willfully infringed by clear and convincing evidence. That is Elan must

prove willfulness in such a way that you have been left with an abiding conviction that willful

infringement was highly probable.

In deciding whether or not Abraxis committed willful infringement, you must consider all

of the facts, which include but are not limited to:

(1)     Whether or not Abraxis intentionally copied a product of Elan that is covered by

the '363 Patent,

(2)     Whether or not Abraxis possessed a reasonable basis to believe that it had a

substantial defense to infringement and reasonably believed that the defense would be successful

if litigated.

(3)     Whether or not Abraxis made a good faith effort to avoid infringing the patent, for

example, Abraxis took remedial action upon learning of the patent by ceasing infringing activity

or attempting to design around the patent;

(4)     Whether or not Abraxis tried to cover up its infringement; and

(5)     Whether a fair and reasonable competitor would have secured legal advice or a professional legal opinion that would clear it of the alleged infringement.  However, the absence of an opinion of counsel does not require you to find willfulness.

## 5.     VALIDITY

Abraxis contends that certain claims of the '363 Patent and the '025 Patent are invalid for failure to satisfy the legal requirements of patentability. In particular, Abraxis contends that claims 1, 3, 5, 10, and 11 of the '363 Patent and claims 1-3 and 13-15 of the '025 Patent are invalid for lack of enablement and failure to meet the written description requirement. I will now instruct you on each of these defenses.

## 5.1    Presumption Of Validity

The granting of a patent by the Patent Office carries with it the presumption that the patent's subject matter is new, useful and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Nevertheless, once the validity of a patent has been put at issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

Abraxis has the burden of proving invalidity of each patent claim by clear and convincing evidence.

## 5.2    Enablement

Abraxis contends that the asserted claims of the '363 and/or '025 Patent are invalid because the patent specification lacked an enabling disclosure.

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to make and use the full scope of the claimed invention. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the claimed invention.

To meet this requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the invention without undue experimentation. Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly include information that is commonly understood by persons skilled in the art. Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling. A specification is enabling so long as undue experimentation is not needed.

Factors to consider in determining whether a disclosure would require undue experimentation include testimony (including but not limited to expert opinion) and other evidence indicating

(1)    the time and cost of any necessary experimentation;

(2)    how routine any necessary experimentation would be to those of ordinary skill in the art;

(3)    whether the '363 Patent and/or '025 Patent discloses specific working examples of the claimed invention;

30

(4)    whether the inventor attempted but failed to enable his invention in a commercial

product embodying the claimed invention;

(5)    the amount of guidance presented in the '363 Patent and/or '025 Patent;

(6)    the nature and predictability of the technical field of the invention;

(7)    the level of ordinary skill in the field; and

(8)    the scope of the claimed invention.

**5.3     The Written Description Requirement**

Abraxis contends that claims 1, 3, 5, 10, and 11 of the '363 Patent and claims 1-3 and 13-15 of the '025 Patent are invalid because they lack an adequate written description.

The patent law requires that a patent application contain an adequate written description of the invention to ensure that the inventor was in possession of the full scope of the invention at the time the patent application was filed.

The specification and claims as originally filed must convey to persons of ordinary skill in the art that the inventor had invented the full scope of the subject matter that is spelled out in the claims that ultimately issued as a patent. The description must be sufficiently clear that persons of ordinary skill in the art will recognize that the applicant made the invention having each of the limitations described in the claims.

That is, to prove a claim invalid for lack of an adequate written description, Abraxis must prove by clear and convincing evidence that the applications for the '363 Patent and the '025 Patent do not reasonably convey to a person of ordinary skill in the art that the inventors had possession of the invention at the time of the application as that invention was finally claimed in the issued patent. While no particular form of written description is required, the application must describe the claimed subject matter in terms that establish that Elan was in possession of the full scope of the claimed inventions, including all of the limitations.

32

**5.4    Level of Ordinary Skill in the Art**

In this case, a person of ordinary skill in the art would have a Ph.D. or the equivalent in pharmaceutical sciences, chemistry, chemical engineering, or biological sciences, and at least two years of practical experience in formulating drug compositions at the time the application for the '363 patent was filed.

Alternatively, a person of ordinary skill in the art could be someone with a Master's degree in pharmaceutical sciences, or the equivalent, with two or more years of practical experience, specifically in the development of nanoparticulate pharmaceutical compositions.

## 6.    ENFORCEABILITY

In addition to claims of invalidity, Abraxis asserts that Elan may not enforce either the '363 Patent or the '025 Patent against Abraxis, because Abraxis alleges that the applicants for the patent acted inequitably when prosecuting their respective patent applications.  Remember that a finding of unenforceability with respect to *any claim* in a patent renders the *entire patent* unenforceable.

## 6.1    Inequitable Conduct

Abraxis contends that Elan may not enforce the '363 Patent or the '025 Patent against Abraxis because Elan engaged in inequitable conduct before the Patent and Trademark Office during prosecution of the '363 and '025 Patents. Elan denies this allegation.

Applicants for a patent have a duty to prosecute patent applications in the Patent and Trademark Office with candor, good faith, and honesty. This duty of candor and good faith extends to all inventors named on a patent application, all patent attorneys and patent agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application and continues for the entire time the application is before the Patent Office. An intentional failure to meet this duty of candor and good faith is referred to as "inequitable conduct."

Abraxis must prove inequitable conduct by clear and convincing evidence. To determine whether the '363 Patent or the '025 Patent was obtained through inequitable conduct, you must determine whether a person having this duty of candor and good faith withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application, and that this individual or individuals acted with an intent to deceive or mislead the PTO.

35

### 6.1.1   Materiality

Information or statements are material if they establish, either alone or in combination with other information or statements, that the invention sought to be patented more likely than not failed to satisfy one or more of the requirements for a patent. Examples of such requirements would include that the invention be new, useful, enabled and non-obvious, among others. Information or statements also are material if they refute or are inconsistent with a position that the applicant for a patent took when opposing an argument made by the examiner that the invention was not patentable or when making an argument to the examiner that the invention was patentable.

Information that is cumulative of, or in other words, adds little to or has no more bearing on the examination of an application than information the examiner already had, is not material.

You must next consider whether or not there was an intent to mislead or deceive the Patent Office.

### 6.1.2   Intent

If you determine that material information was withheld from the Patent and Trademark Office, you must next determine whether this was done with an intent to deceive or mislead the Patent and Trademark Office. Intent to deceive the Patent and Trademark Office may be found from direct evidence. Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances.

When a patentee has knowingly misrepresented a material fact or submitted false material information, and when the natural consequence of those intentional acts would be that to deceive the Patent and Trademark Office, an inference that the patentee intended to deceive may be appropriate. Simple negligence is insufficient for a holding of inequitable conduct.

In determining whether or not there was intent to deceive or mislead the Patent and Trademark Office, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

### 6.1.3   Balancing of Materiality and Intent

If Abraxis has proven by clear and convincing evidence that information was withheld by a person with the duty of good faith and candor, you must then balance the degree of materiality and the degree of intent to deceive or mislead the Patent and Trademark Office to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the '363 or '025 Patents. Where the materiality of the withheld information is high, the showing of intent needed to establish inequitable conduct is proportionally less. Likewise, when the showing of intent is high, the showing of materiality may be proportionally less.

# 7.   DAMAGES

## 7.1   Generally

If, after considering all of the evidence and the law as I have stated it, you have determined either that: (i) no asserted '363 Patent claim is infringed by Abraxis, or (ii) the infringed claims are invalid, then your verdict should be for Abraxis and you need go no further in your deliberations. If at least one asserted claim is infringed and is not invalid, you must then turn to the issue of damages.

## 7.2    Compensatory Damages In General

In the context of this dispute, patent law provides that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded a reasonable royalty for the use made of the invention by the infringer.

It is not relevant to the question of damages whether Abraxis benefited from, realized profits from or even lost money as a result of the acts of infringement. It is also not relevant if Abraxis did not foresee that it would cause Elan damage at the time that it infringed the asserted claims. The only issue is the amount of the reasonable royalty which Elan should receive to compensate it for Abraxis's infringement.

**7.3    Burden Of Proof**

Elan has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty.    On the one hand, reasonable certainty does not require proof of damages with mathematical precision.    Mere difficulty in ascertaining damages is not fatal to Elan's right to recover.  On the other hand, Elan is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or the result of mere conjecture.    You may base your evaluation of reasonable certainty on opinion evidence.    Any doubts regarding the computation of the amount of damages should be resolved against Abraxis and in favor of Elan.

## 7.4    Date Damages May Begin

In this case, you should begin calculating damages as of January 7, 2005.

## 7.5    Reasonable Royalty As A Measure Of Damages

In this case, Elan seeks damages in the amount of a reasonable royalty for Abraxane®. A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention. A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Elan and Abraxis, with both operating under the assumption that the negotiated patent is valid and would be infringed by Abraxane.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin, which in this case would be the January 7, 2005 time period.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of Abraxis was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Abraxis. You must also assume that Elan would have been willing to grant a license. Finally, you must assume that both Elan and Abraxis knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Abraxis's use of the patented invention, including the opinion testimony of experts.

43

**7.6    Factors For Determining Reasonable Royalty**

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors:

(1)    The royalties received by Elan for the licensing of others under the '363 Patent;

(2)    The rates paid by a licensee of Elan, Abraxis, or others for the use of other patents comparable to the '363 Patent;

(3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

(4)    The absence of any policy by Elan to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

(5)    The commercial relationship between Elan and Abraxis, such as whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

(6)    The duration of the '363 Patent and the length of the licenses;

(7)    The established profitability of Abraxane® as made under the patent, its commercial success and its current popularity;

(8)    The utility and advantages of Elan's patented inventions over the old modes or devices, if any, that had been used for working out similar results;

(9)    The nature of the patented invention, the character of the commercial embodiment, and the benefits to those who have used the invention;

(10)   The extent to which Abraxis has made use of the invention, and any evidence that shows the value of that use;

(11)   The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or comparable inventions;

(12)   The portion of the realizable profit that should be credited to the invention as distinguished from non-patented limitations, the manufacturing process, business risks, or significant features or improvements added by Abraxis;

(13)   The opinion testimony of qualified experts; and

(14)   Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

## 7.7    Interest

None of the parties' calculations include interest. Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

## 7.8    Closing Statement – Damages

The fact that I have instructed you regarding damages should not be construed as suggesting which party is to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Elan. Finally, if you find Elan is entitled to damages, you may not include or add to the award any sum for purposes of punishing Abraxis or to set an example. Nor should you award Elan any amount for any lost profits.

If you find that Elan is entitled to damages for past infringement by Abraxis, you should determine the monetary value of these past damages by applying a reasonable royalty to Abraxis's revenue from infringing sales and/or other infringing activities during the infringement period and entering the resultant dollar value in the applicable space on the Verdict Form.

## 8.   DELIBERATIONS AND VERDICT

### 8.1   Introduction

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. After you hear the closing arguments of counsel, you will return to the jury room to begin your deliberations. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. The first thing you should do is select a foreperson. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not ever write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

### 82.   Unanimous Verdict

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to

48

reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges — judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson will date and each of you will sign the form. You will then return to the courtroom and your verdict will be announced.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.