```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                        -  -  -

 4  ELAN PHARMA INTERNATIONAL    :      Civil Action
    LIMITED,                     :
 5                               :
               Plaintiff,        :
 6                               :
          v.                     :
 7                               :
    ABRAXIS BIOSCIENCE INC.,     :
 8                               :
               Defendant.        :      No. 06-438-GMS
 9
                          -  -  -
10                   Wilmington, Delaware
                   Friday, June 13, 2008
11                      9:10 a.m.
                   TENTH DAY OF TRIAL
12                        -  -  -

13  BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge,
                                      and a Jury
14
    APPEARANCES:
15
            JOHN G. DAY, ESQ.
16          Ashby & Geddes
                   -and-
17          STEPHEN SCHEVE, ESQ.,
            LINDA M. GLOVER, ESQ.,
18          JEFFREY SULLIVAN, ESQ.,
            LISA A CHIARINI, ESQ.,
19          ROBERT RIDDLE, ESQ., and
            PAUL FEHLNER, ESQ.
20          Baker Botts LLP
            (Houston, TX)
21                 -and-
            GREGORY BOKAR, ESQ.
22          Counsel - Elan Drug Delivery

23                          Counsel for Plaintiff

24

25
```

1     **APPEARANCES CONTINUED:**

2            **ELENA C. NORMAN, ESQ., and**
            **MICHELLE SHERETTA BUDICAK, ESQ.**

3            **Young Conaway Stargatt & Taylor, LLP**
                  **-and-**

4            **MICHAEL A. JACOBS, ESQ.,**
            **EMILY A. EVANS, ESQ.,**

5            **ERIC S. WALTERS, ESQ.,**
            **DIANA KRUZE, ESQ., and**

6            **ERIK J. OLSON, ESQ.**
            **Morrison & Foerster**

7            **(San Francisco, CA)**

8                           **Counsel for Defendant**

9                                 **- - -**

10

11          **(The following took place at sidebar at 9:10**

12   **a.m.)**

13          **THE COURT:  We have two missives additionally**

14  **from the jury this morning.  One I think is easily dealt**

15  **with.  They have sent this question back with the attached**

16  **note.  The jury is paying attention:**

17          **Who was speaking on Page 1122 and 1123?  Which**

18  **attorney (Elan versus Abraxis) is asking the questions?**

19          **It's not identified on these transcripts.**

20          **Please provide them with that information.**

21          **I will give this to you.**

22          **The second says, Atwood's testimony on XRPD not**

23  **picking up < -- must be a mathematician in there or**

24  **something -- ten percent not detectable crystalline**

25  **material.**

1    Atwood's testimony on XRPD not picking up less

2    than ten percent not detectable crystalline material.

3    That's the first bullet.  These are bulleted

4    items, by the way.

5    Next:  Elan's closing statement, parenthetic,

6    (similar to Abraxis's 79-page closing section).

7    Did we give this --

8    MR. SCHEVE:  Our closing exhibits, no, Your

9    Honor.

10   THE COURT:  They must have something.  They

11   don't have them.  That is not evidence.

12   If that happened, it was without my knowledge.

13   MR. JACOBS:  We have been worried that they are

14   getting one of the Melody pieces from their closing slides

15   which we haven't seen.

16   THE COURT:  This says closing statement.

17   MR. JACOBS:  They must mean -- I don't know what

18   that is.

19   MR. SULLIVAN:  We need to check the jury binder.

20   Our jury binder does not contain a closing

21   statement.

22   MR. SCHEVE:  That is argument.

23   MR. JACOBS:  We had a specific discussion about

24   the closing slides going in.

25   THE COURT:  That it is a separate issue, whether

```
 1    you had a discussion or you are talking about slides.

 2              MR. SCHEVE:  Ours aren't there.

 3              THE COURT:  The jury did write "statement" here.

 4    Maybe they misspeak here.  I will find out.

 5              Ms. Walker, have the jury officer inquire --

 6    take this back to them, please, ask them do they mean the

 7    lawyers' closing statements.

 8              MR. SCHEVE:  They have your closing slides?

 9              MR. JACOBS:  I thought they had both sides'

10    slides.

11              THE COURT:  What concerns me, it says 79-page.

12              MR. JACOBS:  That would suggest slides,

13    absolutely.

14              THE COURT:  You mean from the closing.

15              MR. JACOBS:  Yes.

16              MR. SCHEVE:  Ours are not in there.  That's

17    argument.  You have instructed them that argument is not

18    evidence.

19              THE COURT:  Absolutely.

20              MR. SCHEVE:  We will need to rectify that one

21    way or the other.  They have already been reviewing theirs.

22    Maybe the only thing we can do is put ours in.

23              MR. JACOBS:  I would not oppose that.  That is

24    what I understood how it would happen.

25              THE COURT:  Excuse my use of colloquial terms,
```

```
 1   but that really mucks up the works.  Okay.  Maybe we are

 2   going to invent a new process here in American

 3   jurisprudence.

 4              (Discussion off the record.)

 5              MR. JACOBS:  They also apparently want the

 6   exhibit.

 7              Can we do Melody while we are waiting?  They

 8   have a question that is left over.

 9              THE COURT:  I thought you had another Bench

10   brief for me.

11              MR. JACOBS:  No, no.

12              MS. WALKER:  They said they have Abraxis's

13   closing statement but they don't have Elan's.

14              THE COURT:  Okay.  Let's get back to this.  I

15   think, as has been suggested already, that the genie is out

16   of the bottle and the only way to get it partially back in

17   and fairly is to give the other side's.

18              MR. JACOBS:  Absolutely, Your Honor.

19              THE COURT:  If you could get that together.  We

20   will get it to them right away.  I think they should have

21   that right away.

22              They want JX-67, Joint Exhibit 67.  Then we can

23   deal with Melody.

24              MR. JACOBS:  They asked for Melody Deposition

25   109 to 111.  That deposition testimony is not in evidence.
```

```
 1    So we believe, that was one thing we were concerned about,

 2    that they were looking at something from one of Elan's

 3    slides, seeing a reference to 109 to 111.  109 to 111 is not

 4    in evidence.  We believe they should be so instructed.

 5              THE COURT:  We will do that.  Mr. Scheve?

 6              MR. SCHEVE:  I am not sure I understand about it

 7    not being in evidence, because it was put up on the screen

 8    while Melody was on the stand.

 9              MR. JACOBS:  It's not in the transcript.  It's

10    not in evidence.  You can't find it in the transcript.

11              MR. RIDDLE:  May I add a bit that may help?

12              The demonstrative slide that was put up was 110.

13    I believe what the jury is asking for, consistent with their

14    previous question, is the page before and the page after.

15    It seems the jury is asking for context of what was shown to

16    them.  But I agree, that entire deposition is not in

17    evidence.

18              THE COURT:  Were those pages displayed?

19              MR. SCHEVE:  That one page.

20              THE COURT:  But not the before and after.

21              MR. SCHEVE:  Correct.

22              THE COURT:  Could we take a look at the before

23    and after?

24              MR. RIDDLE:  Yes, I have it here.

25              MR. JACOBS:  The other thing they asked for was
```

1   the cross-examination of Melody, which is a few pages and

2   they have that here.

3           MR. SCHEVE:  My view on this, Your Honor, is the

4   testimony they heard was, she referred to these gentlemen as

5   her lawyers.  I brought out testimony that she met with them

6   three times and I had never had an opportunity to meet with

7   her.  And so I think it would be not only fair but

8   appropriate just to say, when you say cross, do you mean

9   Mr. Scheve's or do you mean Ms. Kruze's, because they may

10  view her as their witness that I brought up there.

11  Referring to cross may be my questions.

12          I am not trying to gain an advantage.  This is

13  an instance where I think this would really enure to my

14  detriment, if we didn't have at least clarification of that.

15          THE COURT:  I need to recover the note.  Ms.

16  Walker, we need to recover that note.  Do you know the one

17  we are talking about?

18          If they say we want Ms. Kruze, it is clear.

19          Fair enough.  I can write a question.

20          MR. JACOBS:  Yes, if you think that's

21  appropriate.

22          THE COURT:  I think out of an abundance of

23  caution and in the interests of fairness.

24          What do we have now?  These are the deposition

25  pages.

```
 1              MR. RIDDLE:  Here is Page 109.

 2              THE COURT:  We are jockeying back and forth here

 3    between issues, for the record.

 4              I have just been handed by my chief deputy the

 5    question that we were just talking about, or the request:

 6    Page 109-111.  Melody deposition and all cross of her

 7    regarding limits of detection tests.

 8              You suggest, Mr. Scheve -- do you want me to

 9    frame that question?

10              MR. SCHEVE:  The 109 and 111 page.

11              MR. JACOBS:  I think the question is, when they

12    say cross-examination...

13              MR. SCHEVE:  That one.

14              MR. SULLIVAN:  Whose cross.

15              MR. JACOBS:  That implies there is multiple

16    cross.  What do they mean, is the way I would ask it.

17              MR. SCHEVE:  I would say do you want the

18    questions asked by Ms. Kruze or the questions asked by

19    Mr. Scheve.

20              MR. JACOBS:  They may want both.

21              THE COURT:  Let's do it this way:  Do you want

22    questions asked by Ms. Kruze, or Mr. Scheve, or both?

23              MR. SCHEVE:  Or both.

24              THE COURT:  I will write that back to them.

25              MR. SCHEVE:  Specifically, as I remember, Your
```

1  Honor, it was the limits of detection questions.

2            THE COURT:  I am going write it back to them

3  right on the note they have sent out here.

4            Why don't I date this.

5            I have written, on the jury request dealing with

6  the limits of detection Melody testimony, Do you want

7  questions asked by Ms. Kruze, or Mr. Scheve, or both?

8            Okay.  Now we are back to this earlier request

9  at Pages 109 -- not 109.  The one page --

10           MR. DAY:  109 to 111 is what they wrote.  110

11  was what was put on the screen.

12           THE COURT:  109 and 111 are not in evidence.

13           MR. JACOBS:  110 is not in evidence.  It was a

14  demonstrative.

15           THE COURT:  You say it was displayed to the

16  jury.

17           MR. SCHEVE:  It was displayed to the jury.

18           THE COURT:  Therefore, in your view, Mr. Scheve,

19  what is your position on whether it is evidence or not as a

20  result of that display, not so much whether it is evidence,

21  technically it's not evidence, what is your position?

22           MR. RIDDLE:  Maybe I can address this.

23           If you remember yesterday, there was a request

24  for testimony of Dr. Munson.  And it was along the same

25  lines, where there was a demonstrative displayed with a

1    quote.  This is akin to that, where they have seen a

2    demonstrative with a quote and they are just wanting the

3    remainder of the context.  I would say to be consistent we

4    would have to honor this request and provide them with the

5    pages they have asked for.

6              THE COURT:  What is your position?

7              MR. JACOBS:  My view is what we gave them was

8    literally portions of the trial transcript in response to

9    that series of questions.  So they got the trial transcript

10   excerpts, rather than something rootless and unsecured.

11             THE COURT:  I think that's factually accurate.

12             MR. SCHEVE:  Your Honor, they never marked that

13   over there.  We let them get a copy of the board yesterday

14   that they took a picture of.  It is really asking for

15   application two different ways.

16             THE COURT:  The answer back -- the easier issue

17   has just been answered.  They want both Mr. Scheve's and Ms.

18   Kruze's questions.

19             MR. JACOBS:  Regarding limits of detection.

20             THE COURT:  Yes.  Agreed?

21             MR. JACOBS:  Agreed.

22             THE COURT:  We will provide that to them

23   shortly.

24             Mr. Scheve, you are saying we have not adhered

25   strictly to the concept or the precept that the jury should

1    only consider evidence.

2             MR. SCHEVE:  If it is not referenced in the

3    record.  There is no exhibit sticker.

4             THE COURT:  That is demonstrative, clearly.

5             MR. SCHEVE:  They asked for it and we agreed

6    that they would get it.  With all due respect to my

7    colleague here, he is asking for an inconsistent application

8    of those rules.  It seems we are here to answer the jury's

9    questions, not to gain some tactical advantage anywhere.

10            MR. JACOBS:  They have asked for deposition

11   testimony on other occasions and we have said, no, we will

12   give you trial record.  The first question was the request

13   for Brittain testimony.  What we gave them was literally

14   what was in the trial record about Brittain.

15            THE COURT:  I agree with that.  The question,

16   Mr. Jacobs, keeping in mind the issue of fairness and also

17   obviously of the rules of procedure, are those situations

18   not factually distinguishable?  Here they are asking for

19   context, quite clearly.  Was it the same situation with

20   Brittain?  Was it different?  We were able to answer their

21   question by the provision of actual trial transcript.

22            MR. JACOBS:  Right.  Now, because we just gave

23   them the transcript, they can't tell who is asking the

24   questions.  We actually proposed a broader contextual

25   submission, then narrowed it in response to their concerns.

1          THE COURT:  These requests to a large degree

2   reflect the limits of our process, our procedure.  And it is

3   not perfect.

4          I do you suggest, however, if we can assist this

5   jury along the road, we should, in their truth-seeking

6   process.

7          I have a criminal proceeding.  We need to

8   postpone this.  There is a defendant about to be brought in

9   here.

10         MR. SCHEVE:  Can we gave to Ms. Walker, this is,

11   Mr. Jacobs asked the question and Dr. Brittain answered it.

12         MS. WALKER:  Okay.

13         THE COURT:  We will come back to this after I do

14   this.

15         (Sidebar conference concluded at 9:30 a.m.)

16         (The following took place at sidebar 10:08

17   a.m.)

18         THE COURT:  All right.  I have had a chance to

19   look at Pages 109 and 111, because 110 is the page that's

20   already there.  I don't think 109 and 111 add anything.  I

21   am not going to let the jury have it.  We are talking about

22   the deposition -- I have read both pages -- of Ms. Melody.

23         I think we have fulfilled all the other

24   requests.

25         MR. JACOBS:  We are working on Atwood.  We did

1   tell them who was speaking.  Right?

2              MS. WALKER:  Yes.

3              MR. SCHEVE:  We are getting our closing

4   statement documents.

5              MR. JACOBS:  JX-67.

6              MR. SCHEVE:  As soon as Mr. Riddle gets back on

7   the Melody issue on limits of detection.  Those are the --

8   then the Atwood issue.

9              THE COURT:  As counsel know, Mr. Jacobs filed a

10  Bench memo concerning certain exhibits at some point during

11  the course of the trial.  I think we have looked at them.  I

12  think you probably would agree, Mr. Scheve, that the

13  exclusion would be consistent with the ruling on the Motion

14  in Limine No. 3.

15             MR. SCHEVE:  This deal with the DA --

16             THE COURT:  Yes.

17             MR. SCHEVE:  We agree.

18             THE COURT:  I will grant that motion.

19             MR. JACOBS:  Are we okay on JX-67?

20             MR. SCHEVE:  It's all there.  Yes.

21             THE COURT:  The jury is taking a break, I think.

22             Anything else?

23             MR. SCHEVE:  We will get these other three

24  outstanding things resolved as quickly as Mr. Riddle gets

25  back.

1               (Sidebar conference concluded at 10:14 a.m.)

2               (Recess taken.)

3               THE COURT:  Counsel, the jury has announced that

4  we have a verdict.

5               MR. SCHEVE:  Your Honor, if I could raise one

6  issue, for the appellate record.  It is clear that Abraxis

7  had put into the notebooks the slides of their closing

8  argument.  We just now were able to get ours back, so that

9  ours were never included.  And so for the appellate record I

10  need to object to that, so that it appears on the record

11  that they got argument from the other side and we just -- we

12  had no idea it was being put in there.

13               Understanding we have a verdict, I am putting it

14  in for the appellate record.

15               THE COURT:  For the appeals record, I have to

16  give Mr. Jacobs a chance to respond to that.

17               MR. JACOBS:  Your Honor, we had two

18  understandings.  One, specifically, that the closing slides

19  were going in, and two, that the jury was getting, all along

20  the way we had agreed that the jury was getting

21  demonstratives.  So there was a large agreement and a small

22  agreement, as we understood it.  If the other side is saying

23  there was no such understanding, I don't have a writing or

24  something like that, but that was the understanding we had.

25               THE COURT:  Regardless of the understanding

1　　between the parties, let the record reflect the Court had no

2　　such understanding and was surprised to hear that any,

3　　demonstrative or otherwise, had gone back to the jury.

4　　Quite frankly, I was not a party to that, did not know that

5　　that had happened.  If I had known it, I would have

6　　prohibited it.  I think it unfortunate, quite frankly.

7　　　　　　　Ms. Walker.

8　　　　　　　(Jury enters courtroom at 11:32 a.m.)

9　　　　　　　THE COURT:  Good morning, ladies and gentlemen.

10　　Please take your seats.

11　　　　　　　Members of the jury, who speaks for you?

12　　　　　　　THE FOREPERSON:  I do.

13　　　　　　　THE COURT:  Juror No. 8, let me ask you this:

14　　Has the jury reached a unanimous verdict?

15　　　　　　　THE FOREPERSON:  Yes, we have, Your Honor.

16　　　　　　　THE COURT:  That verdict is reflected in the

17　　form of your hand?

18　　　　　　　THE FOREPERSON:  Yes.

19　　　　　　　THE COURT:  Will you pass that to Ms. Walker.

20　　　　　　　Members of the jury, please listen carefully as

21　　Ms. Walker, after I inspect the form, will announce your

22　　verdict.  You may be polled by one side or both as to

23　　whether this is your individual verdicts.  So listen

24　　carefully as in a few minutes your verdict will be

25　　published.

1             (Verdict sheet passed to Ms. Walker.)

2             (Ms. Walker passes verdict sheet to Court.)

3             (Pause.)

4             THE COURT:  Okay.

5             MS. WALKER:  We, the jury, unanimously find as

6  follows:

7             On the issue of infringement as to the '343

8  patent, do you find that Elan has proven, by a preponderance

9  of the evidence, that Abraxis has literally infringed any of

10  the following claims as to the '363 patent?

11             As to Claim 3:  Yes.

12             Claim 5:  Yes.

13             On the issue of invalidity, as to the '363

14  patent, do you find that Abraxis has proven, by clear and

15  convincing evidence, that any of the following claims of the

16  U.S. '363 patent is invalid for lack of enablement?

17             Claim 1:  No.

18             Claim 3:  No.

19             Claim 5:  No.

20             Claim 10:  No.

21             Claim 11:  No.

22             Do you find that Abraxis has proven, by clear

23  and convincing evidence, that any of the following claims of

24  the '363 patent is invalid for lack of adequate written

25  description?

1    Claim 1:  No.

2    Claim 3:  No.

3    Claim 5:  No.

4    Claim 10:  No.

5    Claim 11:  No.

6    As to the '025 patent, do you find that Abraxis

7    has proven, by clear and convincing evidence, that any of

8    the following claims of the '025 patent is invalid for lack

9    of enablement?

10    Claim 1:  No.

11    Claim 2:  No.

12    Claim 3:  No.

13    Claim 13:  No.

14    Claim 14:  No.

15    Claim 15:  No.

16    Do you find that Abraxis has proven, by clear

17    and convincing evidence, that any of the following claims of

18    the U.S. '025 patent is invalid for lack of adequate written

19    description?

20    Claim 1:  No.

21    Claim 2:  No.

22    Claim 3:  No.

23    Claim 13:  No.

24    Claim 14:  No.

25    Claim 15:  No.

1           On the issue of unenforceability, as to the '363

2   patent, do you find that Abraxis has proven, by clear and

3   convincing evidence, that the '363 patent is unenforceable

4   due to inequitable conduct?

5           No.

6           As to the '025 patent, do you find that Abraxis

7   has proven, by clear and convincing evidence, that the '025

8   patent is unenforceable due to inequitable conduct?

9           No.

10          On the issue of willfulness, has Elan proven, by

11  clear and convincing evidence, that any infringement of

12  Claims 3 or 5 of the '363 U.S. patent by Abraxis was

13  willful?

14          No.

15          In regards to monetary damages, the amount of

16  monetary damages that will compensate Elan for Abraxis's

17  infringement from January 7, 2005 through June 12, 2008,

18  through June 13th, 2008 -- I am not sure if we should change

19  that.

20          THE COURT:  It will be June 13th, yes.

21          MS. WALKER:  -- through June 13, 2008:  The

22  amount is $55,230,000, with a reasonable royalty rate of six

23  percent.

24          THE COURT:  Thank you, Ms. Walker.

25          Does either party -- the record should reflect

1        each of the jurors has executed the verdict form.

2                    Do the parties wish polling?

3                    MR. SCHEVE:  No, Your Honor.

4                    MR. JACOBS:  No, Your Honor.

5                    THE COURT:  Ladies and gentlemen, on behalf of

6        the parties, the Court wishes to thank you, heartily, for

7        your diligent service and your efforts in this case.  You

8        are hereby dismissed and free to return to your homes.

9                    (At 11:37 a.m. the jury was excused.)

10                   THE COURT:  All right.  If you wish to stay, I

11       am going to go back and speak with the jury.

12                   (Court recessed.)

13                   THE COURT:  Mr. Jacobs and Mr. Scheve asked a

14       process point.

15                   File your motions.  What I will permit you to do

16       is, you have to file them within the ten days.  It's real

17       clear you have to do that.  Then I will take from you, after

18       you decompress a little bit, you get a chance to talk, set a

19       briefing schedule for those motions.  They need to be at an

20       appropriate level of detail to the jury issues.

21                   There is work to be done.

22                   As to the renewal, I will accept that this is a

23       motion to renew, Mr. Jacobs.  I am going to stand by the

24       ruling.

25                   As to you as well, Mr. Scheve.

1    MR. SCHEVE:  Thank you.

2    THE COURT:  Important issue.  And one that I

3  have been at pains with counsel, and in this case, to try to

4  get you to understand.

5    The jury, as you could tell from their request,

6  felt that they didn't have some things they needed to have.

7  That is why they were asking for exhibits.

8    Jury notebooks need to be ready at the outset of

9  the case.  I think the best time is when you are on your

10  case-in-chief:  "Judge, may we pass out our juror

11  notebooks?"  Yes.  So they have the things, as I tried to

12  tell you, you think they need to have.  No more, no less.

13  Sometimes this is a tough call to make.  There will

14  inevitably in a case of this type, I think, be the need to

15  supplement with additional exhibits along the way,

16  especially when you have a jury that is as active as this

17  one was.

18    They need to have those notebooks at the outset.

19  They comment on it.  Specifically one of them passed that

20  along.

21    MR. JACOBS:  In addition to the motions you were

22  referring to, we need to get a ruling from the Court on

23  unclean hands and inequitable conduct.

24    THE COURT:  I think, as I recall, there was a

25  line on the form, and the jury has rendered it's verdict on

1    inequitable conduct.  It is likely, I don't know, I will

2    have to look at the verdict, I will not reverse that

3    finding.

4              I am reminded that I have already ruled on the

5    motion for unclean hands.  I granted JMOL.

6              MR. SCHEVE:  At some point will we go off the

7    record, Your Honor?

8              (Discussion off the record.)

9              (Trial concluded.)

10

11                        -  -  -

12

13   Reporter:  Kevin Maurer

14

15

16

17

18

19

20

21

22

23

24

25