IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA<br>INTERNATIONAL LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>ABRAXIS BIOSCIENCE, INC.,<br><br>Defendant. | § § § § § § § § § § § | **REDACTED<br>PUBLIC VERSION**<br><br><br><br>C.A. No. 06-438-GM |

**PLAINTIFF ELAN PHARMA INTERNATIONAL LIMITED'S
OPPOSITION TO DEFENDANT ABRAXIS BIOSCIENCE, INC.'S MOTION TO
QUASH SUBPOENA DIRECTED TO DR. ULAGARAJ SELVARAJ**

Plaintiff Elan Pharma International Limited ("Elan") hereby respectfully submits its Opposition to the Motion To Quash Subpoena Directed To Dr. Ulagaraj Selvaraj, submitted by defendant Abraxis Bioscience, Inc. ("Abraxis") on May 28, 2008. Elan's subpoena for Dr. Selvaraj is proper because Dr. Selvaraj is a senior manager within Abraxis who has detailed knowledge regarding the testing Abraxis has (and perhaps more importantly, has not) performed on the accused product Abraxane®. Moreover, Dr. Selvaraj worked closely with Elan before becoming employed by Abraxis. Accordingly, his testimony is crucial to Elan's case and the territorial limitations on the Court's subpoena power do not apply to such a witness. In fact, upon a showing that a witness such as Dr. Selvaraj is a party witness, the Court may and should compel that witness's testimony without a subpoena, by virtue of the party Abraxis's control over that witness.[1]

---

[1] See *United States v. Hitachi America, Ltd.*, 20 C.I.T. 193, 196-97, No. 93-06-00373, 1996 WL 47157, at **1 (C.I.T. Feb. 1, 1996)

Abraxis's Motion is accordingly both unwarranted, and moot.

### A. Dr. Selvaraj Is A Senior Manager Of Abraxis And Thus A Party Witness

**REDACTED**

As will be set forth more fully in Section B. below, he has comprehensive knowledge of Abraxis's testing of Abraxane®. He was nominated as Abraxis's Rule 30(b)(6) witness on a variety of topics related to Abraxane®. For purposes of all the topics on which he has extensive (perhaps in some cases exclusive) knowledge, Dr. Selvaraj *is* Abraxis. Case law makes clear that a party or its alter ego (that is, its officers, or high-ranking employees) may be compelled to attend and testify at trial, and that Fed. R. Civ. P. 45(b)(3)(A)(ii) does not insulate such party witnesses from compliance with the subpoena. *See, e.g., American Federation Of Government Employees Local 922 v. Ashcroft*, 354 F. Supp.2d 909, 915 (E.D. Ark. 2003) ("The majority of courts to consider the issue have held that a court may compel the trial testimony of parties and, where the party is a corporation or entity, the *party's high-level employees* or officers even when the person to be compelled resides beyond the 100-mile range for subpoenas.") (emphasis supplied) (citing *Archer Daniels Midland Co. v. Aon Risk Servs, Inc.*, 187 F.R.D. 578,

---

> Defendants contest the motion to present their officers and other representatives, and make much of the fact that this Court has no power to enforce the service of subpoenas on foreign citizens in foreign countries. But, as plaintiff points out, this argument misses the point: the Court has not been asked to issue subpoenas. What is sought is that the Court order the corporate defendants, over whom it unquestionably has jurisdiction, to produce certain witnesses. Despite the distances and expenses involved, the Court feels that this demand is not unreasonable . . . .

2 **REDACTED**

587 (D. Minn. 1999) (recognizing distinction between "ordinary employees and . . . directors, officers and *other high-level representatives*" for purposes of compelling appearance to testify)); *Younis v. American Univ. in Cairo*, 30 F.Supp.2d 390, 395 n. 44 (S.D.N.Y. 1998) (recognizing that officers of an Egyptian university which was a defendant could be compelled to appear and testify in New York). The geographic limitations of the subpoena power simply do not apply to a party witness such as Dr. Selvaraj.

Abraxis's Motion notes a line of law requiring "managing agents" of a party to testify at trial. While Elan believes that the line of cases it has cited above establish that "high level employees" of a party are subject to compulsory testimony, especially when as here they have information of core importance, Abraxis's application should fail under the "managing agent" case law as well.

Abraxis cites (Motion at 4) *Tel Sys. v. Cecil*, No. 02-CV-9315GBDRLE, 2004 WL 48879 (S.D.N.Y. Jan. 9, 2004), in support of its argument that Dr. Selvaraj cannot be deemed a managing agent of Abraxis. But *Tel. Sys.* involved a rejection of a claim that an "honorary chairman" was "tantamount to a director or actual officer of the corporation." *Id.*, at *2. As Elan establishes in Section B. below, Dr. Selvaraj's duties and authority with respect to testing of Abraxane® are extensive and far from "honorary."

In finding that employee witnesses qualify as managing agents, and thus deeming the 100 mile limitation on subpoenas moot (and indeed, ruling that their attendance can be compelled even absent a subpoena), courts give close and practical consideration to whether "[t]he witnesses are in important decision-making positions with the defendant

corporation and appear to have been key participants in the circumstances surrounding the present action." *Shawnee Holdings, Inc. v. Travelers Indemnity Co. of Am.*, No. 3:01CV2071, 2004 WL 234369 (M.D. Pa. Feb. 4, 2004) (emphasis supplied) (compelling testimony of four employee witnesses, including claims adjustor, policy underwriter, and account executives supervisor who had made recommendations as to the proper handling of an insurance claim).

Courts applying the "managing agent" doctrine have been careful to consider the totality of the circumstances and not to exalt form over substance.

> The identification of a managing agent in any given case is fact-sensitive. "[B]ecause of the vast variety of factual circumstances to which the concept must be applied, the standard . . . remains a functional one to be determined largely on a case-by-case basis." *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1452 (D.C. Cir. 1986) (citation omitted). Thus, "the question of whether a particular person is a 'managing agent' is to be answered pragmatically on an ad hoc basis . . . ." 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970); *see also* 4A Moore's *Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994). Whether a proposed deponent falls into a particular category of employees or agents is therefore less relevant than the individual's specific functions and authority.

*United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994).

Notably, the Court in *Afram* listed five factors (not four) to balance in considering whether a witness could qualify as a managing agent. Three of the factors (whether the individual had general powers allowing him to exercise judgment and discretion in corporate matters; the general responsibilities of the individual respecting the matters involved in the litigation; and whether the individual can be expected to identify with the interests of the corporation) identified in *Afram* were similar to those cited by Abraxis in connection with the *Tel. Sys.* case. But the Afram court supplemented one factor listed in *Tel. Sys.* -- it noted that the inquiry as to whether there

was a person of "higher authority" than the desired witness went to "higher authority than the individual designated *in the area regarding which the information is sought by the examination.*" *Id.* (emphasis supplied). The *Afram* court also added a fifth factor: "whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party." *Id.*

All of the factors listed in *Afram* favor compulsion of Dr. Selvaraj's testimony as a party witness and managing agent. As to Dr. Selvaraj's general authority to speak for Abraxis, it is notable that he was designated to speak as the corporate alter ego on certain Abraxane matters by virtue of his nomination as a Rule 30(b)(6) witness. As a current and senior employee of Abraxis, he is without doubt subject to and would obey Abraxis's direction to appear for trial, and without doubt would identify with Abraxis's interests in testifying.

His general responsibilities relate directly to, and reflect comprehensive knowledge of and involvement with testing decisions relating to, Abraxane®.

On the final factor, Abraxis argues that there are several persons employed by Abraxis who are in positions of higher authority than Dr. Selvaraj (Motion at 5). But this misses the point made clear in *Afram*: the persons in question need to be of higher authority than Dr. Selvaraj *in the area regarding which the information is sought by the examination.*

**REDACTED**

B.  **Dr. Selvaraj Has Comprehensive Information
    <u>Regarding Abraxane That Is Vital To Elan's Case</u>**

Dr. Selvaraj is the equivalent of an officer of Abraxis by virtue of his senior managerial status. He is certainly a "high level employee" as discussed in applicable case law. Further, his testimony is vital to Elan's case because he has comprehensive (perhaps in some cases unique) information regarding Abraxis's formulation and characterization and testing of Abraxane®, including Abraxis's basis for characterizing Abraxane® as "amorphous" in various fora.

**REDACTED**

As the Court is aware, Elan has submitted and expects to rely upon extensive expert evidence challenging the suitability of X-ray powder diffraction for ruling out the presence of entirely crystalline nanoparticles of cancer medicaments.

**REDACTED**

It is not that Dr. Selvaraj is unaware of nuclear magnetic resonance technology.

**REDACTED** But as Elan has explained to the Court, it is not a "finished product" that infringes Elan's '363 Patent claims; it is the nanoparticles therein, including but not limited to those in a suspension once reconstituted for injection, that are the claimed invention.

**REDACTED**

Dr. Selvaraj's comprehensive familiarity with the tests performed by Abraxis for characterization of Abraxane® confirm his supervisory, managerial role as a "high level employee."

**REDACTED**

**REDACTED**

It would be unfair to deny Elan the ability to present to the jury the *viva voce* testimony of a current employee with such comprehensive knowledge of the testing that Abraxis did, and did not, choose to do on its accused product, as to issues central to Elan's case.

Finally, there is no Abraxis employee other then Dr. Selvaraj who can testify as to the knowledge he personally gained from his work with Elan and applied to Abraxis's product, Abraxane®.

## Conclusion

Under these circumstances, and because he is a "high level employee" and a party witness, Elan should be permitted to examine Dr. Selvaraj at trial, because Rule 45's territorial restrictions on the reach of a subpoena do not apply to such key party witnesses. Elan accordingly respectfully requests that the Court deny Abraxis's Motion To Quash and order that Dr. Selvaraj appear at trial in accordance with the Court's inherent authority to order appearances by party witnesses, and/or in accordance with Elan's validly-issued subpoena.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. # 4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware  19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff,*
Elan Pharma International Limited

*Of Counsel:*

Stephen E. Scheve
Linda M. Glover
Robert Riddle
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas  77042-4995
(713) 229-1659

Paul F. Fehlner
Jeffrey D. Sullivan
Lisa A. Chiarini
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York  10112-4498
(212) 408-2527