IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-438-GMS |
| ABRAXIS BIOSCIENCE, INC., | ) ) | **REDACTED – PUBLIC VERSION** |
| Defendant. | ) ) | |

**DEFENDANT ABRAXIS BIOSCIENCE, INC.'S ANSWERING BRIEF
IN OPPOSITION TO ELAN'S MOTION FOR
(1) AN AWARD OF PREJUDGMENT INTEREST AND (2) AN
ACCOUNTING OF ABRAXIS'S INFRINGING SALES SINCE JUNE 12, 2008**

OF COUNSEL:

Michael A. Jacobs
MORRISON & FOERSTER, LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Emily A. Evans
Eric S. Walters
Erik J. Olson
Paul F. Coyne
Diana B. Kruze
MORRISON & FOERSTER, LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600

Anders T. Aannestad
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California 92130
(858) 720-5100

Dated: July 18, 2008

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Josy W. Ingersoll (#1088)
Elena C. Norman (#4780)
Karen E. Keller (#4489)
Michele Sherretta Budicak (#4651)
Jeffrey T. Castellano (#4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jingersoll@ycst.com
enorman@ycst.com
kkeller@ycst.com
mbudicak@ycst.com
jcastellano@ycst.com

*Attorneys for Defendant
ABRAXIS BIOSCIENCE, INC.*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   NATURE AND STAGE OF THE PROCEEDINGS .................................................... 2

III.  SUMMARY OF ARGUMENT .............................................................................. 2

IV.   FACTUAL BACKGROUND ................................................................................. 3

V.    ARGUMENT ..................................................................................................... 4

    A.    Prejudgment Interest Should Be Compounded Annually ...................................... 4

    B.    An Accounting Should Be Deferred Until After Any Appeal .............................. 5

    C.    It Would Be Improper to Account for Ongoing Sales Based on a Royalty of Six Percent Applied to the Net Revenues from the Sale of Abraxane .............. 9

        1.    Imposition of an Ongoing Royalty After Trial Requires the Court to Make an Independent Legal and Factual Determination ...................... 9

        2.    Even The Evidence At Trial Did Not Support a Six Percent Royalty .............................................................................................. 10

        3.    Elan Cannot Recover Based on Sales Revenue from Abraxane ............. 13

VI.   CONCLUSION .................................................................................................. 14

DB02:6991933.1

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amado v. Microsoft Corp.,*
    517 F.3d 1353 (Fed. Cir. 2008)................................................................6, 8, 9

*Amado v. Microsoft Corp.,*
    CA. No. 03-CV-242 (C.D. Cal. 2008) .........................................................7

*Bio-Rad Labs. Inc. v. Nicolet Instrument Corp.,*
    807 F.2d 964 (Fed. Cir. 1986).....................................................................4

*Bose Corp. v. JBL Inc.,*
    112 F. Supp. 2d 138 (D. Mass. 2000) ..........................................................4

*Boston Scientific Corp. v. Johnson & Johnson,*
    No. C 02-00790 SI, 2008 WL 480193 (N.D. Cal. Feb. 19, 2008)..........................7

*Datascope Corp. v. SMEC, Inc.,*
    879 F.2d 820 (Fed. Cir. 1989).....................................................................4

*Dragan v. L.D. Caulk Co.,*
    C.A. No. 84-707-JJF, 1989 U.S. Dist. LEXIS 13966 (D. Del. Apr. 12, 1989) ........................5

*Georgia-Pacific Corp. v U.S. Plywood Corp.,*
    318 F. Supp. 1116 (S.D.N.Y. 1970),
    *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971) ...............................................12

*Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH,*
    408 F.3d 1374 (Fed. Cir. 2005).................................................................13, 14

*Innogenetics, N.V. v. Abbott Labs.,*
    512 F.3d 1363 (Fed. Cir. 2008)...................................................................7

*Integra Lifesciences Ltd. v. Merck KGaA,*
    2003 U.S. App. LEXIS 27796 (Fed. Cir. June 6, 2003**),**
    *vacated in part on other grounds,* 545 U.S. 193 (2005).........................................11

*Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.,*
    315 F. Supp. 2d 589 (D. Del. 2004)..............................................................14

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.,*
    895 F.2d 1403 (Fed. Cir. 1990)..................................................................12

DB02:6991933.1    065496.1001

*Lucent Techs. Inc. v. Gateway, Inc.*,
    509 F. Supp. 2d 912 (S.D. Cal. 2007)................................................................11, 14

*Medtronic, Inc. v. Catalyst Research Corp.*,
    547 F. Supp. 401 (D. Minn. 1982)................................................................14

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007)................................................................6, 7, 9, 10

*Praxair, Inc. v. ATMI, Inc.*,
    479 F. Supp. 2d 440 (D. Del. 2007)................................................................7

*Transmatic Inc. v. Gulton Indus. Inc.*,
    180 F.3d 1343 (Fed. Cir. 1999)................................................................4

*Trell v. Marlee Electr. Corp,*
    912 F.2d 1443 (Fed. Cir. 1990)................................................................11

*W.R. Grace & Co. v. Intercat Inc.*,
    60 F. Supp. 2d 316 (D. Del. 1999)................................................................4

**STATUTES**

28 U.S.C.
    § 1292(c)(2) ................................................................9
    § 1961................................................................2, 4, 5

35 U.S.C.
    § 284................................................................4

DB02:6991933.1

065496.1001

## I.    INTRODUCTION

Elan's motion for an accounting fundamentally misperceives the evidence required for the Court to determine the appropriate monetary relief to be paid *after* the jury's verdict. Elan assumes without evidence or argument that the jury's finding regarding a royalty for the period January 2005 to June 2008 automatically applies after the verdict. This is wrong. Moreover, even Elan's original evidence did not support the use of a six percent royalty or the application of that royalty rate to all sales of Abraxane. Because of Elan's error, Elan's motion fails to justify the relief that it seeks, relying on speculation and assumption where evidence and analysis is required.

While the Court could wrestle in the present with the substantial legal and factual questions required to conduct an accounting, that work is not necessary at this time. Elan is not seeking a permanent injunction and is not seeking payment for any judgment from Abraxis pending any appeal in this action. As a result, an accounting for future damages from the date of the verdict to January 2011, when the patent expires, can be deferred until after an appeal without any prejudice to Elan. By doing so, the Court will avoid committing the legal errors that Elan's motion invites, will avoid the unnecessary burden of conducting an accounting at least twice, and will benefit from a complete factual and legal record when it makes any final accounting.

If the Court does not defer, Elan's motion cannot be granted because Elan has not introduced an appropriate factual record to determine monetary relief after trial, because Elan's proposed royalty rate lacks support in the license agreements or speculative profit calculations on which Elan relied at trial, and because Elan has not submitted evidence that demonstrates that the allegedly infringing nanoparticles are the basis for demand for Abraxane. Without this evidence, Elan cannot use Abraxane revenues as a royalty base for any past or ongoing royalty calculation

1

and cannot support the proposed six percent rate. Rather, Elan's new infringement theory at trial, in which it alleged that "more than one" particle in 62 trillion met the crystalline limitation of the '363 Patent, requires a different approach consistent with the *de minimus* scope of the alleged infringement and the *de minimus* contribution of the alleged infringement to the value of Abraxane.

With respect to Elan's request for prejudgment interest, Abraxis does not oppose use of the three-month United States Treasury bill rate. However, the interest should be compounded annually not quarterly, consistent with other district court decisions and with 28 U.S.C. § 1961.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

A jury trial was held from June 2 to June 13, 2008. The jury returned a verdict in favor of Elan on direct infringement of the '363 patent, awarding $55,230,000 for the periods between January 2005 to June 13, 2008. D.I. 613-4. Abraxis has renewed its motions for judgment as a matter of law, regarding the liability, validity and the damages award, sought a new trial, and sought to amend the judgment to find that Elan engaged in inequitable conduct. D.I. 633; D.I. 634. The present motion is one of three post-trial motions brought by Elan.

## III.    SUMMARY OF ARGUMENT

1)    Abraxis agrees that the three-month U.S. Treasury bill provides the appropriate rate. In contrast to Elan's argument, annual compounding, not quarterly compounding, is more consistent with relevant decisions and with 28 U.S.C. § 1961. Further, Mr. Jarosz's declaration wrongly calculates interest using daily, not quarterly compounding, after June 13, 2008.

2)    Elan's request for an accounting is not supported legally or factually. Elan's piecemeal approach to determining any monetary remedy for infringement after trial would result in legal errors, unnecessarily increases the burden on the Court and the parties, and relies

2

on conjecture not facts. All these deficiencies can be remedied by deferral of an accounting until after an appeal, which would not prejudice Elan.

3)    To the extent that the Court nonetheless proceeds, Elan has not provided a factual record that will support the ongoing application of a six percent royalty to future Abraxane sales. This result is contrary to the evidence already submitted and cannot be justified legally because Elan failed to demonstrate that the *de minimus* number of allegedly infringing particles are the basis for customer demand for Abraxane. Any award for monetary relief after trial will ultimately require a fundamentally different framework.

## IV.    FACTUAL BACKGROUND

At trial, Elan sought damages based on Abraxis's alleged infringement of the '363 patent between January 2005 and June 2008. Mr. Jarosz's opinion regarding a royalty rate relied substantially on license agreements in which Elan licensed forty-five-plus United States patents, an equal number of additional United States patent applications, and the additional unpatented know-how and technology included in Elan's NanoCrystal technology portfolio. Tr. 799:2-804:17. Mr. Jarosz also relied heavily on a hypothetical calculation that the alleged "long run" profits resulting from the sale of Abraxane would be 32 percent of sales. Tr. 811:1-812:8. It is undisputed that Abraxis has actually experienced at least $208 million in operating losses since January 2005. Tr. 858:10-860:23.

At trial, Elan also introduced a new argument that Abraxane itself did not infringe but that Abraxane contained "more than one" particle among 62 trillion that was entirely crystalline. Tr. 1693:7-19; *see also* Tr. 1711:9-12. Elan analogized the jury's task to identifying a few infringing bolts in a fully assembled car. Tr. 1707:4-19. Despite Elan's admission that the particles in Abraxane overwhelmingly did not infringe the '363 Patent, Elan produced no

evidence that the "more than one" allegedly infringing particle was the basis for customer demand for Abraxane.

The jury returned a verdict for Elan, awarding $55,230,000 based on the application of a six percent royalty to a royalty base composed of net revenues from all sales of Abraxane as well as an up-front payment from Astra Zeneca. D.I. 613. The verdict accounted for damages from January 7, 2005 through June 13, 2008. *Id.* Abraxis has filed post-verdict motions seeking judgment as a matter of law and for a new trial, including challenges to the damages award. D.I. 633 (motion); D.I. 642 (opening brief).

## V.    ARGUMENT

### A.    Prejudgment Interest Should Be Compounded Annually.

35 U.S.C. § 284 gives the Court discretion both whether and in what amount to grant prejudgment interest. *Bio-Rad Labs. Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 968-69 (Fed. Cir. 1986). As noted in its motion for judgment as a matter of law and for new trial, Abraxis believes that the jury's award cannot be justified by evidence or the law. D.I. 633; D.I. 642. However, if both the infringement verdict and the damages award is upheld, Abraxis agrees that the three-month United States Treasury Bill rate is appropriate. Abraxis opposes Elan's application for prejudgment interest on the limited issue of the manner in which interest is compounded.

Prejudgment interest should be compounded annually. This approach is both consistent with a broad range of prior decisions and with 28 U.S.C. § 1961, which defines the manner in which post-judgment interest is calculated. 28 U.S.C. § 1961; *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir. 1989) (compounding annually); *Transmatic, Inc. v. Gulton Indus. Inc.*, 180 F.3d 1343, 1348 (Fed. Cir. 1999); *Bose Corp. v. JBL Inc.*, 112 F. Supp. 2d 138, 170 (D. Mass. 2000) (compounding annually); *W.R. Grace & Co.-Conn. v. Intercat Inc.*, 60 F. Supp.

4

2d 316, 332 (D. Del. 1999) (compounding annually); *Dragan v. L.D. Caulk Co.*, C.A. No. 84-707-JJF, 1989 U.S. Dist. LEXIS 13966, at *38 (D. Del. Apr. 12, 1989) (adding prejudgment interest yearly). Abraxis contends that these decisions and 28 U.S.C. § 1961 provides an appropriate balance between the award of interest and the manner in which it should compound.

If the Court decides to use quarterly compounding, Mr. Jarosz's calculations are incorrect. Despite repeated statements in Elan's brief that it was only seeking interest compounded quarterly, Mr. Jarosz's calculations in fact provide for daily compounding with respect to all interest calculations from June 13, the date of the verdict, forward. *Compare* D.I. 636 ("Elan Opening Br.") at 6 & 7 ("Mr. Jarosz employs the three-month United States Treasury Bill rate and compounding interest quarterly.") *with* D.I. 637 ("Jarosz Decl.") ¶ 15 (providing for daily compounding). Further, Mr. Jarosz calculates prejudgment interest based on an estimate of Abraxis's monthly net sales when the actual numbers are available and assumes all sales occur on the first day of the month. *See* Jarosz Decl. ¶¶ 5 & 7. Abraxis can, as needed, provide actual results. Thus, there is no justification for such assumptions.[1]

**B.    An Accounting Should Be Deferred Until After Any Appeal.**

Elan requests an accounting through the date on which the Court resolves the post-judgment motions, seeking to add to the jury's verdict based on a six percent royalty applied to an estimate of daily sales plus additional prejudgment interest. Elan's motion is unclear regarding whether Elan will seek a further accounting, will seek an order requiring payment of an ongoing royalty, or will seek a future jury or court trial to determine damages following entry of a judgment in the present case. *See* Elan Opening Br. at 1 fn. 1. Notably, the jury's present

---

[1] If any assumption is warranted, the appropriate and conservative assumption would be that all sales were completed by the end of the month.

065496.1001

award is nearly current, having awarded damages through June 13, 2008, slightly over 30 days ago.

Elan's piecemeal approach to any additional monetary recovery due to any infringement from the date of the verdict until the expiration of the patent would result in legal error, would unnecessarily multiply the work of the Court and the parties, and fails to address the question presented with facts, rather than conjecture and estimation. All the foregoing issues can be avoided, without prejudice to Elan, simply by deferring a final accounting until after any appeal that follows the resolution of the post-trial motions. Even Elan's motion explicitly recognizes that the present process is optional and that any accounting can be addressed in subsequent proceedings. Elan Opening Br. at 1 fn.1. Abraxis requests that the Court adopt this more efficient and effective approach and defer an accounting until after an appeal.

First, Elan's motion would result in legal error because, as discussed in detail below, the Court is obligated to conduct a separate fact-finding inquiry to resolve ongoing damages and because even Elan's evidence at trial fails to provide a basis for Elan to obtain a royalty on all Abraxane sales or to justify the six percent royalty. The Federal Circuit has concluded that a district court must provide a relevant and complete factual basis for the imposition of an ongoing royalty after a jury's verdict. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 2430 (2008); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008). Elan's proposal and submission do not provide any evidentiary foundation for its request for an ongoing royalty of six percent. Further, Elan has not produced evidence either of how the allegedly infringing nanoparticles contribute to demand for the product, which is a necessary legal prerequisite if damages are calculated using a royalty base

composed of the net revenues from sales of Abraxane. *See* Section C.3 *infra*. Elan's motion

lacks the factual and legal foundation for the accounting that it seeks.

Second, Elan's proposal unnecessarily multiplies the work of the parties and the Court

because it would require, at a minimum, at least two separate accountings, now and after

January 11, 2011.[2] Elan's piecemeal approach requires that the parties and the Court proceed

before both the law and facts regarding the manner in which any post-verdict damages should be

determined is resolved. As Abraxis indicated to the Court during the trial, the manner in which

an ongoing royalty for patent infringement should be determined when a party fails to seek or is

denied a permanent injunction is a legal issue that is currently in flux and will likely be under

review at the Federal Circuit and in other district courts in the near future in light of recent

decisions. Tr. 837:14-24; *see, e.g., Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379-

1381 (Fed. Cir. 2008) (remanding for further proceedings to evaluate damages after reversal of

the district court's entry of a permanent injunction); *Boston Scientific Corp. v. Johnson &*

*Johnson*, No. C 02-00790 SI, 2008 WL 480193 (N.D. Cal. Feb. 19, 2008) (refusing to conduct an

accounting, evaluating a patentee's right to an ongoing royalty and ordering further proceedings

with respect to the amount and nature of any post-verdict royalty); *Praxair, Inc. v. ATMI, Inc.*,

479 F. Supp. 2d 440, 444 (D. Del. 2007) (denying a preliminary injunction because monetary

relief would be adequate; on appeal following entry of judgment on the issue of

unenforceability). For example, the manner in which ongoing damages should be determined is

once again under submission in *Amado v. Microsoft Corp.*, CA. No. 03-CV-242, (C.D. Cal.

---

[2] If the jury's verdict is upheld after post trial motions and appeal, the Court will need to conduct a final accounting to determine Elan's monetary recovery from June 13, 2008 to January 2011, when the patent expires, because Elan has not sought a permanent injunction. Despite Elan's suggestion that a subsequent action is warranted, the Federal Circuit has stated that "the fact that monetary relief is at issue in [the] case does not, standing alone, warrant a jury trial." *Paice LLC*, 504 F.3d at 1316.

7

2008), following remand from the Federal Circuit. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008). Both the Court and the parties will benefit from the Federal Circuit's or other district courts' resolution of the relevant issues.[3] Deferral thus avoids the necessity for multiple proceedings and reduces the risk of reversible legal error. In addition, deferral would permit the Court to address any new legal issues related to the accounting that are raised by the Federal Circuit if the present verdict survives appellate review following resolution of the present post-trial motions.

Third, as Elan admits, nearly all the facts needed to determine a final accounting through post-trial briefing and through the expiration of the '363 Patent in January 2011 are not yet known. The revenue and operating income from sales of Abraxane are not yet known. The proper interest rates are not yet known. Much of the evidence that the Court would need to make an independent evaluation of an ongoing royalty is not available in this motion. *See* Section C.1. *infra*. Time will fill nearly all these gaps. Deferral will allow the court and parties to conduct a single accounting based on real knowledge not assumptions and conjecture.

All these benefits are obtainable without any prejudice to Elan. The parties have acknowledged that, to the extent that post-trial motions do not result in further proceedings in this Court, one or both of the parties will appeal. Elan is not seeking a permanent injunction and is not seeking payment for any judgment by Abraxis pending any appeal in this action. No security is needed because Abraxis is in a very strong financial position with nearly $700 million in cash. Olson Decl. ¶ 3 & Ex. B. As a result, Elan's requested accounting would merely result

---

[3] The pending and existing district court proceedings raise numerous issues that could ultimately affect any accounting in this case, including the manner in which a reasonable royalty after a verdict should be determined, the legal basis for seeking such an award, the opportunities for the alleged infringer to challenge the award based on a change in the product, the amount of evidence and the degree of scrutiny required to support the ongoing award, and the degree to which the district court must account for the jury's determination in making its final order.

in a meaningless increase in the judgment from which an appeal is taken. The actual amount that Abraxis would have to pay, if the verdict is upheld, is necessarily a different amount and will necessarily be determined in proceedings long after the present motion is resolved.

For all these reasons, Elan's motion suffers from substantial legal, factual, and practical deficiencies with no corresponding benefit. Deferral of an accounting until such time as the facts are known, the proper legal framework is more fully determined, and all matters can be resolved in a single proceeding resolves these deficiencies without any corresponding prejudice to Elan. Thus, Abraxis requests that the Court deny the present motion.[4]

**C.    It Would Be Improper to Account for Ongoing Sales Based on a Royalty of Six Percent Applied to the Net Revenues from the Sale of Abraxane.**

**1.    Imposition of an Ongoing Royalty After Trial Requires the Court to Make an Independent Legal and Factual Determination.**

Recent Federal Circuit authority holds definitively that the determination of a patent-holder's monetary compensation for any infringement after a jury's verdict is not identical to the jury's determination. *Paice LLC*, 504 F.3d at 1314-15; *Amado*, 517 F.3d at 1361-62. As the Federal Circuit has stated, "There is a fundamental difference, however, between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." *Amado*, 517 F.3d at 1361; *Paice LLC*, 504 F.3d at 1317 ("[P]re-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors.") (Rader, J., concurring). Because the two circumstances present independent legal and factual questions, a district court must receive and evaluate evidence addressing this specific question and provide a well-reasoned legal and factual rationale for its determination of an ongoing royalty. *Amado*, 517 F.3d at 1362 (remanding for a new written

---

[4] Notably, a judgment that resolves all issues other than accounting is immediately appealable and thus deferral of an accounting will not affect the timing, scope or finality of any appeal. 28 U.S.C. § 1292(c)(2).

decision); *Paice LLC*, 504 F.3d at 1316 (remanding for a new written decision). It is not sufficient to rely on the jury's verdict alone.

Elan's motion completely fails to provide the necessary factual or legal foundation. Elan merely assumes that the application of the six percent royalty is appropriate. Elan Opening Br. at 7.[5] Further, Elan assumes without evidence or explanation that it is entitled to seek an ongoing royalty based on the sales of Abraxane as a whole. *Id.* Moreover, Elan's submission relies on nothing other than conjecture to identify what the ultimate amount of sales are or will be, admitting that it has no actual information regarding sales. *Id.* at 6. None of this provides an adequate legal or factual basis for the order that Elan seeks.

2.    <b>Even The Evidence At Trial Did Not Support a Six Percent Royalty.</b>

To the extent Elan relies on anything, it relies on the evidence submitted to the jury regarding damages from January 2005 to June 2008. The jury returned a verdict based on a 6 percent royalty rate applied to every sale of Abraxane. D.I. 613. However, as noted above, Elan is required, and Abraxis is entitled, to submit additional evidence to determine the proper rate, proper royalty base, and proper remedy after the verdict.

Nonetheless, even the evidence at trial fails to support the six percent royalty rate that Elan seeks. To support this rate, Elan relied heavily on prior Elan license agreements concerning NanoCrystal technology and a speculative calculation of Abraxis's profits. *See* Tr. 799:2-804:17. The licenses on which Elan relied were not specific to the '363 patent, and included many more-recent patents, as well as additional technical assistance and know-how. Tr. 851:1-

---

[5] Elan suggests that Abraxis "stipulated" to Elan's position before the jury's verdict. Elan Opening Br. at 3 (citing Tr. 1632:16-21). This is wrong. Abraxis acknowledged that only Elan had presented a damages theory, but noted that the jury could nonetheless reject that theory. Tr. 1649:5-1651:17. The Court explained the interchange stating, "There is only one set of numbers" being presented to the jury. Tr. 1649:21. Nothing in that exchange resolves the question of post-verdict royalties.

10

853:7. Elan's licenses explicitly included as many as 45 additional patents in addition to an equal or greater number of patent applications and continuation applications. *See* PX 50



; PX 64 ██████████████████████████████████████████████████████████████████████

██████████████████████████████████████; PX 63 ██████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████. Even despite this critical difference in the scope of the technology transferred, the few license agreements that mentioned the '363 Patent reflected royalty rates that are as low as 1.5 percent royalty with a median rate of 3.0 percent. Tr. 853:21-854:24; *see, e.g.* PX 46 ██████████████████████████████████████████████████████████████████████

██████████████████████████████. Thus, even if the technology transferred in the foregoing agreements was comparable, these licenses would not support an ongoing royalty rate of 6.0%.

More importantly, none of the licenses compared to the situation here, where Elan claimed that only the '363 patent was infringed, and then only by a small, incidental fraction of the product. *See, e.g.*, *Integra Lifesciences Ltd. v. Merck KGaA*, No. 02-1052, 02-1065, 2003 U.S. App. LEXIS 27796, at *28-30 (Fed. Cir. June 6, 2003), *vacated in part on other grounds*, 545 U.S. 193 (2005) (reversing jury award due to reliance on incomparable license agreements); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446-47 (Fed. Cir. 1990) (reversing award because licenses related to a broader bundle of technology not comparable to patent in suit); *Lucent Techs. Inc. v. Gateway, Inc.*, 509 F. Supp. 2d 912, 938-39 (S.D. Cal. 2007) (granting a new trial when the license agreements submitted at trial were not sufficiently similar to the circumstances at trial to support the royalty rate used by the jury). Elan wrongly seeks to use agreements that

involved vastly broader technology transfers, involving products created by Elan scientists in which every nanoparticle would infringe one of Elan's patents, to justify a royalty rate for a product not created by Elan's scientists in which a *de minimus* subset of the particles allegedly infringes.

Nor can the six percent royalty rate be justified based on evidence regarding profitability. Elan relied heavily on a hypothetical calculation of an alleged "long run" profitability of 32 percent of sales to justify its proposed royalty rate. Tr. 811:1-812:8. If actual profits are considered, Mr. Jarosz agreed that the "profit split rule" would point to a royalty range between 1.2 percent and 3.0 percent. Tr. 857:21-858:8. In contrast to Elan's reliance on Mr. Jarosz's purely hypothetical calculations, the Federal Circuit has rejected reliance on "an estimate of anticipated profits that bore no relation to actual profits." *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1407 (Fed. Cir. 1990). Similarly, the relevant *Georgia Pacific* factor emphasizes the use of the "*established* profitability of the product . . . under the patent" when evaluating damages in the form of royalty. *Georgia-Pac. Corp. v U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (emphasis added), *modified & aff'd*, 446 F.2d 295 (2d Cir. 1971).

Elan rejected the use of Abraxis's actual reported and audited financial results in favor of a speculative calculation of a *32* percent future *profit* over the "long run." Tr. 811:22-812:4. In contrast, Abraxis has actually reported *losses* of between 80 percent and 3 percent of sales in each of the last three years. Tr. 858:10-860:23. Since 2005, Abraxis' cumulative losses exceed $200 million. Olson Decl. Ex. A (Tab 4 of Mr. Jarosz supplemental report). While Mr. Jarosz attributed some of the reported losses to a merger (Tr. 860:1-15), he never identified why the merger, which was necessary for Abraxis to obtain the rights to sell Abraxane, should not be

12

counted in the calculation of profits. *See* Tr. 860:1-25. Even if the merger costs are excluded, Abraxis has reported cumulative *losses* of more than $28 million in the period between 2005 and March 2008. Tr. 860:12-15; Olson Decl. Ex. A. Over this same period, Mr. Jarosz's model suggests that Abraxis should have made a $235 million *profit* (32 percent of the $734 million in reported revenue from the sales of Abraxane). Thus, Elan's hypothetical model missed the mark by between $250 million and $435 million depending on whether merger costs are included. This huge difference undermines the evidence that Elan has suggested supports a six percent rate.

### 3.    Elan Cannot Recover Based on Sales Revenue from Abraxane.

Moreover, Elan's "more-than-one particle" theory is legally inconsistent with Elan's royalty calculation. Elan emphasized, "we are not claiming that Abraxane as a product infringes. We are claiming that Abraxane contains particles and that those particles infringe. . . . And the question is, among those 61 trillion [particles], are there *more than one* particle—are there particles that embody the '363 patent and therefore infringe it." Tr. 1693:9-19; *see also* Tr. 1711:9-12. Mr. Jarosz acknowledged, however, that his calculations were based on "all the nanoparticles" in every Abraxane vial. Tr. 848:10-18. During closing arguments, Elan analogized the jury's task to finding a few infringing bolts in a fully assembled car. Tr. 1707:4-19. But Elan did not seek a royalty based on the value of the "bolts"—the few allegedly crystalline nanoparticles. It sought a royalty based on the selling price of the car—on sales of the entire Abraxane product.

A patentee that seeks a royalty based on sales of a product that includes both patented and non-patented components *must* show that "the patent related feature is the basis for customer demand." *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1379 (Fed. Cir. 2005). Elan offered no evidence at trial or in its motion that the few allegedly

13

crystalline nanoparticles contributed in any way to Abraxane, let alone how these particles motivated Abraxane purchases. Absent evidence that the allegedly infringing nanoparticles were the basis for customer demand for Abraxane, Elan is not entitled to a royalty based on Abraxane revenues. *See Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 614-15 (D. Del. 2004) (barring royalty-based damages for claim to a portion of a razor based on sales of entire razor where the claimed portion was not the basis for customer demand); *Lucent Techs. Inc.*, 509 F. Supp. 2d at 936-37 (granting judgment as a matter of law due to the failure of the patentee to provide evidence that the patented component contributed to demand for Microsoft Windows, which barred the jury from calculating damages based on sales of the product as a whole); *Medtronic, Inc. v. Catalyst Research Corp.*, 547 F. Supp. 401, 414 (D. Minn. 1982) (the cost of entire pacemaker could not be the royalty base where value of the pacemaker was not substantially due to the patented features of the battery). This is true both with respect to the jury's verdict and with respect to any ongoing royalty.

Elan has provided no evidence to show how the *de minimus* number of allegedly infringing crystalline, noncrosslinked nanoparticles is the basis for demand for Abraxane. As a result, Elan cannot recover an ongoing royalty calculated using the sales of Abraxane as the royalty base. Thus, the accounting requested by Elan would violate the legal rule set forth in *Imonex Servs. Inc.,* 408 F.3d at 1379.

## VI.    CONCLUSION

Abraxis opposes Elan's motion. For the reasons stated above, prejudgment interest should be compounded annually. For the reasons stated above, the Court should defer any accounting for an ongoing royalty until after an appeal is resolved.

DATED:  July 18, 2008

YOUNG CONWAY STARGATT &
TAYLOR, LLP

*Karen E. Keller*

Josy W. Ingersoll (#1088)
Elena C. Norman (#4780)
Karen E. Keller (#4489)
Michele Sherretta Budicak (#4651)
Jeffrey T. Castellano (#4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jingersoll@ycst.com
enorman@ycst.com
kkeller@ycst.com
mbudicak@ycst.com
jcastellano@ycst.com

*Attorneys for Defendant
Abraxis BioScience, Inc.*

*Of Counsel:*

Michael A. Jacobs (Admitted *pro hac vice*)
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105-2482
(415) 268-7000

Emily A. Evans (Admitted *pro hac vice*)
Eric S. Walters (Admitted *pro hac vice*)
Erik J. Olson (Admitted *pro hac vice*)
Paul F. Coyne (Admitted *pro hac vice*)
Diana B. Kruze (Admitted *pro hac vice*)
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, California  94304-1018
(650) 813-5600

Anders T. Aannestad (Admitted *pro hac vice*)
Morrison & Foerster LLP
12531 High Bluff Drive
San Diego, California 92130
(858) 720-5100

DB02:6991933.1

065496.1001

## <u>CERTIFICATE OF SERVICE</u>

I, Karen E. Keller, Esquire, hereby certify that on July 23, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on July 23, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> ### <u>BY E-MAIL</u>

> Stephen Scheve, Esquire
> BAKER BOTTS L.L.P.
> One Shell Plaza
> 910 Louisiana Street
> Houston, TX  77002-4995
> steve.scheve@bakerbotts.com

> Paul F. Fehlner, Esquire
> BAKER BOTTS L.L.P.
> 30 Rockefeller Plaza
> New York, NY  10112-4498
> paul.fehlner@bakerbotts.com

YOUNG CONAWAY STARGATT
 &  TAYLOR, LLP

/s/ *Karen E. Keller*
Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
Elena C. Norman (No. 4780)
enorman@ycst.com
Karen E. Keller (No. 4489)
kkeller@ycst.com
Michele Sherretta Budicak (No. 4651)
mbudicak@ycst.com
Jeffrey T. Castellano (No. 4837)
jcastellano@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for Defendant*
*ABRAXIS BIOSCIENCE, INC.*

DB02:5479778.1                                                                065496.1001