IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 06-438-GMS |
| ABRAXIS BIOSCIENCE, INC., | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT ABRAXIS BIOSCIENCE, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW OF NONINFRINGEMENT, INVALIDITY, INEQUITABLE CONDUCT, AND ITS MOTION FOR NEW TRIAL**

OF COUNSEL:

Michael A. Jacobs
MORRISON & FOERSTER, LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Emily A. Evans
Eric S. Walters
Erik J. Olson
Paul F. Coyne
Diana B. Kruze
MORRISON & FOERSTER, LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600

Anders T. Aannestad
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California 92130
(858) 720-5100

Dated: August 18, 2008

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Josy W. Ingersoll (#1088)
Elena C. Norman (#4780)
Karen E. Keller (#4489)
Michele Sherretta Budicak (#4651)
Jeffrey T. Castellano (#4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jingersoll@ycst.com
enorman@ycst.com
kkeller@ycst.com
mbudicak@ycst.com
jcastellano@ycst.com

*Attorneys for Defendant*
*ABRAXIS BIOSCIENCE, INC.*

# TABLE OF CONTENTS

Page

I. ABRAXIS IS ENTITLED TO JUDGMENT OF NONINFRINGEMENT .................... 1

   A. Elan Did Not Show Infringement On Its "More-Than-One-Particle" Theory .................................................................................................................. 1

      1. Elan Failed to Prove the Crystalline Limitation ........................................ 1

      2. Elan Failed to Prove the Non-Crosslinked Limitation............................... 2

      3. Elan Failed to Prove the Existence of Particles Meeting Both the Crystalline and Non-Crosslinked Limitations ........................................... 3

   B. The Claims Do Not Cover Largely Amorphous Formulations............................. 3

II. ABRAXIS IS ENTITLED TO JUDGMENT OF INVALIDITY UNDER § 112............ 4

   A. The Specifications Fail To Provide An Enabling Disclosure ............................... 4

      1. The '363 Patent Does Not Enable Uncontaminated Nanoparticles............ 4

      2. The '363 Patent Does Not Enable the Full Scope of Claimed Medicament and Surface Modifier Combinations .................................... 5

      3. The '363 Patent Does Not Enable Mostly Amorphous Formulations........ 7

      4. '025 Patent Claims 1-3 and 13-15 Are Not Enabled................................. 7

   B. The '363 and '025 Patents Fail to Provide An Adequate Written Description ........................................................................................................... 7

III. THE '363 AND '025 PATENTS ARE UNENFORCEABLE............................................. 8

IV. THERE WAS NO EVIDENTIARY BASIS FOR THE DAMAGES AWARD ............... 8

V. ABSENT JMOL, A NEW TRIAL SHOULD BE GRANTED ......................................... 9

   A. The Clear Weight Of Evidence Does Not Support The Jury's Verdict................. 9

   B. Elan's Eleventh-Hour Infringement Theory ......................................................... 9

   C. Dr. Munson Should Not Have Been Allowed To Testify................................... 10

VI. CONCLUSION................................................................................................................ 10

ii

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Kraft Foods, Inc. v. Int'l Trading Co.,*
   203 F.3d 1362 (Fed. Cir. 2000)..................................................................................3

*Summit Tech., Inc. v. Nidek Co.,*
   363 F.3d 1219 (Fed. Cir. 2004)..................................................................................3

*United States v. Reilly,*
   33 F.3d 1396 (3d Cir. 1994)......................................................................................10

*Vas-Cath, Inc. v. Mahurkar,*
   935 F.2d 1555 (Fed. Cir. 1991)..................................................................................8

*Walden v. Georgia-Pacific Corp.,*
   126 F.3d 506 (3d Cir. 1997)......................................................................................10

I.  **ABRAXIS IS ENTITLED TO JUDGMENT OF NONINFRINGEMENT**

Elan's opposition reinforces the conclusion of our JMOL motion. Ignoring many of the arguments in our opening brief, Elan failed to clear any of the three infringement hurdles it faced even under its "more than one particle" theory. Judgment also should be granted for the independent reason that Elan's theory fails under a proper view of the '363 patent's claims. Elan's central argument — defer to the verdict — seeks to disguise Elan's failure of proof.

A.  **Elan Did Not Show Infringement On Its "More-Than-One-Particle" Theory**

1.  **Elan Failed to Prove the Crystalline Limitation**

Elan's burden on the crystallinity limitation was to show that the medicament in particles was entirely crystalline. Yet Elan admits that most of its evidence – including the testimony of its experts – bears only on whether Abraxane includes some crystalline medicament. *See* D.I. 663 ("Elan Br.") at 4-5. This evidence cannot support the verdict.

For "entirely crystalline," Elan relies on just four pieces of evidence. D.I. 642 ("Opening Br.") at 2-3.

First, Elan cites Abraxane's trillions of particles, speculating there may be some that are entirely crystalline. Elan Br. at 5. But speculation is not substantial evidence.

Second, Elan cites patents covering Abraxane. But the patents' description of all possibilities ("'crystalline, amorphous, or a mixture thereof'"), which Elan acknowledges, says nothing about Abraxane's actual particles. *Id.*

Third, Elan cites laboratory notebooks, *id.* at 5-6, but these too are insufficient. None states that particles are entirely crystalline or even discusses the amount of crystallinity. Moreover, the notebooks pre-date by at least five years the commercial release of Abraxane, and none addresses the particles in an Abraxane vial, as we noted in our opening brief and Elan did not contest. Opening Br. at 3.

Finally, Elan relies on Dr. Munson's conclusory testimony that some particles meet all the claim limitations. Elan Br. at 6. But this was mere naked assertion; Dr. Munson offered no supporting evidence or argument that any particles are "entirely crystalline." Moreover, Elan takes Dr. Atwood's testimony out of context. Dr. Atwood disagreed with Dr. Munson's analysis, and demonstrated that Dr. Munson's testing established amorphousness, not crystallinity. *See, e.g.,* Tr. at 1081:6-22; 1095:12-1096:13.

### 2. Elan Failed to Prove the Non-Crosslinked Limitation

Elan's opposition on the non-crosslinked limitation, Elan Br. at 6-7, ignores nearly every Abraxis argument. Opening Br. at 3-4. Although Elan relies on Dr. Manning's "rapid dissociation" theory, Elan does not dispute that his testimony relied on a "strong, permanent interaction or bond," which is inconsistent with the Court's claim construction. Nor does Elan challenge that Abraxis's testing established that albumin *adsorbed on the surface of Abraxane particles* is 55% crosslinked *and that this is the relevant data for infringement purposes*. *Compare* Opening Br. at 3 *with* Elan Br. at 6-7.

Elan's reliance on 80% noncrosslinked total albumin fails because (1) Elan agrees that this figure includes un̲adsorbed albumin, (2) Elan agrees that manufacturing causes crosslinking to increase from 5% to 20%, contradicting Elan's argument that Abraxane's manufacture introduces no crosslinking, and (3) even 20% is not "essentially free" of crosslinkages.

Elan's reliance on certain statements to the FDA is also misplaced. Elan points to no statement that the albumin molecules adsorbed on Abraxane particles are not crosslinked with each other. Dr. Desai explained without contradiction that Abraxis's statements referred to the absence of chemical additives or interactions between paclitaxel and albumin. Tr.1282:18-1284:9, 1288:6-1293:7. Having failed to provide its own testing evidence, Elan now ignores Abraxis's undisputed testing evidence in favor of ambiguous statements. Elan's reliance on

2

cherry picked evidence does not meet its burden. *See Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004) (courts reviewing JMOL motion must review all trial evidence, not merely isolated abbreviated excerpts from documentary evidence removed from the context).

### 3. Elan Failed to Prove the Existence of Particles Meeting Both the Crystalline and Non-Crosslinked Limitations

Elan does not dispute that none of its evidence established that any Abraxane particles contain *both* entirely crystalline paclitaxel *and* non-crosslinked surface modifier. Moreover, Elan does not contest that any supposedly crystalline particles deviate from typical Abraxane particles. Opening Br. at 4-5. To show infringement, Elan needed specific evidence focused on non-crosslinking in these deviant particles. Elan has no such evidence. Elan merely notes that there are trillions of particles in Abraxane and implies that some crystalline, non-crosslinked particles therefore must exist in Abraxane somewhere. Elan Br. at 7. Elan's speculation is not evidence. Elan failed to prove that particles required by the claims – the unicorns that are both crystalline and non-crosslinked – actually exist. Because of Elan's complete failure of proof, judgment of non-infringement must be granted to Abraxis on this ground alone.

### B. The Claims Do Not Cover Largely Amorphous Formulations

Elan concedes that it has no case if, as the Court stated, the "crystalline medicament" limitation "forecloses the argument that a largely amorphous product can infringe the '363 patent." D.I. 569 at 2. Rather, Elan advances a claim differentiation argument. Elan Br. at 3-4. But the uncontested intrinsic evidence trumps claim differentiation. *See Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368-69 (Fed. Cir. 2000) (intrinsic evidence overcomes presumption arising from claim differentiation). The specification and prosecution history confirm that the inventors understood the invention only in the context of particle dispersions or formulations. Opening Br. at 5-7. Elan's patent teaches how to make only dispersions or

3

formulations. Elan does not dispute that the claimed particle size limitation makes sense only in the context of a formulation and that prior art was distinguished based on the characteristics of particle formulations. Nor does Elan dispute that the claims would be invalid if read to cover a small subset of the particles in a dispersion or formulation consisting primarily of particles with amorphous medicament. *Id.* at 11-13. Elan thus reinforces the correctness of the Court's statement about the claims, and confirms that non-infringement independently must be found on this basis.

## II. ABRAXIS IS ENTITLED TO JUDGMENT OF INVALIDITY UNDER § 112

Faced with an overwhelming documentary record of invalidity, Elan abandons arguments it advanced at trial and now tries new ones. But these too fail to square with the evidence. Even drawing permissible inferences in Elan's favor, the patents are clearly and convincingly invalid.

### A. The Specifications Fail To Provide An Enabling Disclosure

#### 1. The '363 Patent Does Not Enable Uncontaminated Nanoparticles

Elan does not dispute that several *Wands* factors weigh heavily toward nonenablement in view of contamination: the art was unpredictable; the patent offers no instruction on avoiding contamination; and the patent has no working examples. Opening Br. at 7-8. Elan also does not disagree that its solution to contamination was to move away from the patent's techniques.

Instead, Elan newly argues that Abraxis "failed to produce any evidence" that the claimed particles "themselves" will be contaminated. But Elan ignores its own internal report that the contamination sticks to the particles and is impossible to filter off. JX53 (showing high level of contamination in centrifuged particles); *see also* Tr. 1436:16-1437:19. Moreover, if the "unacceptable" contamination, DX607, cannot be removed from preparations of particles made according to the '363 patent then the patent has no utility. Tr. 1439:14-18. And utility indisputably is a requirement of Section 112. *See* Opening Br. at 10.

4

Elan's argument that its internal contamination documents "do not relate" to the patent is disingenuous. On their face, Elan's documents specifically recite the very grinding media and techniques taught by the patent.[1] Moreover, notwithstanding lengthy examination about these documents, Elan's inventors never said that they did not relate to the patent.

Finally, although Elan again points to its later FDA-approved products, it has no evidence that any approved product was manufactured using the '363 patent teachings. Neither passage Elan cites, Tr. 303:12-304:2 or 535:5-11, supports that these products are manufactured according to the '363 patent or even covered by its claims.

### 2. The '363 Patent Does Not Enable the Full Scope of Claimed Medicament and Surface Modifier Combinations

Elan also does not dispute that most *Wands* factors weigh heavily in favor of non-enablement due to claim overbreadth. Elan does not contest that the patent's claims are extremely broad; that the required experimentation is high; that the specification contains little guidance on which combinations will work; that the patent's screening method is "basically trial and error" with a "trivial end point;" and that its internal documents evidence countless failures. Elan also is silent about the nonenablement admissions in its own later patents and patent

---

[1] JX81 at 6:15-31 (milling with grinding media, including zirconium and glass media, to make nanoparticles); DX607 ("roller & media milling using zirconium or glass beads generates unacceptable contamination levels"); DX238 ("zirconium or glass beads generates undesirable contamination"); JX53 (picture of nanoparticles contaminated with zirconium); JX54 ("toxicology has recommended the non-use of Zr [zirconium] grinding media"); JX55 (comparing levels of contamination using zirconium media). Although two of the Elan internal documents discuss unacceptable contamination using "yttria" media (DX228 and DX320), the '363 patent states that the "selection of material for the grinding media is not believed to be critical." JX81 at 6:21-23. Had Elan attempted this argument at trial, it would have been confronted with its interrogatory responses citing these documents as supporting conception, reduction to practice, and paclitaxel development under the patent. *See, e.g.*, A 2394-2404 (citing JX53 (ELANP0018457-91, ELANP0022739-61), JX55 (ELANP0083635-87), and DX228 (ELANP0071825-72035)).

applications. *See* Opening Br. at 9-10.

Elan relies on the patent examples. Elan does not contest, however, that the examples cover only a miniscule percentage of claimed combinations; that many claimed combinations are inoperable; and that the examples do not refer to the claimed "average effective particle size," and hence are not "working examples." *Id.* Elan's reference to a high level of skill cannot trump this showing.

Elan's argument that "the difficulty [only] arises in preparing a commercial product," Elan Br. at 11, misstates Dr. Manning's testimony that Abraxis cited. *See* Opening Br. at 10. Dr. Manning admitted that even the initial phase of selecting a combination is "non-trivial" and that substantial effort would be required just to reach pre-clinical studies. Tr. 1592:5-14. Elan does not dispute that, over 15 years after filing, it still has no commercial product covered by the patent. Opening Br. at 10-11. Although a commercial embodiment is not a *per se* requirement, its absence is strong evidence of nonenablement. *Id.* at 11. Elan's failure to make generic Abraxane, *id.*, which Elan does not contest, is just as telling.

Finally, Elan's attempt to distinguish *Pharmaceutical Resources, Inc. v. Roxane Labs., Inc.* is unavailing. Elan Br. at 11. Although Elan points to the non-crosslinked and particle size limitations of its claims, Elan's patent is even more of a "recipe in a pot" than the patent rejected in *Roxane*. The claims in *Roxane* covered only one drug in combination with a surfactant, whereas Elan's claims cover multiple drugs and thousands of surface modifiers. Finally, Elan's argument that its patent is limited to a "specific concentration" of surface modifier ignores that the surface modifier can be present in any amount "0.1-90% by weight," encompassing almost the entire range.

6

### 3. The '363 Patent Does Not Enable Mostly Amorphous Formulations

Elan does not dispute that the '363 patent does not enable largely amorphous formulations, nor that claims must be given the same meaning for purposes of both validity and infringement. Opening Br. at 11. To the extent the patent is held to cover largely amorphous drugs containing deviant crystallinity, the claims must be invalid: Elan cannot have it both ways.

### 4. '025 Patent Claims 1-3 and 13-15 Are Not Enabled

Conceding that its internal documents showed no hemodynamic effects to avoid for any mammal other than dogs, Elan's only response is that "dogs are the best model." Although Elan argues that this testimony was "unrebutted," it ignores an internal document, authored by and presented during trial to Dr. Elaine Liversidge, which unequivocally stated that "the dog would not be a good model." DX-301; *see also* Tr. 529:3-15. Nor does Elan dispute its inventors' admission that there were no hemodynamic effects to avoid because they have never been seen or measured in any species other than dogs, including man, monkeys, and rabbits. Finally, Elan does not dispute that the '025 patent is not limited to cancer drugs, amplifying the nonenablement problem discussed in Section II.A.2 above.

## B. The '363 and '025 Patents Fail to Provide An Adequate Written Description

Elan does not dispute that the written description requirement demands that the patent demonstrate possession of the *full scope* of the invention. Opening Br. at 12. Elan's attempt to meet this requirement by pointing to the patent's examples is unavailing. Elan does not contest that its claims are exponentially broader than the 23 examples and that unpredictability plagued the invention. The evidence shows that Elan possessed only a wish for uncontaminated particles and specifically disavowed amorphous formulations. *Id.* at 12-13.

The Court should reject Elan's attempt to conflate the written description and enablement requirements for the '025 patent. Elan Br. at 13. The Federal Circuit has repeatedly cautioned

7

that these two inquiries are "separate and distinct." *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). Even assuming enablement, Elan cannot demonstrate possession in every mammal.

## III. THE '363 AND '025 PATENTS ARE UNENFORCEABLE

Abraxis's accompanying Reply Brief in Support of Motion to Amend the Judgment and Enter Findings that Elan Engaged in Inequitable Conduct explains why the Court should reject the jury's advisory verdict and find that Elan engaged in inequitable conduct.

## IV. THERE WAS NO EVIDENTIARY BASIS FOR THE DAMAGES AWARD

Elan provides no factual or legal support for the royalty award in view of its infringement theory. Elan does not contest that its damages expert calculated a royalty based on *every particle in every vial*, and that this assumption was radically inconsistent with its infringement argument. Opening Br. at 14-16. Elan did not respond to Abraxis's argument that Elan failed to meet the requirements of the entire market value rule by establishing that the patent-related feature is the basis for customer demand. Nor did Elan show that any of its purportedly comparable license agreements transferred comparable IP rights or arose from products in which only "two or more particles" infringed. Elan's argument that the Court should uphold the award because Abraxis did not present a damages expert ignores its burden of proof. As Abraxis's cited cases showed, *id.* at 16, Elan had to provide sufficient evidence to support its damages award, or else the Court should grant JMOL against Elan. Elan cites no authority to the contrary.

Elan's claim of waiver on damages, Elan Br. at 14, is incorrect. Abraxis acknowledged that only Elan had presented a damages theory, but noted that the jury could reject it. Tr. 1649:5-1651:17. The Court explained, "There is only one set of numbers" being presented to the jury. Tr. 1649:21. Abraxis also moved pre-verdict for judgment as a matter of law on Elan's damages theory. Opening Br. at 16-18. Elan points to nothing even approaching waiver of a

8

challenge to Elan's damages award for lack of evidentiary sufficiency.

V.     ABSENT JMOL, A NEW TRIAL SHOULD BE GRANTED

   A.     The Clear Weight Of Evidence Does Not Support The Jury's Verdict

Elan fails to address Abraxis's argument that the clear weight of evidence does not support the jury's verdict on infringement, validity, unenforceability, or damages. Opening Br. at 16-18. Given Elan's complete silence, a new trial is warranted. Elan's statements about the credentials of Abraxis's experts are incorrect, and do not undercut the clear weight of evidence against Elan. DX472; DX474; Tr. 1035:6-1043:1, 1367:21-1373:7.

   B.     Elan's Eleventh-Hour Infringement Theory

Elan does not contest most of the facts establishing the unfair surprise and prejudice Abraxis suffered due to Elan's last-minute "more-than-one particle out of trillions" theory. Opening Br. at 18-19. Elan does not rebut that its only theory throughout discovery was that Abraxane *as a whole* infringed because it allegedly contained more than 10% crystalline medicament. Elan's own brief shows that its interrogatory responses on infringement focused on "the lyophilized powder sold by Abraxis," rather than more than two particles in trillions. Elan Br. at 18, n.17. Elan's argument that vague references to "particles" were sufficient to put Abraxis on notice of its trial infringement theory confirms that Elan hid the ball – again.

Elan's claim that Abraxis should have known about Elan's trial infringement theory from Dr. Munson's original expert report is disingenuous. That report was premised on the idea that more than 10% by weight (purportedly up to 12%) of Abraxane particles was crystalline paclitaxel. A1991, ¶24. As Elan's quotations reveal, Dr. Munson first opined that Abraxane "samples" were "on average 3.5 to 12% crystalline," Elan Br. at 18, and he bent his deconvolution analysis (with its 50% error component) to get above 10%. A1991, ¶24; Tr. at 710:5-711:20. Dr. Munson's one-line statement that there may be "individual particles that are

9

mostly crystalline" was an unsupported throw-away. His report's ultimate conclusion, also relied on by Elan, parrots the patent claim and is tantamount merely to saying, "Abraxis infringes because it infringes." A1993, ¶27G.

Abraxis's prejudice is self-evident. In every patent case, the patentee's infringement theory shapes the accused infringer's pre-trial strategy and trial preparation. Elan cannot dispute that a fundamental change in that theory, as here, deprives the accused infringer of a fair trial.

### C. Dr. Munson Should Not Have Been Allowed To Testify

Strikingly, Elan offers no substantive defense of Dr. Munson's opinion testimony on crystallinity. Elan's only response is waiver. But Elan ignores Abraxis's motion in limine and repeated objections. *See, e.g.*, D.I. 465 (Motion in Limine No. 2); D.I. 593, 22:16-23:9; Tr. 9:1-12:3; 629:20-637:17, 670:9-672:14; 716:25-718:16. Abraxis's objections, both in motions and at trial, were more than sufficient to preserve the issue. *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 519 (3d Cir. 1997). *Reilly*, cited by Elan, is inapposite; the court there held that a criminal defendant waived its objection where both parties stipulated to a curative instruction. *United States v. Reilly*, 33 F.3d 1396, 1423 (3d Cir. 1994).

### VI. CONCLUSION

Elan ignores much of Abraxis's opening brief and fails to point to evidence that undercuts Abraxis's motion. The relief requested by Abraxis should be granted.

Dated: August 18, 2008

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Karen E. Keller*
Josy W. Ingersoll (#1088)
*jingersoll@ycst.com*
Elena C. Norman (#4780)
*enorman@ycst.com*
Karen E. Keller (#4489)
*kkeller@ycst.com*
Michele Sherretta Budicak (#4651)
*mbudicak@ycst.com*
Jeffrey T. Castellano (#4837)
*jcastellano@ycst.com*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-6600

OF COUNSEL:

MORRISON & FOERSTER, LLP

Michael A. Jacobs
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000
*MJacobs@mofo.com*

Emily A. Evans
Eric S. Walters
Erik J. Olson
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600
*EEvans@mofo.com*
*EWalters@mofo.com*
*EJOlson@mofo.com*

*Attorneys for Defendant*
ABRAXIS BIOSCIENCE, INC.

11

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on August 18, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>   Steven J. Balick, Esquire
>   John G. Day, Esquire
>   ASHBY & GEDDES
>   500 Delaware Avenue, 8th Floor
>   Wilmington, DE 19801

I further certify that on August 18, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

>   Stephen Scheve, Esquire
>   BAKER BOTTS L.L.P.
>   One Shell Plaza
>   910 Louisiana Street
>   Houston, TX 77002-4995
>   steve.scheve@bakerbotts.com
>
>   Paul F. Fehlner, Esquire
>   BAKER BOTTS L.L.P.
>   30 Rockefeller Plaza
>   New York, NY 10112-4498
>   paul.fehlner@bakerbotts.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ Karen E. Keller
Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
Elena C. Norman (No. 4780)
enorman@ycst.com
Karen E. Keller (No. 4489)
kkeller@ycst.com
Jeffrey T. Castellano (No. 4837)
jcastellano@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899
(302) 571-6600

Attorneys for Defendant
ABRAXIS BIOSCIENCE, INC.

2